Robert P. Goe - State Bar No. 137019
Charity J. Manee – State Bar No. 286481
**GOE FORSYTHE & HODGES LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
rgoe@goeforlaw.com
cmanee@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:  (949) 955-9437

Proposed Counsel for Meade Instruments Corp.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MEADE INSTRUMENTS CORP.,<br><br><br>Debtor and Debtor-in-<br>Possession. | Case No. 8:19-bk-14714-CB<br><br>Chapter 11<br><br><br>**OMNIBUS DECLARATION OF VICTOR ANICETO IN SUPPORT OF EMERGENCY MOTIONS**<br><br>Hearing Date:  TBD<br>Time:        TBD<br>Courtroom:   5D |

**I, Victor Aniceto, declare and state,**

1.      I am the President of Defendant Meade Instruments Corp. ("Debtor") and have held this title since February 2015.  I make this declaration in support of Debtor's Emergency Motions (collectively, at times, the "Emergency Motions").  Except for those matters stated on information and belief, I have sufficient personal knowledge of the facts set forth herein that, if called as a witness, I could and would testify competently thereto.

2.      Debtor commenced this case by filing a voluntary petition under chapter 11 of Title 11 of the United State Code ("Bankruptcy Code") on December 4, 2019 ("Petition Date").

3.      As discussed herein, Debtor recently suffered a catastrophic (and I believe wrong) loss in litigation and was faced with premature and drastic collection efforts by the prevailing party to the litigation, a competitor of Debtor, that threatened to destroy Debtor's business.  These collection efforts and Debtor's loss of this litigation were the prompting events for Debtor's initiation of this case.

4.      As discussed below, Debtor intends to take actions to set aside the jury verdict and judgment that Debtor anticipates being entered, and to promptly move forward with a plan of reorganization.

**A.      Debtor's Business and Operations**

5.      Debtor was founded in 1972 and began as a mail order seller of small refracting telescopes and accessories.  In 1976, Debtor started manufacturing its own products.  In or about 2008, Debtor moved its manufacturing operations to its Tijuana, Mexico facility, Meade Instruments Mexico S.DE R.L. DE C.V. ("Meade Mexico"), of which Debtor is the 97% owner, with the remaining 3% owned by Meade Instruments Holding Corp. ("Meade Holding"), a California corporation that is wholly owned by the Debtor.

6.      Debtor currently leases premises at 27 Hubble, Irvine, CA 92618 ("Business Premises") from The Irvine Company LLC at a monthly rate of $29,233.

7.      Debtor's manufacturing operations are conducted through Meade Mexico, which manufactured telescopes generate approximately 40% of Debtor's total revenues.

8.      The rest of Debtor's revenues are generated by Debtor's sales of telescopes, binoculars, spotting scopes, and other finished goods sourced from suppliers in Asia, including but not limited to Ningbo (defined below).

9.      Debtor currently sells finished products to approximately 160 wholesale customers, including distributors, online retailers like Costco and Amazon, a global network of authorized Meade retailers, and others located on every continent.

10.      Debtor does not maintain large stores of inventory and aims to efficiently tailor its manufacturing and inventory purchases to the prevailing level of demand in the market at any given time.  As such, the greatest source of Debtor's value is derived from its ongoing operations.

11.     Debtor's gross sales have been as follows:

|      |                 |
|------|-----------------|
| 2017 | $12,601,019.00  |
| 2018 | $12,356,656.86  |
| 2019 | $13,560,249.29  |

**B.      Debtor's Affiliates and Subsidiaries**

12.     Debtor is a wholly owned subsidiary of Sunny Optics, Inc. ("Optics"), a Delaware corporation.

13.     The parent corporation of Optics is China-based Ningbo Sunny Electronic Co., Ltd. ("Ningbo"), of which Optics is a wholly owned subsidiary.

14.     As noted above, Debtor also owns 97% of Meade Mexico and 100% of Meade Holding.

15.     Debtor also wholly owns three defunct corporate entities that have not yet been dissolved: Meade Instruments Foreign Sales Corporation Limited, a Jamaican corporation, Meade Instruments (Guangzhou) Co., Ltd., a PRC limited liability company, and Simmons Outdoor Corp., a Delaware corporation.

**C.      The Orion Lawsuit and Earlier Unsuccessful Attempt to Acquire the Debtor.**

16.     Optronic Technologies, Inc., d/b/a Orion Telescopes & Binoculars ("Orion") is a California based distributor of telescopes and longtime competitor of Debtor on the distribution side of Debtor's business.

17.     In early 2013, Meade became available for acquisition.  Orion bid $4.5 million on Meade, but Meade announced that it had entered into a merger agreement with a third-party Jinghua Optics & Electronics.  In the weeks following that announcement, Optics made an unsolicited bid of $5.5 million, which Meade accepted.  Optics and Meade closed the sale on September 13, 2013.  Orion complained in the Orion Lawsuit (defined below) that Defendants were responsible for its failed bid to acquire Debtor but this theory was rejected by the District Court.

18.     In 2016, Orion initiated what would become an exceedingly expensive lawsuit ("Orion Lawsuit") against Debtor, Optics and Ningbo in the United States District Court for the

1    San Jose Division of the Northern District of California, Case No. 5:16-cv-06370 EJD.

2          19.     In the Orion Lawsuit, Orion alleged anti-competitive and antitrust violations of

3    federal and California law, as well as unfair business practices pursuant to California's Business

4    and Professions Code.  Specifically, Orion alleged that (a) Ningbo, a manufacturer and distributor

5    of consumer telescopes, conspired with one of its competitors, also a manufacturer and distributor

6    of consumer telescopes, to fix prices, restrict output and allocate markets, (b) that Ningbo and

7    another party that had previously settled monopolize, attempted to monopolized, and conspired to

8    monopolize the supply and distribution markets for telescopes in the United States, and (3) that

9    Ningbo's 2013 acquisition of Meade violated Clayton Act § 7, which bars acquisitions that tend to

10   create a monopoly.

11         20.     After three extremely costly years of litigation (Debtor's attorneys' fees and costs

12   have exceeded $9 million), on November 26, 2019, a jury verdict was issued in favor of Orion

13   against all defendants jointly in the amount of $16.8 million, however, treble damages would be

14   awarded pursuant to 15 U.S.C. § 15(a), bringing the joint and several liability under the impending

15   judgment to $50,400,000.

16         21.     Following issuance of the verdict, Orion immediately applied for a temporary

17   protective order that, if granted, would effectively destroy Debtor's business by preventing it from

18   paying its foreign suppliers and creditors, including Ningbo, which supplies sixty-percent of

19   Debtor's inventory, and paying for its foreign operations, including its manufacturing operations

20   in Mexico.

21         22.      As such, Debtor required bankruptcy protection on an emergency basis in order to

22   prevent Orion from effectively shutting Debtor down.

23         23.     On the Petition Date, Optics filed a voluntary chapter 11 petition, also in the United

24   States Bankruptcy Court for the Central District of California, Santa Ana Division, commencing

25   the case entitled *In re Sunny Optics, Inc*., Case No. 8:19-bk-14711 CB.  Shortly thereafter and on

26   the same day, Debtor filed its voluntary chapter 11 petition.

27         24.     Optics is a holding company with its sole asset being its 100% ownership of the

28   Debtor.  Optics was incorporated to effectuate the acquisition of the Debtor by Ningbo.

25.     On December 5, 2019, partial judgment on the jury verdict was entered against Ningbo only, in the amount of $50,400,000, in light of the protection of the automatic stay in favor of Debtor and Optics.

26.     Debtor vehemently disputes its liability to Orion.  In the event the same judgment is also entered against Debtor, Debtor intends to file post-trial motions challenging the jury verdict and judgment and will appeal the judgment, if necessary.

**D.     Debtor's Employees and Employee Benefit Obligations**

27.     Debtor has twenty-four employees, including myself.  Each of Debtor's employees plays a vital role in the successful functioning of Debtor's business.

28.     As of the Petition Date, wages had accrued to Debtor's employees that remain unpaid.  Debtor's regular payroll period covering these wages began on November 24, 2019 and ends on December 7, 2019, with a usual pay date of December 13, 2019.

29.     Excluding wages owed to me, Debtor's payroll liability for this period is approximately $52,000.

30.     Additional payment obligations will arise throughout this case, as employees take their pre-petition vacation time, sick time, and personal time.  As of the Petition Date, Debtor's employees are also owed accrued vacation in the total amount of $50,709.81.  The full details of accrued benefits owing to Debtor's employees are attached hereto as **Exhibit "1"** and are incorporated herein.

31.     Debtor also maintains a health insurance plan for its employees with Blue Shield of California that is paid on a monthly basis.  Nineteen (19) of Debtor's eligible employees have opted for coverage under this plan.  The monthly premium owing for health insurance premiums for December 2019 is $20,357.94.

32.     On November 26, 2019, Debtor sent payment for the December premium.  However, the check was not received by Blue Shield as expected and the payment remains in transit.  Debtor requests authority for payment of the December premium including, if necessary, permission to reissue a check.

33.     If the Court grants the *Debtor's Emergency Motion for Order Authorizing Payment of Pre-Petition Employee Wages and Benefits* ("Employee Benefit Motion"), payment to any single employee will not exceed the priority limits provided for in Section 507(a)(4) and (5) of the Bankruptcy Code, and no payments will be made to me until an insider compensation request has been approved.

34.     In compliance with Local Rule 2081-1, on behalf of the Debtor, I further represent as follows:

        a.    All the employees to be paid are still employed;

        b.    Debtor's employees are absolutely essential to operations and Debtor's employees are unlikely to continue working for Debtor without payment of their wages and benefits;

        c.    The procedures of allowing the Debtor to pay the aforementioned pre-petition wages and benefits benefit the estate as they ensure that only priority creditors are paid and that there is no hardship to the employees;

        d.    Debtor expects business to continue to improve, paving the way to satisfy a chapter 11 reorganization;

        e.    The employees Debtor requests permission to pay in the Employee Benefit Motion are not insiders;

        f.    The wages/benefit claims are all below the limits set forth in Section 507(a)(4) and (a)(5) and to the extent they exceed those amounts, Debtor will cap payments at the priority amounts; and

        g.    The payout of pre-petition wages and benefits will not render the estate insolvent.

**E.     Debtor's Utility Providers**

35.     In the ordinary course of business at the Business Premises, Debtor uses water, electricity, telecommunications and other services provided by Southern California Edison, Cox Communications, and Irvine Ranch Water District (the "Utility Providers").

36.     Debtor's average monthly cost to the Utility Providers is $5,000.  True and correct copies of Debtor's monthly utility bill statements for the Utility Providers are attached hereto as **Exhibit "2"** and are incorporated herein.

37.     Prior to the Petition Date, the Debtor paid the Utility Providers timely and on a regular monthly basis.  Debtor was not required to make any deposits with the Utility Providers in connection with establishing services.

38.     Continued and uninterrupted utility service is essential to the Debtor's ability to sustain its operations during its chapter 11 case.  Any interruption of utility service would severely disrupt the Debtor's business operations.

**F.     Debtor's Secured Creditor and Creditor Body**

39.     Of the more than 100 creditors Debtor has, it's only secured creditor is Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin"), which is a law firm that represents Debtor, Optics and Ningbo in the Orion Lawsuit.  Sheppard Mullin filed a UCC-1 financing statement in Delaware on October 2, 2019 to perfect a lien against all of Debtor's ("Sheppard Mullin Lien"). True and correct copies of Sheppard Mullin's security agreement and UCC-1 financing statement are attached hereto as **Exhibits "3"** and **"4"**, respectively.

40.     On October 3, 2019, Sheppard Mullin also caused the Sheppard Mullin Lien to be recorded by the Assignment Recordation Branch of the U.S. Patent and Trademark Office with respect to Debtor's patents.  A true and correct copy of the Notice of Recordation of Assignment Document is attached hereto as **Exhibit "5"** and incorporated herein.

41.     Debtor owes approximately $2.7 million in attorney's fees to Sheppard Mullin, which debt is the basis for the Sheppard Mullin Lien.  Debtor anticipates that Sheppard Mullin will consent to its usage of Sheppard Mullin's alleged cash collateral pursuant to Debtor's budget for the next 90 days (13 weeks), a true and correct copy of which is attached hereto as **Exhibit "6"** and is incorporated herein.

///

///

**G.     Debtor's Pre-Petition Bank Accounts**

42.     Debtor maintains three bank accounts with East West Bank- its general operating account (Acct. 0303), its payroll account (Acct. 0188), and its accounts receivable account ("AR Account") (Acct. 2201) (collectively, the "Pre-Petition accounts").

43.     Debtor's AR Account is connected to Debtor's merchant account with Heartland Payment Systems and all credit card transactions are deposited into its AR Account.

44.     Additionally, in Debtor's regular operations, Debtor is required to post and pay customs and duties upon receipt of goods into U.S. ports.  These payments are made through automatic ACH draws.  Presently, Debtor is expecting a shipment of goods for which it will be required to pay duties later this month.  To avoid the imposition of penalties, interruptions in its business during in Debtor's busiest season, and to avoid resulting harm to the estate, Debtor requires additional time to transfer all banking activity to its Debtor in Possession (DIP) accounts.  Accordingly, Debtor requests permission to maintain its pre-petition accounts with East West Bank for thirty days from the Petition Date to ensure a smooth transition while Debtor diligently (and immediately) opens its DIP accounts.

45.     Debtor has over 100 creditors and requests that in order to keep costs down it is authorized to limit notice as set forth in concurrently filed motion.

46.     Debtor is diligently proceeding forward in this case but due to the complexity of and timing of the case (in the height of holiday season) given Debtor's business as a manufacturer and distributor of retail inventory, Debtor may need additional time to file complete and accurate schedules and would request an extension from December 18, 2019 to January 6, 2020.

I declare, under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge.  Executed this 9th day of December in Irvine, California.

Victor Aniceto

# EXHIBIT 1

# EXHIBIT 1

| Employee | | Hourly Wage | Annual Wage | Payroll Taxes | Vacation hours owed as of December 4, 2019 | Vacation Liability as of December 4th | Life Insurance Premium 100% Paid by Employer | ER Portion | Workers Comp | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|---|
| Teresa | Aniceto | $ 24.28 | $ 50,500 | $ 3,882 | 44.65 | 1,084.05 | 659.10 | $ - | $ 237.35 | 56,362.04 |
| Victor | Aniceto | $ 88.94 | $ 185,000 | $ 14,243 | 64.00 | 5,692.31 | 1,500.98 | $ 2,772.96 | $ 869.50 | 210,078.81 |
| Elizabeth | Atkinson | $ 45.67 | $ 95,000 | $ 7,214 | 57.55 | 2,628.49 | 1,239.94 | $ 471.01 | $ 446.50 | 107,000.16 |
| April | Bihum | $ 24.00 | $ 49,916 | $ 3,740 | 123.69 | 2,968.27 | 652.60 | $ 295.40 | $ 234.61 | 57,806.46 |
| Bryan | Cogdell | $ 28.85 | $ 60,000 | $ 4,228 | 110.08 | 3,175.37 | 783.12 | $ 595.53 | $ 594.00 | 69,375.82 |
| Gary | Creason | $ 43.07 | $ 89,580 | $ 6,242 | 195.56 | 8,422.06 | 1,142.18 | $ 793.37 | $ 886.85 | 107,066.68 |
| Jose Edward | Esquires | $ 18.00 | $ 18,720 | $ 1,432 | - | - | - | $ - | $ 185.33 | 20,337.31 |
| Zachary | Foresta | $ 22.00 | $ 45,760 | $ 3,432 | 46.62 | 1,025.64 | 600.34 | $ 288.37 | $ 215.07 | 51,321.68 |
| Danielle | Hartman | $ 20.00 | $ 41,600 | $ 2,875 | 18.47 | 369.30 | 548.08 | $ 332.13 | $ 195.52 | 45,919.59 |
| Lenora | Hernandez | $ 45.77 | $ 95,202 | $ 6,576 | 23.85 | 1,091.39 | 1,246.44 | $ 1,385.27 | $ 352.25 | 105,853.79 |
| Jose | Lopez | $ 18.00 | $ 37,440 | $ 4,019 | 85.60 | 1,540.76 | 489.58 | $ 924.63 | $ 2,381.18 | 46,795.63 |
| Vincente | Macias | $ 32.00 | $ 33,280 | $ 2,546 | - | - | - | $ - | $ 156.42 | 35,982.75 |
| Kevin | Meehan | $ 42.00 | $ 43,680 | $ 3,018 | - | - | - | $ - | $ 432.43 | 47,130.72 |
| Jose | Montero | $ 17.00 | $ 35,360 | $ 2,702 | 53.18 | 904.11 | 463.32 | $ 877.73 | $ 2,248.90 | 42,555.89 |
| Nancy | Patrick | $ 30.50 | $ 63,433 | $ 4,586 | 94.47 | 2,880.92 | 802.62 | $ 773.32 | $ 234.70 | 72,710.11 |
| John | Piper | $ 32.69 | $ 68,000 | $ 5,051 | 70.16 | 2,293.60 | 887.64 | $ 548.88 | $ 4,334.81 | 81,105.81 |
| Wenjun | Qu | $ 29.43 | $ 61,217 | $ 4,504 | 43.30 | 1,274.37 | 802.62 | $ 575.55 | $ 606.05 | 68,979.83 |
| Juan | Rodriguez | $ 24.00 | $ 49,920 | $ 3,496 | 95.27 | 2,286.43 | 652.60 | $ 757.28 | $ 3,174.91 | 60,287.40 |
| Sara | Roe | $ 44.21 | $ 91,962 | $ 6,913 | 135.68 | 5,998.75 | 1,200.68 | $ 662.66 | $ 340.26 | 107,076.97 |
| Dustin | Seeger | $ 25.48 | $ 53,000 | $ 4,059 | 35.74 | 910.68 | 691.86 | $ - | $ 249.10 | 58,910.24 |
| Ivan | Vazquez | $ 33.12 | $ 68,890 | $ 4,973 | 96.00 | 3,179.55 | 874.38 | $ 676.31 | $ 682.01 | 79,274.87 |
| Lonnie | Wege | $ 38.46 | $ 80,000 | $ 5,528 | 16.65 | 640.38 | 1,044.16 | $ 1,306.91 | $ 376.00 | 88,895.45 |
| Charles | Word | $ 19.00 | $ 39,520 | $ 2,799 | 28.74 | 546.06 | 522.08 | $ 773.32 | $ 146.22 | 44,306.58 |
| Qianli | Yu | $ 27.04 | $ 56,243 | $ 3,740 | 66.47 | 1,797.29 | 737.36 | $ 633.05 | $ 556.81 | 63,708.15 |
| | | | $ 1,513,223.45 | $ 111,797.36 | 1,505.70 | 50,709.81 | 16,882.58 | $ 15,443.68 | $ 19,889.42 | 1,728,842.74 |

EXHIBIT "1"

C:\Users\cmiller\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\FEO9J9QD\Maaco Instruments - Total Compensation.xlsx

# EXHIBIT 2

# EXHIBIT 2

# COX BUSINESS®

(NOT FOR PAYMENTS)
DEPARTMENT # 102280
PO BOX 1259
OAKS, PA 19456
6400 0350 NO RP 23.11242019 NNNNNNNY 01 063640 0012



Meade Instruments
27 HUBBLE
IRVINE CA 92618-4209

**CONTACT US:**    cox.com/chat

  www.coxbusiness.com

949-546-2020

Account Number    **001 7601 058252802**
COX PIN           7430
SERVICE ADDRESS   27 HUBBLE
                  IRVINE, CA 92618-4209

## ACCOUNT SUMMARY as of Nov 23, 2019

| | |
|---|---:|
| Previous Balance | $2,687.50 |
| Payment Received - Nov 19 | -$2,687.50 |
| **Remaining Previous Balance** | $0.00 |
| New Charges: Nov 24, 2019 - Dec 23, 2019 | |
| Networking Services | $2,150.00 |
| Taxes, Fees and Surcharges | $537.50 |
| New Charges | $2,687.50 |
| **Total Due By Dec 14, 2019** | **$2,687.50** |



RECEIVED
DEC 02 REC..
ACCOUNT...

# COX BUSINESS®

**Make Your Life Easier and GO GREEN!**
With **EasyPay**, pay your monthly Cox bill automatically from your bank or credit
card account. Add **Paperless Billing** and you get rid of paper bills and can access
your account online any time, all while saving trees! Sign up today at
www.coxbusiness.com/myaccount.

November 23, 2019 bill for Meade Instruments
Account Number    001 7601 058252802
Service at         27 HUBBLE
                   IRVINE, CA 92618-4209

**Total Due By Dec 14, 2019**                    **$2,687.50**

COX BUSINESS
PO BOX 53280
PHOENIX, AZ 85072-3280



EXHIBIT "2"



## MONTHLY SERVICES  Nov 24 - Dec 23

### NETWORKING SERVICES
**ETHERNET SERVICES**
*Circuit Occurrence: 001*
Circuit:99:VLXX:001874..COXC.
Circuit Description: EWAN 6M

| | |
|---|---:|
| 10mb E-Wan VPL - Interstate | $1,075.00 |
| *Circuit Occurrence: 002* | |
| Circuit Not Available | |
| Circuit Description: Not Available | |
| 10mb E-Wan VPL - Interstate | 1,075.00 |
| **Total Ethernet Services** | **$2,150.00** |
| **Total Networking Services** | **$2,150.00** |
| **TOTAL MONTHLY SERVICES** | **$2,150.00** |

## TAXES, FEES AND SURCHARGES
**Networking Services Taxes, Fees and Surcharges**
*Fees and Surcharges*

| | |
|---|---:|
| Federal Universal Service Fund | $537.50 |
| **Total Fees and Surcharges** | **$537.50** |
| **Total Networking Services Taxes, Fees and Surcharges** | **$537.50** |
| **TOTAL TAXES, FEES AND SURCHARGES** | **$537.50** |
| **TOTAL NEW CHARGES** | **$2,687.50** |

## CUSTOMER INFORMATION
**Billing, Payment Policies and Fees:**
Cox Business bills all customers in advance for monthly recurring charges and in arrears for non-recurring charges such as On Demand/pay-per-view and long distance. Payment in full is due to Cox by the "Due By" date indicated on your statement. If payment is not received by this date, your bill will become past due and may be subject to

**Payment Options**
**Online:** Visit www.coxbusiness.com to register for 24-hour online access or make payments to your account.
**Mail:** Detach this coupon and send it with your check or money order. Please include your account number on your check. Make your checks payable to Cox Communications. Allow 7 days for processing.
**Phone:** You may contact us at the telephone number listed on the front of this bill anytime and follow the phone prompts to make a payment using your bank account or credit card.
**In Person:** Visit www.coxbusiness.com for a list of Cox Authorized Payment Centers.

**Customer Information** cont.
additional fees, such as late payment charges, electronic reactivation fees, or returned payment fees. Payment of your Cox bill confirms your subscription to services and the possession of Cox owned equipment listed on your bill.

When you provide a paper, electronic check or electronic fund transfer (EFT) as payment, you authorize Cox to process your payment as a traditional check transaction or to make a one-time EFT from your account. An EFT may debit your account as soon as the same day you make your payment. Payments returned unpaid for any reason will incur a returned payment fee of up to $25.00, or the maximum allowed by state law. By using a credit card, debit card, paper check or an electronic check to make a payment, you agree that, if your payment is returned unpaid, you expressly authorize a one-time electronic fund transfer from your account for the amount of the payment plus any returned payment fees. If payment is not received by the "Due By" date indicated on your statement, a late payment charge may be assessed on your account.

**Billing Dispute and Resolution**
If you have any questions regarding your bill or disagree with any portion of your bill, immediately contact Cox with your concerns. You must contact us no later than 60 days from the bill's due date via the contact information listed on the front of this bill so that Cox can review your account.



# COX
## BUSINESS®

(NOT FOR PAYMENTS)
DEPARTMENT # 102280
PO BOX 1259
OAKS, PA 19456
8400 0350 NO RP 11.11142019 NNNNNNNY 01 000181 0001

MEADE INSTRUMENTS
27 HUBBLE
IRVINE CA 92618-4209

November 13, 2019

**CONTACT US:** cox.com/chat

www.coxbusiness.com

949-546-2020

Account Number **001 7601 048662701**
COX PIN 7368
SERVICE ADDRESS 27 HUBBLE
IRVINE, CA 92618-4209

| ACCOUNT SUMMARY as of Nov 13, 2019 | |
|---|---|
| Previous Balance | $68.74 |
| Payment Received - Nov 7 | -$34.40 |
| **Remaining Previous Balance** **DUE IMMEDIATELY** | **$34.34** |
| New Charges: Nov 11, 2019 - Dec 10, 2019 | |
| Telephone | $20.79 |
| One Time Charges and Credits | $0.53 |
| Taxes, Fees and Surcharges | $13.61 |
| New Charges Due By DEC 2, 2019 | $34.93 |
| **Total Due** | **$69.27** |



**\*\*Account Past Due\*\***

To prevent service disruption, the "Remaining Previous Balance" amount shown in red must be paid immediately. If services are interrupted a reactivation fee may apply.

NOV 1 8 REC'D

ACCOUNTING



56200-6570-9500

EXHIBIT "2"



## MONTHLY SERVICES    Nov 11 - Dec 10

### TELEPHONE
949-748-6441

| | |
|---|---|
| Cox International Advantage-3 Year | $0.00 |
| Directory Listing-Non Published | 0.28 |
| VoiceManager Measured Line | 1.00 |
| VoiceManager Essential Package | 19.51 |
| Long Distance 3.8 Plan | 0.00 |
| **Total Telephone** | **$20.79** |

| | |
|---|---|
| **TOTAL MONTHLY SERVICES** | **$20.79** |

## ONE TIME CHARGES AND CREDITS

| | | |
|---|---|---|
| Late Payment Adjustment | Oct  27 | $0.53 |
| **TOTAL ONE TIME CHARGES AND CREDITS** | | **$0.53** |

## TAXES, FEES AND SURCHARGES

**Telephone Taxes, Fees and Surcharges**
**Taxes**

| | |
|---|---|
| E911 Tax | $0.15 |
| Federal Excise Tax | 0.88 |
| Local Utility Tax | 0.44 |
| **Total Taxes** | **$1.47** |
| **Fees and Surcharges** | |
| Network Interface Fee - Single Line | $7.50 |
| Access Recovery Fee-Single Line | 1.00 |
| California High Cost Fund B | 0.00 |
| California Advanced Services Fund | 0.12 |
| California High Cost Fund A | 0.07 |
| State Regulatory Fee | 0.07 |
| CA Relay Service & Device Fund | 0.10 |
| California Teleconnect Fund | 0.16 |

**Taxes, Fees and Surcharges** cont.

| | |
|---|---|
| Federal Universal Service Fund | 2.13 |
| **Total Fees and Surcharges** | **$12.14** |
| **Total Telephone Taxes, Fees and Surcharges** | **$13.61** |

| | |
|---|---|
| **TOTAL TAXES, FEES AND SURCHARGES** | **$13.61** |

| | |
|---|---|
| **TOTAL NEW CHARGES** | **$34.93** |

## CUSTOMER INFORMATION
**Billing, Payment Policies and Fees:**
Cox Business bills all customers in advance for monthly recurring charges and in arrears for non-recurring charges such as On Demand/pay-per-view and long distance. Payment in full is due to Cox by this date. If payment is not received by this date, your bill will become past due and may be subject to additional fees, such as late payment charges, electronic reactivation fees, or returned payment fees. Payment of your Cox bill confirms your subscription to services and the possession of Cox owned equipment listed on your bill.

When you provide a paper, electronic check or electronic fund transfer (EFT) as payment, you authorize Cox to process your payment as a traditional check transaction or to make a one-time EFT from your account. An EFT may debit your account as soon as the same day you make your payment. Payments returned unpaid for any reason will incur a returned payment fee of up to $25.00, or the maximum allowed by state law. By using a credit card, debit card, paper check or an electronic check to make a payment, you agree that, if your payment is returned unpaid, you expressly authorize a one-time electronic fund transfer from your account for the amount of the payment plus any returned payment fees. If payment is not received by the "Due By" date indicated on your statement, a late payment charge may be assessed on your account.

**Basic Local Telephone Service:** You must pay all regulated telephone charges to avoid disconnection of basic local telephone service. If you pay less than your full monthly bill and want the partial payment applied to telephone charges first, call Cox Customer Care; otherwise, your partial payment will first be applied to any past due balance, including non-regulated charges, putting you at risk of disconnection of telephone service.

**911 Services:** If your modem is disconnected or moved, or its battery is

EXHIBIT "2"



**Irvine Ranch Water District**
15600 Sand Canyon Ave.
Irvine, CA 92618
www.irwd.com

11-478141
**MEADE INSTRUMENTS CORP.**

| | |
|---|---|
| **Account Number:** | 5890210000 |
| **Meter Number:** | 60911322 |
| **Service Address:** | 27 Hubble |
| **Service City:** | Irvine |
| **Service Type:** | Potable Commercial Water |

**Billing Inquiries**
Monday - Friday / 8am to 5pm
**(949) 453-5300** or
customerservice@irwd.com

**Report an Emergency 24/7**
**(949) 453-5300**

## Account Summary

| | |
|---|---|
| Date Bill Prepared: | November 04, 2019 |
| Previous Amount: | $107.64 |
| Payments Received: | -$107.64 |
| Adjustments: | $0.00 |
| Balance Forward: | $0.00 |
| Current Charges: | $118.53 |

RE
NOV 6 REC'D
ACCOUNTING

### Total Amount Due by Nov 25, 2019    $118.53

Your next bill will be prepared on or about December 02, 2019
See page 3 for additional billing details. See page 4 for adjustment details (if applicable).

562 11-1530-9500

## Your Water Usage

Your Water Usage for this Billing Period:     3 CCF
Your Water Budget for this Billing Period:     11 CCF
(See page 3 for explanation)

CCF is the basic measurement of water use. One CCF equals
100 cubic feet of water, or approximately 748 gallons.

### Monthly Water Budget vs Usage



## Irrigation scheduling made easy
Learn hands-on basic sprinkler timer programming from the
experts. Attend our "Control Your Controller" workshop on
Wednesday, Dec. 4, from 6 p.m to 8:30 p.m. The workshop
takes place in the IRWD Multi-Purpose Room at 15600 Sand
Canyon Avenue in Irvine. Sign-up required:
RightScapeNow.com/events.

## Pipe-saving tips for the holidays
Keeping your drains healthy is easy. After cooking, put fats,
oils and grease in a container, and throw it in the garbage. If
possible, mix it with absorbent waste such as paper towels,
kitty litter, coffee grounds, or shredded newspaper before
throwing it away.



EXHIBIT "2"



Go paperless at **www.sce.com/ebilling.** It's fast, easy and secure.

SOUTHERN CALIFORNIA
**EDISON**
An *EDISON INTERNATIONAL®* Company

For billing and service inquiries
1-800-990-7788
www.sce.com

**Customer account**
2-31-517-9812

**Rotating outage**
Group A077

**Amount due $1,126.11**
**Due by 12/02/19**

**Service account**
3-033-3819-11
27 HUBBLE
IRVINE, CA 92618

**Date bill prepared**
11/13/19

## Your account summary

| | |
|---|---|
| Previous Balance | $1,605.63 |
| Payment Received 10/31/19 | -$1,605.63 |
| Balance forward | $0.00 |
| Your new charges | $1,126.11 |
|  **Total amount you owe by 12/02/19** | **$1,126.11** |

## Your cost varies by time of day

**Winter cost periods (Oct 01-May 31)**

| | Weekdays | Weekends & Holidays |
|---|---|---|
| Mid peak | 4pm - 9pm | 4pm - 9pm |
| Off peak | 12am - 8am | 12am - 8am |
| | 9pm - 12am | 9pm - 12am |
| Super off peak | 8am - 4pm | 8am - 4pm |

RECEIVED

NOV 1 4 REC'D

ACCOUNTING

Please return the payment stub below with your payment and make your check payable to Southern California Edison.
If you want to pay in person, call 1-800-747-8908 for locations, or you can pay online at www.sce.com.

(14-574)          Tear here                                                                                              Tear here





Go paperless at **www.sce.com/ebilling.** It's fast, easy and secure.



| Usage kWh | | | | |
|---|---|---|---|---|
| Mid peak | 1234 kWh | x $0.09278 | = | $114.49 |
| Off peak | 2040 kWh | x $0.08117 | = | $165.59 |
| Super off peak | 3448 kWh | x $0.05938 | = | $204.75 |
| | 6722 kWh | | | |

**Avg. cost**

**Total cost**

$484.83 Energy Charges

$480.59 Demand Charges

Costs are rounded and include delivery and generation charges. During season or price changes, averages are used. To view all charges and credits and to calculate your bill, refer to **Details of your new charges.**

$160.69 Other credits/charges

**$1,126.11 Total**

**Winter season demand (kW)**

Your maximum demand reached this billing period is 29 kW
Your maximum threshold demand is 200 kW

Maximum Winter demand reached by price period :
Mid peak          26 kW 10/22/19 04:15pm-04:30pm
Off peak          29 kW 11/05/19 07:00am-07:15am
Super off peak    26 kW 10/25/19 01:30pm-01:45pm

To view your demand charges, please refer to the **Details of your new charges**.

## Your past and current electricity usage

For meter 259000-072136 from 10/10/19 to 11/12/19
Total electricity you used this month in kWh                           6,722

*Your next billing cycle will end on or about 12/12/19.*

**Your daily average electricity usage (kWh)**



**Usage comparison**

| | Oct '17 | Oct '18 | Nov '18 | Dec '18 | Jan '19 | Feb '19 | Mar '19 | Apr '19 | May '19 | Jun '19 | Jul '19 | Aug '19 | Sep '19 | Oct '19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total kWh used | 6,431 | 5,945 | 6,673 | 6,459 | 7,709 | 7,180 | 5,731 | 5,600 | 5,331 | 6,029 | 7,530 | 7,287 | 6,672 | 6,722 |
| Number of days | 29 | 29 | 33 | 30 | 32 | 30 | 29 | 32 | 30 | 30 | 31 | 30 | 29 | 33 |
| Appx. average kWh used/day | 221 | 205 | 202 | 215 | 240 | 239 | 197 | 175 | 177 | 200 | 242 | 242 | 230 | 203 |



SPS COMMERCE V 7030

11-478201

P: 888.739.3232
F: 866.805.5113
E: billing@spscommerce.com

SPS Commerce, Inc.
PO Box 205782
Dallas, TX 75320-5782
USA

# INVOICE

**Billed To**
Meade Instruments Corp
Sara Roe
27 Hubble
IRVINE, CA, US 92618
USA

**Customer Number**
C010126

**Payment Terms**
Due on Receipt

**Invoice Number**
PSI-113669373

**Invoice Date**
11/01/19

**P.O. Number**

**Due Date**
11/01/19

Please Pay

## $326.47

(All amounts are in USD)

| Description | Unit Cost | Qty | Amount |
|---|---|---|---|
| Webforms Fulfillment Monthly Flat Fee<br>For the Period of 11/01/19-11/30/19 | $252.47 | 1.0 | $252.47 |
| Additional Username Fee<br>For the Period of 11/01/19-11/30/19 | $59.00 | 1.0 | $59.00 |
| Monthly Non-Electronic Payment Fee<br>For the Period of 11/01/19-11/30/19 | $15.00 | 1.0 | $15.00 |

**Remit To**
Bank Name: Wells Fargo Bank, N.A.
ABA/Transit No: 121000248
Account No: 4241542273

| | |
|---|---|
| Subtotal | $326.47 |
| Sales Tax | $0.00 |
| Total | $326.47 |
| Payment Received | $0.00 |
| Balance Due | $326.47 |

EXHIBIT "2"

# EXHIBIT 3

# EXHIBIT 3

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "*Agreement*") is made as of August 1, 2019, by and between Meade Instruments Corp. (the "*Debtor*"), in favor of Sheppard, Mullin, Richter & Hampton LLP (the "*Secured Party*"). The Debtor and the Secured Party may hereinafter be referred to individually as a "*party*" or collectively as the "*parties*".

### RECITALS

A. Firm has provided, and will continue to provide, substantial legal services and costs for the benefit of Debtor. Debtor and the Firm have reached an agreement for the repayment of all legal fees and costs (the "*Obligations*").

B. The parties have agreed to secure the Debtor's duty to repay the Obligations with a security interest in certain assets of the Debtor, as set forth herein.

### AGREEMENT

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.  **Grant of Security Interest.**

(a) To secure the Debtor's full and timely payment of the Obligations, the Debtor hereby grants to the Secured Party a continuing lien on and security interest in (the "*Security Interest*") all of the Debtor's right, title and interest in and to the following personal property and assets (both tangible and intangible), whether now owned or hereafter acquired and wherever located: (a) all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter of credit rights, commercial tort claims, securities and all investment property, supporting obligations, any other contract rights or rights to payment of money, insurance claims and proceeds, and all general intangibles, including all payment intangibles; and (b) all proceeds thereof (collectively, the "*Collateral*"). The Collateral includes, but is not limited to, those patents, patent applications, and related rights more specifically described in the attached Schedule A. The Debtor hereby authorizes the Secured Party to file a form UCC-1 financing statement, in the manner prescribed by the UCC and other applicable laws, listing or describing the Collateral. The Debtor shall execute any and all additional instruments required to permit such filing by the Secured Party.

(b) The following terms shall have the following meanings for purposes of this Agreement:

"**Account**" means any "account", as such term is defined in the UCC now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all accounts receivable, book debts, rights to payment and other forms of obligations now owned or hereafter received or acquired by or belonging or owing to the Debtor whether or not arising out of goods or software sold or services rendered by the Debtor or from any other transaction, whether or not the same involves the sale of goods or services by the Debtor and all of the Debtor's rights in, to and under all purchase orders or receipts now owned or hereafter acquired by it for goods or services, and all of the Debtor's rights to any goods represented by any of the foregoing, and all monies due or to

EXHIBIT "3"

become due to the Debtor under all purchase orders and contracts for the sale of goods or the performance of services or both by the Debtor or in connection with any other transaction (whether or not yet earned by performance on the part of the Debtor), now in existence or hereafter occurring, including, without limitation, the right to receive the proceeds of said purchase orders and contracts, and all collateral security and guarantees of any kind given by any Person with respect to any of the foregoing.

"**Designated Rights to Payment**" means all Accounts and General Intangibles.

"**General Intangible**" means any "general intangible," as such term is defined in the UCC, now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all right, title and interest that the Debtor may now or hereafter have in or under any contracts, rights to payment, payment intangibles, confidential information, interests in partnerships, limited liability companies, corporations, joint ventures and other business associations, permits, goodwill, claims in or under insurance policies, including unearned premiums and premium adjustments, and uncertificated securities.

"**Lien**" means any mortgage, deed of trust, pledge, hypothecation, assignment for security, security interest, encumbrance, levy, lien or charge of any kind, whether voluntarily incurred or arising any operation of law or otherwise, against any property, any conditional sale or other title retention agreement, any lease in the nature of a security interest, and the filing of any financing statement (other than a precautionary financing statement with respect to a lease that is not in the nature of a security interest) under the UCC or comparable law of any jurisdiction.

"**Obligations**" means (a) the indebtedness owed by the Debtor to the Secured Party that is evidenced by the Note, including without limitation all principal, interest, fees, charges, expenses, and attorneys' fees chargeable to the Debtor or payable by the Debtor thereunder and (b) all obligations of the Debtor to the Secured Party created or arising under this Agreement.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Proceeds**" means "proceeds", as such term is defined in the UCC.

"**UCC**" means the Uniform Commercial Code as the same may, from time to time, be in effect in the State of California; <u>provided</u>, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of, or remedies with respect to, the Security Interest is governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of California, the term "UCC" shall mean the Uniform Commercial Code as enacted and in effect, from time to time, in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

Unless otherwise defined herein, all capitalized terms used herein and defined in the Note shall have the respective meanings given to those terms in the Note, and terms that are defined in the UCC and used herein shall have the meanings given to them in the UCC.

2.    **Covenants.**  The Debtor covenants and agrees with the Secured Party that, from and after the date of this Agreement until the Obligations are paid in full:

(a)    **Rights in the Collateral.**  The Debtor has rights in or the power to transfer the Collateral in the ordinary course of business, and the Debtor will defend the Collateral against the claims and demands of all Persons at any time claiming the same or any interest therein.

(b)    **Further Documentation.**  At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of the Debtor, the Debtor will promptly and duly authenticate and deliver such further instruments and documents and take such further action as the Secured Party may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted including, without limitation, filing any financing or continuation statements under the UCC in effect with respect to the Security Interest.  The Debtor also hereby authorizes the Secured Party to file any such financing, amendment or continuation statement without the authentication of the Debtor to the extent permitted by applicable law.

(c)    **Maintenance of Records.**  The Debtor will keep and maintain at its own expense complete and satisfactory records of the Collateral.

(d)    **Inspection Rights.**  The Secured Party shall have full access during normal business hours, and upon reasonable prior notice, to all the books, correspondence and other records of the Debtor relating to the Collateral, subject to any and all limitations arising from California privacy laws or other applicable laws and regulations.  The Secured Party or its representatives may examine such records and make photocopies or otherwise take extracts from such records.

(e)    **Compliance with Laws, Maintenance of Licenses.**  The Debtor (i) will comply with all laws, rules, regulations and orders of any governmental authority applicable to any material portion of the Collateral or to the operation of the Debtor's business, the failure of which to comply with will have a material adverse effect on the Debtor, (ii) will maintain all governmental licenses, authorizations, registrations, permits, consents and approvals required under all applicable laws and required in order to carry on its business as now conducted.

(f)    **Payment of Obligations.**  The Debtor will pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Collateral or with respect to any of its income or profits derived from the Collateral, as well as all claims of any kind (including, without limitation, claims for labor, materials and supplies) against or with respect to the Collateral, except that no such charge need be paid if (i) the validity of such charge is being contested in good faith by appropriate proceedings, (ii) such proceedings do not involve any material danger of the sale, forfeiture or loss of any of the Collateral or any interest in the Collateral and (iii) such charge is adequately reserved against on the Debtor's books in accordance with generally accepted accounting principles.

(g)    **Limitation on Liens on Collateral.**  The Debtor will not create, incur or permit to exist, will defend the Collateral against, and will take such other action as is reasonably necessary to remove, any Lien or claim on or to the Collateral, other than Permitted Liens, and will defend the right, title and interest of the Secured Party in and to any of the Collateral against the claims and demands of all other Persons.  As used herein, "Permitted Liens" means (i) Liens granted under this Agreement and (ii) Liens existing on the date of this Agreement.

(h)    **Limitations on Dispositions of Collateral.**  The Debtor will not sell, transfer, lease, or otherwise dispose of any portion of the Collateral, or attempt, offer or contract to do so.

(i)    **Notice of Change of State of Incorporation.**  Without thirty (30) days' prior written notice to the Secured Party, the Debtor shall not change the Debtor's name, state of incorporation or organization, organizational identification number or place of business (or, if the Debtor has more than one place of business, its chief executive office), or the office in which the Debtor's records relating to the Collateral are kept.

(j)    **Collection of the Collateral.**  The Debtor shall collect, enforce and receive payment of the Collateral in accordance with past practice.

3.    **Events of Default; the Secured Party's Appointment as Attorney-in-Fact.**

(a)    **Events of Default.**  For purposes of this Agreement, failure by the Debtor to make any payment required by the parties' repayment schedule, shall constitute an Event of Default hereunder.

(b)    **Powers.**  The Debtor hereby appoints the Secured Party, with full power of substitution, as its attorney-in-fact with full irrevocable power and authority in the place of the Debtor and in the name of the Debtor or its own name, from time to time in the Secured Party's discretion so long as an Event of Default has occurred and is continuing, for the purpose of carrying out the terms of this Agreement, to take any appropriate action and to authenticate any instrument which may be necessary or desirable to accomplish the purposes of this Agreement. Without limiting the foregoing, so long as an Event of Default has occurred and is continuing, the Secured Party shall have the right, without notice to, or the consent of, the Debtor, to do any of the following on the Debtor's behalf:

(i)    to pay or discharge any taxes or Liens levied or placed on or threatened against the Collateral;

(ii)    to direct any party liable for any payment under any of the Collateral to make payment of any and all amounts due or to become due thereunder directly to the Secured Party or as the Secured Party directs;

(iii)    to ask for or demand, collect, and receive payment of and receipt for, any payments due or to become due at any time in respect of or arising out of any Collateral;

(iv)    to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to enforce any right in respect of any Collateral;

(v)    to defend any suit, action or proceeding brought against the Debtor with respect to any Collateral;

(vi)    to settle, compromise or adjust any suit, action or proceeding described in subsection (v) above and to give such discharges or releases in connection therewith as the Secured Party may deem appropriate; and



(viii)    generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral and to take, at the Secured Party's option and the Debtor's expense, any actions which the Secured Party deems necessary to protect, preserve or realize upon the Collateral and the Secured Party's Security Interest in the Collateral and to carry out the intent of this Agreement, in each case to the same extent as if the Secured Party were the absolute owner of the Collateral for all purposes.

The Debtor hereby ratifies whatever actions the Secured Party shall lawfully do or cause to be done in accordance with this Section 3(b). This power of attorney shall be a power coupled with an interest and shall be irrevocable.

(c)    **No Duty on the Secured Party's Part**. The powers conferred on the Secured Party by Section 3(b) are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Secured Party shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and the Secured Party shall not, in the absence of willful misconduct or gross negligence, be responsible to the Debtor for any act or failure to act pursuant to Section 3(b).

4.    **Performance by the Secured Party of the Debtor's Obligations**. If the Debtor fails to perform or comply with any of its agreements or covenants contained in this Agreement and the Secured Party performs or complies, or otherwise causes performance or compliance, with such agreement or covenant in accordance with the terms of this Agreement, then the reasonable expenses of the Secured Party incurred in connection with such performance or compliance shall be payable by the Debtor to the Secured Party within ten (10) days of request by the Secured Party and shall constitute Obligations, secured by this Agreement.

5.    **Remedies**.

(a)    **General Remedies**. If an Event of Default has occurred and is continuing, the Secured Party may exercise, in addition to all other rights and remedies granted to it in this Agreement and in any other instrument or agreement relating to the Obligations, all rights and remedies of a secured party under the UCC. Without limiting the foregoing, but subject to any applicable cure period provided in the Note or this Agreement, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law) to or upon the Debtor or any other Person (all of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances collect, receive, appropriate and realize upon any or all of the Collateral, and/or may sell, lease, assign, give an option or options to purchase, or otherwise dispose of and deliver any or all of the Collateral (or contract to do any of the foregoing), in one or more parcels at a public or private sale or sales, at any exchange, broker's board or office of the Secured Party or elsewhere upon such terms and conditions as the Secured Party may deem advisable, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase all or any part of the Collateral so sold, free of any right or equity of redemption in the Debtor, which right or equity is hereby waived or released. The Secured Party shall apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable expenses incurred therein or in connection with the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party under this Agreement (including, without limitation, reasonable attorneys' fees and expenses) to the payment in whole or in part of the Obligations, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of

law, need the Secured Party account for the surplus, if any, to the Debtor. To the extent permitted by applicable law, the Debtor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by the Secured Party of any of its rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition. The Debtor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

(b) **Payment of Costs and Expenses**. Following an Event of Default, on demand, the Debtor shall pay to the Secured Party all costs and expenses, including court costs and costs of sale, incurred by the Secured Party in exercising any of its rights or remedies under this Agreement, together with interest at the highest rate then applicable to any of the Obligations from the date incurred until paid.

6. **Limitation on Duties Regarding Preservation of Collateral**. The Secured Party's sole duty with respect to the custody, safekeeping and preservation of the Collateral, under Section 9207 of the UCC or otherwise, shall be to deal with it in the same manner as such Secured Party deals with similar property for its own account. The Secured Party shall not be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so other than as a result of the gross negligence or willful misconduct of the same or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Debtor or otherwise.

7. **No Waiver; Cumulative Remedies**. The Secured Party shall not by any act (except by a written instrument pursuant to Section 9(a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default under the Note or in any breach of any of the terms and conditions of this Agreement. No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Secured Party of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any subsequent occasion. The rights and remedies provided in this Agreement are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

8. **Termination of Security Interest**. Upon full satisfaction of the Obligations, the Security Interest granted herein shall terminate and all rights to the Collateral shall revert to the Debtor. Upon any such termination, the Secured Party shall within five (5) business days authenticate and deliver to the Debtor such documents as the Debtor may reasonably request to evidence such termination.

9. **Miscellaneous**.

(a) **Amendments and Waivers**. Any term of this Agreement may be amended with the written consent of the parties or their respective successors and assigns. Any amendment or waiver effected in accordance with this Section 9(a) shall be binding upon the parties and their respective successors and assigns.

(b)    **Successors and Assigns.** The terms and conditions of this Agreement shall be binding upon the Debtor and its successors and assigns and inure to the benefit of the Secured Party and its successors and assigns. Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(c)    **Governing Law.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to principles of conflicts of law.

(d)    **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

(e)    **Titles and Subtitles.** The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(f)    **Notices.** All notices or other communications required or permitted hereunder shall be in writing and shall be deemed given or delivered (a) when delivered personally, against written receipt, (b) if sent by registered or certified mail, return receipt requested, postage prepaid, when received, and (c) when delivered by a nationally recognized overnight courier service, prepaid, and shall be sent to the addresses set forth on the signature page of this Agreement or at such other address as each party may designate by written notice to the other by following this notice procedure

(g)    **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith, in order to maintain the economic position enjoyed by each party as close as possible to that under the provision rendered unenforceable. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of this Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of this Agreement shall be enforceable in accordance with its terms.

(h)    **Entire Agreement.** This Agreement, and the documents referred to herein, constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements existing between the parties hereto concerning such subject matter are expressly canceled.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Debtor and the Secured Party have caused this Agreement to be duly executed and delivered as of the date first above written.

**DEBTOR:**

**Meade Instruments Corp.**

By: _____
Name: _VICTOR ANICETO_____
Title: _PRESIDENT_____

Address for Notices:
Meade Instruments Corp.
27 Hubble
Irvine, CA 92618

**SECURED PARTY:**

**Sheppard, Mullin, Richter & Hampton LLP**

By: _____
Name: Richard W. Brunette
Title: Partner

Address for Notices:
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Attn: Richard W. Brunette

EXHIBIT "3"

| Patent Number | Patent Title |
|---|---|
| 61537026 | APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES |
| 61539848 | SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND TRACKING |
| 6,181,726 | HIGH PERFORMANCE TELESCOPIC ETALON FILTERS |
| 6,215,802 | THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH-DIVISION MULTIPLEXING APPLICATIONS |
| 6,392,799 | FULLY AUTOMATED TELESCOPESYSTEM WITH  DISTRIBUTED INTELLIGENCE |
| 7,054,518 | ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION FORCES |
| 7,079,317 | AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION PROCESSING |
| 7,092,156 | AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD |
| 7,149,377 | SOLAR TUNABLE FILTER ASSEMBLY |
| 7,190,515 | SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM |
| 7,209,229 | WAVELENGTH SELECTABLE SPECTROHELIOGRAPH |
| 7,248,405 | RE-FOCUSING MECHANISM FOR IMAGING SYSTEM |
| 7,339,731 | SELF-ALIGNING TELESCOPE |
| 7,482,564 | HIGH DEFINITION TELESCOPE |
| D534,194 | EYEPIECE FOR OPTICAL INSTRUMENTS |
| D518,079 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D515,603 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D422,610 | AUTOMATED TELESCOPE |
| D417,881 | AUTOMATED TELESCOPE |
| D412,920 | TELESCOPE MOUNT |
| D392,657 | TELESCOPE |

SMRH:4853-2751-3759.42

EXHIBIT "3"

# EXHIBIT 4

# EXHIBIT 4

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
(888) 575-3822

**B. E-MAIL CONTACT AT FILER** (optional)
UCCFILINGS@CLASINFO.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

UCC EZFILE
2020 HURLEY WAY
SACRAMENTO, CA 95825
US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:56 PM 10/02/2019**
**U.C.C. Initial Filing No: 2019 6881994**

**Service Request No: 20197353432**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| MEADE INSTRUMENTS CORP. | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 27 HUBBLE | IRVINE | CA | 92618 | | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 333 S. HOPE ST., 43RD FLOOR | LOS ANGELES | CA | 90071 | | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
**All assets of the Debtor, whether now owned or existing or hereafter acquired or arising, and wherever located.**

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
DE SOS

EXHIBIT "4"
FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators

# EXHIBIT 5

EXHIBIT 5

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

OCTOBER 3, 2019

PTAS

SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP
333 S. HOPE ST., 43RD FLOOR
ATTN: J. CRAVITZ
LOS ANGELES, CA 90071

# 505704725

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 10/02/2019          REEL/FRAME: 050609/0190
                                      NUMBER OF PAGES: 11

BRIEF: SECURITY INTEREST (SEE DOCUMENT FOR DETAILS).

DOCKET NUMBER:   000E-191681

ASSIGNOR:
   MEADE INSTRUMENTS CORP.            DOC DATE: 08/01/2019

ASSIGNEE:
   SHEPPARD, MULLIN, RICHTER & HAMPTON
      LLP
   333 S. HOPE ST., 43RD FLOOR
   ATTN: RICHARD BRUNETTE
   LOS ANGELES, CALIFORNIA 90071

APPLICATION NUMBER: 09321482          FILING DATE: 05/27/1999
PATENT NUMBER: 6181726               ISSUE DATE: 01/30/2001
TITLE:  HIGH PERFORMANCE TELESCOPIC ETALON FILTERS

APPLICATION NUMBER: 09357583          FILING DATE: 07/20/1999
PATENT NUMBER: 6215802               ISSUE DATE: 04/10/2001
TITLE:  THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH- DIVISION
         MULTIPLEXING APPLICATIONS

APPLICATION NUMBER: 09428866          FILING DATE: 10/26/1999
PATENT NUMBER: 6392799               ISSUE DATE: 05/21/2002
TITLE:  FULLY AUTOMATED TELESCOPE SYSTEM WITH DISTRIBUTED INTELLIGENCE

APPLICATION NUMBER: 10357912          FILING DATE: 02/04/2003
PATENT NUMBER: 7092156               ISSUE DATE: 08/15/2006
TITLE:  AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD

APPLICATION NUMBER: 10358754          FILING DATE: 02/05/2003
PATENT NUMBER: 7079317               ISSUE DATE: 07/18/2006
TITLE:  AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION
        PROCESSING

APPLICATION NUMBER: 10795167          FILING DATE: 03/05/2004
PATENT NUMBER: 7054518               ISSUE DATE: 05/30/2006
TITLE:  ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION
        FORCES

APPLICATION NUMBER: 10864134          FILING DATE: 06/09/2004
PATENT NUMBER: 7209229               ISSUE DATE: 04/24/2007
TITLE:  WAVELENGTH SELECTABLE SPECTROHELIOGRAPH

APPLICATION NUMBER: 11110484          FILING DATE: 04/20/2005
PATENT NUMBER: 7482564               ISSUE DATE: 01/27/2009
TITLE:  HIGH DEFINITION TELESCOPE

APPLICATION NUMBER: 11110626          FILING DATE: 04/20/2005
PATENT NUMBER: 7339731               ISSUE DATE: 03/04/2008
TITLE:  SELF-ALIGNING TELESCOPE

APPLICATION NUMBER: 11123944          FILING DATE: 05/05/2005
PATENT NUMBER: 7190515               ISSUE DATE: 03/13/2007
TITLE:  SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM

APPLICATION NUMBER: 11123945          FILING DATE: 05/05/2005
PATENT NUMBER: 7149377               ISSUE DATE: 12/12/2006
TITLE:  SOLAR TUNABLE FILTER ASSEMBLY

APPLICATION NUMBER: 11123946          FILING DATE: 05/05/2005
PATENT NUMBER: 7248405               ISSUE DATE: 07/24/2007
TITLE:  RE-FOCUSING MECHANISM FOR IMAGING SYSTEM

APPLICATION NUMBER: 29064480          FILING DATE: 01/02/1997
PATENT NUMBER: D392657               ISSUE DATE: 03/24/1998
TITLE:  TELESCOPE

APPLICATION NUMBER: 29095560          FILING DATE: 10/26/1998
PATENT NUMBER: D412920               ISSUE DATE: 08/17/1999
TITLE:  TELESCOPE MOUNT

APPLICATION NUMBER: 29101103          FILING DATE: 02/25/1999
PATENT NUMBER: D422610               ISSUE DATE: 04/11/2000
TITLE:  AUTOMATED TELESCOPE

APPLICATION NUMBER: 29101104          FILING DATE: 02/25/1999
PATENT NUMBER: D417881               ISSUE DATE: 12/21/1999
TITLE:  AUTOMATED TELESCOPE

EXHIBIT "5"

050609/0198 PAGE 5

```
APPLICATION NUMBER: 29221401         FILING DATE: 01/14/2005
PATENT NUMBER: D534194               ISSUE DATE: 12/26/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221446         FILING DATE: 01/14/2005
PATENT NUMBER: D518079               ISSUE DATE: 03/28/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221495         FILING DATE: 01/14/2005
PATENT NUMBER: D515603               ISSUE DATE: 02/21/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 61537026         FILING DATE: 09/20/2011
PATENT NUMBER:                       ISSUE DATE:
TITLE:  APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES


APPLICATION NUMBER: 61539848         FILING DATE: 09/27/2011
PATENT NUMBER:                       ISSUE DATE:
TITLE:  SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND
        TRACKING
```

ASSIGNMENT RECORDATION BRANCH
PUBLIC RECORDS DIVISION

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                    EPAS ID: PAT5751535
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | SECURITY INTEREST |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| MEADE INSTRUMENTS CORP. | 08/01/2019 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| Street Address: | 333 S. HOPE ST., 43RD FLOOR |
| Internal Address: | ATTN: RICHARD BRUNETTE |
| City: | LOS ANGELES |
| State/Country: | CALIFORNIA |
| Postal Code: | 90071 |

**PROPERTY NUMBERS Total: 21**

| Property Type | Number |
|---|---|
| Patent Number: | 6181726 |
| Patent Number: | 6215802 |
| Patent Number: | 6392799 |
| Patent Number: | 7054518 |
| Patent Number: | 7079317 |
| Patent Number: | 7092156 |
| Patent Number: | 7149377 |
| Patent Number: | 7190515 |
| Patent Number: | 7209229 |
| Patent Number: | 7248405 |
| Patent Number: | 7339731 |
| Patent Number: | 7482564 |
| Patent Number: | D392657 |
| Patent Number: | D412920 |
| Patent Number: | D417881 |
| Patent Number: | D422610 |
| Patent Number: | D515603 |
| Patent Number: | D518079 |
| Patent Number: | D534194 |

# EXHIBIT 6

# EXHIBIT 6

**Meade Instruments**
**13 Week Cash Flow Projections**
As of December 8, 2019

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/04/19 | 12/09/19 | 12/16/19 | 12/23/19 | 12/30/19 | 01/06/20 | 01/13/20 | 01/20/20 | 01/27/20 | 02/03/20 | 02/10/20 | 02/17/20 | 02/24/20 |
| Beg. Cash | 146,334.58 | 352,986.45 | 251,981.72 | 266,566.55 | 295,674.17 | 513,788.06 | 435,857.53 | 520,848.59 | 480,482.37 | 570,169.07 | 568,110.95 | 604,555.02 | 641,958.52 |
| **Receipts** | | | | | | | | | | | | | |
| A/R Collections (Pre BK filing) | 206,651.87 | 132,189.98 | 279,746.84 | 214,456.68 | 393,372.89 | 113,154.06 | 269,905.39 | 154,395.08 | 92,882.24 | 10,727.88 | 542.77 | 7,217.78 | 6,110.35 |
| A/R Collections (Post BK filing) | | | | | | | | | 172,282.70 | 195,500.00 | 195,500.00 | 195,500.00 | 161,500.00 |
| Other Collections | | | | | | | | | | | | | |
| **Total Cash Receipts** | 206,651.87 | 132,189.98 | 279,746.84 | 214,456.68 | 393,372.89 | 113,154.06 | 269,905.39 | 154,395.08 | 265,164.94 | 206,227.88 | 196,042.77 | 202,717.78 | 167,610.35 |
| **Disbursements** | | | | | | | | | | | | | |
| Payroll/401K | | 60,000.00 | | 60,000.00 | | 60,000.00 | | 60,000.00 | | 60,000.00 | | | 60,000.00 |
| Health Insurance | | | 20,000.00 | | | | 20,000.00 | | | | 20,000.00 | | |
| Other Employee Benefits | | 2,112.00 | | | | | | | | | | | |
| Workers Comp / Gen Liab Insurance | | | | 4,300.00 | | | | 4,300.00 | | | | | 2,200.00 |
| Rent (Irvine) | | | | | | | | | 29,223.00 | | | | 29,977.00 |
| Utilities (Electricity & Water) | | | | 3,118.53 | 29,223.00 | | | 3,000.00 | | | | 3,000.00 | |
| Commissions | | | | | | | | | 17,204.00 | | | | 14,212.00 |
| Freight & Duty (Inbound & Outbound) | | 30,315.04 | 144,000.00 | 23,940.00 | 23,940.00 | 23,940.00 | 23,340.00 | 23,940.00 | 23,940.00 | 23,940.00 | 23,340.00 | 23,940.00 | 23,940.00 |
| IT Expenses | | 766.50 | | 2,025.00 | | | | 2,025.00 | | | | 2,025.00 | |
| Tradeshow Expenses | | | | | | | | | | 4,000.00 | | | |
| Corp Tax | | | | | 1,125.00 | | | | 1,125.00 | | | | 1,125.00 |
| Phone and Internet (Sprint, Cox, TW) | | 3,000.00 | | | | 3,000.00 | | | | | 3,000.00 | | |
| Office Maintenance | | 700.00 | | | | 700.00 | | | | | 700.00 | | |
| Office and Kitchen Supplies | | 100.00 | | | | 100.00 | | | | | 100.00 | | |
| Shipping Supplies and Postage | | | 3,000.00 | | | | 3,000.00 | | | | | | |
| Consultants (Wilfrido, Steve S, John, Pontus) | | 2,112.00 | 9,836.00 | | | 9,836.00 | 9,836.00 | | | | | 9,836.00 | |
| Gee Forsthe & Hodges LLP | | | | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Grobstein Teeple LLP | | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Inventory Purchase | | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 |
| Misc. Expenses | | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Funds for MX Operations | | 61,589.17 | 15,685.00 | 19,280.82 | 42,846.00 | 25,844.59 | 50,638.33 | 23,996.30 | 26,486.24 | 42,846.00 | 34,358.70 | 46,013.28 | 18,764.35 |
| **Total Disbursements** | 0.00 | 233,194.71 | 265,162.01 | 185,349.06 | 175,259.00 | 191,084.59 | 184,914.33 | 194,761.30 | 175,478.24 | 208,286.00 | 159,598.70 | 165,314.28 | 227,718.35 |
| **Ending Cash** | 352,986.45 | 251,981.72 | 266,566.55 | 295,674.17 | 513,788.06 | 435,857.53 | 520,848.59 | 480,482.37 | 570,169.07 | 568,110.95 | 604,555.02 | 641,958.52 | 581,850.52 |

EXHIBIT "6"

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS DECLARATION OF VICTOR ANICETO IN SUPPORT OF EMERGENCY MOTIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 9, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) December 9, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 9, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Catherine Bauer, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 9, 2019 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |