1  Mark S. Horoupian (CA Bar No. 175373)
     mhoroupian@sulmeyerlaw.com
2  Claire K. Wu (CA Bar No. 295966)
     ckwu@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071
5  Telephone: 213.626.2311
   Facsimile: 213.629.4520
6
   Attorneys for Official Committee of
7  Unsecured Creditors of Meade Instruments Corp.

8                **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11  In re                                          Case No. 8:19-bk-14714-MW

12  ☒   MEADE INSTRUMENTS CORP., a                 (Jointly Administered with
        Delaware corporation,                       Case No. 8:19-bk-14711-MW)
13
                                                    Chapter 11
14  ☐   SUNNY OPTICS, INC., a Delaware
        corporation,                               **MOTION FOR ORDER APPROVING
15                                                  STIPULATION SETTING ASIDE LIENS
                                                    OF SHEPPARD MULLIN RICHTER &
16  ☐   All Debtors.                               HAMPTON, LLP; MEMORANDUM OF
                                                    POINTS AND AUTHORITIES;
17            Debtors and Debtors-in-              DECLARATION OF MARK S.
              Possession.                          HOROUPIAN  IN SUPPORT THEREOF
18
                                                    **[Fed. R. Bankr. P. 9019]**
19
                                                    **[No hearing required]**
20

21

22

23

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

MSH 2698499v1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  **TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL**

3  **INTERESTED PARTIES:**

4    **PLEASE TAKE NOTICE** that the Official Committee of Unsecured Creditors (the

5  "Committee") of Meade Instruments Corp. (the "Debtor"), and the Debtor hereby jointly move

6  this Court under Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the

7  Stipulation between the Debtor, the Committee and Sheppard Mullin Richter & Hampton, LLP

8  ("SMRH") to Release Liens Against Assets of the Debtor (the "Stipulation") a true and correct

9  copy of which is attached hereto as Exhibit 1.

10    As described in this Motion, by the Stipulation, SMRH has agreed to release its purported

11  liens against the assets of the Debtor.

12    This Motion is based on this Motion, the accompanying Memorandum of Points and

13  Authorities and supporting declaration, and exhibits thereto, the record in these cases, and such

14  other evidence and argument that may be presented to the Court.

15    **WHEREFORE**, the Committee respectfully requests that this Court enter an Order:

16    1.    Granting the Motion and approving the Stipulation; and

17    2.    Providing such other and further relief as is proper.

18  DATED: October 14, 2020          **Sulmeyer**Kupetz
                                      A Professional Corporation

19

20

21                    By:  */s/ Mark S. Horoupian* _____
                          Mark S. Horoupian
22                          Claire Wu
                          Bankruptcy Counsel for Official Committee of
23                          Unsecured Creditors

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Committee hereby submits the following memorandum of points and authorities in support of the foregoing motion (the "Motion"):

**I.**

**STATEMENT OF FACTS**

A.    **Background Facts.**

1.    SMRH was counsel of record for the Debtor, jointly-administered debtor Sunny Optics, Inc. ("Sunny"), and Sunny's corporate parent, Ningbo Sunny Electronic Co, Ltd ("Ningbo Sunny"), in a lawsuit styled "Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co, Ltd, et al (the "Orion Litigation").

2.    On August 1, 2019, the Debtor executed a security agreement (the "Security Agreement") by which it purported to give SMRH a security interest in all of the Debtor's assets. A true and correct copy of the Security Agreement is attached to the Stipulation as Exhibit 1.

3.    On October 2, 2019, SMRH filed a UCC-1 with the Secretary of State of Delaware purporting to perfect its lien against the Debtor's personal property (the "Personal Property Lien"). A true and correct copy of the Personal Property Lien is attached to the Stipulation as Exhibit 2.

4.    On October 3, 2019, SMRH filed a Notice of Assignment of Security Interest with the United States Patent & Trademark Office ("USPTO") purporting to perfect its lien against the Debtor's intellectual property (the "IP Lien").   A true and correct copy of the IP Lien is attached to the Stipulation as Exhibit 3.

5.    On December 4, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

6.    On or about April 16, 2020, SMRH filed a proof of claim (Claim No. 30-1), in the Debtor's bankruptcy case, in which SMRH asserted a secured claim in the amount of $2,686,409.64 (the "SMRH POC").   A true and correct copy of the SMRH POC is attached to the Stipulation as Exhibit 4.

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

7.      The Debtor and the Committee each asserted that the Personal Property Lien and the IP Lien are avoidable and/or unenforceable under various theories of law and equity.   SMRH contends that the Personal Property Lien and IP Lien are valid, enforceable, and not subject to avoidance.

8.      The Committee made a demand upon SMRH to stipulate to release its liens against the Debtor.   The Committee, the Debtor and SMRH met and conferred and agreed to enter into the Stipulation, the terms of which are discussed below.

## II.

## TERMS OF THE STIPULATION

The terms of the Stipulation are fairly basic.   SMRH agrees that it has no secured claim against the Debtor's assets.  Without limitation, SMRH agrees that the Personal Property Lien and the IP Lien are terminated and released without need of any further action.  Further, in the event that the Debtor or Committee move to sell the Debtor's assets free and clear of the Personal Property Lien or Intellectual Property Lien, SMRH consents to such a sale, without adequate protection and without any claim of lien attaching to the proceeds of such sale.  SMRH further agrees that under any Plan proposed in the Bankruptcy Case, or in the event of a conversion of the case to Chapter 7, any allowed claim SMRH may have will be treated as a general unsecured claim.   Other than the release of any security interests in the Debtor's assets, the Stipulation shall not constitute or effect a release of the SMRH POC, any claims that SMRH may assert against the Debtor's bankruptcy estate (the "Estate"), or any defenses that SMRH may assert against claims that may be brought on behalf of the Estate against SMRH.  Likewise, the Stipulation shall not constitute or effect a release of any claims that the Estate may have against SMRH.   All parties to the Stipulation expressly reserve all such rights to the fullest extent possible.

## III.

## LEGAL STANDARD

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as follows with respect to motions brought by trustees to approve settlements:

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to
> creditors, the United States Trustee, the debtor, and indenture
> trustees as provided in Rule 2002 and to any other entity as the court
> may direct.

Fed. R. Bankr. P. 9019(a).

Compromise is favored over continued litigation.  See <u>In re A&C Properties</u>, 784 F.2d 1377, 1381 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 854, 107 S. Ct. 189 (1986).  Generally, a compromise should be approved if it is "fair and equitable" and in "the best interests of the estate". <u>In re Woodson</u>, 839 F.2d 610, 620 (9th Cir. 1988).  Whether a compromise will benefit or harm the debtor is immaterial.

Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit must consider the following:

(a)  The probability of success in litigation;

(b)  the difficulties, if any, to be encountered in the matter of collection;

(c)  the complexity of the litigation involved and the expense; inconvenience and delay necessarily attending it; and

(d)  the paramount interest of the creditors and a proper deference to their reasonable views.

<u>A&C Properties</u>, 784 F.2d at 1381.

In considering these factors, courts are guided by two principles.  The law favors compromise.  <u>Blair</u>, 538 F.2d at 851.  Compromises are favored in bankruptcy, and have become "a normal part of the process . . . .".  <u>Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson</u>, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968), <u>quoting</u> <u>Case v. Los Angeles Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939).  Second, a compromise should be approved unless it "fall[s] below the lowest point in the range of reasonableness".  <u>In re W.T. Grant Co.</u>, 699 F.2d 599, 608 (2nd Cir. 1983), <u>cert. denied</u>, 464 U.S. 822, 104 S. Ct. 88 (1985). As the court in <u>W.T. Grant</u> aptly commented:

> [The] responsibility of the bankruptcy judge, and ours upon review,
> is not to decide the numerous questions of law and fact raised by the
> appellants but rather to canvass the issues and see whether the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

settlement 'fall[s]' below the lowest point in the range of reasonableness. . .

2    Id., at 608.

3    Here, there is no doubt that the Stipulation checks off each of the boxes of the

4    applicable standard, with the ultimate test being the best interest of the estate being clearly met.

5    The Estate succeeds in freeing the Debtor's assets from a lien securing a large claim, preserves its

6    claims against SMRH as well as its defenses to the SMRH POC, all without the need for engaging

7    in expensive and time-consuming litigation.   Removal of SMRH's liens is an important step in

8    paving the way for a sale of the Debtor's assets and/or confirmation of a plan of reorganization.

9

10    **CONCLUSION**

11    Based on the above reasons, the Committee respectfully requests that the Court enter an

12    Order:

13    1.    Granting the Motion; and

14    2.    Approving the Stipulation.

15    DATED: October 14, 2020            **Sulmeyer**Kupetz
                                         A Professional Corporation

16

17

18                                       By:    */s/ Mark S. Horoupian* _____
                                                Attorneys for Official Committee of Unsecured
19                                              Creditors

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

MSH 2698499v1

**EXHIBIT 1**

1 | Mark S. Horoupian (CA Bar No. 175373)
    mhoroupian@sulmeyerlaw.com
2 | Claire K. Wu (CA Bar No. 295966)
    ckwu@sulmeyerlaw.com
3 | SulmeyerKupetz
    A Professional Corporation
4 | 333 South Grand Avenue, Suite 3400
    Los Angeles, California 90071
5 | Telephone: 213.626.2311
    Facsimile: 213.629.4520
6 |
7 | Attorneys for Official Committee of Unsecured
    Creditors

8 |              UNITED STATES BANKRUPTCY COURT

9 |              CENTRAL DISTRICT OF CALIFORNIA

10 |                  SANTA ANA DIVISION

11 | In re                          | Case No. 8:19-bk-14714-CB

12 | ☒ MEADE INSTRUMENTS CORP., a     | Jointly administered with
       Delaware corporation,         | Case No. 8:19-bk-14711-CB
13 |                                  | Chapter 11

14 | ☐ SUNNY OPTICS, INC., a Delaware | **STIPULATION TO RELEASE LIENS**
       corporation,                  | **AGAINST ASSETS OF THE DEBTOR**
15 |

16 | ☐ All Debtors.

17 |

18 |

19 |

20 |        This Stipulation is entered to by and between Meade Instruments Corporation, the Debtor

21 | and Debtor in Possession in the above-captioned bankruptcy case (the "Debtor"), the Official

22 | Committee of Unsecured Creditors (the "Committee"), and Shepard Mullin Richter & Hampton,

23 | LLP ("SMRH"), with respect to the following facts:

24 |                                    I.
                                    **RECITALS**
25 |        A.      SMRH was counsel of record for the Debtor, jointly-administered debtor Sunny

26 | Optics, Inc. ("Sunny"), and Sunny's corporate parent, Ningbo Sunny Electronic Co, Ltd ("Ningbo

27 | Sunny"), in a lawsuit styled "Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co, Ltd, et

28 | al (the "Orion Litigation").

*SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 · FAX 213.629.4520*

MSH 2703890v1

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

B.      On August 1, 2019, the Debtor executed a security agreement (the "Security Agreement") by which it purported to give SMRH a security interest in all of the Debtor's assets. A true and correct copy of the Security Agreement is attached hereto as Exhibit 1.

C.      On October 2, 2019, SMRH filed a UCC-1 with the Secretary of State of Delaware purporting to perfect its lien against the Debtor's personal property (the "Personal Property Lien"). A true and correct copy of the Personal Property Lien is attached hereto as Exhibit 2.

D.      On October 3, 2019, SMRH filed a Notice of Assignment of Security Interest with the United States Patent & Trademark Office ("USPTO") purporting to perfect its lien against the Debtor's intellectual property (the "IP Lien").   A true and correct copy of the IP Lien is attached hereto as Exhibit 3.

E.      On December 4, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

F.      On or about April 16, 2020, SMRH filed a proof of claim (Claim No. 30-1), in the Debtor's bankruptcy case, in which SMRH asserted a secured claim in the amount of $2,686,409.64 (the "SMRH POC").   A true and correct copy of the SMRH POC is attached hereto as Exhibit 4.

G.      The Debtor and the Committee each asserted that the Personal Property Lien and the IP Lien are avoidable and/or unenforceable under various theories of law and equity.   SMRH contends that the Personal Property Lien and IP Lien are valid, enforceable, and not subject to avoidance.

H.      The Parties have met and conferred, and in order to avoid the expense associated with litigation, hereby agree and stipulate as follows:

II.
**STIPULATION**

1.    <u>Recitals.</u> The Parties hereto incorporate the Recitals as contained in paragraphs A through H hereinabove as if set forth in full hereat.

2.    <u>Release of Liens:</u> By this Stipulation, SMRH hereby releases all security interests in the Debtor's assets with prejudice. Without limitation, SMRH agrees that the Personal Property Lien and the IP Lien are hereby terminated and released without need of any further action. To the extent requested by the Committee or the Debtor, SMRH shall execute such documents that may be required to give notice of the termination of the Personal Property Lien and IP Lien (hereinafter "Termination Documents").

3.    <u>Sale Free and Clear of Liens:</u> Whether or not Termination Documents are filed or recorded, in the event that the Debtor or Committee move to sell the Debtor's assets free and clear of the Personal Property Lien or Intellectual Property Lien, SMRH hereby consents to such a sale, without adequate protection and without any claim of lien attaching to the proceeds of such sale.

4.    <u>Treatment as Unsecured Claim in Plan of Reorganization or Chapter 7:</u> Whether or not Termination Documents are filed or recorded, in any plan of reorganization proposed in the Bankruptcy Case, or in the event of the conversion of the Bankruptcy Case to Chapter 7, any claim allowed in favor of SMRH will be treated as a general unsecured, non-priority, claim.

5.    <u>Reservation of Rights:</u> Other than the release of any security interests in the Debtor's assets, this Stipulation shall not constitute or effect a release of the SMRH POC, any claims that SMRH may assert against the Debtor's bankruptcy estate (the "Estate"), or any defenses that SMRH may assert against claims that may be brought on behalf of the Estate against

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 · FAX 213.629.4520

SMRH.  Likewise, this Stipulation shall not constitute or effect a release of any claims that the Estate may have against SMRH.   All parties hereto expressly reserve all such rights to the fullest extent possible.

      6.     <u>Preservation of Stipulation.</u>  If any one or more terms or provisions of this Stipulation is held to be unenforceable, provided the spirit and intent of this Stipulation can be maintained, the remaining terms and provisions shall remain in full force and effect and shall be construed as if the unenforceable provisions had never been contained in this Stipulation.

      7.     <u>No Admission.</u>  This Stipulation constitutes a settlement and compromise of actual and potential disputes between the Parties and is made solely to avoid expensive and time-consuming litigation.  Neither the offer nor the acceptance of the terms and conditions of this Stipulation nor any other aspect of the settlement of the actual and potential disputes represents an admission of any wrongdoing by SMRH.

      8.     <u>Authority to Bind.</u>  Each person signing this Stipulation warrants that he or she is authorized to sign this Stipulation.

      9.     <u>Binding Effect.</u>  This Stipulation is binding upon and shall inure to the benefit of the Parties hereto, their respective heirs, executors, administrators, successors, representatives and assigns.  In the case of the Debtor, this Stipulation shall also be binding upon any trustee appointed in the Bankruptcy Case.

      10.     <u>Bearing of Costs.</u>  Other than as set forth herein, each Party hereto agrees to bear his/its own costs, expenses and attorneys' fees in connection with the matters addressed by this Stipulation.

      11.     <u>Attorney's Fees and Costs.</u>  Should any action or other proceeding be brought for enforcement of or to seek a declaration as to any term of this Stipulation, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs incurred in such

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 · FAX 213.629.4520

action or proceeding. Should any action or proceeding be brought which is barred by the terms of this Stipulation, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs incurred in such action or proceeding.

12.    Governing Law and Forum Selection. The laws of title 11, United States Code, and of the State of California will govern the interpretation of this Stipulation. The United States Bankruptcy Court shall have exclusive jurisdiction over the enforcement or interpretation of any and all provisions of this Stipulation.

13.    Integration. The Parties agree that this Stipulation sets forth the entire agreement between the Parties relating to the subject matter of this Stipulation, and supersedes any and all prior or contemporaneous agreements or understandings between them relating to the subject matter of this Stipulation.

14.    Amendments or Modifications. The Parties may not waive, modify or amend any provision of this Stipulation except by a written agreement which all of the Parties have signed; and if necessary have been approved by the United States Bankruptcy Court. A waiver, modification or amendment of any provision of this Stipulation will not constitute a waiver, modification or amendment of any other provision.

15.    Counterparts. Although the Parties may execute this Stipulation in more than one counterpart, each such originally signed counterpart constitutes an original, and all of them constitute one and the same Stipulation.

16.    Court Approval. This Stipulation is subject to, and will only be binding upon approval of the United States Bankruptcy Court before which the Bankruptcy Case is pending. The Debtor and the Committee shall take any and all steps necessary and appropriate to obtain such approval.

1   DATED: July ___, 2020       Meade Instruments Corporation

2

3

4                           By: _____

5                               Victor Aniceto, Its President

6   DATED: July 23, 2020       Official Committee of Unsecured Creditors of Meade
                               Instruments Coproration

7

8

9                           By: _____

10                              Peter Moreo, Its President

11

12  DATED: July ___, 2020       Sheppard Mullin Richter & Hampton, LP

13

14                           By: _____

15                              Charles Barker, Partner

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1

DATED:  July 22, 2020

Meade Instruments Corporation

2

3

By: _____

4

Victor Aniceto, Its President

5

6

DATED:  July ___, 2020

Official Committee of Unsecured Creditors of Meade

7

Instruments Coproration

8

9

By: _____

10

Peter Moreo, Its President

11

12

DATED:  July ___, 2020

Sheppard Mullin Richter & Hampton, LP

13

14

By: _____

15

Charles Barker, Partner

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    DATED:  July ___, 2020          Meade Instruments Corporation

2

3

4    By: _____
                                       Victor Aniceto, Its President

5

6    DATED:  July ___, 2020          Official Committee of Unsecured Creditors of Meade
                                     Instruments Coproration
7

8

9    By: _____
                                       Peter Moreo, Its President
10

11        *August 5*

12   DATED:  ~~July~~ ___, 2020        Sheppard Mullin Richter & Hampton, LP

13   *CB*

14   By: _____
                                       Charles Barker, Partner
15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213 626 2311 • FAX 213 629 4520

MSH 2703890v1                               6

**EXHIBIT 1**

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "*Agreement*") is made as of August 1, 2019, by and between Meade Instruments Corp. (the "*Debtor*"), in favor of Sheppard, Mullin, Richter & Hampton LLP (the "*Secured Party*"). The Debtor and the Secured Party may hereinafter be referred to individually as a "*party*" or collectively as the "*parties*".

## RECITALS

A.      Firm has provided, and will continue to provide, substantial legal services and costs for the benefit of Debtor. Debtor and the Firm have reached an agreement for the repayment of all legal fees and costs (the "*Obligations*").

B.      The parties have agreed to secure the Debtor's duty to repay the Obligations with a security interest in certain assets of the Debtor, as set forth herein.

## AGREEMENT

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.      **Grant of Security Interest.**

(a)      To secure the Debtor's full and timely payment of the Obligations, the Debtor hereby grants to the Secured Party a continuing lien on and security interest in (the "*Security Interest*") all of the Debtor's right, title and interest in and to the following personal property and assets (both tangible and intangible), whether now owned or hereafter acquired and wherever located: (a) all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter of credit rights, commercial tort claims, securities and all investment property, supporting obligations, any other contract rights or rights to payment of money, insurance claims and proceeds, and all general intangibles, including all payment intangibles; and (b) all proceeds thereof (collectively, the "*Collateral*"). The Collateral includes, but is not limited to, those patents, patent applications, and related rights more specifically described in the attached Schedule A. The Debtor hereby authorizes the Secured Party to file a form UCC-1 financing statement, in the manner prescribed by the UCC and other applicable laws, listing or describing the Collateral. The Debtor shall execute any and all additional instruments required to permit such filing by the Secured Party.

(b)      The following terms shall have the following meanings for purposes of this Agreement:

"**Account**" means any "account", as such term is defined in the UCC now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all accounts receivable, book debts, rights to payment and other forms of obligations now owned or hereafter received or acquired by or belonging or owing to the Debtor whether or not arising out of goods or software sold or services rendered by the Debtor or from any other transaction, whether or not the same involves the sale of goods or services by the Debtor and all of the Debtor's rights in, to and under all purchase orders or receipts now owned or hereafter acquired by it for goods or services, and all of the Debtor's rights to any goods represented by any of the foregoing, and all monies due or to

EXHIBIT 1   0007

become due to the Debtor under all purchase orders and contracts for the sale of goods or the performance of services or both by the Debtor or in connection with any other transaction (whether or not yet earned by performance on the part of the Debtor), now in existence or hereafter occurring, including, without limitation, the right to receive the proceeds of said purchase orders and contracts, and all collateral security and guaranties of any kind given by any Person with respect to any of the foregoing.

"**Designated Rights to Payment**" means all Accounts and General Intangibles.

"**General Intangible**" means any "general intangible," as such term is defined in the UCC, now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all right, title and interest that the Debtor may now or hereafter have in or under any contracts, rights to payment, payment intangibles, confidential information, interests in partnerships, limited liability companies, corporations, joint ventures and other business associations, permits, goodwill, claims in or under insurance policies, including unearned premiums and premium adjustments, and uncertificated securities.

"**Lien**" means any mortgage, deed of trust, pledge, hypothecation, assignment for security, security interest, encumbrance, levy, lien or charge of any kind, whether voluntarily incurred or arising by operation of law or otherwise, against any property, any conditional sale or other title retention agreement, any lease in the nature of a security interest, and the filing of any financing statement (other than a precautionary financing statement with respect to a lease that is not in the nature of a security interest) under the UCC or comparable law of any jurisdiction.

"**Obligations**" means (a) the indebtedness owed by the Debtor to the Secured Party that is evidenced by the Note, including without limitation all principal, interest, fees, charges, expenses, and attorneys' fees chargeable to the Debtor or payable by the Debtor thereunder and (b) all obligations of the Debtor to the Secured Party created or arising under this Agreement.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Proceeds**" means "proceeds", as such term is defined in the UCC.

"**UCC**" means the Uniform Commercial Code as the same may, from time to time, be in effect in the State of California; provided, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of, or remedies with respect to, the Security Interest is governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of California, the term "UCC" shall mean the Uniform Commercial Code as enacted and in effect, from time to time, in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

Unless otherwise defined herein, all capitalized terms used herein and defined in the Note shall have the respective meanings given to those terms in the Note, and terms that are defined in the UCC and used herein shall have the meanings given to them in the UCC.

EXHIBIT 1    0008

2. **Covenants.** The Debtor covenants and agrees with the Secured Party that, from and after the date of this Agreement until the Obligations are paid in full:

(a) **Rights in the Collateral.** The Debtor has rights in or the power to transfer the Collateral in the ordinary course of business, and the Debtor will defend the Collateral against the claims and demands of all Persons at any time claiming the same or any interest therein.

(b) **Further Documentation.** At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of the Debtor, the Debtor will promptly and duly authenticate and deliver such further instruments and documents and take such further action as the Secured Party may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted including, without limitation, filing any financing or continuation statements under the UCC in effect with respect to the Security Interest. The Debtor also hereby authorizes the Secured Party to file any such financing, amendment or continuation statement without the authentication of the Debtor to the extent permitted by applicable law.

(c) **Maintenance of Records.** The Debtor will keep and maintain at its own expense complete and satisfactory records of the Collateral.

(d) **Inspection Rights.** The Secured Party shall have full access during normal business hours, and upon reasonable prior notice, to all the books, correspondence and other records of the Debtor relating to the Collateral, subject to any and all limitations arising from California privacy laws or other applicable laws and regulations. The Secured Party or its representatives may examine such records and make photocopies or otherwise take extracts from such records.

(e) **Compliance with Laws, Maintenance of Licenses.** The Debtor (i) will comply with all laws, rules, regulations and orders of any governmental authority applicable to any material portion of the Collateral or to the operation of the Debtor's business, the failure of which to comply with will have a material adverse effect on the Debtor, (ii) will maintain all governmental licenses, authorizations, registrations, permits, consents and approvals required under all applicable laws and required in order to carry on its business as now conducted.

(f) **Payment of Obligations.** The Debtor will pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Collateral or with respect to any of its income or profits derived from the Collateral, as well as all claims of any kind (including, without limitation, claims for labor, materials and supplies) against or with respect to the Collateral, except that no such charge need be paid if (i) the validity of such charge is being contested in good faith by appropriate proceedings, (ii) such proceedings do not involve any material danger of the sale, forfeiture or loss of any of the Collateral or any interest in the Collateral and (iii) such charge is adequately reserved against on the Debtor's books in accordance with generally accepted accounting principles.

(g) **Limitation on Liens on Collateral.** The Debtor will not create, incur or permit to exist, will defend the Collateral against, and will take such other action as is reasonably necessary to remove, any Lien or claim on or to the Collateral, other than Permitted Liens, and will defend the right, title and interest of the Secured Party in and to any of the Collateral against the claims and demands of all other Persons. As used herein, "Permitted Liens" means (i) Liens granted under this Agreement and (ii) Liens existing on the date of this Agreement.

EXHIBIT 1   0009

(h)    **Limitations on Dispositions of Collateral.**  The Debtor will not sell, transfer, lease, or otherwise dispose of any portion of the Collateral, or attempt, offer or contract to do so.

(i)    **Notice of Change of State of Incorporation.**  Without thirty (30) days' prior written notice to the Secured Party, the Debtor shall not change the Debtor's name, state of incorporation or organization, organizational identification number or place of business (or, if the Debtor has more than one place of business, its chief executive office), or the office in which the Debtor's records relating to the Collateral are kept.

(j)    **Collection of the Collateral.**  The Debtor shall collect, enforce and receive payment of the Collateral in accordance with past practice.

3.    **Events of Default; the Secured Party's Appointment as Attorney-in-Fact.**

(a)    **Events of Default.**  For purposes of this Agreement, failure by the Debtor to make any payment required by the parties' repayment schedule, shall constitute an Event of Default hereunder.

(b)    **Powers.**  The Debtor hereby appoints the Secured Party, with full power of substitution, as its attorney-in-fact with full irrevocable power and authority in the place of the Debtor and in the name of the Debtor or its own name, from time to time in the Secured Party's discretion so long as an Event of Default has occurred and is continuing, for the purpose of carrying out the terms of this Agreement, to take any appropriate action and to authenticate any instrument which may be necessary or desirable to accomplish the purposes of this Agreement. Without limiting the foregoing, so long as an Event of Default has occurred and is continuing, the Secured Party shall have the right, without notice to, or the consent of, the Debtor, to do any of the following on the Debtor's behalf:

(i)    to pay or discharge any taxes or Liens levied or placed on or threatened against the Collateral;

(ii)    to direct any party liable for any payment under any of the Collateral to make payment of any and all amounts due or to become due thereunder directly to the Secured Party or as the Secured Party directs;

(iii)    to ask for or demand, collect, and receive payment of and receipt for, any payments due or to become due at any time in respect of or arising out of any Collateral;

(iv)    to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to enforce any right in respect of any Collateral;

(v)    to defend any suit, action or proceeding brought against the Debtor with respect to any Collateral;

(vi)    to settle, compromise or adjust any suit, action or proceeding described in subsection (v) above and to give such discharges or releases in connection therewith as the Secured Party may deem appropriate; and



EXHIBIT 1    0010

(viii)    generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral and to take, at the Secured Party's option and the Debtor's expense, any actions which the Secured Party deems necessary to protect, preserve or realize upon the Collateral and the Secured Party's Security Interest in the Collateral and to carry out the intent of this Agreement, in each case to the same extent as if the Secured Party were the absolute owner of the Collateral for all purposes.

The Debtor hereby ratifies whatever actions the Secured Party shall lawfully do or cause to be done in accordance with this Section 3(b). This power of attorney shall be a power coupled with an interest and shall be irrevocable.

(c)    **No Duty on the Secured Party's Part**. The powers conferred on the Secured Party by Section 3(b) are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Secured Party shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and the Secured Party shall not, in the absence of willful misconduct or gross negligence, be responsible to the Debtor for any act or failure to act pursuant to Section 3(b).

4.    **Performance by the Secured Party of the Debtor's Obligations**. If the Debtor fails to perform or comply with any of its agreements or covenants contained in this Agreement and the Secured Party performs or complies, or otherwise causes performance or compliance, with such agreement or covenant in accordance with the terms of this Agreement, then the reasonable expenses of the Secured Party incurred in connection with such performance or compliance shall be payable by the Debtor to the Secured Party within ten (10) days of request by the Secured Party and shall constitute Obligations, secured by this Agreement.

5.    **Remedies**.

(a)    **General Remedies**. If an Event of Default has occurred and is continuing, the Secured Party may exercise, in addition to all other rights and remedies granted to it in this Agreement and in any other instrument or agreement relating to the Obligations, all rights and remedies of a secured party under the UCC. Without limiting the foregoing, but subject to any applicable cure period provided in the Note or this Agreement, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law) to or upon the Debtor or any other Person (all of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances collect, receive, appropriate and realize upon any or all of the Collateral, and/or may sell, lease, assign, give an option or options to purchase, or otherwise dispose of and deliver any or all of the Collateral (or contract to do any of the foregoing), in one or more parcels at a public or private sale or sales, at any exchange, broker's board or office of the Secured Party or elsewhere upon such terms and conditions as the Secured Party may deem advisable, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase all or any part of the Collateral so sold, free of any right or equity of redemption in the Debtor, which right or equity is hereby waived or released. The Secured Party shall apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable expenses incurred therein or in connection with the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party under this Agreement (including, without limitation, reasonable attorneys' fees and expenses) to the payment in whole or in part of the Obligations, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of

EXHIBIT 1    0011

law, need the Secured Party account for the surplus, if any, to the Debtor.  To the extent permitted by applicable law, the Debtor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by the Secured Party of any of its rights hereunder.  If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition.  The Debtor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

(b)    **Payment of Costs and Expenses**.  Following an Event of Default, on demand, the Debtor shall pay to the Secured Party all costs and expenses, including court costs and costs of sale, incurred by the Secured Party in exercising any of its rights or remedies under this Agreement, together with interest at the highest rate then applicable to any of the Obligations from the date incurred until paid.

6.    **Limitation on Duties Regarding Preservation of Collateral**.  The Secured Party's sole duty with respect to the custody, safekeeping and preservation of the Collateral, under Section 9207 of the UCC or otherwise, shall be to deal with it in the same manner as such Secured Party deals with similar property for its own account.  The Secured Party shall not be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so other than as a result of the gross negligence or willful misconduct of the same or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Debtor or otherwise.

7.    **No Waiver; Cumulative Remedies**.  The Secured Party shall not by any act (except by a written instrument pursuant to Section 9(a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default under the Note or in any breach of any of the terms and conditions of this Agreement.  No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by the Secured Party of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any subsequent occasion.  The rights and remedies provided in this Agreement are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

8.    **Termination of Security Interest**.  Upon full satisfaction of the Obligations, the Security Interest granted herein shall terminate and all rights to the Collateral shall revert to the Debtor.  Upon any such termination, the Secured Party shall within five (5) business days authenticate and deliver to the Debtor such documents as the Debtor may reasonably request to evidence such termination.

9.    **Miscellaneous**.

(a)    **Amendments and Waivers**.  Any term of this Agreement may be amended with the written consent of the parties or their respective successors and assigns.  Any amendment or waiver effected in accordance with this Section 9(a) shall be binding upon the parties and their respective successors and assigns.

EXHIBIT 1    0012

(b)     **Successors and Assigns.** The terms and conditions of this Agreement shall be binding upon the Debtor and its successors and assigns and inure to the benefit of the Secured Party and its successors and assigns. Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(c)     **Governing Law.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to principles of conflicts of law.

(d)     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

(e)     **Titles and Subtitles.** The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(f)     **Notices.** All notices or other communications required or permitted hereunder shall be in writing and shall be deemed given or delivered (a) when delivered personally, against written receipt, (b) if sent by registered or certified mail, return receipt requested, postage prepaid, when received, and (c) when delivered by a nationally recognized overnight courier service, prepaid, and shall be sent to the addresses set forth on the signature page of this Agreement or at such other address as each party may designate by written notice to the other by following this notice procedure

(g)     **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith, in order to maintain the economic position enjoyed by each party as close as possible to that under the provision rendered unenforceable. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of this Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of this Agreement shall be enforceable in accordance with its terms.

(h)     **Entire Agreement.** This Agreement, and the documents referred to herein, constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements existing between the parties hereto concerning such subject matter are expressly canceled.

*[Signature Page Follows]*

EXHIBIT 1   0013

IN WITNESS WHEREOF, the Debtor and the Secured Party have caused this Agreement to be duly executed and delivered as of the date first above written.

**DEBTOR:**

**Meade Instruments Corp.**

By: _____

Name: VICTOR ANICETO

Title: PRESIDENT

Address for Notices:
Meade Instruments Corp.
27 Hubble
Irvine, CA 92618

**SECURED PARTY:**

**Sheppard, Mullin, Richter & Hampton LLP**

By: _____

Name: Richard W. Brunette

Title: Partner

Address for Notices:
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Attn: Richard W. Brunette

EXHIBIT 1   0014

| Patent Number | Patent Title |
|---|---|
| 6153702 6 | APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES |
| 6153984 8 | SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND TRACKING |
| 6,181,72 6 | HIGH PERFORMANCE TELESCOPIC ETALON FILTERS |
| 6,215,80 2 | THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH-DIVISION MULTIPLEXING APPLICATIONS |
| 6,392,79 9 | FULLY AUTOMATED TELESCOPESYSTEM WITH  DISTRIBUTED INTELLIGENCE |
| 7,054,51 8 | ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION FORCES |
| 7,079,31 7 | AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION PROCESSING |
| 7,092,15 6 | AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD |
| 7,149,37 7 | SOLAR TUNABLE FILTER ASSEMBLY |
| 7,190,51 5 | SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM |
| 7,209,22 9 | WAVELENGTH SELECTABLE SPECTROHELIOGRAPH |
| 7,248,40 5 | RE-FOCUSING MECHANISM FOR IMAGING SYSTEM |
| 7,339,73 1 | SELF-ALIGNING TELESCOPE |
| 7,482,56 4 | HIGH DEFINITION TELESCOPE |
| D534,194 | EYEPIECE FOR OPTICAL INSTRUMENTS |
| D518,079 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D515,603 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D422,610 | AUTOMATED TELESCOPE |
| D417,881 | AUTOMATED TELESCOPE |
| D412,920 | TELESCOPE MOUNT |
| D392,657 | TELESCOPE |

EXHIBIT 1   0015

**EXHIBIT 2**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(888) 575-3822

**B. E-MAIL CONTACT AT FILER (optional)**
UCCFILINGS@CLASINFO.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

UCC EZFILE

2020 HURLEY WAY

SACRAMENTO, CA 95825

US

---

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:56 PM 10/02/2019**
**U.C.C. Initial Filing No: 2019 6881994**

Service Request No:   20197353432

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1. DEBTOR'S NAME:** Provide only *one* Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MEADE INSTRUMENTS CORP. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 27 HUBBLE | IRVINE | CA | 92618 | US |

**2. DEBTOR'S NAME:** Provide only *one* Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only *one* Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 333 S. HOPE ST., 43RD FLOOR | LOS ANGELES | CA | 90071 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:

**All assets of the Debtor, whether now owned or existing or hereafter acquired or arising, and wherever located.**

---

**5.** Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check *only* if applicable and check *only* one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

**6b.** Check *only* if applicable and check *only* one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:
DE SOS

---

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

International Association of Commercial Administrators

EXHIBIT 2   0016

**EXHIBIT 3**

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

OCTOBER 3, 2019

PTAS

SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP
333 S. HOPE ST., 43RD FLOOR
ATTN: J. CRAVITZ
LOS ANGELES, CA 90071

# 505704725

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 10/02/2019          REEL/FRAME: 050609/0190
                                      NUMBER OF PAGES: 11

BRIEF: SECURITY INTEREST (SEE DOCUMENT FOR DETAILS).

DOCKET NUMBER:   000E-191681

ASSIGNOR:
   MEADE INSTRUMENTS CORP.          DOC DATE: 08/01/2019

ASSIGNEE:
   SHEPPARD, MULLIN, RICHTER & HAMPTON
      LLP
   333 S. HOPE ST., 43RD FLOOR
   ATTN: RICHARD BRUNETTE
   LOS ANGELES, CALIFORNIA 90071

APPLICATION NUMBER: 09321482          FILING DATE: 05/27/1999
PATENT NUMBER: 6181726               ISSUE DATE: 01/30/2001
TITLE:  HIGH PERFORMANCE TELESCOPIC ETALON FILTERS

APPLICATION NUMBER: 09357583          FILING DATE: 07/20/1999
PATENT NUMBER: 6215802               ISSUE DATE: 04/10/2001
TITLE:  THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH- DIVISION
         MULTIPLEXING APPLICATIONS

APPLICATION NUMBER: 09428866          FILING DATE: 10/26/1999
PATENT NUMBER: 6392799               ISSUE DATE: 05/21/2002
TITLE:  FULLY AUTOMATED TELESCOPE SYSTEM WITH DISTRIBUTED INTELLIGENCE

APPLICATION NUMBER: 10357912          FILING DATE: 02/04/2003
PATENT NUMBER: 7092156               ISSUE DATE: 08/15/2006
TITLE:  AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD

APPLICATION NUMBER: 10358754          FILING DATE: 02/05/2003
PATENT NUMBER: 7079317               ISSUE DATE: 07/18/2006
TITLE:  AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION
        PROCESSING

APPLICATION NUMBER: 10795167          FILING DATE: 03/05/2004
PATENT NUMBER: 7054518               ISSUE DATE: 05/30/2006
TITLE:  ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION
        FORCES

APPLICATION NUMBER: 10864134          FILING DATE: 06/09/2004
PATENT NUMBER: 7209229               ISSUE DATE: 04/24/2007
TITLE:  WAVELENGTH SELECTABLE SPECTROHELIOGRAPH

APPLICATION NUMBER: 11110484          FILING DATE: 04/20/2005
PATENT NUMBER: 7482564               ISSUE DATE: 01/27/2009
TITLE:  HIGH DEFINITION TELESCOPE

APPLICATION NUMBER: 11110626          FILING DATE: 04/20/2005
PATENT NUMBER: 7339731               ISSUE DATE: 03/04/2008
TITLE:  SELF-ALIGNING TELESCOPE

APPLICATION NUMBER: 11123944          FILING DATE: 05/05/2005
PATENT NUMBER: 7190515               ISSUE DATE: 03/13/2007
TITLE:  SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM

APPLICATION NUMBER: 11123945          FILING DATE: 05/05/2005
PATENT NUMBER: 7149377               ISSUE DATE: 12/12/2006
TITLE:  SOLAR TUNABLE FILTER ASSEMBLY

APPLICATION NUMBER: 11123946          FILING DATE: 05/05/2005
PATENT NUMBER: 7248405               ISSUE DATE: 07/24/2007
TITLE:  RE-FOCUSING MECHANISM FOR IMAGING SYSTEM

APPLICATION NUMBER: 29064480          FILING DATE: 01/02/1997
PATENT NUMBER: D392657               ISSUE DATE: 03/24/1998
TITLE:  TELESCOPE

APPLICATION NUMBER: 29095560          FILING DATE: 10/26/1998
PATENT NUMBER: D412920               ISSUE DATE: 08/17/1999
TITLE:  TELESCOPE MOUNT

APPLICATION NUMBER: 29101103          FILING DATE: 02/25/1999
PATENT NUMBER: D422610               ISSUE DATE: 04/11/2000
TITLE:  AUTOMATED TELESCOPE

APPLICATION NUMBER: 29101104          FILING DATE: 02/25/1999
PATENT NUMBER: D417881               ISSUE DATE: 12/21/1999
TITLE:  AUTOMATED TELESCOPE

EXHIBIT 3   0018

```
APPLICATION NUMBER: 29221401        FILING DATE: 01/14/2005
PATENT NUMBER: D534194              ISSUE DATE: 12/26/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221446        FILING DATE: 01/14/2005
PATENT NUMBER: D518079              ISSUE DATE: 03/28/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221495        FILING DATE: 01/14/2005
PATENT NUMBER: D515603              ISSUE DATE: 02/21/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 61537026        FILING DATE: 09/20/2011
PATENT NUMBER:                      ISSUE DATE:
TITLE:  APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES


APPLICATION NUMBER: 61539848        FILING DATE: 09/27/2011
PATENT NUMBER:                      ISSUE DATE:
TITLE:  SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND
        TRACKING



ASSIGNMENT RECORDATION BRANCH
PUBLIC RECORDS DIVISION
```

EXHIBIT 3  0019

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                                    EPAS ID: PAT5751535
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | SECURITY INTEREST |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| MEADE INSTRUMENTS CORP. | 08/01/2019 |

**RECEIVING PARTY DATA**

| Name: | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
|---|---|
| Street Address: | 333 S. HOPE ST., 43RD FLOOR |
| Internal Address: | ATTN: RICHARD BRUNETTE |
| City: | LOS ANGELES |
| State/Country: | CALIFORNIA |
| Postal Code: | 90071 |

**PROPERTY NUMBERS Total: 21**

| Property Type | Number |
|---|---|
| Patent Number: | 6181726 |
| Patent Number: | 6215802 |
| Patent Number: | 6392799 |
| Patent Number: | 7054518 |
| Patent Number: | 7079317 |
| Patent Number: | 7092156 |
| Patent Number: | 7149377 |
| Patent Number: | 7190515 |
| Patent Number: | 7209229 |
| Patent Number: | 7248405 |
| Patent Number: | 7339731 |
| Patent Number: | 7482564 |
| Patent Number: | D392657 |
| Patent Number: | D412920 |
| Patent Number: | D417881 |
| Patent Number: | D422610 |
| Patent Number: | D515603 |
| Patent Number: | D518079 |
| Patent Number: | D534194 |

EXHIBIT 3   0020

**EXHIBIT 4**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Meade Instruments Corp., a Delaware Corporation |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 8:19-bk-14714-CB |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Sheppard, Mullin, Richter & Hampton LLP<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Ori Katz<br>Name<br><br>Four Embarcadero Center, 17th Floor<br>Number     Street<br><br>San Francisco          CA          94111<br>City                State          ZIP Code<br><br>Contact phone  415.434.9100<br><br>Contact email  okatz@sheppardmullin.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number     Street<br><br>City                State          ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
|---|---|---|

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____          Filed on _____<br>                                                          MM / DD / YYYY |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   3   8   B   S

**7. How much is the claim?**   $_____ 2,686,409.64 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other
charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Legal fees and costs.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:  Please see attached Security Agreement

**Basis for perfection:**  UCC Financing Statement and Recordation with the U.S. Patent And Trademark Office

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____ Unknown

**Amount of the claim that is secured:**   $_____ 2,686,409.64

**Amount of the claim that is unsecured:**  $_____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

EXHIBIT 4   0022

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    April 16, 2020
_____
MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name    Ori Katz
_____
First name          Middle name          Last name

Title    Attorney
_____

Company    Sheppard, Mullin, Richter & Hampton LLP
_____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    Four Embarcadero Center, 17th Floor
_____
Number          Street

San Francisco          CA          94111
_____
City          State          ZIP Code

Contact phone    (415) 434-9100          Email    okatz@sheppardmullin.com

EXHIBIT 4    0023

# Outstanding Invoices

## All Matter Billing Attorneys : Meade Instruments Corporation

### As of: April 6, 2020

| Client Code and Name / Matter Code and Name | Inv. Age (days) | Invoice Number | Invoice Date | Date Billed Thru | Last Payment Date | Invoice Total | Fee Balance | Cost Balance | Interest Balance | Invoice Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **38BS   Meade Instruments Corporation** | | | | | | | | | | |
| **38BS-249681   Ningbo Sunny - Optronic Technologies, Inc. litigation**   Billing Attorney:   2578   Caseria, Leo D. | | | | | | | | Unapplied Balance: | | |
| | | | | | | | | Trust Balance: | | |
| | 200 | 300091479 | 9/19/2019 | 9/16/2019 | 12/02/2019 | 335,346.20 | 88,277.55 | 0.00 | 0.00 | 88,277.55 |
| | 173 | 300092740 | 10/16/2019 | 10/16/2019 | | 582,027.37 | 544,501.80 | 37,525.57 | 0.00 | 582,027.37 |
| | 144 | 300095396 | 11/14/2019 | 10/31/2019 | | 1,007,826.16 | 955,249.00 | 52,577.16 | 0.00 | 1,007,826.16 |
| | 124 | 300097113 | 12/4/2019 | 12/4/2019 | | 1,008,278.56 | 918,126.50 | 90,152.06 | 0.00 | 1,008,278.56 |
| **Matter Totals for:    Ningbo Sunny - Optronic Technologies, In** | | | | | | **2,933,478.29** | **2,506,154.85** | **180,254.79** | **0.00** | **2,686,409.64** |
| **Client Totals for:    Meade Instruments Corporation** | | | | | | **2,933,478.29** | **2,506,154.85** | **180,254.79** | **0.00** | **2,686,409.64** |

# Sheppard Mullin

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street 43rd Floor
Los Angeles, CA 90071-1422
213-620-1780 main
213-620-1398 main fax

***Remittance Copy***
***Please return this page with your payment.***

Wenjun Ni
General Manager
Ningbo Sunny Electronic Co., Ltd
No. 199 Anshan Road
Yuyao, Zhejiang Province
China

SMRH Tax ID 95-1463164
September 19, 2019
Invoice 300091479

| Our Matter No. | 38BS-249681 |
| --- | --- |
| | Ningbo Sunny - Optronic Technologies, Inc. litigation |
| Billing Atty: | Leo D. Caseria |

## INVOICE SUMMARY

FOR PROFESSIONAL SERVICES THROUGH AUGUST 31, 2019

| | |
| --- | --- |
| Current Fees | $ 345,791.50 |
| Current Disbursements | $ 23,663.70 |
| | |
| Total Current Activity | $ 369,455.20 |
| Courtesy Discount | $ (34,109.00) |
| Total Due for This Invoice | $ 335,346.20 |

EXHIBIT 4   0025
Payment Terms:  Balance due upon receipt of this statement.

# Sheppard**Mullin**

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street 43rd Floor
Los Angeles, CA 90071-1422
213-620-1780 main
213-620-1398 main fax

---

*Remittance Copy*
*Please return this page with your payment.*

Wenjun Ni
General Manager
Ningbo Sunny Electronic Co., Ltd
No. 199 Anshan Road
Yuyao, Zhejiang Province
China

SMRH Tax ID 95-1463164
October 16, 2019
Invoice 300092740

Our Matter No.    38BS-249681
                  Ningbo Sunny - Optronic Technologies, Inc. litigation
Billing Atty:     Leo D. Caseria

## INVOICE SUMMARY

FOR PROFESSIONAL SERVICES THROUGH SEPTEMBER 30, 2019

| | | |
|---|---|---|
| Current Fees | $ 605,002.00 | |
| Current Disbursements | $ 37,525.57 | |
| | | |
| Total Current Activity | | $ 642,527.57 |
| Fee Discount | | $ (60,500.20) |
| Total Due for This Invoice | | $ 582,027.37 |

EXHIBIT 4   0026
Payment Terms:  Balance due upon receipt of this statement.

# Sheppard**Mullin**

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street 43rd Floor
Los Angeles, CA 90071-1422
213-620-1780 main
213-620-1398 main fax

***Remittance Copy***
***Please return this page with your payment.***

Wenjun Ni
General Manager
Ningbo Sunny Electronic Co., Ltd
No. 199 Anshan Road
Yuyao, Zhejiang Province
China

SMRH Tax ID 95-1463164
November 14, 2019
Invoice 300095396

| | |
|---|---|
| Our Matter No. | 38BS-249681 |
| | Ningbo Sunny - Optronic Technologies, Inc. litigation |
| Billing Atty: | Leo D. Caseria |

## INVOICE SUMMARY

FOR PROFESSIONAL SERVICES THROUGH OCTOBER 31, 2019

| | |
|---|---|
| Current Fees | $ 1,025,249.00 |
| Current Disbursements | $ 52,577.16 |
| | |
| Total Current Activity | $ 1,077,826.16 |
| Courtesy Discount | $ (70,000.00) |
| Total Due for This Invoice | $ 1,007,826.16 |

EXHIBIT 4   0027

Payment Terms:  Balance due upon receipt of this statement.

# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street 43rd Floor
Los Angeles, CA 90071-1422
213-620-1780 main
213-620-1398 main fax

_**Remittance Copy**_
_**Please return this page with your payment.**_

Wenjun Ni                                          SMRH Tax ID 95-1463164
General Manager                                       December 4, 2019
Ningbo Sunny Electronic Co., Ltd                    Invoice 300097113
No. 199 Anshan Road
Yuyao, Zhejiang Province
China

Our Matter No.      38BS-249681
                    Ningbo Sunny - Optronic Technologies, Inc. litigation
Billing Atty:       Leo D. Caseria


## INVOICE SUMMARY

FOR PROFESSIONAL SERVICES THROUGH DECEMBER 4, 2019

Current Fees                              $  918,126.50
Current Disbursements                     $   90,152.06

Total Current Activity                              $  1,008,278.56

Total Due for This Invoice                          $  1,008,278.56


EXHIBIT 4   0028

Payment Terms:  Balance due upon receipt of this statement.

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "*Agreement*") is made as of August 1, 2019, by and between Meade Instruments Corp. (the "*Debtor*"), in favor of Sheppard, Mullin, Richter & Hampton LLP (the "*Secured Party*"). The Debtor and the Secured Party may hereinafter be referred to individually as a "*party*" or collectively as the "*parties*".

## RECITALS

A.      Firm has provided, and will continue to provide, substantial legal services and costs for the benefit of Debtor.  Debtor and the Firm have reached an agreement for the repayment of all legal fees and costs (the "*Obligations*").

B.      The parties have agreed to secure the Debtor's duty to repay the Obligations with a security interest in certain assets of the Debtor, as set forth herein.

## AGREEMENT

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.      **Grant of Security Interest**.

(a)      To secure the Debtor's full and timely payment of the Obligations, the Debtor hereby grants to the Secured Party a continuing lien on and security interest in (the "*Security Interest*") all of the Debtor's right, title and interest in and to the following personal property and assets (both tangible and intangible), whether now owned or hereafter acquired and wherever located:  (a) all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), Instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter of credit rights, commercial tort claims, securities and all investment property, supporting obligations, any other contract rights or rights to payment of money, insurance claims and proceeds, and all general intangibles, including all payment intangibles; and (b) all proceeds thereof (collectively, the "*Collateral*").  The Collateral includes, but is not limited to, those patents, patent applications, and related rights more specifically described in the attached Schedule A.  The Debtor hereby authorizes the Secured Party to file a form UCC-1 financing statement, in the manner prescribed by the UCC and other applicable laws, listing or describing the Collateral.  The Debtor shall execute any and all additional instruments required to permit such filing by the Secured Party.

(b)      The following terms shall have the following meanings for purposes of this Agreement:

"**Account**" means any "account", as such term is defined in the UCC now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all accounts receivable, book debts, rights to payment and other forms of obligations now owned or hereafter received or acquired by or belonging or owing to the Debtor whether or not arising out of goods or software sold or services rendered by the Debtor or from any other transaction, whether or not the same involves the sale of goods or services by the Debtor and all of the Debtor's rights in, to and under all purchase orders or receipts now owned or hereafter acquired by it for goods or services, and all of the Debtor's rights to any goods represented by any of the foregoing, and all monies due or to

EXHIBIT 4    0029

become due to the Debtor under all purchase orders and contracts for the sale of goods or the performance of services or both by the Debtor or in connection with any other transaction (whether or not yet earned by performance on the part of the Debtor), now in existence or hereafter occurring, including, without limitation, the right to receive the proceeds of said purchase orders and contracts, and all collateral security and guarantees of any kind given by any Person with respect to any of the foregoing.

**"Designated Rights to Payment"** means all Accounts and General Intangibles.

**"General Intangible"** means any "general intangible," as such term is defined in the UCC, now owned or hereafter acquired by the Debtor or in which the Debtor now holds or hereafter acquires any interest and, in any event, shall include, without limitation, all right, title and interest that the Debtor may now or hereafter have in or under any contracts, rights to payment, payment intangibles, confidential information, interests in partnerships, limited liability companies, corporations, joint ventures and other business associations, permits, goodwill, claims in or under insurance policies, including unearned premiums and premium adjustments, and uncertificated securities.

**"Lien"** means any mortgage, deed of trust, pledge, hypothecation, assignment for security, security interest, encumbrance, levy, lien or charge of any kind, whether voluntarily incurred or arising by operation of law or otherwise, against any property, any conditional sale or other title retention agreement, any lease in the nature of a security interest, and the filing of any financing statement (other than a precautionary financing statement with respect to a lease that is not in the nature of a security interest) under the UCC or comparable law of any jurisdiction.

**"Obligations"** means (a) the indebtedness owed by the Debtor to the Secured Party that is evidenced by the Note, including without limitation all principal, interest, fees, charges, expenses, and attorneys' fees chargeable to the Debtor or payable by the Debtor thereunder and (b) all obligations of the Debtor to the Secured Party created or arising under this Agreement.

**"Person"** means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

**"Proceeds"** means "proceeds", as such term is defined in the UCC.

**"UCC"** means the Uniform Commercial Code as the same may, from time to time, be in effect in the State of California; provided, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of, or remedies with respect to, the Security Interest is governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of California, the term "UCC" shall mean the Uniform Commercial Code as enacted and in effect, from time to time, in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

Unless otherwise defined herein, all capitalized terms used herein and defined in the Note shall have the respective meanings given to those terms in the Note, and terms that are defined in the UCC and used herein shall have the meanings given to them in the UCC.

EXHIBIT 4    0030

2.      **Covenants.**  The Debtor covenants and agrees with the Secured Party that, from and after the date of this Agreement until the Obligations are paid in full:

(a)      **Rights in the Collateral.**  The Debtor has rights in or the power to transfer the Collateral in the ordinary course of business, and the Debtor will defend the Collateral against the claims and demands of all Persons at any time claiming the same or any interest therein.

(b)      **Further Documentation.**  At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of the Debtor, the Debtor will promptly and duly authenticate and deliver such further instruments and documents and take such further action as the Secured Party may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted including, without limitation, filing any financing or continuation statements under the UCC in effect with respect to the Security Interest.  The Debtor also hereby authorizes the Secured Party to file any such financing, amendment or continuation statement without the authentication of the Debtor to the extent permitted by applicable law.

(c)      **Maintenance of Records.**  The Debtor will keep and maintain at its own expense complete and satisfactory records of the Collateral.

(d)      **Inspection Rights.**  The Secured Party shall have full access during normal business hours, and upon reasonable prior notice, to all the books, correspondence and other records of the Debtor relating to the Collateral, subject to any and all limitations arising from California privacy laws or other applicable laws and regulations. The Secured Party or its representatives may examine such records and make photocopies or otherwise take extracts from such records.

(e)      **Compliance with Laws, Maintenance of Licenses.**  The Debtor (i) will comply with all laws, rules, regulations and orders of any governmental authority applicable to any material portion of the Collateral or to the operation of the Debtor's business, the failure of which to comply with will have a material adverse effect on the Debtor, (ii) will maintain all governmental licenses, authorizations, registrations, permits, consents and approvals required under all applicable laws and required in order to carry on its business as now conducted.

(f)      **Payment of Obligations.**  The Debtor will pay promptly when due all taxes, assessments and governmental charges or levies imposed upon the Collateral or with respect to any of its income or profits derived from the Collateral, as well as all claims of any kind (including, without limitation, claims for labor, materials and supplies) against or with respect to the Collateral, except that no such charge need be paid if (i) the validity of such charge is being contested in good faith by appropriate proceedings, (ii) such proceedings do not involve any material danger of the sale, forfeiture or loss of any of the Collateral or any interest in the Collateral and (iii) such charge is adequately reserved against on the Debtor's books in accordance with generally accepted accounting principles.

(g)      **Limitation on Liens on Collateral.**  The Debtor will not create, incur or permit to exist, will defend the Collateral against, and will take such other action as is reasonably necessary to remove, any Lien or claim on or to the Collateral, other than Permitted Liens, and will defend the right, title and interest of the Secured Party in and to any of the Collateral against the claims and demands of all other Persons.  As used herein, "Permitted Liens" means (i) Liens granted under this Agreement and (ii) Liens existing on the date of this Agreement.

EXHIBIT 4    0031

(h)    **Limitations on Dispositions of Collateral.** The Debtor will not sell, transfer, lease, or otherwise dispose of any portion of the Collateral, or attempt, offer or contract to do so.

(i)    **Notice of Change of State of Incorporation.** Without thirty (30) days' prior written notice to the Secured Party, the Debtor shall not change the Debtor's name, state of incorporation or organization, organizational identification number or place of business (or, if the Debtor has more than one place of business, its chief executive office), or the office in which the Debtor's records relating to the Collateral are kept.

(j)    **Collection of the Collateral.** The Debtor shall collect, enforce and receive payment of the Collateral in accordance with past practice.

3.    **Events of Default; the Secured Party's Appointment as Attorney-in-Fact.**

(a)    **Events of Default.** For purposes of this Agreement, failure by the Debtor to make any payment required by the parties' repayment schedule, shall constitute an Event of Default hereunder.

(b)    **Powers.** The Debtor hereby appoints the Secured Party, with full power of substitution, as its attorney-in-fact with full irrevocable power and authority in the place of the Debtor and in the name of the Debtor or its own name, from time to time in the Secured Party's discretion so long as an Event of Default has occurred and is continuing, for the purpose of carrying out the terms of this Agreement, to take any appropriate action and to authenticate any instrument which may be necessary or desirable to accomplish the purposes of this Agreement. Without limiting the foregoing, so long as an Event of Default has occurred and is continuing, the Secured Party shall have the right, without notice to, or the consent of, the Debtor, to do any of the following on the Debtor's behalf:

(i)    to pay or discharge any taxes or Liens levied or placed on or threatened against the Collateral;

(ii)    to direct any party liable for any payment under any of the Collateral to make payment of any and all amounts due or to become due thereunder directly to the Secured Party or as the Secured Party directs;

(iii)    to ask for or demand, collect, and receive payment of and receipt for, any payments due or to become due at any time in respect of or arising out of any Collateral;

(iv)    to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to enforce any right in respect of any Collateral;

(v)    to defend any suit, action or proceeding brought against the Debtor with respect to any Collateral;

(vi)    to settle, compromise or adjust any suit, action or proceeding described in subsection (v) above and to give such discharges or releases in connection therewith as the Secured Party may deem appropriate; and



EXHIBIT 4    0032

(viii)    generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral and to take, at the Secured Party's option and the Debtor's expense, any actions which the Secured Party deems necessary to protect, preserve or realize upon the Collateral and the Secured Party's Security Interest in the Collateral and to carry out the intent of this Agreement, in each case to the same extent as if the Secured Party were the absolute owner of the Collateral for all purposes.

The Debtor hereby ratifies whatever actions the Secured Party shall lawfully do or cause to be done in accordance with this Section 3(b). This power of attorney shall be a power coupled with an interest and shall be irrevocable.

(c)    **No Duty on the Secured Party's Part**. The powers conferred on the Secured Party by Section 3(b) are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Secured Party shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and the Secured Party shall not, in the absence of willful misconduct or gross negligence, be responsible to the Debtor for any act or failure to act pursuant to Section 3(b).

4.    **Performance by the Secured Party of the Debtor's Obligations.** If the Debtor fails to perform or comply with any of its agreements or covenants contained in this Agreement and the Secured Party performs or complies, or otherwise causes performance or compliance, with such agreement or covenant in accordance with the terms of this Agreement, then the reasonable expenses of the Secured Party incurred in connection with such performance or compliance shall be payable by the Debtor to the Secured Party within ten (10) days of request by the Secured Party and shall constitute Obligations, secured by this Agreement.

5.    **Remedies**.

(a)    **General Remedies**. If an Event of Default has occurred and is continuing, the Secured Party may exercise, in addition to all other rights and remedies granted to it in this Agreement and in any other instrument or agreement relating to the Obligations, all rights and remedies of a secured party under the UCC. Without limiting the foregoing, but subject to any applicable cure period provided in the Note or this Agreement, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law) to or upon the Debtor or any other Person (all of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances collect, receive, appropriate and realize upon any or all of the Collateral, and/or may sell, lease, assign, give an option or options to purchase, or otherwise dispose of and deliver any or all of the Collateral (or contract to do any of the foregoing), in one or more parcels at a public or private sale or sales, at any exchange, broker's board or office of the Secured Party or elsewhere upon such terms and conditions as the Secured Party may deem advisable, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase all or any part of the Collateral so sold, free of any right or equity of redemption in the Debtor, which right or equity is hereby waived or released. The Secured Party shall apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable expenses incurred therein or in connection with the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party under this Agreement (including, without limitation, reasonable attorneys' fees and expenses) to the payment in whole or in part of the Obligations, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of

EXHIBIT 4    0033

law, need the Secured Party account for the surplus, if any, to the Debtor. To the extent permitted by applicable law, the Debtor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by the Secured Party of any of its rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition. The Debtor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

(b)     **Payment of Costs and Expenses**. Following an Event of Default, on demand, the Debtor shall pay to the Secured Party all costs and expenses, including court costs and costs of sale, incurred by the Secured Party in exercising any of its rights or remedies under this Agreement, together with interest at the highest rate then applicable to any of the Obligations from the date incurred until paid.

6.     **Limitation on Duties Regarding Preservation of Collateral**. The Secured Party's sole duty with respect to the custody, safekeeping and preservation of the Collateral, under Section 9207 of the UCC or otherwise, shall be to deal with it in the same manner as such Secured Party deals with similar property for its own account. The Secured Party shall not be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so other than as a result of the gross negligence or willful misconduct of the same or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Debtor or otherwise.

7.     **No Waiver; Cumulative Remedies**. The Secured Party shall not by any act (except by a written instrument pursuant to Section 9(a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default under the Note or in any breach of any of the terms and conditions of this Agreement. No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Secured Party of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any subsequent occasion. The rights and remedies provided in this Agreement are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

8.     **Termination of Security Interest**. Upon full satisfaction of the Obligations, the Security Interest granted herein shall terminate and all rights to the Collateral shall revert to the Debtor. Upon any such termination, the Secured Party shall within five (5) business days authenticate and deliver to the Debtor such documents as the Debtor may reasonably request to evidence such termination.

9.     **Miscellaneous**.

(a)     **Amendments and Waivers**. Any term of this Agreement may be amended with the written consent of the parties or their respective successors and assigns. Any amendment or waiver effected in accordance with this Section 9(a) shall be binding upon the parties and their respective successors and assigns.

EXHIBIT 4    0034

(b) **Successors and Assigns**. The terms and conditions of this Agreement shall be binding upon the Debtor and its successors and assigns and inure to the benefit of the Secured Party and its successors and assigns. Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(c) **Governing Law.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to principles of conflicts of law.

(d) **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

(e) **Titles and Subtitles.** The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(f) **Notices.** All notices or other communications required or permitted hereunder shall be in writing and shall be deemed given or delivered (a) when delivered personally, against written receipt, (b) if sent by registered or certified mail, return receipt requested, postage prepaid, when received, and (c) when delivered by a nationally recognized overnight courier service, prepaid, and shall be sent to the addresses set forth on the signature page of this Agreement or at such other address as each party may designate by written notice to the other by following this notice procedure

(g) **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith, in order to maintain the economic position enjoyed by each party as close as possible to that under the provision rendered unenforceable. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of this Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of this Agreement shall be enforceable in accordance with its terms.

(h) **Entire Agreement.** This Agreement, and the documents referred to herein, constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements existing between the parties hereto concerning such subject matter are expressly canceled.

*[Signature Page Follows]*

EXHIBIT 4    0035

IN WITNESS WHEREOF, the Debtor and the Secured Party have caused this
Agreement to be duly executed and delivered as of the date first above written.

**DEBTOR:**

**Meade Instruments Corp.**

By: _____
Name: _____
Title: _____

Address for Notices:
Meade Instruments Corp.
27 Hubble
Irvine, CA 92618

**SECURED PARTY:**

**Sheppard, Mullin, Richter & Hampton LLP**

By: _____
Name: Richard W. Brunette
Title: Partner

Address for Notices:
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Attn: Richard W. Brunette

SMRH:4853-2751-3759.12

Signature Page to
Security Agreement

EXHIBIT 4   0036

| Patent Number | Patent Title |
|---|---|
| 61537026 | APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES |
| 61539848 | SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND TRACKING |
| 6,181,726 | HIGH PERFORMANCE TELESCOPIC ETALON FILTERS |
| 6,215,802 | THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH-DIVISION MULTIPLEXING APPLICATIONS |
| 6,392,799 | FULLY AUTOMATED TELESCOPESYSTEM WITH DISTRIBUTED INTELLIGENCE |
| 7,054,518 | ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION FORCES |
| 7,079,317 | AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION PROCESSING |
| 7,092,156 | AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD |
| 7,149,377 | SOLAR TUNABLE FILTER ASSEMBLY |
| 7,190,515 | SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM |
| 7,209,229 | WAVELENGTH SELECTABLE SPECTROHELIOGRAPH |
| 7,248,405 | RE-FOCUSING MECHANISM FOR IMAGING SYSTEM |
| 7,339,731 | SELF-ALIGNING TELESCOPE |
| 7,482,564 | HIGH DEFINITION TELESCOPE |
| D534,194 | EYEPIECE FOR OPTICAL INSTRUMENTS |
| D518,079 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D515,603 | EYEPIECE FOR OPTICAL INSTRUMENT |
| D422,610 | AUTOMATED TELESCOPE |
| D417,881 | AUTOMATED TELESCOPE |
| D412,920 | TELESCOPE MOUNT |
| D392,657 | TELESCOPE |

EXHIBIT 4    0037

## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

OCTOBER 3, 2019

PTAS

SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP
333 S. HOPE ST., 43RD FLOOR
ATTN: J. CRAVITZ
LOS ANGELES, CA 90071

# 505704725

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 10/02/2019          REEL/FRAME: 050609/0190
                                      NUMBER OF PAGES: 11

BRIEF: SECURITY INTEREST (SEE DOCUMENT FOR DETAILS).

DOCKET NUMBER:   000E-191681

ASSIGNOR:
    MEADE INSTRUMENTS CORP.          DOC DATE: 08/01/2019

ASSIGNEE:
    SHEPPARD, MULLIN, RICHTER & HAMPTON
      LLP
    333 S. HOPE ST., 43RD FLOOR
    ATTN: RICHARD BRUNETTE
    LOS ANGELES, CALIFORNIA 90071

APPLICATION NUMBER: 09321482         FILING DATE: 05/27/1999
PATENT NUMBER: 6181726               ISSUE DATE: 01/30/2001
TITLE:  HIGH PERFORMANCE TELESCOPIC ETALON FILTERS

APPLICATION NUMBER: 09357583         FILING DATE: 07/20/1999
PATENT NUMBER: 6215802               ISSUE DATE: 04/10/2001
TITLE:  THERMALLY STABLE AIR-GAP ETALON FOR DENSE WAVELENGTH- DIVISION
        MULTIPLEXING APPLICATIONS

EXHIBIT 4   0038

APPLICATION NUMBER: 09428866          FILING DATE: 10/26/1999
PATENT NUMBER: 6392799                ISSUE DATE: 05/21/2002
TITLE:  FULLY AUTOMATED TELESCOPE SYSTEM WITH DISTRIBUTED INTELLIGENCE


APPLICATION NUMBER: 10357912          FILING DATE: 02/04/2003
PATENT NUMBER: 7092156                ISSUE DATE: 08/15/2006
TITLE:  AUTOMATED TELESCOPE ALIGNMENT AND ORIENTATION METHOD


APPLICATION NUMBER: 10358754          FILING DATE: 02/05/2003
PATENT NUMBER: 7079317                ISSUE DATE: 07/18/2006
TITLE:  AUTOMATED TELESCOPE WITH DISTRIBUTED ORIENTATION AND OPERATION
        PROCESSING


APPLICATION NUMBER: 10795167          FILING DATE: 03/05/2004
PATENT NUMBER: 7054518                ISSUE DATE: 05/30/2006
TITLE:  ETALON ASSEMBLY TUNED BY APPLYING COUNTERBALANCED COMPRESSION
        FORCES


APPLICATION NUMBER: 10864134          FILING DATE: 06/09/2004
PATENT NUMBER: 7209229                ISSUE DATE: 04/24/2007
TITLE:  WAVELENGTH SELECTABLE SPECTROHELIOGRAPH


APPLICATION NUMBER: 11110484          FILING DATE: 04/20/2005
PATENT NUMBER: 7482564                ISSUE DATE: 01/27/2009
TITLE:  HIGH DEFINITION TELESCOPE


APPLICATION NUMBER: 11110626          FILING DATE: 04/20/2005
PATENT NUMBER: 7339731                ISSUE DATE: 03/04/2008
TITLE:  SELF-ALIGNING TELESCOPE


APPLICATION NUMBER: 11123944          FILING DATE: 05/05/2005
PATENT NUMBER: 7190515                ISSUE DATE: 03/13/2007
TITLE:  SOLAR TELESCOPE WITH INTEGRATED ALIGNMENT MECHANISM


APPLICATION NUMBER: 11123945          FILING DATE: 05/05/2005
PATENT NUMBER: 7149377                ISSUE DATE: 12/12/2006
TITLE:  SOLAR TUNABLE FILTER ASSEMBLY


APPLICATION NUMBER: 11123946          FILING DATE: 05/05/2005
PATENT NUMBER: 7248405                ISSUE DATE: 07/24/2007
TITLE:  RE-FOCUSING MECHANISM FOR IMAGING SYSTEM


APPLICATION NUMBER: 29064480          FILING DATE: 01/02/1997
PATENT NUMBER: D392657                ISSUE DATE: 03/24/1998
TITLE:  TELESCOPE


APPLICATION NUMBER: 29095560          FILING DATE: 10/26/1998
PATENT NUMBER: D412920                ISSUE DATE: 08/17/1999
TITLE:  TELESCOPE MOUNT


APPLICATION NUMBER: 29101103          FILING DATE: 02/25/1999
PATENT NUMBER: D422610                ISSUE DATE: 04/11/2000
TITLE:  AUTOMATED TELESCOPE


APPLICATION NUMBER: 29101104          FILING DATE: 02/25/1999
PATENT NUMBER: D417881                ISSUE DATE: 12/21/1999
TITLE:  AUTOMATED TELESCOPE


EXHIBIT 4   0039

```
APPLICATION NUMBER: 29221401      FILING DATE: 01/14/2005
PATENT NUMBER: D534194            ISSUE DATE: 12/26/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221446      FILING DATE: 01/14/2005
PATENT NUMBER: D518079            ISSUE DATE: 03/28/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 29221495      FILING DATE: 01/14/2005
PATENT NUMBER: D515603            ISSUE DATE: 02/21/2006
TITLE:  EYEPIECE FOR OPTICAL INSTRUMENTS


APPLICATION NUMBER: 61537026      FILING DATE: 09/20/2011
PATENT NUMBER:                    ISSUE DATE:
TITLE:  APPARATUS AND METHODS FOR ELIMINATING IMAGE SHIFT IN TELESCOPES


APPLICATION NUMBER: 61539848      FILING DATE: 09/27/2011
PATENT NUMBER:                    ISSUE DATE:
TITLE:  SYSTEMS AND METHODS FOR CLOSED-LOOP TELESCOPE POINTING AND
        TRACKING



ASSIGNMENT RECORDATION BRANCH
PUBLIC RECORDS DIVISION
```

EXHIBIT 4   0040

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT5751535

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | SECURITY INTEREST |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| MEADE INSTRUMENTS CORP. | 08/01/2019 |

**RECEIVING PARTY DATA**

| Name: | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
|---|---|
| Street Address: | 333 S. HOPE ST., 43RD FLOOR |
| Internal Address: | ATTN: RICHARD BRUNETTE |
| City: | LOS ANGELES |
| State/Country: | CALIFORNIA |
| Postal Code: | 90071 |

**PROPERTY NUMBERS Total: 21**

| Property Type | Number |
|---|---|
| Patent Number: | 6181726 |
| Patent Number: | 6215802 |
| Patent Number: | 6392799 |
| Patent Number: | 7054518 |
| Patent Number: | 7079317 |
| Patent Number: | 7092156 |
| Patent Number: | 7149377 |
| Patent Number: | 7190515 |
| Patent Number: | 7209229 |
| Patent Number: | 7248405 |
| Patent Number: | 7339731 |
| Patent Number: | 7482564 |
| Patent Number: | D392657 |
| Patent Number: | D412920 |
| Patent Number: | D417881 |
| Patent Number: | D422610 |
| Patent Number: | D515603 |
| Patent Number: | D518079 |
| Patent Number: | D534194 |

EXHIBIT 4    0041

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(888) 575-3822

**B. E-MAIL CONTACT AT FILER (optional)**
UCCFILINGS@CLASINFO.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

UCC EZFILE

2020 HURLEY WAY

SACRAMENTO, CA 95825

US

Delaware Department of State
U.C.C. Filing Section
Filed: 06:56 PM 10/02/2019
U.C.C. Initial Filing No: 2019 6881994

Service Request No:  20197353432

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME MEADE INSTRUMENTS CORP. | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 27 HUBBLE | CITY IRVINE | STATE CA | POSTAL CODE 92618 | COUNTRY US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 333 S. HOPE ST., 43RD FLOOR | CITY LOS ANGELES | STATE CA | POSTAL CODE 90071 | COUNTRY US |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or existing or hereafter acquired or arising, and wherever located.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)     ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:     **6b.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility     ☐ Agricultural Lien  ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:
DE SOS

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

EXHIBIT 4   0042

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  MOTION FOR ORDER APPROVING STIPULATION SETTING ASIDE LIENS OF SHEPARD MULLIN RICHTER & HAMPTON, LLP; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARK S. HOROUPIAN  IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  October 15, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  October 15, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Meade Instruments Corp.
27 Hubble
Irvine, CA 92618

Secured Creditor
Sheppard Mullin Richter & Hampton
333 South Hope St., 43rd Fl
Los Angeles, Ca 90071-1422

The Honorable Mark S. Wallace
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701

U.S. Trustee
Office of the United States Trustee
Frank Cadigan
411 West Fourth Street, Suite 7160
Santa Ana, Ca 92701-4500

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 15, 2020 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Matthew Borden**    borden@braunhagey.com, rosario@braunhagey.com;kushnir@braunhagey.com;verga@braunhagey.com;hagey@braunhagey.com;fisher@braunhagey.com;theodore@braunhagey.com;hasegawa@braunhagey.com;szoke@braunhagey.com;baker@braunhagey.com
- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Mark S Horoupian**    mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Claire K Wu**    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**