Mark S. Horoupian (CA Bar No. 175373)
 *Mhoroupian@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
 *ckwu@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Official Committee of Unsecured
Creditors of Meade Instruments Corporation

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>☒  MEADE INSTRUMENTS CORP., a<br>     Delaware corporation,<br><br>☐  SUNNY OPTICS, INC., a Delaware<br>     corporation,<br><br>☐  All Debtors.<br><br>         Debtors and Debtors-in-<br>         Possession. | Case No. 8:19-bk-14714-MW<br><br>(Jointly Administeterhed with<br>Case No. 8:19-bk-14711-MW)<br><br>Chapter 11<br><br>DISCLOSURE STATEMENT DESCRIBING<br>PLAN OF REORGANIZATION FILED BY<br>THE OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS OF MEADE<br>INSTRUMENTS CORP.<br><br>Disclosure Statement Hearing - ***Telephonic***<br>Date:   February 10, 2021<br>Time:  2:00 p.m.<br>Place: Courtroom 6C<br>          411 West Fourth Street<br>          Santa Ana, CA 92701 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

MSH 2708522v1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................... 1

    A.  Purpose of This Document ............................................................................................ 1

    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ................. 3

        1.  Time and Place of Confirmation Hearing ........................................................ 4

        2.  Deadline for Voting to Accept or Reject the Plan ........................................... 4

        3.  Ballots and Voting Instructions ....................................................................... 4

        4.  Return of Ballot Forms .................................................................................... 5

        5.  Method of Delivery .......................................................................................... 5

        6.  Procedure for Withdrawing or Changing Votes .............................................. 5

        7.  Deadline for Objecting to Confirmation of the Plan ....................................... 6

        8.  Identity of Person to Contact for More Information Regarding the
Plan .................................................................................................................. 6

        9.  Effective Date .................................................................................................. 6

    C.  Disclaimers .................................................................................................................. 6

    D.  Source of the Information Contained in the Disclosure Statement ............................. 9

II.  BACKGROUND ................................................................................................................... 9

    A.  Summary of the Debtor's Business, Online Platform, Financing History,
Debt Structure, Recent Financial Results, and Orion Litigation ............................... 9

        1.  Debtor's Affiliates and Subsidiaries .............................................................. 10

        2.  The Orion Lawsuit. ........................................................................................ 10

        3.  The Debtor's Debt Structure .......................................................................... 11

        4.  Recent Financial Results ................................................................................ 12

    B.  Events Leading to Chapter 11 Filing ........................................................................ 13

    C.  Significant Events ...................................................................................................... 13

        1.  Bankruptcy Proceedings ................................................................................ 13

        2.  Other Legal Proceedings ............................................................................... 16

        3.  Supply Agreement with Ningbo Sunny .......................................................... 16

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

|  |  | 4. | Marketing of Assets for Sale and Plan Term Sheet | 16 |
|  | D. | Description of Available Assets and Their Estimated Value | | 18 |
|  | E. | Claims Against SMRH and Other Potential Claims | | 18 |
| III. | | SUMMARY OF THE PLAN OF REORGANIZATION | | 20 |
|  | A. | What Creditors and Interest Holders Will Receive Under the Proposed Plan | | 20 |
|  | B. | Unclassified Claims | | 20 |
|  |  | 1. | Administrative Expenses | 20 |
|  |  | 2. | Priority Tax Claims | 24 |
|  |  | 3. | Other Priority Claims | 24 |
|  | C. | Classified Claims and Interests | | 25 |
|  |  | 1. | Classes of Unsecured Claims | 25 |
|  |  | 2. | Classes of General Unsecured Claims | 27 |
|  |  | 3. | Classes of Interest Holders | 28 |
|  | D. | Means of Confirmation of Plan | | 28 |
|  |  | 1. | Solicitation of Acceptances | 28 |
|  |  | 2. | Requirements for Confirmation of the Plan | 29 |
|  | E. | Means of Effectuating the Plan | | 30 |
|  |  | 1. | Funding for the Plan | 30 |
|  |  | 2. | Pre and Post-Confirmation Management | 30 |
|  |  | 3. | Post-Confirmation Management. | 30 |
|  |  | 4. | Objections to Claims | 33 |
|  |  | 5. | Amendments to Claims; Claims Filed After the Confirmation Hearing | 33 |
|  |  | 6. | Interest Pending Allowance of Claims | 34 |
|  |  | 7. | Distributions to be Made Pursuant to the Plan | 34 |
|  |  | 8. | Unclaimed Property; Void Checks | 35 |
|  |  | 9. | Disputed Claims and Disputed Claims Reserve | 36 |
|  |  | 10. | No Distributions Pending Allowance | 36 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11.  Post-Confirmation Professionals and Fees .................................... 37

12.  Discharge of all Claims and Interests and General Releases ..................... 37

13.  Injunctions and Releases ................................................. 38

14.  Setoffs, Recoupment, and Defenses ........................................ 39

15.  Bankruptcy Court Approval Relative to Post-Confirmation Matters ......... 39

16.  No Liability for Debtor, Its Officers, Directors, Members, or Agents........ 40

F.  Risk Factors ................................................................... 41

1.  Insufficient Proceeds to Fund Plan .......................................... 41

2.  Substantially Increased Amount of Claims ................................... 42

3.  Non-Confirmation of the Plan .............................................. 42

4.  Non-Occurrence of Effective Date of the Plan .............................. 43

5.  Other Risks Related to Implementation of Plan ............................. 43

G.  Other Provisions of the Plan................................................... 43

1.  Executory Contracts and Unexpired Leases ................................. 43

a.  Assumption ......................................................... 43

b.  Rejections .......................................................... 46

c.  Bar Date for Rejection Claims ....................................... 47

d.  Cure Claims Schedule ............................................... 47

2.  Retention of Jurisdiction.................................................. 48

H.  Tax Consequences of the Plan................................................. 49

1.  Introduction............................................................. 51

2.  Consequences to the Debtor's Estate ....................................... 51

3.  Consequences to Holders of Allowed Administrative Expenses
    Claims, Allowed Priority Tax Claims, and Allowed Priority Wage
    Claims................................................................. 52

4.  Holders of Allowed General Unsecured Claims.............................. 52

5.  Orion................................................................... 54

6.  Equity Interests ......................................................... 54

7.  Distributions in Discharge of Accrued Unpaid Interest ...................... 55

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | | | |
|---|---|---|---|---|
| | | 8. | Information Reporting and Withholding | 55 |
| IV. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | | 56 |
| | A. | Who May Vote or Object | | 56 |
| | | 1. | Who May Object to Confirmation of the Plan | 56 |
| | | 2. | Who May Vote to Accept/Reject the Plan | 56 |
| | | | a.   What is an Allowed Claim/Interest | 56 |
| | | | b.   What is an Impaired Claim/Interest | 57 |
| | | 3. | Who is Not Entitled to Vote | 57 |
| | | 4. | Votes Necessary to Confirm the Plan | 57 |
| | | 5. | Votes Necessary for a Class to Accept the Plan | 58 |
| | | 6. | Treatment of Non-Accepting Classes | 58 |
| | | 7. | Request for Confirmation Despite Non-Acceptance by Impaired Classes | 58 |
| | | 8. | Creditors and Interest Holders Bound By Terms of Plan | 59 |
| | B. | Liquidation Analysis | | 59 |
| | C. | Feasibility | | 62 |
| V. | | EFFECT OF CONFIRMATION OF PLAN AND MISCELLANEOUS PROVISIONS | | 63 |
| | A. | Discharge | | 63 |
| | B. | Revesting of Property in Reorganized Debtor | | 63 |
| | C. | Modification of Plan | | 63 |
| | D. | Nonconsensual Confirmation | | 64 |
| | E. | Waiver of Conditions to Occurrence of the Effective Date | | 64 |
| | F. | Notice of Effective Date | | 64 |
| | G. | General Corporate Matters | | 64 |
| | H. | Corporate Actions | | 65 |
| | I. | Effectiveness of Securities, Instruments, and Agreements | | 65 |
| | J. | Effectuating Documents; Further Transactions | | 65 |
| | K. | Approval of Agreements | | 65 |

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

L.     Post-Confirmation Status Report Case ................................................................... 66

M.    Quarterly Fees .................................................................................................... 66

N.     Post-Confirmation Conversion/Dismissal........................................................... 66

O.     Changes in Rates Subject to Regulatory Commission Approval .......................... 67

P.     Inconsistencies.................................................................................................... 67

Q.    Withdrawal or Revocation of Disclosure Statement or Plan ................................. 67

R.     Successors and Assigns....................................................................................... 67

S.     Governing Law ................................................................................................... 67

T.     Dissolution of Creditors Committee .................................................................... 67

U.     Implementation of Plan....................................................................................... 68

V.     Failure of Effective Date..................................................................................... 68

W.    Final Decree ....................................................................................................... 68

VI.    SUPPORTING EXHIBITS ............................................................................................ 68

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

**Page**

## STATUTES

11 U.S.C. § 1112(b) ................................................................................................................ 66

11 U.S.C. § 1122(b) ................................................................................................................ 24

11 U.S.C. § 1125(b) ................................................................................................................ 29

11 U.S.C. § 1129 ..................................................................................................................... 29

11 U.S.C. § 1129(a)(12) .......................................................................................................... 66

11 U.S.C. § 1142 ..................................................................................................................... 48

11 U.S.C. § 507(a) .................................................................................................................. 27

11 U.S.C. § 507(a)(1) .............................................................................................................. 24

11 U.S.C. § 507(a)(4) .............................................................................................................. 24

11 U.S.C. § 507(a)(5) .............................................................................................................. 24

11 U.S.C. § 507(a)(6 ............................................................................................................... 24

11 U.S.C. § 507(a)(7) .............................................................................................................. 24

11 U.S.C. § 507(a)(8) .............................................................................................................. 24

28 U.S.C. § 1334 ..................................................................................................................... 48

28 U.S.C. § 1930 ..................................................................................................................... 66

Internal Revenue Code § 1223 ............................................................................................... 53

Internal Revenue Code § 1276 ............................................................................................... 54

Internal Revenue Code § 453B ............................................................................................... 54

Internal Revenue Code § 582(c) ............................................................................................. 53

## RULES

Federal Rules of Bankruptcy Procedure
    Rule 3018(a) ....................................................................................................................... 5

**Sulmeyer Kupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    The Official Committee (the "Committee" or "Plan Proponent") of Unsecured Creditors of

2    Meade Instruments Corporation ("Meade" or the "Debtor,"), the debtor and debtor in possession

3    herein, hereby submits its "Disclosure Statement Describing Plan of Reorganization filed by the

4    Official Committee of Unsecured Creditors" (the "Disclosure Statement") pursuant to the

5    provisions of section 1125 of title 11 of the United States Code (the "Bankruptcy Code") in

6    conjunction with the "Committee's Plan of Reorganization" (the "Plan" or "Plan of

7    Reorganization") filed on December 30, 2020.

8                                          **I.**

9                                  **INTRODUCTION**

10    The Debtor commenced this case by filing its voluntary petition for relief under chapter 11

11   of the Bankruptcy Code on December 4, 2019 (the "Petition Date").  Chapter 11 allows a debtor,

12   creditors, and other parties in interest to propose a plan of reorganization.   The exclusive period

13   for the Debtor to file a plan has expired, and as such the Committee, in consultation with the

14   Debtor, has filed its Plan.  A plan of reorganization may provide for a debtor to reorganize by

15   continuing to operate while it restructures its financial affairs, to obtain post-petition financing or

16   capital infusions, or to liquidate by selling assets of the estate, or a combination thereof.  The

17   Committee is the party proposing the Plan, with the support and financial contributions of the

18   Debtor's largest creditor, Optronic Technologies, Inc. dba Orion Telescopes & Binoculars

19   ("Orion").  The Disclosure Statement and Plan were prepared in coordination and consultation

20   with the Debtor.  Based on discussions between the Debtor and the Committee, the Committee

21   believes, and anticipates, that the Debtor will have no objections to, and will support, approval of

22   the Disclosure Statement and confirmation of the Plan.

23       **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT**

24   **FOR THE PLAN.**

25   A.    **Purpose of This Document**

26       The purpose of this Disclosure Statement is to set forth information that (a) summarizes

27   the Plan and alternatives to the Plan, if any, (b) informs creditors and interest holders of the

28   treatment to be afforded their claims against and interests in and against the Debtor and its chapter

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11 estate (the "Estate") under the Plan, and (c) assists creditors entitled to vote in making informed decisions as to whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed. The Plan describes how all claims against and interests in the Debtor will be resolved and provides the means by which the Estate will be reorganized under the Bankruptcy Code. Capitalized terms used but not otherwise defined in this Disclosure Statement have the meaning ascribed to them in the Plan or the Bankruptcy Code. The Debtor shall be referred to herein as the "Reorganized Debtor" once the Plan becomes effective.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

(1) **WHO CAN VOTE ON, OR OBJECT TO, THE PLAN;**

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (IN OTHER WORDS, WHAT YOU WILL RECEIVE ON ACCOUNT OF YOUR CLAIM IF THE PLAN IS CONFIRMED), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE ON ACCOUNT OF YOUR CLAIM IF THE DEBTOR IS LIQUIDATED;**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS OCCURRING DURING THE BANKRUPTCY CASE;**

(4) **WHAT ISSUES THE COURT WILL REVIEW IN ORDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

(5) **WHAT IS THE EFFECT OF CONFIRMATION OF THE PLAN; AND**

(6) **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement was submitted, approved, and delivered to you in accordance with section 1125 of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of claims and interests who are "impaired," as that term is defined in section 1124 of the Bankruptcy Code and in the Plan. Holders of claims and interests that are not impaired under the Plan are deemed to have accepted the Plan. Holders of impaired claims or impaired interests that are not entitled to receive a distribution under the Plan are deemed to have rejected the Plan.

The Committee has prepared this Disclosure Statement pursuant to the provisions of section 1125 of the Bankruptcy Code, which requires that a copy of a plan or a summary thereof

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  and a written disclosure statement, containing adequate information about a debtor, be submitted

2  to holders of claims against, and interests in, the Debtor to enable creditors, interest holders, and

3  other interested parties to make an informed judgment in exercising their right to vote on such

4  plan.

5      **THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE**

6  **STATEMENT SHALL NOT CONSTITUTE AN ENDORSEMENT BY THE**

7  **BANKRUPTCY COURT OF THE PLAN, OR A GUARANTEE OF THE ACCURACY OR**

8  **COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE**

9  **STATEMENT.  THE COMMITTEE HAS PREPARED THIS DISCLOSURE**

10  **STATEMENT TO DISCLOSE THAT INFORMATION WHICH, IN ITS OPINION, IS**

11  **MATERIAL, IMPORTANT, AND NECESSARY TO EVALUATE THE PLAN.  THE**

12  **MATERIAL CONTAINED IN IT IS INTENDED SOLELY FOR THAT PURPOSE AND**

13  **SOLELY FOR THE USE OF KNOWN CREDITORS AND INTEREST HOLDERS OF**

14  **THE DEBTOR AND, ACCORDINGLY, MAY NOT BE RELIED ON FOR ANY PURPOSE**

15  **OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  IN ADDITION,**

16  **MATERIALS CONTAINED IN THIS DISCLOSURE STATEMENT ARE NOT**

17  **NECESSARILY SUFFICIENT FOR THE FORMATION OF A JUDGMENT BY ANY**

18  **CREDITOR OR INTEREST HOLDER OF THE PREFERABILITY OF ANY**

19  **ALTERNATIVE TO THE PLAN.**

20      The Committee proposed the Plan, as described herein, and believes it to be in the best

21  interests of all creditors, interest holders, and other parties in interest of the Debtor.

22  **B.**      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

23      **THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS**

24  **DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE**

25  **NOT YET BINDING ON CREDITORS OR INTEREST HOLDERS.  HOWEVER, IF THE**

26  **COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON**

27  **THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS**

28  **BANKRUPTCY CASE.**

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

1.      **Time and Place of Confirmation Hearing**

2

The hearing to confirm the Plan (the "Confirmation Hearing") has been scheduled for

3

February 20, 2021, at 2:00 p.m. (Pacific Daylight Time), or as soon thereafter as the matter may be

4

heard, in Courtroom 6C of the United States Bankruptcy Court,  Street, Santa Ana, California,

5

before the Honorable Mark Wallace, United States Bankruptcy Judge, presiding.  The

6

Confirmation Hearing may be adjourned from time to time without further notice except for an

7

announcement made at the hearing or any adjourned hearing.

8

**Due to the COVID Pandemic**, **the Court will conduct the hearing Telephonically,**

9

**using Courtcall.**  Online registration with CourtCall is available. For those who want to register

10

online, simply go to www.CourtCall.com and there you can follow the instructions for online

11

registration. It is imperative that parties register with CourtCall as early as possible to permit

12

sufficient time for CourtCall to process your request and for the Court to be notified by CourtCall

13

that you are appearing in a matter. You can also contact CourtCall directly by telephoning (866)

14

582-6878.

15

16

2.      **Deadline for Voting to Accept or Reject the Plan**

17

**To be counted as votes to accept or reject the Plan, you must properly fill out your**

18

**ballot(s) and send them so that the ballot is actually received (as set forth in paragraph B.4**

19

**below) on or before 5:00 p.m. (Pacific Daylight Time), on _____ (the "Voting**

20

**Deadline").  Any ballot that is not executed by a duly authorized person will not be counted.**

21

**Any ballot that is properly executed by the holder of the claim or interest, but which does**

22

**not indicate an acceptance or rejection of the Plan, or which indicates both acceptance and**

23

**rejection of the Plan, will be deemed as an acceptance of the Plan.**

24

3.      **Ballots and Voting Instructions**

25

In voting for or against the Plan, please use only the ballot sent to you with this Disclosure

26

Statement.    Votes cast to accept or reject the Plan will be counted by class.   Any ballot that is

27

executed by the holder of an allowed claim, but which does not indicate an acceptance or rejection

28

of the Plan shall be deemed an acceptance of the Plan. **Please read the voting instructions**

1  **contained within, or in a notice provided with, the ballot for a thorough explanation of**

2  **voting procedures applicable to your claim.**

3      Only the votes of claimants in the classes that are impaired by the Plan and are entitled to

4  vote will be counted to determine if the Plan is accepted.  In addition, as explained in this

5  Disclosure Statement, the Debtor will only count the votes of claimants (a) whose claims are listed

6  on the Debtor's schedules as undisputed, non-contingent, and liquidated in amount, or (b) who

7  filed a proof of claim or proof of interest in the Debtor's bankruptcy case, unless such claim or

8  interest has been disallowed or is the subject of an unresolved, timely filed objection at the time of

9  the Voting Deadline, absent an order of the Bankruptcy Court allowing such claim or interest for

10  voting purposes.  **The ballot form does not constitute a proof of claim or a proof of interest.**

11      **4.**    **Return of Ballot Forms**

12      Holders of claims and interests that are impaired by the Plan and that are entitled to vote

13  should vote on the Plan by completing and mailing or delivering the enclosed ballot to the

14  following address:

15          **Sulmeyer**Kupetz, A Professional Corporation
          333 South Grand Avenue, Suite 3400

16          Los Angeles, California 90071
          Facsimile:  (213) 629-4520

17          Attention:  Mark S. Horoupian
          E-mail: mhoroupian@sulmeyerlaw.com

18

19      The ballot may be returned in the pre-addressed envelope provided for such purpose.

20      **5.**    **Method of Delivery**

21      Ballots may be returned via regular U.S. Mail, postage prepaid, overnight delivery, hand

22  delivery, facsimile, or e-mail.  Oral ballots cannot be received or counted.  Creditors are therefore

23  urged to complete, date, sign, and return the enclosed ballot so that it will be received no later than

24  the Voting Deadline.  Due to the COVID-19 pandemic, voting via email is encouraged.

25      **6.**    **Procedure for Withdrawing or Changing Votes**

26      A holder of a claim or interest who has delivered a valid ballot voting on the Plan may

27  withdraw or change such vote solely in accordance with Rule 3018(a) of the Federal Rules of

28  Bankruptcy Procedure (the "Bankruptcy Rules"), which provides, in relevant part, that the

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Bankruptcy Court may permit a creditor or interest holder to change or withdraw its vote after

2  notice and hearing and for cause shown.

3       **7.      Deadline for Objecting to Confirmation of the Plan**

4       Any objections to confirmation of the Plan must be made in writing, must be filed with the

5  Clerk of the Bankruptcy Court, and served on counsel for the Committee and the Debtor, on or

6  before _____ (the "Plan Objection Deadline"), which is the date set forth in the notice

7  scheduling the Confirmation Hearing provided with the approved Disclosure Statement.

8  Bankruptcy Rule 3017 governs the form of objections.

9       **8.      Identity of Person to Contact for More Information Regarding the Plan**

10      If you have any questions about procedures for voting your claim, or about the packet of

11  materials that you received, or if you wish to obtain (at your expense) additional copies of the

12  Plan, the Disclosure Statement, and any exhibits to those documents or copies of the Plan

13  documents, please contact **Sulmeyer**Kupetz, A Professional Corporation, 333 South Grand

14  Avenue, Suite 3400, Los Angeles, California 90071, Attention: Mark S. Horoupian, telephone

15  number (213) 626-2311, facsimile number (213) 629-4520, and email address

16  mhoroupian@sulmeyerlaw.com.

17      **9.      Effective Date**

18      The Plan will be consummated and "effective" on the first business day after the order

19  confirming the Plan entered by the Bankruptcy Court, or any court of competent jurisdiction,

20  becomes a "Final Order" (the "Effective Date") and the conditions precedent outlined in the Plan

21  have been satisfied.

22  **C.    Disclaimers**

23      The Committee is providing this Disclosure Statement and the Plan to the respective,

24  known holders of claims and interests pursuant to section 1125 of the Bankruptcy Code, in

25  connection with the solicitation by the Committee of votes to accept the Plan. The Plan is

26  described more fully below in this Disclosure Statement.

27      This Disclosure Statement is designed to provide adequate information to enable holders of

28  claims against, and interests in, the Debtor that are entitled to vote to make an informed judgment

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

on whether to accept or reject the Plan.  The Committee thus encourages all holders of claims and interests to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan.

For the convenience of creditors, this Disclosure Statement contains a summary of the Plan.  The Plan summary and the other statements contained in this Disclosure Statement are qualified in their entirety by reference to the Plan and the exhibits attached to this Disclosure Statement.  If any inconsistency exists between the Plan and the Disclosure Statement, then the terms of the Plan control.

In making a decision to accept or reject the Plan, each holder of a claim or interest must rely on its own examination of the Debtor, and the terms of the Plan, including the merits and risks involved, as described in this Disclosure Statement.  In addition, confirmation, and consummation of the Plan are subject to conditions precedent.  There can be no assurance that each of these conditions will be satisfied or waived, as provided in the Plan, or that the Plan will be consummated.  Even after the Effective Date, distributions under the Plan may be subject to substantial delays for holders of claims that are disputed.

Some matters discussed herein, such as projections or forecasts, are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  More specifically, the information contained in this Disclosure Statement, and certain other statements contained or incorporated by reference herein, including, without limitation, statements containing the words "may," "will," "believe," "anticipate," "expect," "intend," "can," "could," "estimate," "should," "project," and words of similar import constitute "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance, or achievements of the Debtor, or industry results, to be materially different from any future results, performance, or achievements expressed or implied by such forward-looking statements.  Such factors include, among others, the following: national and local general economic and market conditions; the Debtor's recruitment, employment, and retention of key personnel; liability of and claims asserted against the Debtor; obtaining and/or losing

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  significant customers; the generation of revenue and fluctuations in operating results; changes in

2  business strategy or development plans; business disruptions; effectiveness of operating initiatives

3  and marketing efforts; the availability and pricing of competitive services; availability of

4  financing; and other factors.  Given these uncertainties, readers of this Disclosure Statement are

5  cautioned to consider these risks and to not place undue reliance on such forward-looking

6  statements.  The Committee disclaims any obligation to update any such factors or to publicly

7  announce the result of any revisions to any of the forward-looking statements contained or

8  incorporated by reference herein to reflect subsequent events or developments.  Furthermore, the

9  financial information contained herein has not been the subject of an audit.  The projected

10  percentage of distributions represents the Committee's good faith estimate of what creditors will

11  receive pursuant to this Plan.  Subsequent to the date hereof, there can be no assurance that: (a) the

12  information and representations contained herein will continue to be materially accurate; or (b)

13  this Disclosure Statement contains all material information.

14      No party is authorized by the Committee to give any information or make any

15  representations with respect to the Plan other than that which is contained in this Disclosure

16  Statement.  Any information or representations given to obtain your acceptance or rejection of the

17  Plan that are different from or inconsistent with the information or representations contained

18  herein and in the Plan should not be relied upon by any holders of claims or interests voting on the

19  Plan.

20      This Disclosure Statement has been prepared in accordance with section 1125 of the

21  Bankruptcy Code and not in accordance with federal or state securities laws or other applicable

22  non-bankruptcy law.  Entities holding or trading in or otherwise purchasing, selling, or

23  transferring claims against, interests in, or securities of, the Debtor should evaluate this Disclosure

24  Statement only in light of the purpose for which it was prepared.

25      The Disclosure Statement has not been approved or disapproved by the Securities and

26  Exchange Commission (the "Commission") or by any state securities commission or similar

27  public, governmental or regulatory authority, and neither the Commission nor any such authority

28  has passed upon the accuracy or adequacy of the statements contained herein.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    With respect to contested matters, adversary proceedings and other pending or threatened

2  actions (whether pending or not), this Disclosure Statement and the information contained herein

3  shall not be construed as an admission or stipulation by any entity, but rather statements made in

4  settlement negotiations governed by Rule 408 of the Federal Rules of Evidence and any other rule

5  or statute of similar import.

6    The contents of this Disclosure Statement should not be construed as legal, business, or tax

7  advice.  Each creditor and interest holder should consult its own legal counsel and accountant as to

8  legal, tax, and other matters concerning its claim or interest.

9  **D.    Source of the Information Contained in the Disclosure Statement**

10    This Disclosure Statement was compiled from financial information obtained by the

11  Committee from the Debtor's management, and the financial advisors jointly retained by the

12  Debtor and the Committee, and from various sources believed to be accurate to the best of the

13  Committee's knowledge, information, and belief.

14                                              **II.**

15                                     **BACKGROUND**

16  **A.    Summary of the Debtor's Business, Online Platform, Financing History, Debt**

17        **Structure, Recent Financial Results, and Orion Litigation**

18    1.    Debtor was founded in 1972 and began as a mail order seller of small refracting

19  telescopes and accessories.  In 1976, Debtor started manufacturing its own products.  In or about

20  2008, Debtor moved its manufacturing operations to its Tijuana, Mexico facility, Meade

21  Instruments Mexico S.DE R.L. DE C.V. ("Meade Mexico"), of which Debtor is the 100% owner.

22    2.    Debtor currently leases premises at 27 Hubble, Irvine, CA 92618 ("Business

23  Premises") from The Irvine Company LLC at a monthly rate of $29,233.

24    3.    Debtor's manufacturing operations are conducted through Meade Mexico, which

25  manufactured telescopes generate approximately 36% of Debtor's total revenues.

26    4.    The remainder of the Debtor's revenues are generated by Debtor's sales of

27  telescopes, binoculars, spotting scopes, and other finished goods sourced from suppliers in Asia,

28  including but not limited to Ningbo (defined below).

MSH 2708522v1                                 9

5.      The Debtor currently sells finished products to approximately 160 wholesale customers, including distributors, online retailers like Costco and Amazon, a global network of authorized Meade retailers, and others located on every continent.

6.      Debtor does not maintain large stores of inventory and aims to efficiently tailor its manufacturing and inventory purchases to the prevailing level of demand in the market at any given time.  As such, the greatest source of Debtor's value is derived from its ongoing operations.

### 1.      **Debtor's Affiliates and Subsidiaries**

Debtor is a wholly owned subsidiary of Sunny Optics, Inc. ("Optics"), a Delaware corporation.  The parent corporation of Optics is China-based Ningbo Sunny Electronic Co., Ltd. ("Ningbo"), of which Optics is a wholly owned subsidiary.  As noted above, Debtor also owns 100% of Meade Mexico.  Debtor also wholly owns three defunct corporate entities that have not yet been dissolved: Meade Instruments Foreign Sales Corporation Limited, a Jamaican corporation, Meade Instruments (Guangzhou) Co., Ltd., a PRC limited liability company, and Simmons Outdoor Corp., a Delaware corporation.

### 2.      **The Orion Lawsuit.**

Orion is a California based distributor of telescopes and longtime competitor of Debtor on the distribution side of Debtor's business.   In early 2013, Meade became available for acquisition. Orion bid $4.5 million to acquire Meade, but Meade announced that it had entered into a merger agreement with a third-party Jinghua Optics & Electronics.  In the weeks following that announcement, Optics made an unsolicited bid of $5.5 million, which Meade accepted.  Optics and Meade closed the sale on September 13, 2013.  In 2016, Orion initiated a lawsuit ("Orion Lawsuit") against Debtor, Optics and Ningbo in the United States District Court for the San Jose Division of the Northern District of California, Case No. 5:16-cv-06370 EJD.  In the Orion Lawsuit, Orion federal and state antitrust , as well as unfair business practices pursuant to California's Business and Professions Code.  Specifically, Orion alleged that (a) Ningbo, a manufacturer and distributor of consumer telescopes, conspired with one of its competitors, also a manufacturer and distributor of consumer telescopes, to fix prices, restrict output and allocate markets, (b) that Ningbo (and another party that had previously settled) monopolized, attempted to

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   monopolize, or conspired to monopolize the supply and distribution markets for telescopes in the

2   United States, and (c) that Ningbo's 2013 acquisition of Meade violated Clayton Act § 7, which

3   bars anticompetitive acquisitions.

4   After three extremely costly years of litigation (with attorneys' fees and costs to defendants

5   exceeding $9 million), on November 26, 2019, a jury verdict was issued in favor of Orion against

6   all defendants jointly in the amount of $16.8 million. Treble damages were awarded pursuant to 15

7   U.S.C. § 15(a), bringing the joint and several liability under the impending judgment to

8   $50,400,000.

9   Following issuance of the verdict, a judgment was entered against Ningbo, but before

10   judgments were entered against Optics or the Debtor, each of those entities filed for Chapter 11

11   bankruptcy protection.  As discussed below, relief from stay was granted to permit entry of a final

12   judgment against the Debtor and Optics, and on April 15, 2020, final judgment was entered

13   against both of them.

14   **3.    The Debtor's Debt Structure**

15   Other than the claim of Shepard Mullin Richter & Hampton ("SMRH"), the Debtor did not

16   list any secured debt.  As discussed below, pursuant to a stipulation with the Debtor and the

17   Committee, SMRH agreed that any claim it has would be treated as a general unsecured claim, and

18   that any security interests it previously was granted are invalid.  As such there are no secured

19   claims against the Debtor.

20   The Debtor has approximately $41,000 in scheduled and filed priority claims, and

21   approximately $267,000 in claimants that may possess valid administrative claims under Section

22   503(b)(9) of the Bankruptcy Code.  SMRH has filed a claim in the amount of $2,686,409.64 (the

23   "SMRH Claim").   Orion filed a proof of claim in the amount of $53,660,743.46 (the "Orion

24   Claim"), of which $16.8 million was awarded as compensatory damages, and the balance

25   reflecting treble damages and attorney's fees.  A third significant claim has been scheduled in

26   favor of Ningbo in the amount of $11,092,576.66 (the "Ningbo Claim").  In addition to these

27   claims, there are approximately $970,000 of general unsecured claims.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

4.        <u>**Recent Financial Results**</u>

Over the past four full fiscal years (measured from March 1 through February 28), the Debtor generated revenues as follows:

a.        For fiscal year 2017, the Debtor generated $12.6 million in domestic sales, resulting in net income of $265,000.   When adding in the operating losses from Meade Mexico, the net combined loss was $369,000.

b.        For fiscal year 2018, the Debtor generated $12.36 million in domestic sales, resulting in net income of $121,000.   When adding in the operating losses from Meade Mexico, the net combined loss was $1.1 million.

c.        For fiscal year 2019, the Debtor generated $13.6 million in domestic sales, resulting in a net loss of $2.91 million.   When adding in the operating losses from Meade Mexico, the net combined loss was $3.59 million.

d.        For fiscal year 2020, the Debtor generated $12.6 million in domestic sales, resulting in a net loss of $5.4 million.   When adding in the operating losses from Meade Mexico, the net combined loss was $6.6 million.

e.        For the fiscal year 2021 (year to date as of October 31, 2020), the Debtor generated $7.5 million in sales, resulting in a net loss of $40,000.  When adding in the operating losses from Meade Mexico, the net combined loss was $960,000.

Throughout the Bankruptcy Case, the Debtor filed Monthly Operating Reports ("<u>MORs</u>") with the Court, which provide information regarding the Debtor's financial results during the Bankruptcy Case.  Copies of all filed MORs may be viewed at the Clerk's office, or through the Court's Case Management/Electronic Case Files system.  Copies of the MORs also may be obtained by contacting counsel for the Committee, whose name and contact information is set forth on the upper left corner of the first page of this Disclosure Statement.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**B.    Events Leading to Chapter 11 Filing**

While the Debtor had experienced financial losses in the past, those losses were primarily driven by the extraordinary litigation costs associated with the Orion Litigation[1], the only reason that the Debtor commenced this case was the jury verdict rendered against the Debtor in the Orion Lawsuit.

**C.    Significant Events**

**1.    Bankruptcy Proceedings**

The following is a summary of the important post-Petition Date events to date:

- Voluntary petition for relief filed on December 4, 2020 [Docket No. 1].

Order Granting Debtor's Emergency Motion for Joint Administration of Bankruptcy Cases entered by Bankruptcy Court on December 12, 2019 [Docket No. 43], and amended order entered December 20, 2019 [Docket No. 74].

- Order Granting Debtor's Emergency Motion for Order Authorizing Maintenance of Pre-Petition Bank Accounts entered by the Bankruptcy Court on December 12, 2019 [Docket No. 46].

- Order Granting Motion for Authority to Limit Notice of Certain Matters Requiring Notice Pursuant to FRBP 2002 and 9007, entered by the Bankruptcy Court on December 17, 2019 [Docket No. 62].

- Order Granting Motion to Approve Establishment of Adequate Assurance Payment to Debtor's Utilities, entered by the Bankruptcy Court on December 17, 2019 [Docket No. 63].

- Order Granting Debtor's Motion for Authority to Pay Pre-Petition Employee Wages and Benefits, entered by the Bankruptcy Court on December 17, 2019 [Docket No. 64].

- Order Granting Debtor's Motion for Use of Cash Collateral of Sheppard Mullin Richter & Hampton, LLP, entered by the Bankruptcy Court on December 17, 2019 [Docket No. 65].

---

[1] It should be noted that while SMRH represented not only the Debtor, but Ningbo, and Optics as well, the Debtor paid a majority of the legal bills.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

- Order Approving Stipulation to Approve Insider Compensation for Teresa Aniceto and Victor Aniceto, entered by Bankruptcy Court on December 20, 2019 [Docket No. 75].

- Appointment of Official Committee of Unsecured Creditors (the "Committee") Dated December 31, 2019 [Dkt 83].

- Bankruptcy Schedules and Statement of Financial Affairs filed January 6, 2020 [Dkt No. 86].

- Notice of Bar Date for Filing Proofs of Claim served and filed January 31, 2020 [Dkt No. 108].

- Order Approving Debtor's Application to Employ Grobstein Teeple as Accountants to the Debtor dated February 3, 2020 [Dkt. 111].

- Order Approving Debtor's Application to Employ Goe Forsythe & Hodges, LLP as General Counsel dated February 4, 2020 [Dkt 114].

- Amended Schedule G "Executory Contracts and Unexpired Leases" filed February 21, 2020 [Dkt 127].

- Order Approving Application to Employ SulmeyerKupetz as bankruptcy counsel to Official Committee of Unsecured Creditors dated February 25, 2020 [Dkt No. 130].

- Further Amended Schedule G "Executory Contracts and Unexpired Leases" filed March 6, 2020 [Dkt 146].

- Order Approving Joint Application by Committee and Debtor to Employ Broadway Advisors LLC ("Broadway") as Investment Banker dated April 1, 2020 [Dkt No. 171].

- Order Approving Debtor's Application to Employ Stetina Brunda Garred & Brucker, APC as Special Intellectual Property Counsel dated April 1, 2020 [Dkt. No. 172].

- Order Extending Deadline to Assume or Reject Unexpired Lease of Non-Residential Real Property dated April 3, 2020 [Dkt No 174].  Deadline was extended to July 1, 2020. Deadline was later extended by orders approving two stipulations [Dkt Nos 226, and 275] to current deadline of March 31, 2021.

- Order Granting Motion to Extend Debtor's Exclusive Period to File Plan of Reorganization dated April 3, 2020 [Dkt 175].  Exclusivity period was extended to September 1,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2020.   By stipulation, this extension did not apply to the Committee.

- Order Granting Relief from Automatic Stay in favor of Optronic Technologies, Inc d.b.a. Orion Telescopes & Binoculars ("Orion Relief from Stay Order") dated April 10, 2010 [Dkt 191].   By this order, Orion was granted limited relief from the automatic stay in order to request entry of a judgment against the Debtor and Optics in the Orion Lawsuit.

- Order Granting Motion for 2004 Examination of Debtor and Production of Documents dated April 17, 2020, [Dkt No. 197].

- Orders Granting First Interim Applications for Compensation by Grobstein Teeple, SulmeyerKupetz, Goe, Forsythe & Hodges, and Stetina Brunda, Dated April 29 and 30, 2020 [Dkt Nos. 202, 206, 207 and 208].

- Order Approving Application to Employ Chawla Law Group as Special Immigration Counsel dated May 13, 2020 [Dkt 215].

- Order Approving Joint Application by Debtor and Committee to Expand Scope of Broadway's employment dated June 24, 2020 [Dkt No. 227].

- Order Approving Joint Application to Employ Windes, Inc. as the Debtor's Certified Public Accountants, dated July 21, 2020 [Dkt No. 239].

- Order Approving Joint Application by Committee and Debtor to Employ Enrique A. Maldonoa Montfort of Ishinio, Esquer Y. Armada, SC, as Debtor's Mexican Special Counsel Dated August 5, 2020 [Dkt No. 249].

- Omnibus Order Granting Interim Fee Applications of Grobstein Teeple, Goe Forsythe & Hodges, LLP, SulmeyerKupetz, and Broadway Dated September 25, 2020 [Dkt No. 271].

- Order Approving Stipulation between Debtor, Committee, and Shepard Mullin Richter & Hampton, LLP ("SMRH") Setting Aside Liens of SMRH Dated November 9, 2020.   By the Stipulation, SMRH, the only alleged secured creditor of the Debtor, agreed that its claim was unsecured and that any and all liens that may have been granted to SMRH were invalid.   SMRH retained its proof of claim, and the Debtor retained its claims and defenses against SMRH.

- Order Approving Debtor's Application to Employ Sall Spencer Callas & Kreuger ("Sall Spencer") and Parker Mills, LLP ("Parker Mills") as Co-Special Litigation Counsel, Dated

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

December 4, 2020 [Dkt No. 297].  Sall Spencer and Parker Mills were retained on a contingency

fee basis to pursue potential legal malpractice and related claims against Debtor's  counsel in the

Orion Lawsuit, SMRH.

### 2.    Other Legal Proceedings

As described above, the Debtor was a party to the Orion Lawsuit.    As a result of the filing

of the bankruptcy petition, the Orion Lawsuit was stayed prior to the entry of a judgment against

the Debtor and Optics.  As a result of the Orion Relief from Stay Order, judgment in the Orion

Lawsuit was entered on April 15, 2020 against the Debtor and Optics in the amount of

$50,400,000.  The judgment remains unsatisfied.  Optics and Ningbo Sunny are jointly and

severally liable with respect to this obligation.

### 3.    Supply Agreement with Ningbo Sunny

The Debtor entered into an Agreement Regarding Interim Supply to Debtors (the "Supply

Agreement") with Ningbo Sunny and Orion pursuant to which Ningbo Sunny agreed to continue

to supply parts and finished goods to the Debtor, and Orion agreed that the Debtor could continue

to pay Ningbo Sunny directly for those goods notwithstanding Orion's judgment liens and other

judgment collection remedies against Ningbo Sunny.  The term of the Supply Agreement expires

on March 31, 2021.  Recently Ningbo Sunny advised that it has changed its name to Ningbo

Xinhui, and has requested that the Supply Agreement be amended to reflect that name change, and

that the term of the Supply Agreement be extended through March , 2021, and that it would be

terminable on 30 day's notice.    Orion has agreed to that amendment, and the parties are in the

process of drafting an amendment to reflect the same.

### 4.    Marketing of Assets for Sale and Plan Term Sheet

From the outset of this case, it was the intention of the Debtor and the Committee to sell

the Debtor's assets and operations to a third party.   Given the size of Orion's judgment a self-

funded reorganization was unlikely and impractical.  Accordingly, the Debtor and Committee

retained Broadway to act as an investment banker to market the business for sale.   Broadway

conducted extensive research and analysis to identify industry leaders in telescopes, optics, and

related hobbies and compile a list of targeted companies/individuals to receive marketing

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

materials.   It then prepared an Acquisition Opportunity Sales Deck, consisting of Company

Overview, Industry Outlook, Historical Financial Performance, Sales by Category and Geography,

and Inventory Breakdown.  In April 2020, Broadway initiated a telemarketing campaign in which

it identified likely bidders from the telescope, optics, and hobby industries and contacted them

directly via telephone to discuss opportunity and determine interest in Meade's assets.  Broadway

contacted over 29 targeted parties via telephone and video meetings including competitors and

equity funds/buy-out firms.   Broadway then prepared an Acquisition Opportunity Summary

("Teaser"), consisting of a Company Overview, Industry Overview, description of the major assets

being offered for sale, and a description of the opportunity.  On July 7, 2020, the Teaser was

approved and initially sent to a list of over 160 entities and individuals.  These potential buyers

represent the leaders in telescope and related industries who had not been contacted during the

telemarketing campaign, and also included private equity and hedge funds, intellectual property

attorneys, and bankruptcy professionals who may have clients interested in the assets.  The Teaser

was downloaded over 20 times.  Broadway established and managed digital due diligence data

room which included populating data room as information was received, tracking receipt of non-

disclosure agreements ("NDA") prior to assigning access to interested parties, acting as liaison

between interested parties and the Debtor to address questions raised during due diligence process,

and monitoring user activity.  Thirteen parties executed NDAs.  All parties who received access to

the data room spent a considerable amount of time in data room primarily focusing attention on

financials and fixed asset folders.  In total there were 1927 total downloads of the various files.

Broadway maintained regular communication with those parties who expressed an interest

in becoming the stalking horse bidder or who had expressed interest in purchasing specific assets.

In some instances, Broadway conducted almost daily telephone conversations to ensure the

potential buyers remained interested and answered questions regarding operations and sales

process.  Broadway also coordinated video tours of Meade's facilities in response to travel

restrictions in place due to the global pandemic.  Ultimately, two parties expressed interest in

becoming the stalking horse bidder for all assets of Meade, and one party submitted multiple

letters of intent.  The other provided proof of financing and was waiting to speak with Meade's

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  key supplier before submitting a letter of intent.  Three other parties confirmed interest in select

2  assets of Meade and expressed interest in participating in the auction but would not be willing to

3  submit an offer for all assets.  While these sale efforts were ongoing, the Committee engaged in

4  discussions with Orion who had expressed an interest in acquiring the assets of the business

5  through a plan of reorganization.  After considering all potential offers, and comparing them

6  against the value offered by Orion, and with the assistance and consultation of Broadway, the

7  Committee elected to proceed with Orion's offer to acquire the assets pursuant to a plan of

8  reorganization.[2]

9  **D.**    **Description of Available Assets and Their Estimated Value**

10      The Debtor's primary operating assets consist of (a) cash on hand, (b) existing inventory

11  and work in progress, (c) fixtures, furniture, and equipment, (d) intellectual property, and (e)

12  accounts receivable.[3]  Broadway estimates that the liquidation value of the Debtor's assets is

13  approximately $8.8 million and after wind down expenses, there would be total funds available for

14  distribution after liquidation of $7.55 million.  This asset value is based on a projection of asset

15  values, including inventory, cash on hand, and receivables using a projected Effective Date of

16  February 28, 2021.  Attached hereto as Exhibit 1 is the liquidation analysis prepared by Broadway,

17  which includes liquidation values and the assumptions used by Broadway in arriving at its

18  conclusions.

19  **E.**    **Claims Against SMRH and Other Potential Claims**

20      Subject to further investigation, the Committee believes that the Debtor holds claims against (a)

21  SMRH for alleged malpractice, which claims are being investigated and pursued by Sall Spencer and

22  Parker Mills ("SMRH Malpractice Claim"); (b) SMRH for receipt of potentially avoidable pre-petition

23  transfers ("SMRH Avoidance Claims" and collectively with the SMRH Malpractice Claim, the "SMRH

24  Claims"); (c) claims against Ningbo Sunny and/or Optics for contribution and indemnity, as well as

25  _____

26  [2] Orion, who is a member and chair of the Committee, recused itself from the vote to proceed with
its offer.

27  [3] The Debtor's potential litigation claims are discussed below and are not included in the Liquidation

28  Analysis.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    potentially avoidable transfers; and (d) claims to avoid and recover transfers made to other third parties.

2    The claims are hereinafter collectively referred to as the "Estate Litigation Claims". SMRH has entered

3    into a tolling agreement with the Debtor, which extends the statute of limitations through April 30, 2021

4    with respect to the SMRH Malpractice Claim. For avoidance of doubt, as discussed below, the SMRH

5    Claims will remain an asset of the Debtor, and upon the Effective Date, the Reorganized Debtor.

6         For informational purposes, a list of the transfers that were made within ninety days prior

7    to the Petition Date to trade creditors, aggregating more than $5,000, is attached hereto as <u>Exhibit</u>

8    <u>2</u>.

9         For informational purposes, a list of the transfers that were made within one year prior to

10    the Petition Date to entities that may be insiders (as defined in section 101(31) of the Bankruptcy

11    Code) is attached hereto as <u>Exhibit 3</u>. (<u>Exhibits</u> 2 and 3, collectively the "Transfer Exhibits").

12         The parties listed in the Transfer Exhibits may be subject to a fraudulent conveyance

13    and/or preference actions in the event it is determined that the payment received was a fraudulent

14    and/or preferential transfer recoverable by Debtor, the Plan Agent (discussed below) or a

15    subsequent bankruptcy trustee under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548,

16    549 or 550 or under applicable non-bankruptcy law that may be incorporated into or apply to the

17    foregoing sections of the Bankruptcy Code.

18         The Debtor may also undertake action, to the extent a valid basis exists, to recover

19    payments made to (or obtain refunds from) certain taxing authorities and governmental entities.

20         **THE COMMITTEE HAS NOT FULLY REVIEWED THE EXTENT OF ITS**

21    **ESTATE LITIGATION CLAIMS, INCLUDING, WITHOUT LIMITATION, WHETHER**

22    **OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE BROUGHT BY**

23    **THE PLAN AGENT AFTER THE EFFECTIVE DATE. THIS INVESTIGATION IS ON-**

24    **GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE. AS A**

25    **RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE**

26    **PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT,**

27    **NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR ESTATE**

28    **LITIGATION CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE**

1  **PLAN OR THE DISCLOSURE STATEMENT, AN ESTATE LITIGATION CLAIM MAY**

2  **BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO THE BAR**

3  **DATE LIMITATIONS SET FORTH IN THE PLAN.**

4  The Committee is unable to estimate at this time the funds that may be realized from the

5  recovery of fraudulent and/or preferential transfers, the SMRH Claims, as the amount of such

6  recovery depends on many factors including the merits of each underlying claim, the ability to

7  recover against a particular defendant regardless of the merits, the fees and costs that the Plan

8  Agent may incur to prosecute such claims, and many other factors. Additional value to the Estate

9  may be realized from the prosecution of such Estate Litigation Claims, in that parties that have

10  received avoidable transfers may have their Claims disallowed pursuant to section 502(d) of the

11  Bankruptcy Code, unless they return the avoidable transfer to the Estate.

12  **III.**

13  **SUMMARY OF THE PLAN OF REORGANIZATION**

14  **A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan**

15  As required by the Bankruptcy Code, the Plan classifies claims and interests in various

16  classes according to their right to priority. The Plan states whether each class of claims or

17  interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

18  **B.    Unclassified Claims**

19  Certain types of claims are not placed into voting classes; instead they are unclassified.

20  They are not considered impaired and they do not vote on the Plan because they are automatically

21  entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Committee

22  has not placed the following claims in a class:

23  **1.    Administrative Expenses**

24  An administrative expense is any right to payment constituting a cost or expense of

25  administration of the bankruptcy case allowed under section 507(a)(2) of the Bankruptcy Code.

26  Such expense includes (a) any actual and necessary costs and expenses of preserving the Debtor's

27  Estate, (b) any actual and necessary costs and expenses of operating the business of the Debtor

28  during the pendency of the bankruptcy case, (c) any expenses or obligations incurred or assumed

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

by the Debtor as a debtor in possession during the pendency of the bankruptcy case in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the debtor in possession, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by final order under sections 330 or 503 of the Bankruptcy Code, (e) any fees or charges assessed against the Estate under section 1930, chapter 123, title 128, United States Code, and (f) claims for goods received within 20 days of the Petition Date ("Section 503(b)(9) Claims").  The Bankruptcy Code requires that all administrative expense claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's estimated section 507(a)(2) administrative claims and their treatment under the Plan:

| Name | Amount Owed[4] | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 (estimated) | Paid, in full, by the Reorganized Debtor on the Effective Date |
| Office of the U.S. Trustee Fees | $_____ (estimated) | Paid, in full, by the Reorganized Debtor on the Effective Date |
| SulmeyerKupetz, A Professional Corporation | $225,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Goe Forsythe & Hodges | $245,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by |

---

[4] With respect to Professionals, the "Amount Owed" estimate accounts for application of any retainer andthe holdbacks from previous fee orders, and continued services through Confirmation.  The actual amount of professional fees and costs outstanding on the Effective Date may be higher or lower than the amount reflected above..

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
|---|---|---|
| Broadway Advisors | $190,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Grobstein Teeple | $22,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Stetina Brunda Garred & Brucker | $5,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Chawla Law Group | $5,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Enrique A. Maldonoa Montfort of Ishinio, Esquer Y. Armada, SC | $10,000 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the |

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| | | Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Windes, Inc. | $13,500 (estimated) | Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim. |
| Section 503(b)(9) Claims | $267,500 (estimated) | Projected Allowed Section 503(b)(9) Claims are listed in <u>Exhibit</u> 4 hereto.  Unless otherwise agreed to between the Committee and the holder of the Administrative Claim, the Allowed amount of such claim shall be paid, in full by the Reorganized Debtor on the Effective Date, or the entry of a Final Order allowing such claim.  With respect to the 503(b)(9) Claim held by Ningbo Sunny, said claim will be paid directly to Orion on account of Orion's judgement lien against Ningbo Sunny and its assets. |

The Bankruptcy Court must rule on, and approve, all administrative fees and expenses listed above, except for fees due and owing to the Clerk's Office and the Office of the United States Trustee.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.  All Professional fees and other Administrative Expense Claims shall be referred to as "Administrative Claims" or "Administrative Expense Claims."

The deadline to file requests for allowance of Administrative Expense Claims is thirty (30) calendar days after the Effective Date.  Other than post-Petition Date trade payables not payable in

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  the ordinary course of business until after the Effective Date, all applications for allowance and

2  payment of Administrative Claims that have not been paid, released, or otherwise settled,

3  including, but not limited to, final applications for allowance and payment of Administrative

4  Claims for professional fees and expenses, shall be filed by this deadline or forever be barred.

5  Professionals shall file a final application for allowance and payment of their fees and expenses in

6  accordance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and any orders

7  or rules of the Court, which shall act as the only necessary documentation of Administrative

8  Claims for professionals.

9        **2.**     **Priority Tax Claims**

10       Priority tax claims are certain unsecured claims for income, employment, and other taxes

11  owed to governmental units that are entitled to priority treatment and payment relative to other

12  unsecured claims pursuant to section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code

13  requires that each holder of such a section 507(a)(8) claim receive regular installment payments of

14  a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim, over

15  a period not exceeding five years from the Petition Date, in a manner not less favorable than the

16  most favored nonpriority unsecured claim provided by the Plan (other than cash payments made to

17  a class of creditors under section 1122(b) of the Bankruptcy Code).

18       The Committee understands that there are no priority tax claims. Except as otherwise

19  specifically provided for in the Plan, or in orders of the Bankruptcy Court, holders of Claims shall

20  not receive any payment on account of pre and post-Petition Date Penalty Claims arising in

21  connection with such claims.  Holders of such claims shall not assess or attempt to collect such

22  Penalty Claims from the Debtor, the Reorganized Debtor, the Estate, or any of their respective

23  assets or property.

24        **3.**     **Other Priority Claims**

25       Certain priority claims that are referred to in sections 507(a)(1), (a)(4), (a)(5), (a)(6), and

26  (a)(7) of the Bankruptcy Code, are required to be placed in classes.  These types of Claims are

27  entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a

28  claim receive cash, on the Effective Date, equal to the allowed amount of the claim.  Certain

1  employees of the Debtor have filed and scheduled priority employee wage claims.  The projected

2  allowed claims are listed in Exhibit 5 hereto.   Said claims as Allowed will be paid in full by the

3  Reorganized Debtor from the Cash on Hand on the Effective Date.

4  **C.**     **Classified Claims and Interests**

5         **1.**     **Classes of Unsecured Claims**

6         The following chart lists the classes containing the Debtor's Unsecured Claims asserted

7  against the Debtor and their treatment under the Plan:

| Class # | Description | Treatment |
|---------|-------------|-----------|
| 1 | Orion<br><br>Claimant:<br> Orion<br><br>Class 1 Claim Amount:<br>$53,660,743.46<br><br>Non-Insider<br><br>Impaired | The Allowed Unsecured Claim in this Class shall be paid or treated as follows:<br><br>On the Effective Date, in exchange for the Plan Consideration, defined below, a new company formed by Orion ("NewCo") shall receive title to all of the assets of the Debtor (the "Transferred Assets") not including the Estate Litigation Claims, free and clear of all liens, claims and encumbrances.  The Transferred Assets shall include, without limitation, all cash on hand on the Effective Date, after the payment of Administrative and Priority Claims, all cash equivalents, all accounts receivable, intellectual property, inventory (including finished goods and work in process), rights under executory contracts and leases that NewCo elects to assume ("Assumed Contracts"), all existing purchase orders, trade names, knowhow, customer lists, furniture, fixtures and equipment, websites and domain names, books and records, stock in Meade Mexico, motor vehicles, and all deposits. For avoidance of doubt, the Estate Litigation Claims are not Transferred Assets, and will remain property of the Estate and vest in the Reorganized Debtor on the Effective Date.<br><br>On or before the Effective Date, NewCo and/or Orion will provide the following consideration in exchange for the Transferred Assets:<br><br>1.  Payment of all Allowed Administrative Expenses;<br>2.  Payment of all Allowed Section 503(b)(9) Claims, provided however, that any Allowed Section 503(b)(9) claim in favor of Ningbo Sunny will be paid to Orion;<br>3.  Payment of all Allowed Priority Unsecured Claims |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

(estimated at $45,000);

4.   The first installment of the GUC Fund Amount.  The GUC Fund Amount equals $50,000 plus 30% of the current filed and/or scheduled general unsecured claims, not including the Class 1 Claim, claim of SMRH, of any insider claims.  The GUC Fund Amount shall be paid to the Reorganized Debtor to create the GUC Fund. The GUC Fund Amount will be paid equally in three annual installments, with the first being due on the Effective Date, the second being due on the First Anniversary of the Effective Date, and the third being due on the Second Anniversary Date of the Effective Date.  The second and third installments shall be reduced on a dollar for dollar basis to the extent that 5% of the gross revenues from the sale of Meade products by NewCo is less than the amount of the installment due.

5.  Assumption of all obligations under any Assumed Contracts.

6.  Assumption of the obligation to pay any costs associated with the SMRH Malpractice Action under the retention agreement with Sall Spencer and Parker Mills.

Orion will not share in any distributions from the GUC Fund.  However, Orion will share on a pro-rated basis in any recoveries not included in the GUC Fund, including proceeds of any Estate Litigation Claims. For purposes of determining the amount of Orions's pro-rated share of said recoveries, Orion's Allowed Claim shall be fixed at $16.8 million, and Ningbo Sunny's claim shall be fixed at $11,092,577.   As a result of its judgment enforcement actions against Ningbo Sunny and Peter Ni in Orion Lawsuit, Orion shall be assigned any distribution to which Ningbo Sunny, Optics, or Peter Ni would be entitled.  Prior to the computation of the pro-rata share of proceeds of the SMRH Malpractice Action, Orion will be reimbursed for any litigation costs it or Newco has advanced.

The Plan Agent shall have the right to enforce the obligations of NewCo to pay the 2nd and 3rd Installments due under the Plan.   In the event of a default in said payments, the Plan Agent shall have the right to recover its reasonable attorneys fees and costs from NewCo.  In the event of a default by the Debtor, Reorganized Debtor, or the Plan Agent, NewCo shall have the right to recover its reasonable attorneys fees and costs from the Debtor, the Reorganized Debtor or offset the same against the GUC Fund payments.

The Committee, Reorganized Debtor and other parties as necessary shall enter, execute, file, and/or record any such

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| | | further documents, and shall perform any and all actions, as may be necessary or appropriate, to effectuate the treatment of the Orion Claim in this Class 1 (the "Class 1 Documents"), and the transfer of title to the Transferred Assets.  To the extent necessary, NewCo and the Reorganized Debtor will cooperate with each other with respect to any required tax filings associated with the transfer of assets hereunder.<br><br>With respect to the consideration listed in items 1-4 above, it is anticipated that said payments will be funded from the available cash on hand in the Debtor's accounts on the Effective Date. |
| | | |

2.    **Classes of General Unsecured Claims**

General Unsecured Claims are unsecured claims not entitled to priority under section 507(a) of the Bankruptcy Code.  The Committee has reviewed all General Unsecured Claims, the Debtor has scheduled in its Schedules and that have been filed in this Bankruptcy Case.  The Committee reserves the right to dispute and file claim objections against any and all General Unsecured Claims.  The following chart identifies the Debtor's General Unsecured Claims and their treatment under the Plan:

| Class # | Description | Treatment |
|---|---|---|
| 2 | General Unsecured Claims<br><br>Claimants:<br><br>*See* Exhibit 6 for list of Class 2 Claimants and estimated amount of claim.   This class consists of all Allowed General Unsecured Claims, but do not include the claims of Ningbo Sunny, Peter Ni, Optics, or Orion.<br><br>Non-Insider<br><br>Impaired | The Allowed General Unsecured Claims in this Class shall be paid or treated as follows:<br><br>Allowed General Unsecured Claims shall receive a pro rata Distribution of the cash available in the GUC Fund, after payment of fees and expenses of the Plan Agent (the "Net Funds"), in full and final satisfaction of their Allowed Claims. Interim Payments shall be made out of the Net Funds by the Plan Agent as soon as there are sufficient Net Funds to make a distribution of at least $50,000 in the aggregate, and thereafter, further interim distributions shall be made at the discretion of the Plan Agent as Net Funds become available, provided, however, that once all of the assets of the Estate have been fully liquidated, the Plan Agent shall make a final distribution of the Net Funds to holders of creditors in the class.<br><br>The source of payment to the holders of Allowed Claims |

|  |  | in this Class will be the GUC Fund, and the recoveries from Estate Litigation Claims, after payment of Class 1 creditor's pro rata share. |

| Class # | Description | Treatment |
| --- | --- | --- |
| 3 | Insider Creditor<br><br>Claimants:  Ningbo Sunny (scheduled)<br><br>Insider<br><br>Impaired | The Allowed Claim in this Class shall be paid or treated as follows:<br><br>Holder of Allowed Claim in this Class will receive no distribution of any kind, and such claims shall be extinguished on the Effective Date, except that, as described in the treatment of Class 1 above, for limited purposes of determining Class 1's pro rata distribution from the Estate Litigation Action recoveries, Ningbo Sunny's general unsecured claim shall be Allowed in the of $11,092,577 as scheduled. |

### 3.    Classes of Interest Holders

Interest holders are the parties who hold Equity Interests in the Debtor.  The following chart identifies the Debtor's Interest holders and their treatment under the Plan:

| Class # | Description | Treatment |
| --- | --- | --- |
| 4 | Equity Interests<br><br>Interest Holder:<br><br>Sunny Optics, Inc.<br><br>Insider<br><br>Impaired | The Allowed Equity Interests in this Class shall be treated as follows:<br><br>Equity Interests shall receive no distribution under the Plan but shall remain intact and shall constitute the initial Equity Interest in the Reorganized Debtor. Notwithstanding this provision and notwithstanding any corporate governance documents, after the Effective Date, Optics will have no authority to act on behalf of the Reorganized Debtor, with all such authority being specifically vested in the Plan Agent. |

## D.    Means of Confirmation of Plan

### 1.    Solicitation of Acceptances

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement that is approved by the bankruptcy court.  With this Disclosure Statement, the Committee is soliciting acceptances of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Plan by creditors who are impaired by, and entitled to vote under, the Plan.  This solicitation of

2   votes to accept the Plan is governed by the provisions of section 1125(b) of the Bankruptcy Code.

3   Violations of section 1125(b) of the Bankruptcy Code may result in sanctions by the Bankruptcy

4   Court, including disallowance of any improperly solicited vote.

5        **No representations or assurances, if any, concerning the Debtor or concerning the**

6   **Plan are authorized by the Committee other than as set forth in this Disclosure Statement.**

7   **You should not rely on any representations or inducements made by any person to secure**

8   **your vote other than those in this Disclosure Statement in determining whether to vote for or**

9   **against the Plan.  Any additional representations or inducements should be reported to**

10  **counsel for the Committee who will deliver such information to the Bankruptcy Court.**

11       **This is a solicitation solely by the Committee and is not a solicitation by any attorney,**

12  **financial advisor, accountant, members or other professional of the Committee.  The**

13  **representations, if any, made in this Disclosure Statement are those of the Committee and**

14  **not of any attorney, financial advisor, accountant, members or other professional of the**

15  **Debtor or Committee, except as may be otherwise specifically and expressly indicated.**

16       Except as otherwise expressly indicated, the portions of this Disclosure Statement

17  describing the Debtor, its business, assets, liabilities, and the Plan have been prepared from

18  information furnished or filed by the Debtor and the Committee.  In this regard, the Committee

19  has made every reasonable effort to be accurate in all material matters.  The Disclosure Statement

20  sets forth information from and about the Debtor without professional comment, opinion, or

21  verification and does not suggest comprehensive or exhaustive treatment has been given to matters

22  identified herein.  Each holder of a claim or interest, and any other party in interest, is urged to

23  consult with independent professionals and investigate any such matters prior to reliance.

24       2.       **Requirements for Confirmation of the Plan**

25       At the Confirmation Hearing, the Bankruptcy Court will determine whether the

26  requirements of section 1129 of the Bankruptcy Code have been satisfied, and, if so, will enter, an

27  order confirming the Plan (the "Confirmation Order").  The Committee believes that the Plan

28  satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code.  The Plan is being

1   proposed in good faith and the Committee believes that it has complied with, or will comply with,

2   all applicable provisions of the Bankruptcy Code.

3   **E.**      **Means of Effectuating the Plan**

4          **1.**      **Funding for the Plan**

5          Distributions to creditors under the Plan will be funded primarily from the following

6   sources:  (a) the Debtor's cash on hand on the Effective Date, (b) Orion and/or Newco's cash

7   contribution; (c) cash from Newco's operations (to fund the 2nd and 3rd Installments of the GUC

8   Fund Amount); and (d) the net recoveries from the Estate Litigation Claims.  The Committee has

9   not attached projections for NewCo's operations, because they would only be relevant to

10  demonstrate that NewCo will be able to meet the threshold to make the 2nd and 3rd Installments of

11  the GUC Fund Amount, which are limited to 5% of the gross revenue from the sales of the

12  Debtor's products after the Effective Date.   Unless the annual gross revenue of the sales of Meade

13  products after the Effective Date is less than approximately $2,300,000, the threshold to make the

14  full 2nd and 3rd installments will be exceeded.   Given that the Debtor has had domestic sales

15  averaging $12.775 million over the past 4 full fiscal years, the Committee is confident that NewCo

16  will be able to hit the minimum threshold of $2,300,000 which is less than 16% of the current

17  revenue.

18         **2.**      **Pre and Post-Confirmation Management**

19         Prior to and after bankruptcy, the direction of the Debtor's operations has been the general

20  responsibility of Victor Aniceto ("Aniceto"), the Debtor's president.

21         **3.**      **Post-Confirmation Management**.

22         Upon the Effective Date, Broadway, the Plan Agent, shall take the possession of the

23  Debtor's property and the management of its affairs.  Broadway shall be appointed as, and act as,

24  the Plan Agent for the purpose of making all Distributions provided for under the Plan.  On the

25  Effective Date, all of the assets of the Estate that are not transferred to NewCo, shall be transferred

26  to the Reorganized Debtor, and put under the control of the Plan Agent.

27         The Plan Agent shall have broad powers including all powers of a trustee appointed

28  pursuant to section 1104 of the Bankruptcy Code.   The Plan Agent shall have the exclusive right

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    to investigate and prosecute any and all claims of the Estate, including but not limited to any

2    SMRH Claims and any Estate Litigation Claims and shall have exclusive authority to oversee the

3    disbursements under the Plan.  The Plan Agent shall also have the authority to enforce the

4    payment obligations of NewCo under the Plan.  The Plan Agent shall have the authority to endorse

5    checks made payable to the Debtor and may execute any instruments or documents in the name of

6    the Debtor.   Further, the Plan Agent shall be authorized to open bank accounts in the name of the

7    Reorganized Debtor.

8         The Plan Agent shall have sole and absolute discretion over whether to prosecute, settle or

9    take action with respect to any and all claims of the Estate, including but not limited to Estate

10   Litigation Claims.  With respect to the Estate Litigation Claims, the Reorganized Debtor will

11   remain the holder of the attorney client privilege, and the Plan Agent shall have the authority to

12   exercise all powers of the holder of such privilege.  To the extent that the Debtor has commenced

13   any actions prior to the Effective Date, the Plan Agent shall be substituted as the party in interest

14   to continue to prosecute such actions. The Plan Agent shall exercise his reasonable business

15   judgment in determining whether to prosecute, settle or take action regarding any and all claims of

16   the Estate, including but not limited to Estate Litigation Claims.  With respect to any material

17   decision regarding the prosecution or compromise of the SMRH Claims, the Plan Agent shall first

18   consult with Orion.

19        The Plan Agent may compromise or settle any all claims of the Estate, including but not

20   limited to Estate Litigation Claims without further notice, hearing or Court order, provided,

21   however, that the resolution of any claim, either by or against the Debtor or its estate, where the

22   amount in controversy exceeds $500,000, the Plan Agent must seek and obtain approval from the

23   Bankruptcy Court.

24        The duties of the Plan Agent shall also include preparing and filing the post-confirmation

25   status reports with the Office of the United States Trustee and paying all post-confirmation

26   quarterly fees of the Office of the United States Trustee until the bankruptcy case is dismissed or a

27   final decree has been entered, whichever occurs first.  The Debtor, as the Reorganized Debtor, will

28   continue to exist after the Effective Date of the Plan.  Subject to the terms and conditions of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Plan, the Plan Agent, and not the current officers and directors of the Debtor, will have all of the

2   rights to take all actions of a corporation under the laws of the State of California.  Except as set

3   forth in the Plan expressly to the contrary, the current officers and directors of the Debtor will be

4   enjoined from exercising any corporate powers and rights accorded to the Debtor under its Articles

5   of Incorporation, Operating Agreement, By-Laws, and other corporate governance agreements, as

6   such corporate governance agreements may be amended by the Plan.  To the extent necessary, the

7   Plan Agent may amend any corporate governance documents for the Reorganized Debtor,

8   including any charters, bylaws, operating agreements, or other organization or formation

9   documents, as applicable, to carry out the provisions of the Plan.

10          <u>Compensation</u>:  The Plan Agent shall be compensated as follows:  The Plan Agent will

11   receive a fee of 3% of all amounts distributed under the Plan, provided, however, that the Plan

12   Agent will not receive a fee on amounts distributed on the Effective Date (i.e. to holders of

13   Allowed Administrative Claims, or Allowed Priority Claims).   In addition, the Plan Agent will be

14   entitled to recover his actual out-of-pocket expenses.  For avoidance of doubt, actual out-of-pocket

15   expenses shall not include general overhead expenses of the Plan Agent.  The Plan Agent's fees

16   and expenses shall be paid solely from the GUC Fund, except any fees and expenses due to the

17   Plan Agent from the distribution of any proceeds of the Estate Litigation Claims, which shall be

18   paid from said recoveries before distribution to creditors.

19          The Plan Agent is an established management consulting firm focused solely on advising

20   and assisting financially and operationally troubled companies.  The Plan Agent employs seasoned

21   professionals with over fifty years of combined turnaround, restructuring and crisis management

22   experience.  The Plan Agent's diverse disciplines as financial executives, sales and marketing

23   professionals, operating managers and private equity investors create a unique complementary

24   skill set that gives us a balanced approach to corporate renewal; one that leads to exceptional

25   results.

26          Broadway has served as trustee for Liquidating and Litigation Trusts in numerous high

27   profile cases and in cases of various sizes. The Plan Agent was chosen due to its highly capable

28   management poised to navigate the bankruptcy process as well as post-Effective Date liquidating

1  trusts in its fiduciary capacity.  The Plan Agent has the ability to affirmatively address the claims

2  reconciliation process, analyze and prosecute preference recovery avenues and cash on hand to

3  realize the highest recovery value for stakeholders and beneficiaries.

4       The Plan Agent will not be required to post any bond in connection with the making of any

5  distributions pursuant to the Plan.

6       **4.**       **Objections to Claims**

7       Except as otherwise provided in the Plan, after the Confirmation Order becomes a final

8  order, the Plan Agent and Orion shall have the coextensive authority to file objections to claims

9  from and after the Effective Date.  The Plan Agent and Orion shall consult with each other before

10  taking any action with respect to any Disputed Claim.   If the Plan Agent and Orion do not agree,

11  in writing, as to the resolution of any Disputed Claim, they must first seek approval of any such

12  resolution by the Bankruptcy Court on regularly noticed motion, with Orion and the Plan Agent

13  each reserving their respective rights to object to any proposed resolution.

14       Except as otherwise specifically provided in the Plan or in the Confirmation Order, all

15  objections to claims shall be filed and served not later than one hundred eighty (180) calendar days

16  after the Effective Date (the "<u>Claim Objection Deadline</u>"), unless such period is extended by

17  Bankruptcy Court order.  Objections to any claims filed after entry of the Confirmation Order,

18  including, but not limited to, claims arising pursuant to section 502(h) of the Bankruptcy Code,

19  and any objections to claims filed after any particular Claim Objection Deadline in effect at the

20  time, shall be filed by the Reorganized Debtor or Orion not later than one hundred eighty (180)

21  calendar days after proof of such claim is filed, unless such period is extended by Bankruptcy

22  Court order.

23       **5.**       **Amendments to Claims; Claims Filed After the Confirmation Hearing**

24       Except as otherwise provided in the Plan, after the Confirmation Hearing, a proof of claim

25  may not be filed or amended without the authorization of the Bankruptcy Court and, even with

26  such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to

27  decrease, but not to increase, the amount set forth therein.  Except as otherwise provided in the

28  Plan and in the immediately preceding sentence, any proof of claim (whether filed to assert a new

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  claim or to amend a previously filed claim) filed after the Confirmation Hearing shall be deemed

2  Disallowed in full and expunged without any action.   The filing of any new Claim shall not create

3  an obligation for NewCo to increase the distributions to the GUC Fund.

4  **6.    Interest Pending Allowance of Claims**

5  Except as specifically provided for in the Plan, in the Confirmation Order, or in some other

6  order of the Bankruptcy Court, interest shall not accrue on General Unsecured Claims, and no

7  holder of such a claim shall be entitled to interest accruing on or after the Petition Date.  To the

8  extent the Plan Agent, Orion or any other party in interest objects to the allowance of any Claim,

9  nothing in the Plan shall be deemed to imply or create for the holder of any Disputed Claim any

10  entitlement to receive interest upon the allowed amount of any such Disputed Claim as a result,

11  *inter alia*, of the delay in payment of such claim, except as expressly stated in the treatment

12  pursuant to the Plan.

13  **7.    Distributions to be Made Pursuant to the Plan**

14  Any Distribution required to be made on the Effective Date or the entry of a Final Order

15  will be deemed timely if made as soon as practicable after such date and, in any event, within

16  fourteen (14) calendar days after such date.  Any Distribution required to be made upon a

17  Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim will be

18  deemed timely if made as soon as practicable thereafter and, in any event, within fourteen (14)

19  calendar days thereafter.

20  Unless otherwise specifically provided for in the Plan, in the Confirmation Order, or in

21  some other order of the Bankruptcy Court, interest shall not accrue on Claims, and no holder of a

22  Claim shall be entitled to interest accruing on or after the Petition Date or the Confirmation Date.

23  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the

24  Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim

25  becomes an Allowed Claim.

26  Cash payments made pursuant to this Plan shall be in Cash by the means agreed to by the

27  payor and the payee, including by check drawn on a domestic bank or by wire transfer from a

28  domestic bank, or, in the absence of an agreement, such commercially reasonable manner as the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Reorganized Debtor shall determine in its sole discretion.

2        Any Distribution due on a day other than a Business Day shall be made, without interest,

3    on the next Business Day.

4        Under the Plan, no payments of fractions of cents will be made.  When any payment of a

5    fraction of a cent is contemplated, the actual payments shall reflect a rounding of such fraction to

6    the nearest whole cent (.5 cent distributions shall be rounded down).  If a Cash payment otherwise

7    provided for under the Plan on account of an Allowed Claim would be $5.00 or less (whether in

8    the aggregate or on any distribution date), the Reorganized Debtor shall not be obligated to make

9    such Distribution on account of such Allowed Claim.  In the event the Reorganized Debtor elects

10   not to make such a Distribution, the holder of such Claim shall have no recourse against the

11   Reorganized Debtor, the Estate, the Plan Agent, or the Debtor, and its right to receive such

12   Distributions shall be extinguished.

13       Any federal, state, or local withholding taxes or other amounts required to be withheld

14   under applicable law shall be deducted from Distributions under the Plan.  All Entities holding

15   Claims shall be required to provide any information necessary to effect the withholding of such

16   taxes.

17       As to Distributions, any reference to the Reorganized Debtor shall include the Plan Agent.

18       **8.    Unclaimed Property; Void Checks**

19       For a period of one-hundred-eighty (180) calendar days after any particular Distribution is

20   made pursuant to this Plan, checks and other property that is unclaimed (including checks that

21   have been returned as undeliverable without a proper forwarding address and checks that were not

22   mailed or delivered because of the absence of a proper address to which to mail or deliver the

23   same) with respect to such Distribution shall be distributed to the holders of Allowed Claims

24   entitled thereto upon the presentment to the Reorganized Debtor of satisfactory proof of

25   entitlement.

26       On the first day after the expiration of such one-hundred-eighty (180) calendar day period:

27   (a) holders of Allowed Claims previously entitled to such undeliverable or unclaimed property

28   shall no longer be entitled thereto, (b) such claims shall be deemed Disallowed for all purposes,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  and (c) the then remaining Cash constituting such undeliverable or unclaimed property with

2  respect to such Distribution shall be re-designated as and become distributable cash.  If a check

3  issued by the Reorganized Debtor in respect of an Allowed Claim is not negotiated within sixty

4  (60) calendar days after the date of issuance, it shall be null and void.  A payee may request the

5  Reorganized Debtor to reissue a check prior to the expiration of the one-hundred-eighty (180)

6  calendar day period set forth above.

7

8      The Reorganized Debtor and Plan Agent shall have no obligation to locate or attempt to

9  locate any holder of a Claim (a) whose distribution has been returned as undeliverable without a

10  proper forwarding address, and (b) whose distribution was not mailed or delivered because of the

11  absence of a proper address to which to mail or deliver the same.

12      **9.**      **Disputed Claims and Disputed Claims Reserve**

13      If a dispute arises as to the identity of a holder of an Allowed Claim, who is to receive any

14  Distribution, the Reorganized Debtor is authorized, in lieu of making such Distribution to such

15  entity, make such Distribution into a Disputed Claims Reserve until the disposition thereof shall

16  be determined by court order or by written agreement among the interested parties to such dispute.

17      The Reorganized Debtor is authorized to maintain a Disputed Claims Reserve for (a)

18  Disputed Administrative Expense Claims, and (b) Disputed Priority or Unsecured Claims.  The

19  amounts reserved with respect to such disputed items shall be distributed as provided in the Plan

20  after the allowed amounts thereof are determined by Final Order or otherwise resolved.  Any

21  Distributions on a Disputed Administrative Expense Claim or Disputed Priority, or Unsecured

22  Claim that has become allowed by Final Order as otherwise provided in the Plan will be

23  distributable as such amounts would have been distributable had the same been allowed as of the

24  Effective Date.

25      **10.**      **No Distributions Pending Allowance**

26      Notwithstanding any other provision of the Plan, no payments or Distributions shall be

27  made with respect to all or any portion of a Disputed Claim, unless and until all objections to such

28  Disputed Claim have been settled, withdrawn, or determined by a Final order.  No holder of a

1  Disputed Claim shall have any claim against any property of the Estate on account of such

2  Disputed Claim until such Disputed Claim becomes Allowed.

3       **11.**     **Post-Confirmation Professionals and Fees**

4       After the Effective Date, the Reorganized Debtor shall be permitted to retain or employ

5  any professional (or maintain employment of any professional the Debtor employed prior to the

6  Effective Date) without the need for any notice to creditors and without the need for obtaining any

7  approval or order of the Bankruptcy Court.  Any professional employed by the Debtor or

8  Reorganized Debtor, as applicable, after confirmation of the Plan will be entitled to obtain

9  payment of all fees and costs incurred after confirmation of the Plan in the ordinary course of

10  business as a post-confirmation operating expense from funds of the Estate, the Debtor, or the

11  Reorganized Debtor, without the need for any notice to creditors or other parties in interest and

12  without the need for obtaining any approval of the Bankruptcy Court.  With respect to the

13  retention of Sall Spencer and Parker Mills, NewCo will fund the obligation to advance costs as

14  provided for in the retention agreement with said counsel.

15       **12.**     **Discharge of all Claims and Interests and General Releases**

16       Except as otherwise specifically provided by the Plan or in the Confirmation Order, entry

17  of the Confirmation Order (subject to the occurrence of the Effective Date) acts as a discharge of

18  all Claims against, Liens on, and Interests in, the Debtor, the Debtor's assets, and its respective

19  properties, arising at any time before the entry of the Confirmation Order, regardless of whether a

20  proof of claim or interest thereof was filed or was deemed filed, whether the Claim or Interest is

21  an Allowed Claim or an Allowed Interest, or whether the holder thereof votes to accept the Plan or

22  is entitled to receive a Distribution thereunder. The Confirmation Order shall be a judicial

23  determination of discharge of all liabilities of the Debtor, subject to the occurrence of the Effective

24  Date.

25       Except as otherwise specifically provided in the Plan or in the Confirmation Order, the

26  Distributions and rights that are provided in the Plan shall be in complete satisfaction, settlement,

27  release, and discharge of, and in exchange for, effective as of the Confirmation Date (but subject

28  to the occurrence of the Effective Date), (a) all Claims and Causes of Action against, liabilities of,

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Liens on, obligations of and Interests in the Debtor or the Reorganized Debtor, and the assets and

2  properties of the Debtor or the Reorganized Debtor, whether known or unknown, and (b) all

3  Causes of Action (whether known or unknown, either directly or derivatively through the Debtor

4  or the Reorganized Debtor) against, Claims (as defined in Section 101 of the Bankruptcy Code

5  and in the Plan) against, liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or

6  indirect assets and proprieties of, and obligations of successors and assigns of, the Debtor, the

7  Reorganized Debtor and its successors and assigns based on the same subject matter as any Claim

8  or based on any act or omission, transaction or other activity or security, instrument or other

9  agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was

10  or could have been the subject of any Claim or Interest, in each case regardless of whether a proof

11  of claim or interest was filed, whether or not Allowed and whether or not the holder of the Claim

12  or Interest has voted on the Plan.  Nothing herein shall be deemed a discharge of any claims Orion

13  has, may have, or may hereinafter acquire against any party other than Meade.

14      **13.    Injunctions and Releases**

15      The Confirmation Order shall enjoin the prosecution, whether directly indirectly,

16  derivatively, or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right,

17  Cause of Action, liability, or Interest released, discharged, or terminated pursuant to the Plan.

18  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that

19  have held, currently hold, or may hold, a Claim or other debt or liability that is extinguished, or an

20  Interest or other right of an equity security holder that is extinguished, pursuant to the terms of the

21  Plan, are permanently enjoined from taking any of the following actions against the Debtor, the

22  Debtor's Estate, the Reorganized Debtor, the Plan Agent, the Committee, or the Professionals or

23  their property on account of any such extinguished claims, debt, or liabilities, or extinguished

24  interests or rights: (a) commencing or continuing, in any manner, or in any place, any action or

25  other proceeding, (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment,

26  award, decree, or order, (c) creating, perfecting, or enforcing any Lien or encumbrance, (d)

27  asserting as setoff, right of subrogation, or recoupment of any kind against any debt, liability, or

28  obligation due to the Debtor or the Estate, and (e) commencing or continuing any action, in any

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.

2  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays

3  provided for in the Bankruptcy Case under section 105 or 362 of the Bankruptcy Code or

4  otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the

5  Effective Date and with respect to all property constituting, or designated to be, assets of the

6  Estate.  To the extent any injunction or stay is provided under the Plan or Confirmation Order, it

7  shall remain in effect following the Effective Date. Nothing herein shall be deemed an injunction

8  prohibiting Orion from taking such actions as it may deem necessary in collecting on its judgment

9  against any and all parties, except Meade.

10      **14.    Setoffs, Recoupment, and Defenses**

11      Nothing contained herein shall constitute a waiver or release by the Debtor, the

12  Reorganized Debtor, or the Estate, of any rights of set-off or recoupment, or of any defense, any of

13  them may have with respect to any Claim or Interest (including, without limitation, rights under

14  section 502(d) of the Bankruptcy Code).  Pursuant to section 553 of the Bankruptcy Code or

15  applicable non-bankruptcy law, the Reorganized Debtor, on behalf of the Estate, may set-off

16  against any Allowed Claim and Distribution to be made pursuant to the Plan on account of such

17  Allowed Claim before any Distribution is made on account of such Allowed Claim, any pre-

18  Petition Date or post-Petition Date account stated, claim, right, or Cause of Action which the

19  Reorganized Debtor or the Estate may possess against the holder of such Allowed Claim.

20      Neither the failure to effect such set-off nor the allowance of any Claim will constitute a

21  waiver or release by the Reorganized Debtor or the Estate of any such account, claim, right, and

22  Cause of Action that the Reorganized Debtor or the Estate may possess against the holder of such

23  Allowed Claim.  To the extent that the Reorganized Debtor fails to effect a valid set-off with a

24  creditor and seeks to collect a Claim from such creditor after a Distribution to such creditor

25  pursuant to the Plan, the Reorganized Debtor will be entitled to full recovery on its claim against

26  such creditor, notwithstanding any payment on the creditor's Allowed Claim pursuant to the Plan.

27      **15.    Bankruptcy Court Approval Relative to Post-Confirmation Matters**

28      Nothing contained in the Plan will be deemed to impair in any manner the right of the

1  Debtor or Reorganized Debtor, as applicable, or any party in interest, to seek at any time after the

2  Effective Date orders of the Bankruptcy Court approving actions to be taken consistent with the

3  Plan as may be necessary or desirable to effectuate the provisions of the Plan.

4      **16.    No Liability for Debtor, Its Officers, Directors, Members, or Agents**

5      **NEITHER THE DEBTOR,  THE PLAN PROPONENT, THE COMMITTEE, THE**

6  **COMMITTEE MEMBERS INCLUDING ORION, THE PLAN AGENT, NOR ANY OF**

7  **THEIR RESPECTIVE PAST OR PRESENT MEMBERS, EQUITY HOLDERS,**

8  **SHAREHOLDERS, NOR ANY OF THEIR RESPECTIVE PAST OR PRESENT**

9  **OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, PROFESSIONALS, OR**

10  **AGENTS DURING THE BANKRUPTCY CASE, SHALL HAVE OR INCUR ANY**

11  **LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST OR TO ANY OTHER**

12  **ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH, OR ARISING OUT**

13  **OF, THE BANKRUPTCY CASE, NEGOTIATION AND PURSUIT OF CONFIRMATION**

14  **OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF**

15  **THE PLAN, OR THE PROPERTY OR DISTRIBUTIONS TO BE DISTRIBUTED UNDER**

16  **THE PLAN EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OR**

17  ***ULTRA VIRES* ACTS, AND, IN ALL RESPECTS, THE DEBTOR, PLAN PROPONENT,**

18  **AND THE COMMITTEE, AND EACH OF THEIR RESPECTIVE MEMBERS,**

19  **OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS SHALL BE ENTITLED TO**

20  **RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND**

21  **RESPONSIBILITIES UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE**

22  **FOREGOING SHALL NOT SUPERSEDE THE "SAFE HARBOR" FROM LIABILITY**

23  **PROVIDED BY SECTION 1125(E) OF THE BANKRUPTCY CODE. THE TERMS OF**

24  **THIS RELEASE SHALL OPERATE AS A RELEASE AND WAIVER, AS OF THE**

25  **EFFECTIVE DATE OF THE PLAN, OF ALL CLAIMS AND CAUSES OF ACTION**

26  **AGAINST ANY PROFESSIONAL RETAINED IN THE BANKRUPTCY CASE AT THE**

27  **EXPENSE OF THE ESTATE. NOTHING HEREIN IS DEEMED TO LIMIT OR**

28  **OTHERWISE RELEASE ANY LIABILITY OF ANY PROFESSIONAL TO ITS**

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   RESPECTIVE CLIENT THAT MAY EXIST UNDER APPLICABLE STATE LAW OR

2   APPLICABLE RULES OF PROFESSIONAL CONDUCT.

3   **F.      Risk Factors**

4       HOLDERS OF CLAIMS AND INTERESTS SHOULD READ AND CONSIDER

5   CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER

6   INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE

7   DOCUMENTS DELIVERED TOGETHER HEREWITH) PRIOR TO VOTING TO

8   ACCEPT OR REJECT THE PLAN.  THE FOLLOWING ONLY REPRESENTS

9   EXAMPLES OF POTENTIAL RISKS THAT MAY IMPACT IMPLEMENTATION OF

10  THE PLAN.

11       **1.      Insufficient Proceeds to Fund Plan**

12       The success of the Plan is dependent on sufficient funds being available as of the Effective

13  Date and during the duration of the Plan from the following sources:  (a) the Debtor's cash on

14  hand on the Effective Date, (b) Orion's cash contribution; and (c) the net income derived from the

15  continued operation of the Debtor's business after the Effective Date by NewCo.  Based on current

16  projections, there will be sufficient cash on hand on the Effective Date to make all Effective Date

17  distributions, with the surplus of such funds being delivered to Orion as part of the Transferred

18  Assets.  As such, the Committee submits that there is minimal risk that all of the Effective Date

19  payments will not be made.   Only the 2nd and 3rd installments of the GUC Fund Amount are tied

20  to financial performance of NewCo in that the 2nd and 3rd installments are capped at 5% of the

21  gross revenue on the sale of Meade's products by NewCo.    The estimated amounts of the 2nd and

22  3rd installments are approximately $115,000.   As such, the only scenario in which the full amount

23  of the 2nd and 3rd installments would not be in the full is if the annual sales of the Meade products

24  by NewCo were under $2,300,000.   Given that the Debtor has averaged $12.775 million in

25  domestic sales over the past four full fiscal years, the Committee submits that this risk is relatively

26  low, as NewCo would only need to hit less than 16% of the Debtor's sales in order to reach the

27  threshold for the full payments.    While NewCo is likely to be able to achieve these numbers,

28  there is an operational risk associated with NewCo being able to maintain a supply chain of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  products from China, and/or downtime if it elects to move the manufacturing process from the

2  current factory to a new one.

3        2.        **Substantially Increased Amount of Claims**

4        The Committee sets forth in this Disclosure Statement an analysis of the estimated amount

5  of the claims that it believes will need to be paid pursuant to the Plan.  This analysis is based, in

6  primary part, upon the Debtor's books and records, the Disputed Claims of which the Plan

7  Proponent is aware, and the universe of proofs of claim filed in this case.  The Debtor believes that

8  the sources of funding will be sufficient to pay the distributions required under the Plan on

9  account of the claims that the Debtor anticipates will be allowed against the Estate.  If the General

10 Unsecured Claim pool (Class 2) is increased substantially, this would not result in the failure of

11 the Plan but may result in a lower percentage recovery to members of Class 2 then that which is

12 projected.  In particular, SMRH has filed a large unsecured claim against the Debtor in the amount

13 of approximately $2.7 million.   The Committee believes that the Estate has defenses to the claim,

14 and as discussed above, has substantial counterclaims and affirmative claims against SMRH.  For

15 these reasons, the Committee believes that SMRH's claim will be Disallowed, and as such, for

16 purposes of calculating the projected recovery to Unsecured Creditors, it has not included

17 SMRH's claim.  If the SMRH claim is allowed, however, the percentage recovery to Class 2 will

18 be substantially reduced.

19       3.        **Non-Confirmation of the Plan**

20       Even if all classes of claims or interests that are entitled to vote accept the Plan, the Plan

21 might not be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code sets forth

22 the requirements for confirmation and requires, among other things, that the confirmation of a plan

23 of reorganization is not likely to be followed by the liquidation or the need for further financial

24 reorganization of the Debtor, and that the value of distributions to dissenting creditors and equity

25 security holders not be less than the value of distributions such creditors and equity security

26 holders would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  The

27 Committee believes that the Plan satisfies all the requirements for confirmation of a plan of

28 reorganization under the Bankruptcy Code.  There can be no assurance, however, that the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Bankruptcy Court will also conclude that the requirements for confirmation of the Plan have been

2    satisfied.

3         **4.    Non-Occurrence of Effective Date of the Plan**

4         Even if all classes of claims and interests that are entitled to vote accept the Plan, the

5    Effective Date may not occur. The Plan sets forth conditions to the occurrence of the Effective

6    Date of the Plan, including the need for the Bankruptcy Court's confirmation of the Plan, which

7    may not be satisfied. The Committee believes that all requirements or conditions for the

8    occurrence of the Effective Date, including confirmation of the Plan, will be satisfied. There can

9    be no assurance, however, that such requirements or conditions will be satisfied.

10         **5.    Other Risks Related to Implementation of Plan**

11         The Committee believes the foregoing represents the primary potential risks to the

12    implementation of the Plan at this time. Other risks of which the Committee currently is unaware

13    or which are not identified above may exist. Parties are encouraged to review this Disclosure

14    Statement, the Plan, and all other materials supplied with the Disclosure Statement and Plan, with

15    their own counsel, financial advisor, or other professional, to independently assess potential risks

16    that may impact the parties' rights, interests, or proposed payments under the Plan or overall

17    implementation of the Plan.

18    **G.    Other Provisions of the Plan**

19         **1.    Executory Contracts and Unexpired Leases**

20              **a.    Assumption**

21         Effective as of, and conditioned on, the occurrence of the Effective Date, all of the

22    Debtor's remaining executory contracts and unexpired leases which have not been previously

23    assumed or rejected by the Debtor, and which are identified below, shall be deemed to be assumed

24    by the Estate and assigned to NewCo and will become valid and binding executory contracts and

25    unexpired leases of NewCo (the "Assumed Contracts and Leases"), unless such contract or lease

26    (i) was previously assumed, assumed and assigned, or rejected by the Debtor, pursuant to a Final

27    Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or

28    by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtor on

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be

2  rejected on the attached Schedule of Rejected Contracts ("Exhibit "7").  Orion, reserves the right,

3  prior to the Confirmation Hearing, to amend the Schedule of Rejected Contracts to add or remove

4  any executory contract or unexpired lease.

5         With respect to the Assumed Contracts and Leases for which a default exists on the

6  Effective Date, NewCo will be required to (a) cure or provide adequate assurance that NewCo will

7  promptly cure any default existing under any such executory contract and unexpired lease, (b)

8  compensate or provide adequate assurance that  NewCo will promptly compensate any other party

9  to such executory contract and unexpired lease for any actual pecuniary loss to such parties

10  resulting from any default existing under any such executory contract and unexpired lease, and (c)

11  provide adequate assurance of future performance under such executory contract and unexpired

12  lease.

13         The Debtor is the lessee under one unexpired lease of non-residential real property.  It is

14  anticipated that NewCo will assume the lease, described below, under the Plan, together with the

15  proposed amount of the Cure Claim based on the Debtor's records:

| LEASE | PROPOSED CURE CLAIM |
|---|---|
| Lease with Irvine Company for offices and warehouse located at 27 Hubble Drive, Irvine, CA<br><br>Expiration Date:  2/28/22 | $0—Debtor has remained current |

22         The Debtor is a party to contracts with various parties.  The following is a list of the parties

23  with whom the Debtor has a contract, NewCo anticipates assuming under the Plan (to the extent

24  such contract is an executory contract), together with the proposed amount of the Cure Claim

25  based on the Debtor's records:

| CONTRACTING PARTY and CONTRACT DESCRIPTION | PROPOSED CURE CLAIM |
|---|---|

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520)

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | |
|---|---|
| Astro Instruments<br><br>Non Exclusive Distribution Agreement for Morocco | $0.00 |
| Astroweden<br><br>Non Exclusive Distribution Agreement for Scandanavia | $0.00 |
| Fotobest PVT Ltd<br><br>Exclusive Distribution Agreement for India | $0.00 |
| Hama (UK) Ltd<br><br>Non Exclusive Distribution Agreement for United Kingdom and Ireland | $0.00 |
| Kenko Tokina Co, Ltd<br>Exclusive Distribution Agreement for Japan | $0.00 |
| Levenhuk<br><br>Non Exclusive Distribution Agreement for Czech Republic, Poland, Hungary and Slovakia | $0.00 |
| Nimax<br><br>Non Exclusive Distribution Agreement for France, Switzerland, Austria, Belgium, Netherlands, Luxemborg, Lithuania, Latvia, Estonia, Belarus, Croatia, Malta, Slovenia, Romania, Greece and Portugal | $0.00 |
| Singer Photographic<br><br>Non Exclusive Distribution Agreement for South Africa | $0.00 |
| Skypoint, SRL<br><br>Exclusive Distribution Agreement for Italy | $0.00 |
| Tasco Sales Australia<br><br>Non Exclusive Distribution Agreement for Australia and New Zealand | $0.00 |
| Ultralyt Developments, L.L.<br><br>Non Exclusive Distribution Agreement for Spain | $0.00 |

| Neofunds by Neopost<br><br>Postage Rental Agreement | $0.00 |
|---|---|
| Xinhui Optical Technology Co.-Exclusive Distribution Agreement for China | $0.00 |
| | |

As noted above, it is anticipated that NewCo will be assigned each of the unexpired leases and executory contracts identified above. To the extent the assumption of any contract or lease is not yet effective, NewCo may, and reserves the right to, modify, update, or otherwise supplement the list of Assumed Contracts and Leases, including, but not necessarily limited to, the addition of further contracts or leases to, or the removal of any contracts or leases from, the Assumed Contracts and Leases list.

With respected to any Assumed Contracts and Leases that are assigned to NewCo, NewCo will perform all related obligations whether arising before or after confirmation of the Plan. For the avoidance of doubt, such obligations shall include, but not be limited to, amounts owed under a contract or lease (as modified by any agreement of the parties) that have not been billed or not yet become due and any regular or periodic adjustment or reconciliation of charges under a contract or lease (as modified by any agreement of the parties). Any arrearages arising before confirmation of the Plan will be paid by NewCo on or before the first day of the month following the Effective Date unless the parties agree otherwise or the Court finds that a longer payment schedule still provides the creditor with timely cure and adequate assurance of future performance. Obligations that arise after confirmation of the Plan will be paid as they come due.

The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an order approving the assumption and assignment to NewCo of the Assumed Contracts and Leases, if any.

**b.**    **Rejections**

On the Effective Date, all executory contracts and unexpired leases listed on Exhibit 7, Schedule of Rejected Contracts (the "Rejected Contracts and Leases") will be deemed rejected. To the extent rejection of any lease or contract is not yet effective, the Committee may, and reserves

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  the right to, modify, supplement, or otherwise amend the list of Rejected Contracts and Leases,

2  including, but not necessarily limited to, the addition of further contracts or leases to, or the

3  removal of contracts or leases from, the Rejected Contracts and Leases list.

4       The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an

5  order approving the rejection of all such executory contracts and unexpired leases, if any.

6

7       **c.**       **<u>Bar Date for Rejection Claims</u>**

8       Any claim arising from the rejection of an executory contract or unexpired lease (a

9  "<u>Rejection Claim</u>") will be forever barred, will not be enforceable against the Estate, the Debtor,

10  or the Reorganized Debtor, and will not be entitled to any distribution under the Plan, unless a

11  proof of claim for such Rejection Claim is filed and served on the Committee within thirty (30)

12  calendar days after the Effective Date. Any claim based on the rejection of an executory contract

13  or unexpired lease will be barred if the proof of claim is not timely filed. Any Allowed Rejection

14  Claim will be treated as a Class 2 General Unsecured Claim.

15       **d.**       **<u>Cure Claims Schedule</u>**

16       The schedules of the amounts, if any, necessary to cure defaults under executory contracts

17  and unexpired leases to be assumed under the Plan (the "<u>Cure Claims Schedules</u>"), is set forth

18  above and in the Plan as part of the list of Assumed Contracts and Leases.

19       Pursuant to the Plan, any objection to the amounts in the Cure Claim Schedules (the "<u>Cure</u>

20  <u>Claim Objection</u>") must be filed and served upon counsel for the Committee on or before the

21  deadline to file any objection to Confirmation of the Plan, and such Cure Claim Objection may be

22  made as part of such party's objection to Confirmation of the Plan (the "<u>Cure Claim Objection</u>

23  <u>Deadline</u>"). The Cure Claim Objection need not be accompanied by a declaration but shall include

24  detailed account statements from the records of the lessor or contracting party that support the

25  Cure Claim Objection. In the event that any such Cure Claim Objection is not filed and served by

26  the Cure Claim Objection Deadline, the Cure Claim will be deemed forever to be as set forth in

27  the Cure Claim Schedules, and any Cure Claim in excess of such amount will be waived and will

28  be forever barred in the Bankruptcy Case, without further notice. If the Plan Proponent and/or

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Orion cannot consensually resolve any Cure Claim Objection in advance of the Confirmation

Hearing, without delaying confirmation of the Plan, and except as otherwise may be agreed or

later consensually resolved between the Committee and/or Orion and the particular objecting

lessor or contracting party, the following procedures shall apply: (a) NewCo shall pay the

undisputed portion of the Cure Claim as set forth in the Plan; (b) NewCo shall maintain the

disputed portion of the Cure Claim in a segregated account pending resolution of the Cure Claim

Objection; and (c) at the Confirmation Hearing, the Court shall set a post-confirmation status

conference for a date that is approximately 45 calendar days after the Confirmation Hearing, at

which time the Court will set a further hearing and related briefing schedule (which briefing shall

include declarations) to determine the merits of the outstanding Cure Claim Objection, in which

event, any unpaid amount of the Cure Claim (if any) will be due and payable the later of: (i) the

date for payment of the Cure Claim set forth in the Plan, or (ii) the fourteenth (14th) calendar day

after the entry of a Final Order fixing the amount of the Cure Claim and then only in the amount

fixed by such Final Order.

## 2. Retention of Jurisdiction

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case and any of the

proceedings arising from, or relating to, the bankruptcy case pursuant to section 1142 of the

Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code

and other applicable law, including without limitation, such jurisdiction as is necessary to ensure

that the purposes and intent of the Plan are carried out.  Such retention includes, among other

things, jurisdiction (a) to hear and determine any and all disputes regarding the operation and

interpretation of the Plan and the Confirmation Order; (b) to hear and determine the allowability,

classification, or priority of claims and interests upon objection by the Orion or the Reorganized

Debtor, or by other parties in interest with standing to bring such objection or proceeding; (c) to

hear and determine any and all disputes relating to the sale, refinance, or other disposition of

property or any other assets revesting in the Reorganized Debtor under the Plan, including, but not

limited to, the determination of the extent, validity, and priority of any lien asserted against such

property, any disputes with respect to the transfer of title of any such property, and any disputes

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  relating to any Cure Claim; (d) to construe and take any action to enforce the Plan, the

2  Confirmation Order, and any other order of the Court; (e) to issue such orders as may be necessary

3  for the implementation, execution, performance, and consummation of the Plan, the Confirmation

4  Order, and all matters referred to in the Plan, and the Confirmation Order; (f) to determine all

5  matters that may be pending before the Court in this case, or relate to property of the Estate, on or

6  before the Effective Date with respect to any person or entity related thereto; (g) to hear and

7  determine (to the extent necessary) any and all applications for allowance of compensation and

8  reimbursement of expenses of professionals for the period on or before the Effective Date; (h) to

9  hear and determine any request for payment of administrative expenses; (i) to hear and determine

10 all applications, motions, adversary proceedings, contested matters, and any other litigated matters

11 instituted during the pendency of this case whether before, on, or after the Effective Date; (j) to

12 hear and determine such other matters and for such other purposes as may be provided in the

13 Confirmation Order, (k) to modify the Plan under section 1127 of the Bankruptcy Code in order to

14 remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan

15 so as to carry out its intent and purpose; (l) except as otherwise provided in the Plan or the

16 Confirmation Order, to issue injunctions to take such other actions or make such other orders as

17 may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order,

18 or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

19 (m) to issue such orders in aid of consummation of the Plan or the Confirmation Order,

20 notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or

21 entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and (n) to

22 enter a final decree closing this case.  If the Bankruptcy Court abstains from exercising, or

23 declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of

24 the Plan, such abstention, refusal or failure of exercise shall have no effect upon and shall not

25 control, prohibit or limit the exercise of jurisdiction by any other court having competent

26 jurisdiction with respect to such matter.

27 **H.    Tax Consequences of the Plan**

28       THE FOLLOWING DISCUSSION IS A SUMMARY OF CERTAIN OF THE

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  SIGNIFICANT FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE

2  DEBTOR'S ESTATE AND TO HOLDERS OF CLAIMS AND IS BASED ON THE

3  INTERNAL REVENUE CODE OF 1986, AS AMENDED TO THE DATE HEREON,

4  TREASURY REGULATIONS PROMULGATED AND PROPOSED THEREUNDER,

5  JUDICIAL DECISIONS AND PUBLISHED ADMINISTRATIVE RULES AND

6  PRONOUNCEMENTS OF THE INTERNAL REVENUE SERVICE ("__IRS__") AS IN

7  EFFECT ON THE DATE HEREOF.  CHANGES IN SUCH RULES OR NEW

8  INTERPRETATIONS THEREOF COULD SIGNIFICANTLY AFFECT THE TAX

9  CONSEQUENCES DESCRIBED BELOW.

10  TO THIS POINT, ON DECEMBER 22, 2017, A BILL WAS SIGNED INTO LAW

11  H.R. 1, AS PASSED BY THE U.S. CONGRESS ON DECEMBER 20, 2017 (THE "__TAX__

12  __LEGISLATION__").  THE TAX LEGISLATION MAY HAVE A SIGNIFICANT IMPACT

13  ON THE TAXATION OF THE DEBTOR, THE REORGANIZED DEBTOR, AND

14  HOLDERS OF CLAIMS.  THE TAX LEGISLATION INCLUDES CHANGES IN TAX

15  RATES, LIMITS ON THE DEDUCTIBILITY OF INTEREST, THE ELIMINATION OF

16  THE ALTERNATIVE MINIMUM TAX, LIMITS ON THE DEDUCTIBILITY AND

17  CARRYBACK OF NET OPERATING LOSSES, OTHER INCREASES IN THE INCOME

18  BASE AND BROAD-BASED CORPORATE TAX REFORM.  DUE TO THE LACK OF

19  DEFINITIVE JUDICIAL AND ADMINISTRATIVE AUTHORITY WITH RESPECT TO

20  THE TAX LEGISLATION, SUBSTANTIAL UNCERTAINTY MAY EXIST WITH

21  RESPECT TO THE APPLICATION OF CERTAIN ASPECTS OF THE TAX

22  LEGISLATION.

23  NO RULINGS HAVE BEEN REQUESTED FROM THE IRS.  MOREOVER, NO

24  LEGAL OPINIONS HAVE BEEN REQUESTED FROM COUNSEL WITH RESPECT TO

25  ANY OF THE TAX ASPECTS OF THE PLAN.

26  THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE

27  PLAN TO THE HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL

28  CIRCUMSTANCES OF EACH HOLDER.  IN ADDITION, THIS DISCUSSION DOES

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  NOT COVER ALL ASPECTS OF STATE OR FEDERAL INCOME TAXATION THAT

2  MAY BE RELEVANT TO THE DEBTOR OR THE HOLDERS OF ALLOWED CLAIMS,

3  NOR DOES THE DISCUSSION DEAL WITH TAX ISSUES PECULIAR TO CERTAIN

4  TYPES OF TAXPAYERS (SUCH AS DEALERS IN SECURITIES, S CORPORATIONS,

5  LIFE INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, TAX-EXEMPT

6  ORGANIZATIONS, AND FOREIGN TAXPAYERS).  THIS DISCUSSION DOES NOT

7  ADDRESS THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS WHO DID NOT

8  ACQUIRE SUCH CLAIMS ON ORIGINAL ISSUE.  NO ASPECT OF FOREIGN, STATE,

9  LOCAL OR ESTATE AND GIFT TAXATION IS ADDRESSED.

10  THE FOLLOWING SUMMARY IS, THEREFORE, NOT A SUBSTITUTE FOR

11  CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL

12  CIRCUMSTANCES OF EACH HOLDER OF A CLAIM.  HOLDERS OF CLAIMS OR

13  INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR FOR THE

14  FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES TO THEM UNDER

15  THE PLAN.

16      1.      **Introduction**

17      The Plan, among other things, contemplates that, on or subsequent to the Effective Date,

18  certain holders of claims will receive cash on account of their allowed claims.  The Plan

19  contemplates that certain funds of the Estate shall be transferred to the Reorganized Debtor as Plan

20  Agent for distribution to creditors, and certain assets will be transferred to NewCo.  The federal

21  income tax consequences of the implementation of the Plan to a holder of a claim will depend,

22  among other things, upon the origin of the holder's claim, when the holder's claim becomes an

23  allowed claim, when, and if, the holder receives payment in respect to such claim, whether the

24  holder reports income using the accrual or cash method of accounting, whether the holder has

25  taken a bad debt deduction or worthless security deduction with respect to such claim and whether

26  the holder's claim constitutes a "security" for federal income tax purposes.

27      2.      **Consequences to the Debtor's Estate**

28

1    Based on an analysis of the Plan and Disclosure Statement by the Estate's tax advisors,

2    Grobstein Teeple, it is anticipated that the transactions contemplated by the Plan, including the

3    delivery of the Transferred Assets to Orion will not result in any taxable gain to the Estate.  In

4    fact, Grobstein Teeple estimates that based on the value realized by the Estate for the Transferred

5    Assets as weighed against the liquidation value of the same and after considering accrued

6    administrative claims, the transaction will result in a taxable loss for the Debtor.

7    In general, the Internal Revenue Code provides that a debtor in a bankruptcy case is not

8    taxable on cancellation of debt ("COD") income, but must reduce certain of its tax attributes (such

9    as its net operating loss ("NOL") carry forwards and its tax basis in its assets) by the amount of

10    COD income.  COD income results when the amount of debt discharged exceeds the consideration

11    given in exchange therefor, and is equal to such excess amount.  In this case, it is estimated that

12    the Debtor will realized approximately $10.7 million in COD income.   This income will not be

13    taxable pursuant to IRC Section 108, but will result in the reduction of the Debtor's tax attributes.

14    The Debtor has significant NOLs, currently estimated to be over $75.8 million.   Those NOLs will

15    be reduced by the COD income to approximately $65.1 million.

16    **3.**    **Consequences to Holders of Allowed Administrative Expenses Claims,**

17    **Allowed Priority Tax Claims, and Allowed Priority Wage Claims**

18    Holders of allowed administrative expenses claims, allowed priority tax claims, and

19    allowed priority wage claims generally will be paid, in full, in cash, on, or subsequent to, the

20    Effective Date.  Such holders that are subject to U.S. federal income tax must include such

21    amounts in their gross income in the taxable year in which such amounts are actually or

22    constructively received by them.

23    **4.**    **Holders of Allowed General Unsecured Claims**

24    Pursuant to the Plan, holders of Class 2 allowed general unsecured claims will be paid

25    varying amounts, in cash, during the duration of the Plan.  Such holders that are subject to U.S.

26    federal income tax must include such amounts in their gross income in the taxable year in which

27    such amounts are actually or constructively received by them.

28    As a general rule, a creditor whose existing claims are satisfied with payments under the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Plan will recognize gain or loss on the actual or constructive exchange of such creditor's existing

2  creditor claims (other than claims for accrued interest) for the consideration received equal to the

3  difference between (i) the "amount realized" in respect of such claims, and (ii) the creditor's tax

4  basis in such claims.  The "amount realized" will be equal to the sum of the cash and (i) as to a

5  cash-basis taxpayer, the fair market value of all other consideration received, and (ii) as to an

6  accrual-basis taxpayer, the fair market value of the other consideration received, less any amounts

7  allocable to interest, unstated interest or original issue discount.

8      The general rule governing gain/loss and exchanges is qualified, with the actual gain/loss

9  realized affected by, among other things, the application of tax free treatment in certain situations,

10  including, without limitation, whether the exchange would otherwise qualify as a reorganization,

11  or as the exchange of a "security" under Internal Revenue Code § 354.  Again, creditors are

12  advised to seek their own tax counsel to properly assess the tax consequences in their particular

13  situation.

14      Pursuant to Internal Revenue Code § 1223, the aggregate tax basis in the items received by

15  a creditor will equal the amount realized in respect of such items (other than amounts allocable to

16  any accrued interest).  The holding period for items received in the exchange will begin on the day

17  following the exchange.

18      In addition, the holder of a claim may recognize a loss on the Effective Date to the extent

19  that the amount received is less than the amount of their claim.  The character of such loss will be

20  determined by a number of factors, including the characteristics of the claim in the hands of the

21  holder.

22      Under the general rule governing exchanges under the Internal Revenue Code, in the case

23  of a creditor whose existing claims constitute capital assets in such creditor's hands, the gain

24  required to be recognized will be classified as a capital gain, except to the extent of interest

25  (including accrued market discount, if any), with any gain recognized thereon generally treated as

26  ordinary income to the extent of accrued market discount.  In this regard, it should be noted that

27  Internal Revenue Code § 582(c) provides that the sale or exchange of a bond, debenture, note or

28  certificate, or other evidence of indebtedness by a bank or certain other financial institutions shall

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  not be considered the sale or exchange of a capital asset.  Accordingly, in this context, any gain

2  recognized by such creditors as a result of the Plan's implementation would presumably be

3  ordinary income, notwithstanding the nature of their claims.  As a general rule, any capital gain

4  recognized by a creditor will be long-term capital gain with respect to those claims for which the

5  creditor's holding period is more than one year, and short-term capital gain with respect to such

6  claims for which the creditor's holding period is one year or less.  Again, the actual

7  characterization of gain/loss in this particular instance pursuant to the general rules governing

8  exchanges is qualified by, among other things, the qualifications noted above with respect to

9  realization of gain/loss and exchanges.  Creditors are advised to seek their own tax counsel to

10  properly assess the tax consequences in their particular situation.

11       If a creditor has a lower tax basis in one of the Debtor's obligations than its face amount,

12  the difference may constitute market discount under Internal Revenue Code § 1276. (Certain

13  obligations are excluded from the operation of this rule, such as obligations with a fixed maturity

14  date not exceeding one year from the date of issue, installment obligations to which Internal

15  Revenue Code § 453B applies and, in all likelihood, demand instruments).

16       Holders in whose hands the Debtor's obligations are market discount bonds will be

17  required to treat as ordinary income any gain recognized upon the exchange of such obligations to

18  the extent of the market discount accrued during the holder's period of ownership, unless the

19  holder has elected to include such market discount in income as it accrued.

20       **5.**    **<u>Orion</u>**

21       In exchange for its agreement to provide the GUC Fund Amount, assumption of

22  certain liabilities, and agreement not to participate in the distributions from the GUC Fund, Orion

23  will receive substantially all of the assets of the Debtor, not including the Estate Litigation Claims.

24  The Plan Proponent does not make any representation as to the potential tax consequences of such

25  treatment, and Orion is encouraged to consult with its own tax advisors and professionals.

26       **6.**    **<u>Equity Interests</u>**

27       Holders of interests may realize a loss on the Effective Date to the extent of such holder's

28  basis in such interest.  The character of this loss (i.e., long-term, short-term, capital or ordinary)

1  will be determined by a number of factors, including the characteristics of such interest in the

2  hands of the holder.

3       **7.      Distributions in Discharge of Accrued Unpaid Interest**

4       Pursuant to the Plan, distributions received in respect of allowed claims will be allocated

5  only to the principal amount of such claims, with no portion allocated to unpaid accrued interest.

6  However, there is no assurance that the IRS, for federal income tax purposes, would respect such

7  allocation.  In general, to the extent that an amount received by a holder of debt is received in

8  satisfaction of interest that accrued during its holding period, such amount will be taxable to the

9  holder as interest income (if not previously included in the holder's gross income).  Conversely, a

10 holder generally recognizes a deductible loss to the extent any accrued interest claimed was

11 previously included in its gross income and is not paid in full.  Each holder of a claim is urged to

12 consult its own tax advisor regarding the allocation of consideration and the deductibility of

13 unpaid interest for income tax purposes.

14      **8.      Information Reporting and Withholding**

15      Distributions to holders of allowed claims and interests under the Plan may be subject to

16 applicable withholding (including employment tax withholding).  Under federal tax income tax

17 law, interest, dividends, and other reportable payments may, under certain circumstances, be

18 subject to "backup withholding" at a rate of 30%.  Backup withholding generally applies if the

19 holder (a) fails to furnish its social security number or other taxpayer identification number

20 ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d)

21 under certain circumstances, fails to provide a certified statement, signed under penalty of perjury,

22 that the TIN provided is its correct number and that it is not subject to backup withholding.

23 Backup withholding is not an additional tax but merely an advance payment, which may be

24 refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from

25 backup withholding, including, in certain circumstances, corporations and financial institutions.

26 Absent a written opinion from the tax advisor of the Estate that federal, state, or local withholding

27 taxes are required with regard to any distributions, all distributions made shall be free and clear of

28 any federal, state, local, or foreign withholding taxes.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1      THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL

2  PURPOSES ONLY.  NEITHER THE COMMITTEE NOR ITS COUNSEL ARE EXPERTS

3  IN TAX MATTERS.  NEITHER THE DEBTOR, COMMITTEE NOR THEIR

4  RESPECTIVE  PROFESSIONALS HAVE IN ANY WAY ATTEMPTED TO PROVIDE

5  TAX ADVICE TO ANY OF THE DEBTOR'S CREDITORS OR EQUITY SECURITY

6  HOLDERS.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT

7  ITS OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND

8  OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

9

10                IV.

11      **CONFIRMATION REQUIREMENTS AND PROCEDURES**

12  **A.**    **Who May Vote or Object**

13      **1.**    **Who May Object to Confirmation of the Plan**

14      Any creditor or party in interest with the requisite legal standing may object to the

15  confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or

16  reject the Plan.

17      **2.**    **Who May Vote to Accept/Reject the Plan**

18      A creditor or interest holder has a right to vote for or against the Plan if that creditor or

19  interest holder has a claim which is both (a) allowed for voting purposes and (b) classified as an

20  impaired class.

21      **a.**    **What is an Allowed Claim/Interest**

22      As noted above, a creditor or interest holder must first have an allowed claim or interest to

23  have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in

24  interest objects to the claim or interest.  When an objection to a claim or interest is filed, the

25  creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice

26  and a hearing and before the Voting Deadline, either overrules the objection or allows the claim or

27  interest for voting purposes.

28      **THE BAR DATE FOR FILING A PROOF OF CLAIM OR INTEREST IN THIS**

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  CASE WAS APRIL 16, 2020.

2        A creditor or interest holder may have an allowed claim or interest even if a proof of claim

3  or interest was not timely filed.  A claim is deemed allowed if (a) it is scheduled on the Debtor's

4  schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (b) no

5  party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no

6  party in interest has objected to the interest.

7              **b.     <u>What is an Impaired Claim/Interest</u>**

8        As noted above, an allowed claim or interest only has the right to vote if it is in a class that

9  is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual

10  right of the members of that class.  For example, a class comprised of general unsecured creditors

11  is impaired if the Plan fails to pay the members of that class 100% of what they are owed on the

12  Effective Date of the Plan.  In this case, the Debtor believes that certain designated classes are

13  Impaired under the Plan, and, therefore, are entitled to vote to accept or reject the Plan.  Such

14  classes include Classes 1, 2, 3, and 4.  Parties who dispute the Debtor's characterization of their

15  claim or interest as being impaired or unimpaired may file an objection to the Plan contending that

16  the Debtor has incorrectly characterized their claim or interest.

17         **3.     <u>Who is Not Entitled to Vote</u>**

18        The following four types of claims are not entitled to vote:  (i) claims that have been

19  disallowed; (ii) claims in unimpaired classes; (iii) claims entitled to priority under section

20  507(a)(4), (a)(5), and (a)(7), and (iv) claims in classes that do not receive any value under the

21  Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to

22  have accepted the Plan.

23         **4.     <u>Votes Necessary to Confirm the Plan</u>**

24        If impaired classes exist, the Court cannot confirm the Plan unless (a) at least one impaired

25  class has accepted the Plan, without counting the votes of any insiders within that class, and (b) all

26  impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by

27  "cramdown" on non-accepting classes.  The Committee intends to seek "cramdown" on each class

28  of creditors who does not vote to accept the Plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

5.      **Votes Necessary for a Class to Accept the Plan**

A class of claims has accepted the Plan if such plan has been accepted by creditors, other than any entity designated under section 1126(e) of the Bankruptcy Code, that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors, other than any entity designated under section 1126(e), that have accepted or rejected such plan.

6.      **Treatment of Non-Accepting Classes**

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown".  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all the requirements except the voting requirements of section 1129(a)(8) of the Bankruptcy Code and if the Plan does not "discriminate unfairly" toward each impaired class that has not voted to accept the Plan as referred to in section 1129(b) of applicable law.

7.      **Request for Confirmation Despite Non-Acceptance by Impaired Classes**

In this case, in the event any impaired class does not accept, or is deemed not to have accepted, the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Committee as set forth in section 1129(b) of the Bankruptcy Code, which provides that the Bankruptcy Court may confirm the Plan notwithstanding its rejection by one or more impaired classes if certain requirements are met.  The Bankruptcy Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class that does not accept the Plan.

With respect to a class of unsecured claims, the fair and equitable test requires that if each creditor in such class does not receive property having a present value equal to the amount of such creditor's allowed unsecured claim, no junior class can receive or retain any property under the Plan.

8.    **Creditors and Interest Holders Bound By Terms of Plan**

**Whether or not a creditor or interest holder votes to accept the Plan, such party will be bound by the terms, provisions, and treatments set forth in the Plan if the Plan is accepted by the required majorities of creditors and is confirmed by the Bankruptcy Court, or is otherwise confirmed pursuant to section 1129(b) of the Bankruptcy Code.**

B.    **Liquidation Analysis**

Whether or not the Plan is accepted by each class of impaired claims and each class of impaired interests entitled to vote on the Plan, in order to confirm the Plan, the Bankruptcy Court must, pursuant to section 1129(a)(7) of the Bankruptcy Code, independently determine that the Plan is in the best interests of each holder of an impaired claim or impaired interest that has not accepted the Plan. This requirement is satisfied if the Plan provides each non-accepting holder of a claim or interest in such impaired class a recovery on account of such holder's claim or interest that has a value, as of the Effective Date, at least equal to the value of the distribution each such holder would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

To determine the value that holders of impaired claims and impaired interests would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's assets if the Debtor's bankruptcy case was converted to a chapter 7 liquidation case and the Debtor's assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's assets, augmented by cash held by the Debtor and reduced by certain increased costs and claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

Thus, for the Bankruptcy Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Committee maintains that this requirement is met since the liquidation value of the Debtor's assets will result in creditors receiving more under the Plan than such holders would receive under a chapter 7 liquidation, and unsecured creditors would end up receiving less in a chapter 7 than under the proposed Plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    In addition, should the case convert to a chapter 7, the costs to liquidate under chapter 7

2    would significantly increase administrative expenses.  If the chapter 11 was converted to chapter

3    7, a trustee would be appointed to administer the assets of the estate.

4    In a chapter 7 case, a chapter 7 trustee is appointed and entitled to compensation from the

5    Estate based on distributions.  The trustee would undoubtedly also employ counsel, an accountant,

6    and potentially other professionals, all of these costs would be imposed on the Estate in a chapter

7    7 liquidation and need to be considered in the liquidation analysis.

8    The Estate's costs of liquidation under chapter 7 would include the handling fees payable

9    to a chapter 7 trustee, as well as those payable to attorneys and other professionals the trustee

10    engages.  These claims would be paid in full from the liquidation proceeds before the balance of

11    those proceeds would be made available to pay the allowed chapter 11 administrative expenses,

12    and priority tax claims, only after which distributions would be made to general unsecured

13    creditors.

14    To precisely conduct a liquidation analysis is difficult since a chapter 7 dividend in this

15    instance is dependent on (a) the forced liquidation value of the Debtor's assets, and (b) the

16    professional fees, expenses and chapter 7 trustee fees and liquidation costs of the chapter 7

17    proceedings.  However, the Committee is certain that creditors will recover more under the Plan

18    than under chapter 7 for the following reasons.  First, the value of the Debtor's assets will be

19    materially undermined in the liquidation context.

20    Second, as noted, in a chapter 7 case a trustee is appointed and is entitled to compensation

21    from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys

22    disbursed, 10% on any amount over $5,000 but no more than $50,000, 5% on any amount over

23    $50,000 but no more than $1,000,000, and such reasonable compensation not to exceed 3% of

24    moneys over $1,000,000.

25    The Committee believes that the Plan satisfies section 1129(a)(7).  Attached hereto

26    as Exhibit "1" is a more detailed and comprehensive liquidation analysis, together with the

27    primary assumptions and other information supporting the analysis.   The liquidation model

28    reflects a hypothetical liquidation analysis to establish the "best interest of creditors" test for a

1  company pursuing a plan of reorganization, that is a liquidation process conducted by a chapter 7

2  trustee with an assumed start date around the Effective Date of the Plan.

3  In addition to the primary assumptions identified in the attached Liquidation Analysis, the

4  liquidation model assumes the following:

5  • The Debtor's liquidation is conducted in an orderly manner over a 7-month period.

6  • Projected inventory and cash ending balances as of an anticipated Effective Date in

7  March 1, 2021.

8  • The chapter 7 trustee hires a third-party liquidator to manage the liquidation process.

9  • Inventory is liquidated "as-is" without any form of value enhancement through

10  augmentation by supplementary or complementary products, and no new inventory purchases

11  during the liquidation period.

12  • Inventory is liquidated "where-is," meaning inventory located at the Debtor's

13  warehouse remains in place for sale, and inventory located on the Debtor's ecommerce platform is

14  liquidated through internet sales and not reprocessed or shipped to the warehouse for sale.

15  As set forth in the Liquidation Analysis, all creditors will receive at least as much or

16  significantly more under the Plan than they would receive in chapter 7.  Based on the information

17  in the Liquidation Analysis (Exhibit 1) and the Plan, below is a demonstration, in tabular format,

18  that all creditors and interest holders will receive at least as much under the Plan as such creditor

19  or holder would receive under a chapter 7 liquidation:

| CLAIMS AND CLASSES | ESTIMATED RECOVERY UNDER PLAN | ESTIMATED RECOVERY IN CHAPTER 7 |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims (if any) | 100% | 100% |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| Class 1 – Orion Unsecured Claim | 11.84%[5] | 14.4%[6] |
| Class 2 – General Unsecured Claims (Non-Insider) | 30% | 14.4% |
| Class 3 – Insider Claims | 0% | 14.4%[7] |
| Class 4 – Equity Interests | Equity in Debtor | 0.00% |

Since the Plan provides that holders of Unsecured Claims will receive more than what they would receive in a chapter 7 liquidation of the Debtor's Estate, the Plan satisfies the "best interests of creditors" test with respect to any member of any class who votes against the Plan. The Committee also submits that the Plan provides fair and equitable treatment to all classes of creditors and does not discriminate against the holder of any allowed claim or interest.

C.    **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor. There are at least two important aspects of a feasibility analysis. The first aspect considers whether there will be enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The second aspect considers whether there will be enough cash over the duration of the Plan to make the required Plan payments (the "Plan Period").

The Plan satisfies both prongs of feasibility. As set forth in the Liquidation Analysis, there will be sufficient cash on hand to make all Effective Date Payments. The Debtor has been very

---

[5] Value of Transferred Assets less Projected Effective Date Payments/$53.66 million

[6] Based on assumption that punitive damages portion would be subordinated.

[7] Distribution to Insider Claims, if Allowed, would be paid to Orion on account of judgment liens.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  successful in accumulating cash during the case, and that cash will be more than sufficient to make

2  all Effective Date Payment.  Second, and as described above, the only component of the Plan that

3  relies on financial performance in the future is the payment of the 2nd and 3rd installments of the

4  GUC Fund Amount.   In order to hit the threshold required to make the full 2nd and 3rd

5  Installments, NewCo will only need to reach 16% of the current average sales levels of the Debtor.

6  **V.**

7  **EFFECT OF CONFIRMATION OF PLAN AND MISCELLANEOUS PROVISIONS**

8  **A.**     **Discharge**

9      Except as otherwise provided in section 1141(d)(1), in the Plan, or in the order confirming

10  the Plan, the confirmation of the Plan (a) discharges the Debtor from any debt that arose before the

11  date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of

12  the Bankruptcy Code, whether or not (i) a proof of the claim based on such debt is filed or deemed

13  filed under section 501 of the Bankruptcy Code, (ii) such claim is allowed under section 502 of the

14  Bankruptcy Code, or (iii) the holder of such claim has accepted the Plan, and (b) terminates all

15  rights and interests of equity security holders and general partners provided for by the Plan.

16  **B.**     **Revesting of Property in Reorganized Debtor**

17      Except as otherwise provided in the Plan, on the Effective Date, all property and rights of

18  the Estate of the Debtor will revest in, or be transferred to, the Reorganized Debtor, free and clear

19  of all claims, liens, and rights of creditors and interests or interest holders.  Subject to the Plan,

20  such property and rights to be revested in, or transferred to, the Reorganized Debtor include,

21  without limitation, all alter ego and derivative claims existing as of the Effective Date, and the

22  Estate Litigation Claims.  The Transferred Assets will not vest in the Reorganized Debtor, but

23  instead will vest in, and be transferred to, NewCo free and clear of all claims, liens, and other

24  rights of creditors and interests of interest holders, except as otherwise expressly provided in the

25  Plan.

26  **C.**     **Modification of Plan**

27      At any time prior to the confirmation of the Plan, the Committee may supplement, amend,

28  or modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.  After the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   confirmation of the Plan, the Committee may (a) apply to the Bankruptcy Court to modify the

2   Plan, notwithstanding any substantial consummation of the Plan, if such modification is in the best

3   interests of the Debtor's estate and creditors, and (b) apply to the Bankruptcy Court to remedy

4   defects or omissions in the Plan or to reconcile inconsistencies in the Plan.  The order of the

5   Bankruptcy Court approving this Disclosure Statement prohibits modification of the Plan that is

6   prohibited by this section.

7   **D.**      **Nonconsensual Confirmation**

8         In the event that that any impaired class should fail to accept the Plan in accordance with

9   section 1129(a)(8) of the Bankruptcy Code, the Plan Propoent (a) may request that the Bankruptcy

10  Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and (b) may

11  modify the Plan in accordance with section 1127 of the Bankruptcy Code, and, unless the

12  Bankruptcy Court should determine that such modification adversely affects the treatment of any

13  class of creditor established by the Plan, without the need to amend this Disclosure Statement or to

14  resolicit votes with respect to the Plan.

15  **E.**      **Waiver of Conditions to Occurrence of the Effective Date**

16        The Committee may waive one or more of the conditions to the occurrence of the Effective

17  Date, provided, however, that such waiver will require the written consent of Orion.

18  **F.**      **Notice of Effective Date**

19        On the Effective Date or as soon thereafter as is reasonably practicable, the Plan Agent

20  shall file with the Bankruptcy Court a notice that states the Effective Date has occurred; provided,

21  however, that the Plan Agent shall have no obligation to notify any entity other than the United

22  States Trustee, creditors, and parties in interest of such fact through the filing of such notice with

23  the Bankruptcy Court and service of such notice exclusively through the Bankruptcy Court's

24  electronic case filing system.  The Plan shall be deemed to be effective as of 12:00 a.m.

25  (prevailing Pacific Time) on the Effective Date.

26  **G.**      **General Corporate Matters**

27        The Reorganized Debtor shall take such action as is necessary under the laws of the State

28  of California, federal law, and other applicable state law to effectuate the terms and provisions of

1   the Plan, Plan Documents, and related documents.

2   **H.      Corporate Actions**

3          On the Effective Date, all actions contemplated by the Plan will be deemed authorized and

4   approved in all respects, and the Reorganized Debtor (through the Plan Agent) shall be authorized

5   and directed to implement the provisions of the Plan, and any other agreements, documents, and

6   instruments contemplated by the Plan (including, without limitation, any appropriate amendments

7   to the Debtor's corporate governance documents), in the name of and on behalf of the Reorganized

8   Debtor.

9   **I.      Effectiveness of Securities, Instruments, and Agreements**

10         On the Effective Date, the Plan, the Plan Documents, and any other documents issued,

11  executed, delivered, filed, or recorded pursuant to the Plan, including, without limitation, (a)

12  amended corporate governance documents, if any, and (b) any other document issued, executed,

13  delivered, filed, or recorded in connection with any of the foregoing or any other Plan document,

14  shall be deemed approved and authorized by the Bankruptcy Court, and, to the extent not already

15  effective by their respective terms, shall become effective and binding in accordance with their

16  respective terms and conditions upon the entities that are parties thereto and shall be deemed to

17  become effective simultaneously.

18  **J.      Effectuating Documents; Further Transactions**

19         On the Effective Date, the Reorganized Debtor shall be authorized to execute, deliver, file,

20  or record such contracts, instruments, releases, indentures, and other agreements or documents,

21  and take such other actions as may be necessary or appropriate, to effectuate and further evidence

22  the terms and conditions of the Plan, and shall be authorized to certify or attest to any of the

23  foregoing actions, if necessary.

24  **K.      Approval of Agreements**

25         The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the

26  Plan documents, if any, (which are available for inspection by any party in interest upon written

27  request) and all transactions contemplated by the Plan.  Entry of the Confirmation Order shall

28  constitute approval of the Plan documents and such transactions.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    **L.    Post-Confirmation Status Report Case**

2        Within one-hundred-twenty (120) calendar days following the entry of the Confirmation

3    Order, the Reorganized Debtor, will file with the Bankruptcy Court a status report explaining the

4    progress made toward consummation of the Plan.  The status report will be served on the United

5    States Trustee and any party who files a request for special notice of post-confirmation matters.

6    Unless otherwise ordered by the Bankruptcy Court, further status reports will be filed every 180

7    days and served on the same entities.

8    **M.    Quarterly Fees**

9        Notwithstanding the entry of the Confirmation Order, (a) the Estate shall pay all fees

10   payable to the United States Trustee pursuant to 28 U.S.C. § 1930 on or before the Effective Date,

11   and (b) the Reorganized Debtor and/or the Plan Agent, as applicable, shall pay all such fees

12   payable to the United States Trustee after the Effective Date, if, as and when the same become due

13   and payable.  In addition, the Reorganized Debtor and/or the Plan Agent, as applicable, shall

14   provide to the United States Trustee, on or before the thirtieth (30th) calendar day following the

15   close of each calendar quarter, a financial report of all disbursements made by or on behalf of the

16   Debtor, the Reorganized Debtor, or the Estate (whether or not pursuant to this Plan) during the

17   preceding calendar quarter, or portion thereof, that the Bankruptcy Case remains open.  If such

18   quarterly fees are disputed by the Reorganized Debtor and/or the Plan Agent, as applicable, an

19   adequate reserve will be established and set aside for payment in full thereof, as required by

20   section 1129(a)(12) of the Bankruptcy Code.

21   **N.    Post-Confirmation Conversion/Dismissal**

22       Subject to the provisions of this Plan, a creditor or other party in interest may file a motion

23   to convert or dismiss the Bankruptcy Case under section 1112(b) of the Bankruptcy Code, if there

24   is a material default by the Reorganized Debtor and/or the Plan Agent, as applicable, in

25   performing its obligations under the Plan.  Any such motion for conversion or dismissal must be

26   served on the Reorganized Debtor and/or the Plan Agent, as applicable, their respective counsel,

27   all creditors and their counsel, if any, the Office of the United States Trustee, and any party in

28   interest that files a specific request for notice of post-confirmation matters.  The Reorganized

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Debtor and/or the Plan Agent, as applicable, reserves the right to oppose and object to any such

2  motion for conversion or dismissal.

3  **O.    Changes in Rates Subject to Regulatory Commission Approval**

4      The Debtor is not subject to governmental regulatory commission approval of its rates.

5  **P.    Inconsistencies**

6      In the event that the terms or provisions of this Disclosure Statement are inconsistent with

7  the terms and provisions of the Plan, or any document executed in connection with the Plan, the

8  terms of the Plan, or any such document executed in connection with the Plan, will control.

9  **Q.    Withdrawal or Revocation of Disclosure Statement or Plan**

10      The Committee reserves the right to revoke or withdraw the Disclosure Statement or the

11  Plan at any time prior to the Confirmation Hearing.  If the Committee revokes or withdraws this

12  Disclosure Statement or the Plan, or if the Confirmation Hearing does not occur, this Disclosure

13  Statement and the Plan will be null and void, and nothing contained in this Disclosure Statement

14  or the Plan will:  (a) constitute a waiver or release of any claims against, or interests in, the Debtor,

15  (b) prejudice in any manner the claims and rights of the Debtor or the Committee in any further

16  proceedings involving the Estate, or (c) constitute a waiver or release of any claims against any

17  creditor of the Debtor.

18  **R.    Successors and Assigns**

19      The rights, benefits and obligations of any entity named or referred to in the Plan shall be

20  binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or

21  assigns of such entity.

22  **S.    Governing Law**

23      Except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules)

24  is applicable, the rights and obligations arising under the Plan shall be governed by and construed

25  and enforced in accordance with the laws of the state of California without giving effect to the

26  principles of conflicts of laws thereof.

27  **T.    Dissolution of Creditors Committee**

28      On the Effective Date, the Official Committee of Unsecured Creditors (the "<u>Committee</u>")

MSH 2708522v1                                    67

1 formed in this case, if any, shall be dissolved and the retention or employment of the Committee's

2 attorneys and other professionals shall terminate.

3 **U.**    **Implementation of Plan.**

4      The Committee intends to request that the Confirmation Order include (a) a finding by the

5 Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order, and (b)

6 the Bankruptcy Court's authorization for the Reorganized Debtor to implement the Plan

7 immediately after entry of the Confirmation Order.

8 **V.**    **Failure of Effective Date.**

9      In the event the Effective Date does not occur, nothing in this Plan shall be binding on the

10 Committee, Debtor, the Estate, or any other Entity, or otherwise be of any force and effect.

11 **W.**    **Final Decree**

12      Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the

13 Plan Agent, as applicable, will file a motion with the Bankruptcy Court to obtain a final decree to

14 close the Debtor's chapter 11 case.

15                                **VI.**

16                     **SUPPORTING EXHIBITS**

17    **Exhibit 1:**    **Liquidation Analysis**

18    **Exhibit 2**:    **90 Day Transfers**

19    **Exhibit 3:**    **1 year Insider Transfers**

20    **Exhibit 4:**    **Schedule of 503(b)(9) Claims**

21    **Exhibit 5:**    **Schedule of Priority Claims**

22    **Exhibit 6:**    **Schedule of Class 2 Claims**

23    **Exhibit 7:**    **Schedule of Rejected Contracts**

24

25 DATED: December 30, 2020                SulmeyerKupetz
                                          A Professional Corporation
26
                                          By: /s/ Mark  S. Horoupian
27                                            Mark S. Horoupian
                                              Attorneys for Official Committee of Unsecured
28                                            Creditors

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**EXHIBIT 1**

**Meade Instruments Corp., a Delaware Corporation**
Plan vs Liquidation Analysis
*As of October 31, 2020*

| | | Plan 1 (1) | Liquidation Analysis |
|---|---|---|---|
| **Asset Value** | | **Amount** | **Amount** |
| Cash | 2 | 3,585,227 | 3,585,227 |
| | | | |
| **Accounts Receivable** | | | |
| Ending Eligible Accounts Receivable | | 1,894,107 | 1,894,107 |
| Less Ineligible | 3 | (506,823) | (639,411) |
| **Accounts Receivable Total Value** | | 1,387,283 | 1,254,696 |
| | | | |
| **Inventory** | | | |
| Current Inventory | 4 | 2,556,988 | 2,556,988 |
| Approved Purchase Orders Pending Shipment | 5 | 1,247,314 | 1,247,314 |
| **Inventory Total Value** | | 3,804,302 | 3,804,302 |
| | | | |
| **Fixed Assets** | 6 | 233,000 | 233,000 |
| | | | |
| **Intangibles and Intellectual Property Total Value** | 7 | 175,000 | 175,000 |
| | | | |
| **Total Asset Value** | | 9,184,813 | 8,819,225 |
| | | | |
| **Wind Down Expenses** | | - | (1,264,119) |
| | | | |
| **Net Asset Value** | | 9,184,813 | 7,555,106 |
| | | | |
| **Proceeds from Plan** | | | |
| Proceeds from Plan as of Effective Date | 8 | 114,408 | - |
| Proceeds from Plan Year 1 | 8 | 114,408 | - |
| Proceeds from Plan Year 2 | 8 | 114,408 | - |
| | | | |
| **Total Proceeds from Plan** | | 343,225 | - |
| | | | |
| **Total Assets & Proceeds** | | 9,528,038 | 7,555,106 |
| | | | |
| **Less Assets retained by Plan Proponent** | | | |
| Cash | | (3,585,227) | - |
| A/R | | (1,387,283) | - |
| Inventory | | (3,804,302) | - |
| Fixed Assets | | (233,000) | - |
| Intangibles and Intellectual Property | | (175,000) | - |
| | | | |
| **Funds Available after Plan** | | 343,225 | 7,555,106 |
| | | | |
| **Funds Available for Distribution** | | | |
| First & Final Administrative Claims | 9 | 2,428,063 | 2,613,077 |
| First & Final Secured Claims | | - | - |
| First & Final Priority Claims | 10 | 56,541 | 308,734 |
| Funds Available for Distribution to GUC | 8 | 343,225 | 4,633,295 |
| | | | |
| **Total Funds Available for Distribution** | | 2,827,829 | 7,555,106 |

069

**Meade Instruments Corp., a Delaware Corporation**
Plan vs Liquidation Analysis
*As of October 31, 2020*

| Distribution Calculation | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | **Plan 1 (1)** | | | **Liquidation Analysis** | | |
| **Distribution** | | Amount | Distribution | % | Amount | Distribution | % |
| **Administrative Claims** | | | | | | | |
| **Professional Fees** | | | | | | | |
| Goe, Forsythe, & Hodges, LLP | 11 | 242,807 | 242,807 | 100% | 242,807 | 242,807 | 100% |
| Sulmeyer Kupetz | 11 | 213,899 | 213,899 | 100% | 213,899 | 213,899 | 100% |
| Grobstein Teeple LLP | 11 | 17,200 | 17,200 | 100% | 22,000 | 22,000 | 100% |
| Broadway Advisors, LLC | 11 | 230,000 | 230,000 | 100% | 190,000 | 190,000 | 100% |
| Stetina Brunda Garred & Brucker, APC, | | 5,200 | 5,200 | 100% | 5,200 | 5,200 | 100% |
| Chawla Law Group, APC | | 1,160 | 1,160 | 100% | 1,160 | 1,160 | 100% |
| Windes Inc | 12 | 13,500 | 13,500 | 100% | 13,500 | 13,500 | 100% |
| Enrique A. Maldonado Montfort Of Ishino, Esquer Y Armada | | 3,200 | 3,200 | 100% | 3,200 | 3,200 | 100% |
| **Total Professional Fees** | | 726,966 | 726,966 | | 691,766 | 691,766 | |
| | | | | | | | |
| **Chapter 11 Quarterly Fees - UST** | 13 | 44,278 | 44,278 | 100% | 88,192 | 88,192 | 100% |
| | | | | | | | |
| **Accounts Payable** | | | | | | | |
| Accounts Payable - Post Petition US | 14 | 12,613 | 12,613 | 100% | 12,613 | 12,613 | 100% |
| Approved Purchase Requests - In Transit | 15 | 1,528,636 | 1,528,636 | 100% | 1,528,636 | 1,528,636 | 100% |
| Approved Purchase Requests - In Production | | 30,506 | 30,506 | 100% | 30,506 | 30,506 | 100% |
| Accounts Payable - MX | | 97,976 | 97,976 | 100% | 97,976 | 97,976 | 100% |
| **Total Accounts Payable** | | 1,657,119 | 1,657,119 | | 1,657,119 | 1,657,119 | |
| | | | | | | | |
| **Social Cost to closing MX Facility** | | - | - | 100% | 175,000 | 175,000 | 100% |
| | | | | | | | |
| **Administrative Claims Total** | | 2,428,363 | 2,428,363 | | 2,612,077 | 2,612,077 | |
| | | | | | | | |
| **Funds Available for Distribution to Secured** | | | 399,466 | | | 4,943,029 | |
| | | | | | | | |
| **Secured Claims** | | | | | | | |
| Sheppard, Mullin, Richter & Hampton (SEC) | 16 | - | - | 100% | - | - | 100% |
| | | | | | | | |
| **Secured Claims Total** | | - | - | | - | - | |
| | | | | | | | |
| **Funds Available for Distribution to Priority** | | | 399,466 | | | 4,943,029 | |
| | | | | | | | |
| **Priority Unsecured Claims** | | | | | | | |
| Priority Unsecured Claims | | 41,213 | 41,213 | 100.0% | 41,213 | 41,213 | 100.0% |
| 503(b)(9) | | 267,522 | 267,522 | 100.0% | 267,522 | 267,522 | 100.0% |
| *Less Ningbo Sunny 503(b)(9)* | | (252,194) | (252,194) | 100.0% | - | - | |
| | | | | | | | |
| **Priority Unsecured Claims Total** | | 56,541 | 56,541 | | 308,734 | 308,734 | |
| | | | | | | | |
| **Funds Available After Admin, Secured, & Priority** | | | 343,225 | | | 4,634,294 | |
| *Less Litigation Retainer Reserve* | | | - | | | (100,000) | |
| *Less Reserve for Post-Confirmation Fees and Expenses* | | | (50,000) | | | - | |
| **Funds Available for Distribution to General Unsecured** | | | 293,225 | | | 4,534,294 | |
| | | | | | | | |
| **General Unsecured Claims/ Liquidating Trust** | | | | | | | |
| Optronic Technologies, Inc. dba Orion | 17 | - | - | 0.0% | 16,800,000 | 2,413,968 | 14.4% |
| Ningbo Sunny Electronic Co | 18 | - | - | 0.0% | 11,092,577 | 1,593,876 | 14.4% |
| Sheppard, Mullin, Richter & Hampton (SEC) | 16 | - | - | 0.0% | 2,686,410 | 386,006 | 14.4% |
| General Unsecured Claims | 20 | 977,417 | 293,225 | 30.0% | 977,417 | 140,444 | 14.4% |
| | | | | | | | |
| **General Unsecured Claims Total** | | 977,417 | 293,225 | | 31,556,404 | 4,534,294 | |
| | | | | | | | |
| **Total Claims** | | 3,462,321 | 2,778,129 | | 34,477,215 | 7,455,106 | |

**Meade Instruments Corp., a Delaware Corporation**
Plan vs Liquidation Analysis - Assumptions
*As of October 31, 2020*

**Notes**

| | |
|---|---|
| 1 | Orion is proposing a Plan in which it, as the Plan sponsor, would contribute up to 30% of GUC claims, excluding Orion, Ningbo Sunny, and Sheppard Mullin claims, plus $50,000 to assist with administrative cost to manage Estate while it remains open.  Distributions made using these funds would exclude claims owned or assumed by Orion and Ningbo Sunny.  However, if Sheppard Mullin's claim is allowed it would participate in the distribution, but Orion would not increase the amount of the "pot".  Orion is not waiving their claim and will be included in future distribution calculations as a result of funds collected by the Estate from preference actions, litigation, or other recovery efforts. |
| 2 | Cash amount represents total cash for Meade Irvine as of 10/31/20 less $100K legal retainer to litigation counsel related to Sheppard Mullin claim.  Bank accounts held by Meade MX were excluded from this analysis.  Meade MX cash as of 10/31/20 is estimated to be $54,625 |
| 3 | Includes reduction of A/R by $450K in pre-petition A/R that is assumed to be doubtful as well as a 3% adjustment against post-petition A/R under the plan scenario and a 10% adjustment against post-petition A/R under liquidation scenarios. |
| 4 | Discounts were applied to raw materials and slow moving items.  In total, inventory under the liquidation scenario was discounted by 49% or $2.6M.  Inventory book value as of 10/31/20 is $5,260,579 |
| 5 | Includes approved purchase orders pending shipment and, therefore, not captured in inventory as of 10/31/20. |
| 6 | Value is based on results of online research of used equipment and machines totaling $466K.  Amount under Plan reflects 50% discount to account for age and condition.  Under liquidation scenarios total projected recovery drops to zero to account for cost to move the equipment or risk of no one purchasing equipment within the wind down timeframe of 12 weeks |
| 7 | IP value as reported in Schedule A/B was defined as Unknown.  Estimated intangible and intellectual property values using 2.5% of 3-year net sales average ($12.4 M).  Liquidation analysis includes a discount based on interested parties expressed interest in select IP. |
| 8 | As of the effective date the sponsor will contribute cash in the amount of 10% of GUC claims, excluding Orion, Ningbo Sunny, and Sheppard Mullin claims, plus $50,000 toward administrative fees related to the management of the Estate.  For two years following the effective date, the plan sponsor will also contribute 5% of gross revenue per year up to 10% of GUC, excluding Orion, Ningbo Sunny, and Sheppard Mullin claims, to the liquidating trust.  A minimum of $2M in gross revenue annually would be required for plan sponsor to contribute the maximum amount proposed.  Meade's 3-year gross revenue (FY18-20) average exceeds $12M. |
| 9 | Under a Plan the Administrative, Secured, and Priority Claims would be paid by the Plan sponsor. |
| 10 | Assumes Ningbo Sunny claim would be assumed by Orion and would then be waived during the initial distribution.  Orion is not waiving this claim and will be included in future distribution calculations in the event additional funds are collected by the Estate from preference actions, litigation, or other recovery efforts. |
| 11 | Professional fees include projected fees and expenses from respective professionals from August 1, 2020 - February 28, 2021, plus any holdbacks to be approved during final fee applications |
| 12 | Flat fee to Debtor's CPA to complete FY2020 tax return |
| 13 | US Quarterly Fees include estimate of Q3 fees based on historical disbursements and estimate of fees after funds available are distributed to claimants. |
| 14 | A/P as of October 31, 2020. |
| 15 | Assumes Plan sponsor will work with Ningbo Sunny regarding payments related to shipments in transit.  Total value of orders in transit $1,559,142 |
| 16 | Sheppard Mullin claim is disputed.  Plan analysis assumes claim is disallowed in it's entirety.  Filed as Secured claim in the amount of $2,686,410. |
| 17 | Orion claim includes approximately $36.8M in punitive damages that is assumed to be subordinated in Plan confirmation.  Orion claim totals $53,660,743 |
| 18 | Ningbo Sunny Electronic Co claim disputed and is expected to be assumed by Orion. Filed as GUC in the amount of $11,092,576.68 |
| 19 | Balance of legal retainer due to litigation counsel after application of $100K payment reflected in Cash balance, see footnote 2. |
| 20 | Funds available for distribution to General Unsecured Claimants to remain in Estate.  The final distribution % will be subject to the results of preference actions, litigation, or other recovery efforts. |

**EXHIBIT 2**

| Vendor Name | Amount |
|---|---|
| Sheppard Mullin Richter & Hampton | $999,636.81 |
| Ningbo Sunny Electronic | 352,889.06 |
| Vieway Optics Enterprises | 122,066.60 |
| Cornerstone Research | 119,988.45 |
| The Irvine CO | 88,637 |
| East West Bank | 75,367.92 |
| US Customs & Border Protection | 74,907.74 |
| ABF Freight Systems | 70,427.81 |
| United Lens Company | 69,311.50 |
| UPS Supply Chain Solutions | 57,247.13 |
| GOE Forsythe & Hodges | 52,000.00 |
| Blue Shield of CA | 42,366.33 |
| Simulation Curriculum | 38,760.00 |
| Jeff Redman | 34,360.60 |
| Wilfrido Tamayo | 27,456.00 |
| Rene Villaruel Garcia | 26,283.56 |
| Cincinati Gasket | 22,521.60 |
| RL Jones San Diego | 20,894.75 |
| Industrial Metal Supply Co | 19,926.19 |
| Michael Dzurny | 19,543.73 |
| Maxon Precision Motors | 18,786.00 |
| Kuehne & Nagel | 17,596.87 |
| Chapman Engineering | 16,693.41 |
| XPO Logistics Freight | 13,849.45 |
| California Choice Benefit Admin | 13,565.59 |
| Logical Control Engineering | 13,468.00 |
| A&G Trucking Group | 13,345.00 |
| Fotobest PVT Ltd | 11,680.22 |
| Travelers | 10,168.03 |
| Joseph A. Lupica | 9,845.52 |
| Batom Co.,LC | 9,450.00 |
| Flatpro Tech | 8,160.00 |
| Cox Communications | 8,140.37 |
| US Digital | 8,123.50 |
| Seymour Solar | 7,558.80 |
| San Jose Technology | 7,320.00 |
| Prodcutor de Cajas de Carton | 7,089.44 |
| Lapmaster International, LLC | 6,671.88 |
| Virtek Co | 6,611.90 |
| Sentrytools, LLC | 6,562.38 |
| Total | $2,549,279.14 |

**EXHIBIT 3**

MEADE INSTRUMENTS CORP.
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12-29-2020
Insider Payments

| Insider | Purpose | Begin | End | Amount |
|---|---|---|---|---|
| Victor Aniceto | Expense Reimbursement | 1/11/2019 | 12/4/2019 | $ 11,711.09 |
| Victor Aniceto | Compensation and Benefits | 12/4/2018 | 12/4/2019 | $ 170,769.12 |
| Theresa Aniceto | Compensation and Benefits | 12/4/2018 | 12/4/2019 | $ 56,362.04 |
| Ningbo Sunny | Goods | 12/7/2018 | 11/6/2019 | 974.740.59 |

**EXHIBIT 4**

MEADE INSTRUMENTS CORP.
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12-29-2020
503(b)(9) Vendors

| Vendor Name | Proof of Claim Number | Date Received | Invoice # | Amount | Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| Simulation Curriculum | | 11/14/2019 | 6270 | $8,740.00 | $8,740.00 |
| | | | | | $0.00 |
| Seymour solar | | 12/2/2019 | 67757777524430 | $2,954.10 | $2,954.10 |
| | | 12/2/2019 | 67757777524381-1 | $1,181.64 | $1,181.64 |
| | | | | | |
| | | | | | |
| Ningbo Sunny | | 11/29/2019 | | $252,193.52 | $252,193.52 |
| | | | | | |
| McMaster Carr | 5 | | | $2,452.54 | $2,452.54 |
| | | | | $267,521.80 | $267,521.80 |
| | | | | | |
| | | | | | |
| | | | | | |

**EXHIBIT 5**

**MEADE INSTRUMENTS CORP.**
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12/09/2020
Last Date to File Claims: 04/16/2020

| Object? | Claims Docket Number | Date Filed | Creditor | | Claim 507(a)(4) Amount (Priority) | | Total | |
|---|---|---|---|---|---|---|---|---|
| | 23 | 4/15/2020 | Atkinson, Elizabeth | | $2,750.00 | | $2,750.00 | |
| | 24 | 4/15/2020 | Bihum, April | | $4,875.00 | | $4,875.00 | |
| | 27 | 4/15/2020 | Cogdell, Bryan | | $1,500.00 | | $1,500.00 | |
| | 25 | 4/15/2020 | Creason, Gary | | $4,325.00 | | $4,325.00 | |
| | 16 | 3/26/2020 | Delta Marketing of New Jersey, LLC | | $13,650.00 | | $13,650.00 | |
| | 22 | 12/10/2020 | Hernandez, Lenora | | $7,150.00 | | $7,150.00 | |
| | 26 | 4/15/2020 | Qu, Wenjun | | $1,000.00 | | $1,000.00 | |
| | 29 | 4/15/2020 | Roe, Sara | | $3,250.00 | | $3,250.00 | |
| | 28 | 4/15/2020 | Vasquez, Ivan | | $6,500.00 | | $6,500.00 | |
| | | | | **TOTAL** | **$45,000.00** | | **$45,000.00** | |

**EXHIBIT 6**

MEADE INSTRUMENTS CORP.
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12/09/2020
Last Date to File Claims: 04/16/2020

| Object? | Claims Docket Number | Date Filed | Creditor | Scheduled Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Claim Unsecured Amount | Projected Allowed Class 2 Amount | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| | 30 | 4/16/2020 | Sheppard, Mullin,Richter & Hampton | $2,720,926.50 | X | X | | $2,686,409.64 | $0.00 | Lien Released by Stipulation-Objection intended |
| | | | A & G Trucking Group, Inc | $4,785.00 | | | | | $4,785.00 | |
| X | 14 | 03/05/2020 | AAS Sky Publishing | $17,680.00 | | | | $22,100.00 | $22,100.00 | Detailed invoice (**Debtor says incorrect amount**) **Email Sent** |
| | 13 | 02/28/2020 | ABF Freight System, Inc | $7,957.86 | | | | $8,368.30 | $8,368.30 | Detailed invoice |
| | | | ARBE Recubrimientos Industriales S. De R | $3,287.47 | | | | | $3,287.47 | |
| | 21 | 04/14/2020 | Arent Fox LLP | $875.00 | | | | $3,398.65 | $3,398.65 | Detailed invoice |
| | | | Askew Hardware & Supply | $528.00 | | | | | $528.00 | |
| | 7 | 2/11/2020 | Beneficial Maintenance Serv. | $726.95 | | | | $726.95 | $726.95 | Detailed invoice. |
| | | | California Dept Of Tax & Fee Admin | $1,000.00 | X | X | | | $0.00 | |
| | 33 | 4/15/2020 | California Fine Wire | $356.32 | | | | $356.32 | $356.32 | Invoice |
| | | | California Gasket | $1,515.90 | | | | | $1,515.90 | |
| | | | Chapman Engineering, Inc | $7,939.00 | | | | | $7,939.00 | |
| | | | CMC Converting & Packaging | $2,219.50 | | | | | $2,219.50 | |
| | | | Coast Aluminum & Architectural Inc. | $12,348.44 | | | | | $12,348.44 | |
| | | | Complete Office | $396.09 | | | | | $396.09 | |
| | | | Cornerstone Research, Inc. | $152,340.18 | X | X | | | $0.00 | No Proof of Claim Filed |
| | 17 | 4/1/2020 | County of Orange | --- | | | | $61.53 | $0.00 | **Claim withdrawn** |
| | | | Cox Communications | $2,000.00 | | | | | $2,000.00 | |
| | 16 | 3/26/2020 | Delta Marketing of New Jersey, LLC | --- | | | | $5,064.09 | $5,064.09 | Plus $13,650 Priority |
| | | | Digi-Key Electronics | $3,160.01 | | | | | $3,160.01 | |
| | | | Drexel Industries | $1,545.41 | | | | | $1,545.41 | |
| | | | DSB Solutions LC | $1,500.00 | | | | | $1,500.00 | |
| | 19 | 4/10/2020 | Engineered Products | $2,137.00 | | | | $2,137.00 | $2,137.00 | Detailed attachment |
| | | | Fedex Freight | $120.51 | | | | | $120.51 | |
| | | | Flatpro Technologies | $5,440.00 | | | | | $5,440.00 | |
| | | | Gunn & Beckman Company | $13.51 | | | | | $13.51 | |
| | | | Highlight Motor Freight USA Inc | $250.00 | | | | | $250.00 | |
| | | | Industrial Metal Supply Co. | $6,804.73 | | | | | $6,804.73 | |
| | | | Intecsa Industrial Technologies Co. | $785.75 | | | | | $785.75 | |
| | | | Interface Security Systems, LLC | $308.73 | | | | | $308.73 | |
| | | | Ipromoteu.Com Inc | $694.80 | | | | | $694.80 | |
| | | | Jeff D. Redman | $23,702.61 | | | | | $23,702.61 | |
| | 34 | 4/17/2020 | Jet Fittings | $8,733.15 | | | | $8,733.15 | $8,733.15 | Itemized invoice |
| | 2 | 12/17/2019 | Kalmbach Media | $2,466.66 | | | | $7,699.98 | $7,699.98 | Detailed attachment. |
| | | | King Pallets Inc. | $2,400.00 | | | | | $2,400.00 | |
| X | 6 | 2/11/2020 | Kuehne + Nagel Inc | $40,560.76 | | | | $103,304.48 | $81,367.08 | Debtor is Working with Creditor to Amend Claim |
| | 3 | 12/19/2019 | Landsberg/Eps | $6,102.81 | | | | $6,102.81 | $6,102.81 | Name on Claim is: Landsberg Orora |
| | | | Lapmaster International LLC | $3,335.94 | | | | | $3,335.94 | |
| | | | Limon Services, Inc | $1,408.85 | | | | | $1,408.85 | |

076

MEADE INSTRUMENTS CORP.
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12/09/2020
Last Date to File Claims: 04/16/2020

| Object? | Claims Docket Number | Date Filed | Creditor | Scheduled Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Claim Unsecured Amount | Projected Allowed Class 2 Amount | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Maquiladora Grafica Mexicana S.A. De C.V | $1,408.00 | | | | | $1,408.00 | |
| | 18 | 4/6/2020 | Mayer Brown LLP | $7,339.00 | | | | $7,339.00 | $7,339.00 | Narrative attachment - No Invoices. |
| | | | Mcloone Metal Graphics Inc. | $4,776.88 | | | | | $4,776.88 | |
| | 5 | 1/28/2020 | McMaster Carr | $7,678.07 | | | | $5,540.26 | $5,540.26 | Plus $2,452.54 503(b)(9) |
| | | | Michael Dzurny | $18,714.09 | | | | | $0.00 | Duplicate of Delta Marketing |
| | | | Midwest Tungsten Service,Inc. | $722.50 | | | | | $722.50 | |
| | | | Morest, S.A. De C.V. | $3,240.83 | | | | | $3,240.83 | |
| | | | Mouser Electronics | $1,064.99 | | | | | $1,064.99 | |
| | | | MX Electronics Manufacturing, Inc. | $4,445.85 | | | | | $4,445.85 | |
| | | | Neofunds By Neopost | $200.00 | | | | | $200.00 | |
| | | | Omega Optical Inc. | $3,807.88 | | | | | $3,807.88 | |
| | | | Orca Pacific Manufacturer'S Representati | $34,583.89 | | | | | $34,583.89 | |
| | 10 | 2/14/2020 | Oren Elliott Products, Inc. | $2,001.93 | | | | $2,001.93 | $2,001.93 | Detailed Invoice |
| | | | Otay Logistics Inc. | $1,171.50 | | | | | $1,171.50 | |
| | | | P. Ringblom & Associates | $5,000.00 | | X | | | $0.00 | No POC filed |
| | 12 | 2/21/2020 | Pacific Rim Door Service Inc. | --- | | | | $500.00 | $500.00 | Detailed Invoice |
| | | | Payne & Fears, LLP | $1,100.00 | | | | | $1,100.00 | |
| | | | PO Holding LLC | $85.00 | | | | | $85.00 | |
| | | | Pro Pacific Pest Control | $80.00 | | | | | $80.00 | |
| | | | Productora De Cajas De Carton-S.De R.L | $1,134.00 | | | | | $1,134.00 | |
| | | | Promark International, Inc. | $503.54 | | | | | $503.54 | |
| | 9 | 2/12/2020 | PSC Electronics | $4,300.10 | | | | $4,300.10 | $4,300.10 | Detailed Invoice |
| | | | Quality Assembly Services | $83.25 | | | | | $83.25 | |
| | | | R. L. Jones San Diego, Inc. | $6,358.92 | | | | | $6,358.92 | |
| | 8 | 2/11/2020 | R.S. Hughes Company, Inc. | $1,794.80 | | | | $1,794.80 | $1,794.80 | Detailed Invoice. |
| | | | Rene Villarruel Garcia | $8,940.00 | | | | | $8,940.00 | |
| | | | Rymax Marketing | $3,190.63 | | | | | $3,190.63 | |
| | 11 | 2/20/2020 | Salem Distributing Co., Inc. | $2,479.00 | | | | $2,479.00 | $2,479.00 | Detailed Invoice |
| | | | Schott Corporation | $2,251.44 | | | | | $2,251.44 | |
| | | | Sentrytools LLC | $16,462.00 | | | | | $16,462.00 | |
| | 32 | 4/16/2020 | Seymour Solar, LLC | $12,860.16 | | | | $17,860.16 | $17,860.16 | |
| | 31 | 4/16/2020 | Simulation Curriculum Corp | $8,740.00 | | | | $19,000.00 | $19,000.00 | Detailed Invoice and returned checks. |
| | | | Skynews Inc. | $2,465.00 | | | | | $2,465.00 | |
| | 4 | 12/27/2019 | Southern California Edison | --- | | | | $1,261.44 | $1,261.44 | Statement of Accounts (1911 & 9812) **Debtor says correct** (12-9-20 email) |
| | | | Southwest Material Handling Inc | $708.28 | | | | | $708.28 | |
| | | | Storopack, Inc. | $14,348.75 | | | | | $14,348.75 | |
| | | | Tim Bailey & Assoc, Inc. | $6,091.24 | | | | | $6,091.24 | |
| | | | Total Transportation & Dist., Inc | $551.18 | | | | | $551.18 | |
| | | | Triangle Choice Marketing Llc | $515.00 | | | | | $515.00 | |
| | 1 | 2/7/2020 | Uline | $2,448.64 | | | | $3,017.28 | $3,017.28 | Detailed attached |
| | | | UPS Supply Chain Solutions, Inc | $4,675.95 | | | | | $4,675.95 | |

077

MEADE INSTRUMENTS CORP.
Case No.: 8:19-bk-14714-ES
Filed: 12/04/2019
Date: 12/09/2020
Last Date to File Claims: 04/16/2020

| Object? | Claims Docket Number | Date Filed | Creditor | Scheduled Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Claim Unsecured Amount | Projected Allowed Class 2 Amount | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| | 35 | 5/26/2020 | US Customs and Border Protection | --- | | | | $8,626.12 | $0.00 | Unpaid Estimted Duties & Fees **Debtor says paid in full (12-9-20) email** |
| | | | US Digital | $16,985.50 | | | | | $16,985.50 | |
| | | | Vieway Optics Enterprises Co., Ltd | $297,874.69 | | | | | $268,934.69 | Incorrect amount scheduled-Debtor will amend |
| | | | Wal-Mart Stores, Inc. | $8,870.90 | | | | | $8,870.90 | |
| | | | WF Michaels | $357.36 | | | | | $357.36 | |
| | | | Wilfrido Tamayo | $4,420.00 | | | | | $4,420.00 | |
| | 15 | 3/17/2020 | XPO Logistics Freight, Inc. | $3,312.64 | | | | $7,556.00 | $7,556.00 | Detailed attached. |
| | | | YRC Inc | $13,484.48 | | | | | $13,484.48 | |
| | | | **TOTAL** | **$3,591,981.30** | | | | **$2,935,738.99** | **$743,213.98** | |

078

**EXHIBIT 7 - TO BE PROVIDED**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MEADE INSTRUMENTS CORP will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 30, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew Borden**    borden@braunhagey.com, rosario@braunhagey.com;kushnir@braunhagey.com;verga@braunhagey.com;hagey@braunhagey.com;fisher@braunhagey.com;theodore@braunhagey.com;hasegawa@braunhagey.com;szoke@braunhagey.com;baker@braunhagey.com
- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Mark S Horoupian**    mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Claire K Wu**    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  December 30, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Mead Instruments Corp.
Victor Aniceto, President
27 Hubble
Irvine, Ca 92618

U.S. Securities and Exchange
Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Ste. 900
Los Angeles, CA 90071-9591

Secured Creditor
Ori Katz
Sheppard, Mullin, Richter & Hampton
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

The Honorable Mark S. Wallace
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701

Frank Cadigan
Office of the U.S. Trustee
411 West Fourth Street, Suite 7160
Santa Ana, Ca 92701-4500

☐ Service information continued on attached page.

CC 2708571v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 30, 2020 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2708571v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**