1   Mark S Horoupian (CA Bar No. 175373)
      mhoroupian@sulmeyerlaw.com
2   Claire K. Wu (CA Bar No. 295966)
      ckwu@sulmeyerlaw.com
3   **Sulmeyer**Kupetz
    A Professional Corporation
4   333 South Grand Ave., Suite 3400
    Los Angeles, California 90071-1406
5   Telephone: 213.626.2311
    Facsimile: 213.629.4520
6
    Attorneys for Official Committee of Unsecured Creditors, Plan Proponent
7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10  In re                                          Case No. 8:19-bk-14714-MW

11                                                 (Jointly Administered with
    ☒   MEADE INSTRUMENTS CORP., a              Case No. 8:19-bk-14711-MW)
12      Delaware corporation,

13                                                 Chapter 11
    ☐   SUNNY OPTICS, INC., a Delaware
14      corporation,                            **COMMITTEE'S BRIEF IN SUPPORT OF
                                                CONFIRMATION OF FIRST AMENDED
15                                              PLAN OF REORGANIZATION;
    ☐   All Debtors.                            DECLARATION OF ALFRED M. MASSE
16                                              IN SUPPORT THEREOF**
                Debtors and Debtors-in-
17              Possession.
                                                Confirmation Hearing:
18
                                                Date:     April 14, 2021
19                                              Time:     2:00 p.m.
                                                Place:    Courtroom 6C
20                                                        411 West Fourth Street
                                                          Santa Ana, CA 92701
21

22

23

24

25

26

27

28

MSH 2710879v1

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     BRIEF OVERVIEW OF PLAN AND VOTING RESULTS ..................................2

         A.     The Plan and Plan Modifications ................................................................2

                a.      Revised Definition of GUC Fund Amount. ....................................2

                b.      Change to Class 1's Claim Amount for Purposes of Pro-Rata Sharing
                         in Litigation Recoveries. ................................................................3

                c.      Elimination of Requirement that Plan Agent Consult with Orion Re
                         Handling of SMRH Malpractice Action/Funding of Costs. ..............3

         B.     Ballot Tabulation Results ............................................................................3

III.    THE COURT SHOULD CONFIRM THE PLAN ..................................................4

         1.     Section 1129(a)(1): The Plan Complies With The Provisions of Title 11

                a.      The Plan Complies With Section 1122: Classification of Claims and
                         Interests ...........................................................................................4

                b.      The Plan Complies With Section 1123: Contents of the Plan............5

                        (1)     Section 1123(a): Mandatory Plan Provisions ........................5

                                (a)     Section 1123(a)(1): The Plan Designates Classes of
                                         Claims and Interests ................................................5

                                (b)     Section 1123(a)(2): The Plan Specifies the Classes that
                                         are Not Impaired ......................................................5

                                (c)     Section 1123(a)(3): The Plan Adequately Specifies the
                                         Treatment of Impaired Classes .................................5

                                (d)     Section 1123(a)(4): The Plan Provides the Same
                                         Treatment for Each Claim or Interest in a Particular
                                         Class ........................................................................6

                                (e)     Section 1123(a)(5): The Plan Provides Appropriate
                                         Means of Implementation .........................................6

                                (f)     Section 1123(a)(6) is Not Applicable ........................7

                                (g)     Section 1123(a)(7):  The Plan is Consistent With the
                                         Interests of Creditors, Equity Holders, and Public
                                         Policy ......................................................................7

                                (h)     Section 1123(a)(8) is Inapplicable to the Plan ............8

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

   (2)  Section 1123(b): Permissive Plan Provisions.........................................8

2. Section 1129(a)(2): The Plan Proponent Complies With the Provisions of the Bankruptcy Code..............................................................................................9

3. Section 1129(a)(3):  The Plan is Proposed in Good Faith.........................................10

4. Section 1129(a)(4): The Plan Provides That Payments to Estate Professionals Are Subject to Court Approval.................................................................................12

5. Section 1129(a)(5): The Plan Identifies the Parties to Serve Post-Confirmation ...........................................................................................................13

6. Section 1129(a)(6) is Not Applicable.......................................................................13

7. Section 1129(a)(7): The Plan is in the Best Interests of Creditors............................14

8. Section 1129(a)(8): All Classes Have Either Accepted the Plan or Are Treated in a Manner Consistent With Section 1129(b) ..........................................................15

9. Section 1129(a)(9): The Plan Provides for Payment in Full of All Administrative and Other Priority Claims ..............................................................16

10. Section 1129(a)(10): At Least One Impaired Class Has Accepted the Plan..............17

11. Section 1129(a)(11): The Plan is Feasible ...............................................................18

  a. Standard....................................................................................................18

  b. A Reasonable Probability Exists That Sufficient Cash Will Be Available to Make All Required Effective Date Payments........................19

  c. A Reasonable Probability Exists That Sufficient Cash Will Be Available to Make All Required Future Payments ..........................................19

12. Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid......................20

13. Section 1129(a)(13) is Not Applicable......................................................................20

14. Section 1129(a)(14) is Not Applicable......................................................................20

15. Section 1129(a)(15) is Not Applicable......................................................................20

16. Section 1129(a)(16) - Transfer of Property................................................................20

IV. THE PROPOSED ASSUMPTION OF LEASES AND CONTRACTS IS PROPER .........22

V. CONCLUSION ...................................................................................................................24

DECLARATION OF ALFRED MASSE ........................................................................................25

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

5

*Bank of America Nat'l Trust & Savings Ass'n v. 203 N. LaSalle St. Partnership,*
    526 U.S. 434, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999) ...................................... 14

6

*Computer Task Group, Inc. v. Brotby (In re Brotby),*
7      303 B.R. 177 (B.A.P. 9th Cir. 2003) ...................................................................... 19

8
*In re Acequia, Inc.,*
    787 F.2d 1352 (9th Cir. 1986) ................................................................................ 18
9

*In re Brotby,*
10     303 B.R. 177 (9th Cir. BAP 2003) ........................................................................ 9

11
*In re Corey,*
    892 F.2d 829 (9th Cir. 1989) .................................................................................. 10
12

*In re Eastern 1996d Limited Partnership,*
13     2014 Bankr. LEXIS 5085 (Bankr. N.D. Tex. 2014) ............................................. 21

14
*In re Genesis Health Ventures, Inc.,*
    266 B.R. 591 (Bankr. D. Del. 2001) ...................................................................... 4
15

*In re Greate Bay Hotel & Casino, Inc.,*
16     251 B.R. 213 (Bankr. D.N.J. 2000) ...................................................................... 4

17
*In re Madison Hotel Assocs.,*
    749 F.2d 410 (7th Cir. 1994) ................................................................................ 10
18

*In re Mcorp Financial, Inc.,*
19     137 B.R. 219 (Bankr. S.D. Tex. 1992) ................................................................. 21

20
*In re Pizza of Hawaii,*
    761 F.2d 1382 (9th Cir. 1985) ................................................................................ 18
21

*In re Sagewood Manor Assoc. Ltd. P'ship,*
22     223 B.R. 756 (Bankr. D. Nev. 1998) ..................................................................... 18

23
*In re Sierra-Cal,*
    210 B.R. 168,176 (Bankr. E.D. Cal. 1997) ........................................................... 9
24

*In re Stolrow's, Inc.,*
25     84 B.R. 167 (9th Cir. BAP 1988) .......................................................................... 10

26
*In re Sylmar Plaza, L.P.,*
    314 F.3d 1070 (9th Cir. 2002) ................................................................................ 10
27

*In re Toy & Sports Warehouse, Inc.,*
28     37 B.R. 141 (Bankr. S.D.N.Y. 1984) .................................................................... 9

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

*In re Trans World Airlines, Inc.*,
    185 B.R. 302 (Bankr. E.D. Mo. 1995) ................................................................. 9

*In the Matter of Johns-Manville Corporation*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ................................................................ 21

*Jorgensen v. Federal Land Bank of Spokane) In re Jorgensen*,
    66 B.R. 104 (B.A.P. 9th Cir. 1986) ................................................................ 10

*Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*,
    229 B.R. 720 (Bankr. W.D. Tenn. 1999) ......................................................... 9

*U.S. v. Energy Res. Co.. Inc.*,
    495 U.S. 545, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990) ............................. 18

*United States v. Reorganized CF&I Fabricators, Inc.*,
    518 U.S. 213 (1996) ..................................................................................... 14

## **STATUTES**

11 U.S.C. § 507(a) .............................................................................................. 16

11 U.S.C. § 507(a)(1) .......................................................................................... 17

11 U.S.C. § 507(a)(2) ....................................................................................... 5, 16

11 U.S.C. § 507(a)(3) ............................................................................................ 5

11 U.S.C. § 507(a)(4) .......................................................................................... 17

11 U.S.C. § 507(a)(5) .......................................................................................... 17

11 U.S.C. § 507(a)(6) .......................................................................................... 17

11 U.S.C. § 507(a)(7) .......................................................................................... 17

11 U.S.C. § 507(a)(8)……………………………………………………………13,25

11 U.S.C. § 1122 .............................................................................................. 4, 5

11 U.S.C. § 1123 ................................................................................................... 4

11 U.S.C. § 1123(a) .............................................................................................. 5

11 U.S.C. § 1123(a)(2) .......................................................................................... 5

11 U.S.C. § 1123(a)(3) .......................................................................................... 5

11 U.S.C. § 1123(a)(4) .......................................................................................... 6

11 U.S.C. § 1123(a)(5) .......................................................................................... 6

11 U.S.C. § 1123(a)(6) .......................................................................................... 7

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11 U.S.C. § 1123(a)(7) .................................................................................................... 7, 13

11 U.S.C. § 1123(a)(8) ......................................................................................................... 8

11 U.S.C. § 1123(b) .............................................................................................................. 8

11 U.S.C. § 1123(b)(1) ......................................................................................................... 8

11 U.S.C. § 1123(b)(2) ......................................................................................................... 9

11 U.S.C. § 1123(b)(3) ......................................................................................................... 9

11 U.S.C. § 1123(b)(5) ......................................................................................................... 9

11 U.S.C. § 1123(b)(6) ......................................................................................................... 8

11 U.S.C. § 1124(1) .............................................................................................................. 5

11 U.S.C. § 1125 .............................................................................................................. 9, 10

11 U.S.C. § 1126(c) ........................................................................................................ 15, 16

11 U.S.C. § 1126(d) ............................................................................................................ 16

11 U.S.C. § 1129(a) .............................................................................................................17

11 U.S.C. § 1129(a)(1) ......................................................................................................... 4

11 U.S.C. § 1129(a)(2) ..................................................................................................... 9, 10

11 U.S.C. § 1129(a)(3) ................................................................................................... 10, 12

11 U.S.C. § 1129(a)(4) ....................................................................................................... 12

11 U.S.C. § 1129(a)(5) ................................................................................................ 7, 8, 13

11 U.S.C. § 1129(a)(5)(A)(ii) .............................................................................................. 8

11 U.S.C. § 1129(a)(6) ................................................................................................... 13, 14

11 U.S.C. § 1129(a)(7) ................................................................................................... 14, 15

11 U.S.C. § 1129(a)(8) ....................................................................................................... 15

11 U.S.C. § 1129(a)(9) ....................................................................................................... 17

11 U.S.C. § 1129(a)(9)(B) .................................................................................................. 17

11 U.S.C. § 1129(a)(9)(C) .................................................................................................. 17

11 U.S.C. § 1129(a)(10) ..................................................................................................... 17

11 U.S.C. § 1129(a)(11) ..................................................................................................... 18

11 U.S.C. § 1129(a)(12) ..................................................................................................... 20

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    11 U.S.C. § 1129(a)(13) .................................................................................................... 20

2    11 U.S.C. § 1129(a)(14) .................................................................................................... 20

3    11 U.S.C. § 1129(a)(15) .................................................................................................... 20

4    11 U.S.C. § 1129(a)(16) ............................................................................................... 20, 21

5    11 U.S.C. § 1129(b)(1) ................................................................................................. 16, 21

6    11 U.S.C. § 1129(b)(2) .................................................................................................... 22

7    11 U.S.C. § 1129(a)(9)(D) ............................................................................................... 17

8

9    **OTHER AUTHORITIES**

10   7-1129 *Collier on Bankruptcy*
     ¶ 1129.03[3][a] (16th ed. 2015) ................................................................................. 21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  **TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND OTHER**

3  **PARTIES IN INTEREST:**

4       The Official Committee of Unsecured Creditors (the "Committee") of Meade Instruments

5  Corporation, a Delaware corporation (the "Debtor"), hereby submits its Brief in Support of

6  Confirmation of the Committee's First Amended Plan of Reorganization (the "Plan") [Dkt. No.

7  363] filed on February 17, 2021, and as amended by the revisions described in the Committee's

8  Reply (the "Committee Reply") [Dkt. No. 378 ] to the Objection (the "SMRH Objection") [Dkt No.

9  376] by Sheppard Mullin Richter & Hampton, LLP ("SMRH") to Confirmation of the Plan, and

10 represents as follows:[1]

11 **I.**

12 **PRELIMINARY STATEMENT**

13      The Plan is the product of negotiations between and among the Debtor, the Committee, and

14 Optronic Technologies, Inc. dba Orion Telescopes ("Orion").[2]  Aside from the SMRH Objection

15 and SMRH's vote against the Plan, the Plan received unanimous support from the estate's general

16 unsecured creditors, with every vote cast (except that of SMRH) accepting the Plan.  However,

17 because SMRH's vote against the Plan resulted in Class 2 rejecting the Plan, and because Class 3

18 and 4 are deemed to have rejected the Plan, the Committee seeks confirmation under the "cram

19 down" rules set forth in section 1129(b).  As set forth below, the Plan satisfies all applicable

20 requirements of section 1129 of the Code, and notwithstanding SMRH's "no" vote, the Court can

21 and should confirm the Plan.

22

23

24

---

25
26     [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

27     [2] While Orion is the chair of the Committee, because the Plan proposes to transfer the
28 Debtor's operating assets to a company formed by Orion as part of Orion's plan treatment, Orion was recused from the Committee in negotiating Orion's plan treatment.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

## II.

## BRIEF OVERVIEW OF PLAN AND VOTING RESULTS

### A.     The Plan and Plan Modifications

The First Amended Plan was filed on February 17, 2021.  In response to the SMRH Objection, the Committee described certain changes to the Plan that were agreed to by the Committee and Orion (the "Plan Modifications").   The Committee suggested in the Committee Reply that the Plan Modifications be included in the order confirming the Plan (the "Confirmation Order"). The Plan generally provides that the operating assets of the Debtor including all cash on hand on the Effective Date, after the payment of Administrative and Priority Claims, and funding of reserves, all cash equivalents, all accounts receivable, intellectual property, inventory (including finished goods and work in process), rights under executory contracts and leases that NewCo elects to assume ("Assumed Contracts"), all existing purchase orders, trade names, knowhow, customer lists, furniture, fixtures and equipment, websites and domain names, books and records, stock in Meade Mexico, motor vehicles, and all deposits (the "Transferred Assets") will be transferred to NewCo (a company to be formed by Orion) as part of Orion's Class 1 treatment.  The Transferred Assets do not include the Debtor's Estate Litigation Claims, including a potential malpractice and breach of fiduciary duty action against SMRH (the "SMRH Malpractice Action").   Class 2 which consists of all general Unsecured Claims, not including the claims of Insiders or Orion, will receive between 15% and 30% of the Allowed Claims in the Class (depending on the ultimate allowance of Claims).   Class 3 which contains the Claims of Insiders receives no distributions, and Class 4 which is the Equity Interests in the Debtor will receive no distribution under the Plan, and the sole right to act on behalf of the Debtor will be vested in the Plan Agent. The Plan Agent under the Plan is Broadway Advisors, LLC ("Broadway").

In the Committee Reply, the Committee described the following Plan Modifications:

### a.     Revised Definition of GUC Fund Amount.

The GUC Fund Amount, which dictates the amount that Class 2 creditors will receive under the Plan, and when and how that amount will be funded, will be changed as follows:

*The GUC Fund Amount equals $50,000, plus 30% of the current filed and/or scheduled general Unsecured Claims, plus any Allowed Rejection Claim of the Irvine Company, but not including the Class 1 Claim, the Disputed SMRH Claim or any other insider Claims (the "Initial GUC Fund Amount"). The Initial GUC Fund Amount will be paid on the Effective Date from available Cash on Hand.  In the event that after litigation of the SMRH Malpractice Action and/or an objection to the SMRH Claim, SMRH is ruled to have an Allowed Claim, the GUC Fund Amount will be recalculated to $50,000, plus 15% of the current filed and/or scheduled general unsecured claims plus any Allowed Rejection Claim of the Irvine Company, plus the Allowed SMRH Claim, but not including the Class 1 Claim, or any other insider Claims (the "Increased GUC Fund Amount").The difference between the Initial GUC Fund Amount and the Increased GUC Fund Amount shall be paid by NewCo within thirty (30) days of the entry of a final order Allowing the SMRH Claim.*

**b.**    **Change to Class 1's Claim Amount for Purposes of Pro-Rata Sharing in Litigation Recoveries**.

The amount of Orion's Claim for purposes of determining its pro-rata share of the recovery on the Estate Litigation Claims will be changed as follows:

*For purposes of determining Orion's pro-rated share of the proceeds of the Estate Litigation Claims, Orion's claim shall be fixed at $16.8 million less the value of the Transferred Assets. Likewise, for purposes of determining Class 2 Creditors' share, the Class 2 Claims shall be reduced by the distributions made to them from the GUC Fund Amount.*

**c.**    **Elimination of Requirement that Plan Agent Consult with Orion Re Handling of SMRH Malpractice Action/Funding of Costs**.

The requirement that the Plan Agent consult with Orion before making any material decisions regarding the prosecution or settlement of the SMRH Malpractice Action will be deleted.  Further, NewCo's obligation to fund the cost retainer to the Debtor's malpractice lawyers has been eliminated.  Instead, the balance of the cost retainer called for in the engagement agreement with malpractice counsel will be paid by the Debtor prior to the Effective Date.

**B.**    **Ballot Tabulation Results**

The Plan contains 4 classes.  Classes 1, 2, 3, 4 are impaired and, in turn, entitled to vote on the Plan.  As detailed in the concurrently filed Ballot Summary (the "Ballot Summary"), the results of the Committee's tally of ballots received are as follows:

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

| Class | Vote |
|-------|------|
| 1 (Orion) | Accept |
| 2 (Non-Insider General Unsecured Claims) | Reject |
| 3 (Insider General Unsecured Claims) | Deemed Reject |
| 4 (Interests) | Deemed Reject |

## III.

## THE COURT SHOULD CONFIRM THE PLAN

**A.**    **Standard for Confirmation of a Chapter 11 Plan**

Section 1129 of the Code outlines the requirements for confirmation of a chapter 11 plan. A court must confirm a plan if each applicable requirement of section 1129(a) and, if necessary, section 1129(b), is satisfied. All applicable subsections of section 1129 are satisfied here.

**B.**    **The Plan Satisfies All Applicable Requirements of Section 1129(a)**

**1.**    **Section 1129(a)(1): The Plan Complies With The Provisions of Title 11**

Section 1129(a)(1) requires that a plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." Courts hold that section 1129(a)(1) requires compliance with sections 1122 and 1123. *See Johns-Manville*, 843 F.2d at 648-49. *See also*, *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001). The Plan complies with both of those sections.

**a.**    **The Plan Complies With Section 1122: Classification of Claims and Interests**

Section 1122(a) provides:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class.

11 U.S.C. § 1122(a).

In the Committee Reply to the SMRH Objection, the Committee explained why the classification of Claims, and in particular the separate classification of Orion in Class 1, was appropriate and consistent with the Bankruptcy Code. The Committee incorporates the arguments of the Committee Reply by reference, and based thereon, respectfully submits that section 1122(a)

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

MSH 2710879v1    4

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    has been satisfied.  *See* Committee Reply at Pages 2-4.

2    **b.    The Plan Complies With Section 1123: Contents of the Plan**

3    Section 1123(a) and (b) sets forth certain mandatory and permissive provisions for a

4    Chapter 11 plan.  *See* 11 U.S.C. § 1123(a), (b).  The Plan complies with those requirements.

5    **(1)    Section 1123(a): Mandatory Plan Provisions**

6    **(a)    Section 1123(a)(1): The Plan Designates Classes of Claims**

7    **and Interests**

8    Section 1123(a)(1) requires a plan "designate, subject to section 1122 of this title, classes of

9    claims, other than claims of a kind specified in section 507(a)(2) [administrative expense claims],

10    507(a)(3) [claims arising during the "gap" period in an involuntary case], or 507(a)(8) [priority tax

11    claims], and classes of interests[.]"  11 U.S.C. § 1123(a)(1).  Here, the Plan satisfies this statutory

12    requirement.  All classes of claims designated in the Plan are claims other than those specified in

13    sections 507(a)(2), 507(a)(3), and 507(a)(8).  The Plan also designates a class of interests (Class 4).

14    **(b)    Section 1123(a)(2): The Plan Specifies the Classes that are**

15    **Not Impaired**

16    Section 1123(a)(2) requires a plan "specify any class of claims or interests that is not

17    impaired under the plan."  11 U.S.C. § 1123(a)(2).  Section 1124(1) of the Bankruptcy Code

18    provides that "a class of claims or interests is impaired under a plan unless . . . the plan leaves

19    unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the

20    holder of such claim or interest."  11 U.S.C. § 1124(1).  No Claims or Interests are left unimpaired

21    under the Plan.

22    **(c)    Section 1123(a)(3): The Plan Adequately Specifies the**

23    **Treatment of Impaired Classes**

24    Section 1123(a)(3) requires a plan "specify the treatment of any class of claims or interests

25    that is impaired under the plan."  11 U.S.C. § 1123(a)(3).  Article IV of the Plan specifies the

26    treatment of all claims and interests that are impaired under the Plan.  *See* Plan, Art. IV, §§ 4.1 and

27    4.2.  Since the Plan properly identifies the impaired classes and specifies the treatment of such

28    classes, the Plan satisfies section 1123(a)(3).

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

     (d)    <u>**Section 1123(a)(4): The Plan Provides the Same Treatment**</u>
<u>**for Each Claim or Interest in a Particular Class**</u>

Section 1123(a)(4) requires a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This provision provides creditors of the same class with a right to equality of treatment. Article IV of the Plan provides for equality of treatment for each claim or interest within a particular class. The Plan, therefore, complies with section 1123(a)(4).

     (e)    <u>**Section 1123(a)(5): The Plan Provides Appropriate Means**</u>
<u>**of Implementation**</u>

The Plan also satisfies section 1123(a)(5). That subsection requires that the plan "provide adequate means for the plan's implementation[.]" 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) provides a non-exhaustive list of such means. The means for execution and implementation of the Plan are set forth in Article V.

With respect to the ability to transfer the Transferred Assets to NewCo, the means to effectuate that is self-evident. The Plan provides that the Reorganized Debtor, under the management of the Plan Agent, is authorized and directed to sign such documents as are necessary to effectuate the transfer (the "Transfer Documents"). The Transfer Documents, including bills of sale and assignment documents, are being prepared by counsel and will be ready before the Effective Date. After the Effective Date, the Plan Agent will be required to execute additional Transfer Documents to effectuate a transfer of national and international intellectual property, as well as the shares of Meade Mexico. Consistent with section 1123(a)(5)(B) and (D), the transfer or sale of the Transferred Assets to NewCo will be free of "any lien" claim or interest. With respect to Class 2, the Plan provides that the initial funding for the treatment to Class 2 will be paid from the Effective Date Cash on Hand. In the event that SMRH is determined to have an Allowed Claim, NewCo will be required to increase the Class 2 funding, i.e. the GUC Fund Amount, by the amount required to pay Class 2 Creditors, including SMRH, 15% of the amount of their Allowed Claims.

Allowed Administrative Claims, Priority Claims, the Initial GUC Fund Amount, and fees of

the Office of the United States Trustee, will also be funded from the Debtor's available Cash on

Hand.  As set forth in the Revised Liquidation Analysis, attached as Exhibit 1 to the Committee

Reply, and to the concurrently filed declaration of Alfred Masse (also as Exhibit 1), it is projected

that the Debtor will have more than sufficient cash on hand to fund all of these payments, as well as

the Initial GUC Fund Amount.[3]

The Plan also provides that the Plan will be implemented by the appointment of the Plan

Agent, who will, among other things, pursue the Estate Litigation Claims, enforce the rights under

the Plan, and make disbursements to Class 2 Creditors.  The Plan provides for $50,000 (from the

GUC Fund Amount) to cover the expenses of administering the Plan.

### (f)      Section 1123(a)(6) is Not Applicable

Section 1123(a)(6) requires the "inclusion in the charter of the debtor, if the debtor is a

corporation . . . of any provision prohibiting the issuance of nonvoting equity securities" and other

similar or related provisions.  11 U.S.C. § 1123(a)(6).  The Debtor is not issuing any such equity

securities.

### (g)      Section 1123(a)(7):  The Plan is Consistent With the
### Interests of Creditors, Equity Holders, and Public Policy

Section 1123(a)(7) states that a plan shall "contain only provisions that are consistent with

the interests of creditors and equity security holders and with public policy with respect to the

manner of selection of any officer, director, or trustee under the plan and any successor to such

officer, director or trustee."  11 U.S.C. § 1123(a)(7).  Section 1129(a)(5), which is discussed below,

augments section 1123(a)(7), and requires, as a condition of confirmation, that the proponent of a

plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of

---

[3] The Revised Liquidation Analysis attached to the Committee Reply inadvertently did not
contain an adjustment to the "wind down expenses" line item to reflect lower Chapter 7 Trustee
and third-party liquidator fees that would be due in light of the reduced value of inventory.   The
corrected analysis, along with a schedule explaining the calculation of wind down expenses is
attached as Exhibit 1 to the Masse Declaration in support of Confirmation (the "Masse
Confirmation Declaration") filed herewith.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  the plan, as directors, officers, or voting trustees of the debtor, or of an affiliate of the debtor

2  participating in a joint plan with the debtor, or of a successor to the debtor under the plan.  In

3  addition, section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director,

4  officer or voting trustee be consistent with "the interests of creditors and equity security holders and

5  with public policy."  11 U.S.C. § 1129(a)(5).

6       Under the Plan, while the Debtor's equity interests will remain intact, the holders of such

7  equity interests are not projected to receive any distribution under the Plan.  As disclosed in the

8  Disclosure Statement and Plan, Broadway will be appointed as the Plan Agent, with the sole and

9  exclusive authority to act on behalf of the Reorganized Debtor.  Through its role as the financial

10  advisors to the Debtor and the Committee over the past year, Broadway has become intimately

11  familiar with the Debtor.  In addition, Broadway has over 20 years of experience in reorganization

12  matters, and it, and its principal, Alfred Masse have served as fiduciaries for estates, in the capacity

13  of Plan Agent, liquidating trustee, and/or chief restructuring officer.  As such, the Plan Agent is

14  familiar with and will comply with its fiduciary duties to creditors.  Under these circumstances,

15  Broadway's role as Plan Agent is consistent with the interests of creditors and equity security

16  holders and with public policy.

17       Based on these and related provisions of the Plan, the Committee respectfully submits that

18  section 1123(a)(7) of the Code has been satisfied.

19            **(h)**      **Section 1123(a)(8) is Inapplicable to the Plan**

20       Section 1123(a)(8) applies only "to a case in which the debtor is an individual."  Because

21  the Debtor is a corporation, section 1123(a)(8) is inapplicable to this case.

22            **(2)**      **Section 1123(b): Permissive Plan Provisions**

23       Section 1123(b) sets forth the permissive provisions that may be incorporated into a Chapter

24  11 plan, including any "provision not inconsistent with the applicable provisions of [the Bankruptcy

25  Code]."  11 U.S.C. § 1123(b)(6).  Several of these discretionary provisions are contained in the

26  Plan.  For example, the Plan:

27           •     impairs classes of claims and interests, including Classes 1, 2, 3, and 4 as

28                permitted by section 1123(b)(1) (*see* Plan, Art. IV);

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

- provides for the assumption or rejection of executory contracts and unexpired leases, as permitted by section 1123(b)(2) (*see* Plan, Art. VI);

- provides for the Reorganized Debtor's retention of the Debtor's claims and causes of actions, with the full post-confirmation authority to enforce, sue on, compromise, and settle any and all such claims and causes of action as permitted by section 1123(b)(3) (*see* Plan, Art V, §5.14);

- provides for the sale of assets to NewCo, as permitted by section 1123(b)(4) (see Plan, Art. IV, §4.1); and

- modifies the rights of unsecured creditors, as permitted by section 1123(b)(5) (*see* Plan, Art. IV, §4.1).

As set forth above, the Plan complies with all of the provisions of section 1122 and 1123 of the Code and, therefore, complies with section 1129(a)(1) of the Code.

2.    **Section 1129(a)(2): The Plan Proponent Complies With the Provisions of the Bankruptcy Code**

Section 1129(a)(2) of the Bankruptcy Code requires "the proponent of a plan [to] compl[y] with the applicable provisions of this title."  11 U.S.C. § 1129(a)(2).  The inquiry under this section is whether the plan proponent has complied with the disclosure and solicitation requirements under section 1125.  *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000); *In re Brotby*, 303 B.R. 177, 192-93 (B.A.P. 9th Cir. 2003) (focusing analysis under section 1129(a)(2) on adequacy of disclosure of plan); *In re Sierra-Cal*, 210 B.R. 168,176 (Bankr. E.D. Cal. 1997).

The principal purpose of section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan under consideration has complied with the requirements of section 1125 in the solicitation of acceptances of the plan.  *See Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720, 732 (Bankr. W.D. Tenn. 1999); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995).  Section 1125 precludes the post-petition solicitation of a plan from any holder of a claim:

> unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing

adequate information.

11 U.S.C. § 1125.

Here, the Committee, as the plan proponent, complied with section 1125.  On February 12, 2021, after appropriate notice and a hearing, this Court entered an order approving the Disclosure Statement.  *See* Dkt. No. 357.  Consistent with that order, on February 17, 2021, the Committee timely transmitted the First Amended Disclosure Statement and Plan, ballot and other plan solicitation materials on all creditors and parties in interest.  The Committee did not solicit any votes for the Plan prior to approval of the Disclosure Statement and has fully complied with the Court's order regarding service of materials with respect to voting on the Plan and the hearing on confirmation of the Plan.  Moreover, the Committee has acted in good faith and has complied with the requirements of section 1125 in soliciting acceptances of the Plan.  In sum, the Committee has complied with section 1125.  As a result, the requirements of section 1129(a)(2) are satisfied.

### 3.    Section 1129(a)(3):  The Plan is Proposed in Good Faith

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Ninth Circuit has held that, although the Bankruptcy Code does not define "good faith," "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code."  *In re Sylmar Plaza*, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002) (citing *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989)).  "[F]or purposes of determining good faith under section 1129(a)(3). . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."  *Sylmar Plaza*, 314 F.3d at 1074 (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1994)).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan.  *Sylmar Plaza*, 314 F.3d at 1074.  As noted by the court in *In re Stolrow's, Inc.*, 84 B.R. 167 (B.A.P. 9th Cir. 1988):

> Good faith in proposing a Plan of Reorganization is assessed by the Bankruptcy Judge and viewed under the totality of the circumstances. (*Jorgensen v. Federal Land Bank of Spokane) In re Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986).  Good faith requires . . . a fundamental

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

fairness in dealing with one's creditors. *Id.* at 109. The Bankruptcy Judge is in the best position to assess the good faith of the parties.

*Id.*, at 172.

The Committee has filed the Plan in good faith. The Plan incorporates terms that were negotiated between and among the Committee, the Debtor and Orion, at arms' length and through counsel. There was no collusion of any kind involving the Debtor or any insider of the Debtor with regard to the Plan or any Plan terms. Further, despite the fact that Orion is the chairperson of the Committee, because the Plan proposes to transfer the Transferred Assets to Orion as part of its Class 1 treatment, Orion was recused from the Committee on all deliberations regarding the negotiation of Class 1's treatment and the terms under which the Transferred Assets would be sold to NewCo. The deliberations were made after Broadway engaged in an extensive effort to find a buyer for the Debtor's assets, and after considering the range of values in potential offers and probabilities of an asset purchase agreement being executed (e.g. requirement of a new supply agreement with Ningbo Sunny). *See* Masse Confirmation Declaration. Further, as the supply chain issue with Ningbo Sunny became increasingly critical , it became more likely that even the parties that expressed interest in acquiring the assets would not be interested without a supply agreement in place. This issue became clear even before Ningbo Sunny advised the Debtor recently that it would no longer be able to ship products or parts. Specifically, both potential purchasers required a meeting with Ningbo Sunny to discuss a supply agreement. Ningbo Sunny was unresponsive to Broadway and the Debtor's attempt to arrange for a discussion, which effectively put an end to any efforts to negotiate a sale with a third party. Simply put, short of a liquidation, there is no viable alternative to the Plan. *See* Masse Confirmation Declaration.

As a result, the proposal of the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honest and good intentions and with a basis for expecting that, under the circumstances, it is the best means for maximizing the recovery by creditors of the Debtor. *See In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988)). Moreover, the Debtor has complied with all court orders. Courts have held compliance with court

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  orders as determinative on whether a plan was proposed in good faith. *See In re Coastal Equities,*

2  *Inc.*, 33 B.R. 848 (Bankr. S.D. Cal. 1983); *In re Victory Const. Co.*, 9 B.R. 549 (Bankr. C.D. Cal.

3  1981). Based on the foregoing, the Plan has been proposed in good faith, not by any means

4  forbidden by law, and complies with section 1129(a)(3).

5      **4.**    **<u>Section 1129(a)(4): The Plan Provides That Payments to Estate Professionals</u>**

6          **<u>Are Subject to Court Approval</u>**

7      Section 1129(a)(4) requires that:

8          [a]ny payment made or to be made by the proponent . . . for services or for

9          costs and expenses in or in connection with the case, or in connection with
           the plan and incident to the case, has been approved by, or is subject to the

10         approval of, the court as reasonable.

11 11 U.S.C. § 1129(a)(4). The Plan satisfies this requirement.

12     Section 1129(a)(4) of the Code provides that a court may confirm a plan only if "[a]ny

13 payment made or to be made by the proponent, by the debtor, or by a person issuing securities or

14 acquiring property under the plan, for services or for costs and expenses in connection with the

15 case, or in connection with the plan and incident to the case, has been approved by, or is subject to

16 the approval of, the Court as reasonable."

17     Here, none of the professionals employed in the Debtor's Chapter 11 case will be paid its

18 outstanding post-petition pre-Effective Date fees and expenses until such fees and expenses have

19 been approved by the Court. This procedure for review and ultimate determination by the Court of

20 the professional fees and expenses to be paid by the Debtor satisfies the requirement of section

21 1129(a)(4). *See In re Sound Radio, Inc.*, 93 B.R. at 854; *Texaco Inc.*, 84 B.R. at 908; *In re Future*

22 *Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988). "Court approval of payments for

23 services and expenses is governed by various Code provisions -- e.g., §§ 328, 329, 330, 331 and

24 503(b) -- and need not be explicitly provided for in a Chapter 11 plan." *Future Energy*, 83 B.R. at

25 488.

26     In this case, all professionals rendering pre-confirmation services shall receive

27 compensation from the estate only with prior court approval. The Plan provides:

28         Professionals shall file a final application for allowance and payment of

MSH 2710879v1                   12

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

> their fees and expenses in accordance with the Bankruptcy Code,
> Bankruptcy Rules, Local Bankruptcy Rules, and any orders or rules of the
> Court, which shall act as the only necessary documentation of
> Administrative Expense Claims for Professionals.

*See* Plan, Art. III, §3.1.

A final hearing on the professional fees incurred prior to the confirmation of the Plan will be scheduled for a date after the confirmation hearing.  The professionals involved will be filing appropriate final fee applications to be heard at a final fee hearing.  The Debtor's estate will only pay the fees and expenses of professionals employed in this case as approved by the Court.  Thus, the provisions of section 1129(a)(4) are met.

5.    <u>Section 1129(a)(5): The Plan Identifies the Parties to Serve Post-Confirmation</u>

Section 1129(a)(5) requires the following:

> (A)    (i)  The proponent of the plan has disclosed the identity and
> affiliations of any individual proposed to serve, after confirmation of the
> plan, as a director, officer, or voting trustee of the debtor . . .; and
>
> (ii) the appointment to, or continuance in, such office of such
> individual, is consistent with the interests of creditors and equity security
> holders and with public policy; and
>
> (B) the proponent of the plan has disclosed the identity of any insider that
> will be employed or retained by the reorganized debtor, and the nature of
> any compensation for such insider.

11 U.S.C. § 1129(a)(5).

This section augments section 1123(a)(7) (discussed above).  These requirements are satisfied.

The Disclosure Statement and Plan disclose that post-confirmation, the Reorganized Debtor will be managed by the Plan Agent.  Further, as required by section 1129(a)(5)(B), the Disclosure Statement and Plan disclose the nature of compensation that the Plan Agent will be paid. Specifically, the Plan Agent will receive compensation equal to 3% of all distributions made under the Plan (not including Effective Date Payments).

6.    <u>Section 1129(a)(6) is Not Applicable</u>

Section 1129(a)(6) requires the approval of any "rate changes" provided under the plan from

1  the relevant governmental regulatory commission.  *See* 11 U.S.C. § 1129(a)(6).  There are no such

2  rate changes provided under the Plan, and as far as the Committee is aware, no such governmental

3  agency with jurisdiction over the Debtor.  This section, therefore, does not apply to the Plan.  *See*

4  *Sound Radio*, 93 B.R. at 854; *Texaco, Inc.*, 84 B.R. at 908.

5        7.    **Section 1129(a)(7): The Plan is in the Best Interests of Creditors**

6  Section 1129(a)(7) requires the following:

7        With respect to each impaired class of claims or interests-

8      (A)    each holder of a claim or interest of such class-

9          (i) has accepted the plan; or

10          (ii) will receive or retain under the plan on account of such claim or interest

11        property of a value, as of the effective date of the plan, that is not less than the
amount that such holder would so receive or retain if the debtor were liquidated

12        under chapter 7 of this title on such date[.]

13  11 U.S.C. § 1129(a)(7).

14        This section - referred to as the "best interests of creditors" test - focuses on individual

15  dissenting creditors, rather than on classes of claims or interests.  *See Bank of America Nat'l Trust*

16  *& Savings Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 442 n.13, 119 S. Ct. 1411, 143 L.

17  Ed. 2d 607 (1999).  Under the best interest of creditors test, with respect to classes impaired under

18  the plan, creditors and equity holders who do not accept a plan are to receive at least as much under

19  the plan as they would receive under a Chapter 7 liquidation.

20        In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee.  Secured

21  creditors are paid first from the sales proceeds of the assets in which the secured creditor has a

22  security interest or lien.  Administrative claims are paid next.  After that, unsecured creditors are

23  paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors

24  with the same priority share in proportion to the amount of their allowed claim in relationship to the

25  amount of total allowed unsecured claims.  Finally, equity interest holders, according to their rights

26  of priority, receive the balance that remains after all creditors are paid in full, if any.

27        Here, the Plan satisfies this section.  As described in the Committee Reply, the Declaration

28  of Alfred Masse attached to the Committee Reply, and Masse Confirmation Declaration, the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   Debtor's creditors will recover more under the Plan than they would in a Chapter 7 liquidation.  *See*

2   Revised Liquidation Analysis, attached as Exhibit 1 to the Masse Confirmation Declaration.

3       Orion (Class 1) voted to accept the Plan.  With respect to the remaining impaired classes -

4   Class 2 (General Unsecured Creditors), that voted to reject the Plan, and Classes 3 and 4 that did

5   not vote but are deemed to have rejected the Plan, the Creditors in those Classes will receive under

6   the Plan not less than the amount it would so receive if the Debtor were liquidated under chapter 7.

7       Only one creditor in Class 2 voted to reject the Plan – SMRH with a Disputed Claim of

8   $2.68 million.  As discussed in the Committee Reply, in the event that SMRH is ultimately

9   determined to have an Allowed Claim, the GUC Fund Amount will be increased such that the

10  Creditors in Class 2 will be projected to receive 15% of their Allowed Claims. If SMRH's claim is

11  Disallowed, the remaining Class 2 Creditors are projected to receive 30% of their Allowed

12  Claims.   On the other hand, in chapter 7, after liquidation of the Debtor's assets, payment of

13  allowed priority and administrative claims, including the increased costs of winding down the

14  Debtor's operations, general unsecured creditors are projected to receive 10.8%, if the SMRH

15  Claim is Allowed.[4]

16      Based on the foregoing, section 1129(a)(7) is satisfied.

17  **8.    Section 1129(a)(8): All Classes Have Either Accepted the Plan or Are Treated in**

18  **a Manner Consistent With Section 1129(b)**

19      Section 1129(a)(8) requires that "each class of claims or interests . . . has accepted the plan;

20  or . . . is not impaired under the plan." 11 U.S.C. § 1129(a)(8).  Section 1126(c) and

21  (d) govern whether or not a class has accepted a plan:

22      (c)  A class of claims has accepted a plan if such plan has been accepted
    by creditors . . . that hold at least two-thirds in amount and more than one-
23  half in number of the allowed claims of such class held by creditors . . .
    that have accepted or rejected such plan.
24

25      (d)  A class of interests has accepted a plan if such plan has been accepted

26  _____

27      [4] In the Committee Reply, the Committee asserted that Creditors would receive 10.2%
under a liquidation.   However, this figure has been adjusted to 10.8% as discussed in the Masse
28  Confirmation Declaration.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

by holders of such interests . . . that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests . . . that have accepted or rejected such plan.

11 U.S.C. § 1126(c), (d).

A plan may be confirmed even if a class has neither accepted the plan nor designated as unimpaired under the plan.  Rather, in such instance, the plan may be confirmed so long as it complies with section 1129(b) as to that particular class of claims or interests (and the plan otherwise complies with the other applicable subsections of section 1129(a)).  As section 1129(b) provides:

[I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).  As discussed above, Class 1 voted to accept the Plan.   For the reasons presented in section C below, the Committee respectfully submits that the Plan satisfies the "cram down" provisions of section 1129(b).

### 9.    Section 1129(a)(9): The Plan Provides for Payment in Full of All Administrative and Other Priority Claims

Section 1129(a)(9) of the Code states the rules applicable to payment of those unsecured claims entitled to priority in distribution in Chapter 11 cases.  *See* 11 U.S.C. § 1129(a)(9).  It requires that persons holding allowed claims entitled to priority under section 507(a) receive certain specified treatment.  The Plan satisfies the applicable provisions of this section.

Subparagraph (A) of section 1129(a)(9) addresses the treatment of administrative claims and expenses entitled to priority under section 507(a)(2) or 507(a)(3).  It provides that "on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim," unless "the holder of [such] particular claim has agreed to a different treatment of such claim."  11 U.S.C. § 1129(a)(9)(A).  The Plan satisfies this provision.

Here, the Plan provides that professional fees and expenses that are allowed under section

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

507(a)(2) will be paid on the Effective Date, or as soon thereafter as the Claims become Allowed. *See* Plan, Art. III. There are no section 507(a)(3) claims in this case and thus, the provisions relating to section 507(a)(3) claims are not applicable.

Subparagraph (B) of section 1129(a)(9) addresses the treatment of claims of a kind specified in sections 507(a)(1), (a)(4), (a)(5), (a)(6) and (a)(7). *See* 11 U.S.C. § 1129(a)(9)(B). There are no section 507(a)(1), (a)(5), (a)(6) and (a)(7) claims in this case, and in turn, the provisions relating to such claims are not applicable. With respect to section 507(a)(4) claims, i.e., priority wage claims, those claims are addressed in the Plan and will be paid in full when the employees of the Debtor are terminated on the Effective Date. *See* Plan, Art. V, §5.4.

Subparagraph (C) and (D) of section 1129(a) address the treatment of claims of a kind specific in section 507(a)(8) (whether the claim is unsecured or secured). It provides that "with respect to a claim of a kind specified in section 507(a)(8) of this title" or "a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of the claim":

> [e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim . . . the holder of such claim will receive on account of such claim regular installment payments in cash –
>
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
>
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
>
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan[.]

11 U.S.C. § 1129(a)(9)(C), (D).

There are no known claims of governmental entities.

### 10.    Section 1129(a)(10): At Least One Impaired Class Has Accepted the Plan

Section 1129(a)(10) requires that "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). As discussed above, section 1126 provides the requirements for determining

1  acceptance.  Section 1129(a)(10) requires affirmative acceptance of a plan by at least one impaired

2  class of claims, unless all classes of claims are left unimpaired.  The concurrently filed Ballot

3  Summary sets forth the results of voting on the Plan showing that this requirement has been

4  satisfied.

5      In this case, the Plan contains four classes, all of which are impaired.  The Class 1, which

6  contains the claim of Orion - voted to accept the Plan.  Orion is not an Insider of the Debtor.  As a

7  result, the Plan satisfies the requirement of section 1129(a)(10).

8      **11.    Section 1129(a)(11): The Plan is Feasible**

9          **a.    Standard**

10     Section 1129(a)(11) requires the plan proponent to establish that "[c]onfirmation of the plan

11 is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

12 debtor . . . ."  11 U.S.C. § 1129(a)(11).  This requirement is often referred to as the "feasibility"

13 requirement, and is satisfied by a showing that the reorganized debtor has a "reasonable

14 probability" of satisfying its obligations under a plan.  *See In re Acequia, Inc.*, 787 F.2d 1352, 1364

15 (9th Cir. 1986).

16     The feasibility test in section 1129(a)(11) requires the court to determine whether the plan is

17 workable and has a reasonable likelihood of success.  *See U.S. v. Energy Res. Co. Inc.*, 495 U.S.

18 545, 549, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990).  A plan has a reasonable likelihood of viability

19 if it is much more than a mere "visionary scheme" and, therefore, satisfies the feasibility

20 requirement of section 1129(a)(11).  *Acequia*, 787 F.2d at 1365 (citing *In re Pizza of Hawaii*, 761

21 F.2d 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of

22 visionary schemes which promise creditors and equity security holders more under a proposed plan

23 than the debtor can possibly attain after confirmation")).  *See also In re Sagewood Manor Assoc.*

24 *Ltd. P'ship*, 223 B.R. 756, 762-63 (Bankr. D. Nev. 1998) ("While a reviewing court must examine

25 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of

26 section 1129(a)(11) . . . only a relatively low threshold of proof is necessary to satisfy the feasibility

27 requirement").  The Bankruptcy Appellate Panel for the Ninth Circuit summarized the feasibility

28 requirement as follows:

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

> To demonstrate that a plan is feasible, a debtor need only show a
> reasonable probability of success. The Code does not require the debtor to
> prove that success is inevitable, *and a relatively low threshold of proof*
> *will satisfy § 1129(a)(11), so long as adequate evidence supports a finding*
> *of feasibility.*

*Brotby*, 303 B.R. at 191-92 (emphasis added).

The two primary aspects of feasibility are: (i) that the plan proponent will have sufficient cash on hand to make the payments required on the effective date; and (ii) that the plan proponent will have sufficient cash over the life of the plan to make the required plan payments. As discussed below, both aspects are satisfied.

**b.      A Reasonable Probability Exists That Sufficient Cash Will Be Available to Make All Required Effective Date Payments**

As discussed in the Masse Confirmation Declaration, the Debtor is projected to have Cash on Hand on the Effective Date of $3,876,769. The projected Administrative Expenses, Priority Claims, employee payments for PTO and benefits on termination, the amount of the Initial GUC Fund Amount, cost advance to malpractice counsel, and US Trustee fees total $ 1,238,512. Therefore, there will be more than sufficient cash to make the Effective Date Payments.

**c.      A Reasonable Probability Exists That Sufficient Cash Will Be Available to Make All Required Future Payments**

Under the Plan, all payments to creditors other than Class 2 will be made on the Effective Date. Further, the Plan provides for the funding of the Initial GUC Fund Amount on the Effective Date from available Cash on Hand. Therefore, a reserve for the projected disbursements to Class 2 will be funded on "day one". The only scenario in which a future payment may be due from NewCo is if the SMRH Claim survives after litigation, in which case the GUC Fund Amount will be increased by approximately $ 259,275. The Committee cannot predict when litigation with SMRH will conclude. However, NewCo will be well capitalized with over $$2,600,000 million in cash from the Debtor (after Effective Date payments are made). The Transferred Assets represent Orion's only recovery from the Debtor on account of its $50+ million judgment. Thus, NewCo has every incentive to thrive financially. Therefore, in the event that SMRH's claim is allowed, NewCo

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  will be able to fund the GUC Fund Amount after credit for any amounts remaining in the Initial

2  GUC Fund Amount for Disallowed Claims, the reserves set-up for the payment of Administrative

3  and Priority Claims, and any unused amounts in the payments made to cover the costs for the

4  Litigation Claims. Given the capitalization, and NewCo's plans to continue the Debtor's product

5  lines, the Committee submits that there is more than a reasonable likelihood that this potential

6  future payment will be made (if it ever becomes required).

7     **12.**  **Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid**

8     Section 1129(a)(12) requires that "[a]ll fees payable under section 1930 of title 28, as

9  determined by the court at the hearing on confirmation of the plan, have been paid or the plan

10  provides for the payment of all such fees on the effective date of the plan." 11 U.S.C.

11  § 1129(a)(12). Here, Plan provides that all fees due to the Court as well as all fees due to the Office

12  of the United States Trustee will be paid from available Cash on Hand.

13     **13.**  **Section 1129(a)(13) is Not Applicable**

14     Section 1129(a)(13) requires a plan to "provide[ ] for the continuation after its effective date

15  of payment of all retiree benefits, as that term is defined in section 1114 . . ." 11 U.S.C.

16  § 1129(a)(13). There are no retiree benefits required to be paid under the Plan. Therefore, the

17  provisions of section 1129(a)(13) do not apply to this case.

18     **14.**  **Section 1129(a)(14) is Not Applicable**

19     Section 1129(a)(14) requires the payment of domestic support obligations "[i]f the debtor is

20  required by a judicial or administrative order, or by statute," to make such payments. 11 U.S.C. §

21  1129(a)(14). The provisions of this subsection do not apply to this corporate case.

22     **15.**  **Section 1129(a)(15) is Not Applicable**

23     Section 1129(a)(15) expressly applies only to "a case in which the debtor is an individual[.]"

24  11 U.S.C. § 1129(a)(15). Therefore, this subsection does not apply to this case.

25     **16.**  **Section 1129(a)(16) - Transfer of Property**

26     Section 1129(a)(16) relates to transfers of property by "a corporation or trust that is not a

27  moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). This provision

28  has been construed only to apply to non-profit entities. *See In re Eastern 1996D Limited*

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

MSH 2710879v1       20

1   *Partnership*, 2014 Bankr. LEXIS 5085 (Bankr. N.D. Tex. 2014) (section 1129(a)(16) is only

2   applicable if debtor is a non-profit corporation or trust); 7-1129 *Collier on Bankruptcy*, ¶

3   1129.02[16] (16th ed. 2017).  The Debtor is not a non-profit entity, therefore, the requirements of

4   this subsection do not apply in this case.

5   **C.    The Plan Satisfies All Applicable Provisions of Section 1129(b)**

6          Section 1129(b)(1) provides:

7          [I]f all applicable requirements of subsection (a) of this section other than
           paragraph (8) are met with respect to a plan, the court . . . shall confirm the plan
8          notwithstanding the requirements of such paragraph if the plan does not
           discriminate unfairly, and is fair and equitable, with respect to each class of claims .
9          . . that is impaired under, and has not accepted, the plan.

10  11 U.S.C. § 1129(b)(1).  This means that a plan may be confirmed despite not satisfying section

11  1129(a)(8) if, with respect to the class of claims that did not accept the plan, the plan: (i) does not

12  discriminate unfairly; and (ii) provides fair and equitable treatment.

13         Class 1 accepted the Plan.  As a result of the one "no" vote from SMRH, Class 2 did not.

14  Classes 3 and 4 did not vote, and are deemed to have rejected the Plan.

15         **1.    The Plan Does Not "Discriminate Unfairly" Against Class 2**

16         The term "discriminate unfairly" is not defined in the Bankruptcy Code.  This term has

17  been interpreted generally to require a plan to provide for "fair allocation of reorganization value

18  among claimants with equal nonbankruptcy liquidation priorities[.]"  7-1129 *Collier on*

19  *Bankruptcy*, ¶ 1129.03[3][a] (16th ed. 2020).  It requires that a dissenting class receive "treatment

20  which allocates value to the [dissenting] class in a manner consistent with the treatment afforded

21  to other classes with similar legal claims against the debtor" (*In re Mcorp Financial, Inc.*, 137

22  B.R. 219, 234 (Bankr. S.D. Tex. 1992)), so that such class "will receive relative value equal to the

23  value given to all other similarly situated classes" (*In the Matter of Johns-Manville Corporation*,

24  68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986)).  Notably, "[t]here can be 'discrimination,' so long as it

25  is not 'unfair.'"  7-1129 *Collier on Bankruptcy*, ¶ 1129.03[3] (16th 2020).

26         The Plan does not discriminate unfairly against Class 2.  Creditors in Class 2 will receive

27  the same or better treatment afforded to other general unsecured creditors.  In other words, there is

28  no discrimination at all, let alone any "unfair" discrimination.  Further, as described at Pages 5-6

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

MSH 2710879v1                          21

**Sulmeyer Kupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

of the Committee Reply, as between Class 1 and Class 2, the Plan provides superior treatment to the Creditors in Class 2.   Specifically, under the Plan the treatment afforded to Orion, i.e. the transfer of the Transferred Assets net of cash needed to fund Effective Date Payments, provides Orion with a return of approximately 9.2%, while Class 2 will receive at least 15% if SMRH's Claim is Allowed, and 30% if SMRH's Claim is Disallowed.

### 2.    The Plan is "Fair and Equitable" as to Class 2

Section 1129(b)(2) provides examples of what constitutes "fair and equitable" treatment based on the particular class at issue.  The Plan is "fair and equitable" with respect to Class 2.

With respect to unsecured claims, a plan is "fair and equitable" when:

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . .

11 U.S.C. § 1129(b)(2)(B).  The Plan satisfies this requirement.   Under the Plan, no Class with junior claims or interests will retain anything of value under the Plan.  Class 3, which represents the Insider Claims, will receive no distribution under the Plan recognizing that any distributions they would otherwise be entitled to would be paid to Orion on account of its judgment liens against them.   Class 4, which represents the Equity Interests in the Debtor, held by jointly-administered Debtor, Sunny Optics, Inc. ("Sunny") will receive no distributions under the Plan, and will have no rights of control or management over the Debtor post-confirmation.

### IV.

### THE PROPOSED ASSUMPTION OF LEASES AND CONTRACTS IS PROPER

The Plan provides for assumption of unexpired leases and executory contracts.  This is permissible, subject to section 365. *See* 11 U.S.C. § 1123(b)(2).  Bankruptcy Code section 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b) sets forth the requirements a debtor must satisfy to assume an unexpired lease or executory contract.  That section provides:

> If there has been a default in an executory contract or unexpired lease . . . , the trustee may not assume such contract or lease unless, at the time of assumption . . ., the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .
>
> (B) compensates. or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

Assurance of future performance "is adequate 'if performance is likely (i.e. more probable then not)' and the degree of assurance necessary to be deemed adequate "falls considerably short of an absolute guaranty.'" *Citrus Tower*, 2012 Bankr. LEXIS at *15 (quoting *In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008), and *In re Tex. Health Enters., Inc.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000). "A debtor need not prove it will 'thrive and make a profit.' It must simply appear that the rent will be paid and other lease obligations met." *Id.*

The Bankruptcy Code provides debtors in possession wide discretion to assume or reject unexpired leases or executory contracts. Courts typically inquire whether or not the proposed assumption or rejection is within the sound "business judgment" of the debtor in possession. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2nd Cir. 1993); *Robertson v. Pierce (In re Huang)*, 23 B.R. 798, 800 (9th Cir. B.A.P. 1982). As discussed below, assumption of the leases and contracts identified in the Plan and identified in the Notice Of Additional Assumed And Rejected Executory Contracts And Leases Pursuant To Proposed Plan [Dkt No. 373] (the "Executory Contract Notice") is proper and complies with section 365.

First, at this time, in the NewCo's business judgment, each of leases and contracts to be assumed are an integral part of the Transferred Assets. The majority of the contracts listed for assumption are domestic and international sales distribution agreements, none of which have any known cure claims. Other agreements provide vendor terms with respect to third party resellers

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   like Amazon.com, and the like.   Most of these agreements have termination clauses that allow

2   either side to terminate the contracts by notice.  NewCo will be managed by Orion.  Given Orion's

3   involvement in the telescope industry, it is familiar with these types of agreements, and is well

4   suited to assume them.   With respect to the Irvine Company lease for the corporate headquarters

5   and warehouse space, NewCo has determined that if the Plan is confirmed at the Confirmation

6   Hearing it will transition out of that space by the end of May, and as such, the lease for that space

7   will be rejected.    As a result, assumption of the leases and contracts identified in the Plan and the

8   Executory Contract Notice is proper.

9   **V.**

10  **<u>CONCLUSION</u>**

11         The Plan complies with and satisfies the requirements of section 1129 of the Bankruptcy

12  Code.  Accordingly, the Committee requests that the Court enter an order confirming the Plan and

13  granting such other and further relief as is just and appropriate under the circumstances.

14  DATED: April 7, 2021                          **Sulmeyer**Kupetz
                                                  A Professional Corporation

15

16

17                                                By: /s/ *Mark S. Horoupian*
                                                      Mark S. Horoupian
                                                      Attorneys for Official Committee of Unsecured
18                                                    Creditors, Plan Proponent

19

20

21

22

23

24

25

26

27

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

DECLARATION OF ALFRED MASSE

I, Alfred Masse, declare as follows:

1.     I am the managing member and principal of Broadway Advisors, LLC ("Broadway"). I submit this Declaration in support of the Committee's Brief in Support of Confirmation of its First Amended Plan of Reorganization. Other than as stated herein, I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.     Broadway was founded in 2002 as a boutique management consulting firm focused on advising and assisting financially and/or operationally troubled companies. As a member of Broadway, I have served as a financial advisor to dozens of debtors in possession, chapter 7 and 11 trustees, and creditor's committees. In addition, I have served in roles as interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of numerous companies, most of those being in "distress".

3.     I have a Bachelor of Arts in economics from the University of California, Los Angeles. Prior to forming Broadway Advisors in 2002, I was Vice President Corporate Development of Cadiz Inc. (NASDAQ), an agricultural and ground-water resource company, where I was responsible for all acquisition efforts and for negotiating purchase agreements with private and governmental agencies.

4.     I was a founding member and Managing Director of Baymark Strategies, LLC, a financial advisory and turnaround firm started by former Coopers & Lybrand restructuring partners. During my five years at Baymark, my engagements ranged in size from $10 million to $750 million and included Hard Candy, Tune-Up Masters, Four Queens Hotel and Casino as well as Sizzler Restaurants.

5.     Prior to Baymark Strategies, I spent five years in Coopers & Lybrand's corporate recovery and restructuring practice where I was a Manager. There, I provided workout and financial advisory services to Chapter 11 companies and out-of-court clients including Hamakua Sugar, Oahu Sugar and Tosco Refining Corporation.

6.     Broadway was initially jointly retained by the Debtor and the Committee as

1   investment bankers to the Bankruptcy Estate.  In that role, Broadway's primary role was to

2   attempt to find a buyer for the Debtor's assets.  *See* Docket No. 171.

3         7.     Later, at the request of the Debtor and the Committee, the scope of

4   Broadway's engagement was expanded to include financial advisory services. *See* Docket No.

5   227.

6         8.     Under my direction, Broadway conducted extensive research and analysis

7   to identify industry leaders in telescopes, optics, and related hobbies and compile a list of targeted

8   companies/individuals to receive marketing materials.   We then prepared an Acquisition

9   Opportunity Sales Deck, consisting of Company Overview, Industry Outlook, Historical Financial

10  Performance, Sales by Category and Geography, and Inventory Breakdown.

11        9.     In April 2020, we initiated a telemarketing campaign in which we identified

12  likely bidders from the telescope, optics, and hobby industries and contacted them directly via

13  telephone to discuss opportunity and determine interest in Meade's assets.  We contacted over 29

14  targeted parties via telephone and video meetings including competitors and equity funds/buy-out

15  firms.   We then prepared an Acquisition Opportunity Summary ("Teaser"), consisting of a

16  Company Overview, Industry Overview, description of the major assets being offered for sale, and

17  a description of the opportunity.

18       10.     On July 7, 2020, the Teaser was approved and initially sent to a list of over

19  160 entities and individuals.  These potential buyers represent the leaders in telescope and related

20  industries who had not been contacted during the telemarketing campaign, and also included

21  private equity and hedge funds, intellectual property attorneys, and bankruptcy professionals who

22  may have clients interested in the assets.  The Teaser was downloaded over 20 times.

23       11.     Broadway established and managed a digital due diligence data room which

24  included populating the data room as information was received, tracking receipt of non-disclosure

25  agreements ("NDA") prior to assigning access to interested parties, acting as liaison between

26  interested parties and the Debtor to address questions raised during due diligence process, and

27  monitoring user activity.  Thirteen parties executed NDAs.  All parties who received access to the

28  data room spent a considerable amount of time in data room primarily focusing attention on

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  financials and fixed asset folders.  In total there were 1,927 total downloads of the various files.

2          12.      Broadway maintained regular communication with those parties who

3  expressed an interest in becoming the stalking horse bidder or who had expressed interest in

4  purchasing specific assets.  In some instances, we conducted almost daily telephone conversations

5  to ensure the potential buyers remained interested and answer questions regarding operations and

6  sales process.  We also coordinated video tours of Meade's facilities in response to travel

7  restrictions in place due to the global pandemic.  Ultimately, two parties expressed interest in

8  becoming the stalking horse bidder for all assets of Meade, and one party submitted multiple

9  letters of intent.  The other provided proof of financing and was waiting to speak with Meade's

10  key supplier, Ningbo Sunny, before submitting a letter of intent.  Three other parties confirmed

11  interest in select assets of Meade and expressed interest in participating in the auction but would

12  not be willing to submit an offer for all assets.

13          13.      As the range of values of the potential offers were presented, the Committee

14  engaged in discussions with Orion who had expressed an interest in acquiring the assets of the

15  business through a plan of reorganization.  At the request of the Committee, we provided the

16  Committee and the Debtor with a side-by-side comparison of the value offered by Orion against

17  the potential offers.  In my opinion, the Orion proposal provided a higher and more definite return

18  to the "non-Orion" creditors of the Debtor.  I formed this decision before (a) it became clear that

19  Ningbo Sunny would not supply the Debtor with product; and (b) modifications were made to the

20  Plan which increased the consideration to be paid by Orion for the Transferred Assets.

21          14.      As the supply chain issue with Ningbo Sunny became increasingly critical,

22  it became more likely that even the parties that expressed interest in acquiring the assets would not

23  be interested without a supply agreement in place.   This became clear even before Ningbo Sunny

24  advised the Debtor recently (on or around February 25, 2021) that it would no longer be able to

25  ship products or parts.   Specifically, both potential purchasers required a meeting with Ningbo

26  Sunny to discuss a supply agreement.  Ningbo Sunny was unresponsive to Broadway and the

27  Debtor's attempt to arrange for a discussion, which effectively put an end to any efforts to

28  negotiate a sale with a third party.   In my opinion, short of a liquidation, there is no viable

1    alternative to the Plan.

2         15.    As a result of Broadway's engagement, I have become very familiar with

3    the Debtor's operations, including its income, expenses, and asset values. Between myself, and

4    Leticia Lujan, a partner at Broadway, we had extensive meetings with the Debtor's president, Mr.

5    Aniceto, reviewed all outgoing purchase orders, reviewed financial statements and projections,

6    and otherwise gained an intimate understanding of the challenges facing the Debtor.

7         16.    At the request of the Committee, I was responsible for managing the

8    preparation of the original Liquidation Analysis accompanying the Committee's original

9    Disclosure Statement filed on December 30, 2020.

10        17.    The Liquidation Analysis was based on a projected Effective Date of

11   February 28, 2021, but was based on financial data available as of October 31, 2020.

12        18.    The Confirmation hearing was set for approximately 45 days after the filing

13   of the Plan, and we believed the Debtor's operations would continue to remain stable and the

14   projected values of the Debtor's assets and liabilities would maintain their respective values

15   through the Effective Date.

16        19.    On February 25th, 2021, Mr. Aniceto, advised us that Ningbo Xinhui

17   (formerly Ningbo Sunny), the Debtor's primary supplier, told him that they would be unable to

18   fulfill the current outstanding orders and were going to return the Debtor's molds indicating they

19   would not be fulfilling any future orders.  This development dictated that the Liquidation Analysis

20   needed to be updated.

21        20.    With Ningbo Xinhui supplying Finished Goods and parts that are used in

22   over 75% of the Debtor's inventory, this interruption of the supply chain had a profound effect on

23   the value of the Transferred Assets in the following way:

24        • **Finished Goods Inventory**:  Setting aside the increased costs that NewCo will

25           have to expend in order to replace the supply chain, the Debtor is rapidly running

26           out of inventory, and the inventory mix that it will have remaining by the Effective

27           Date will be more heavily weighted towards older inventory that is difficult to

28           move, and in particular, contains $536,577 or 12% of inventory that has had no

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

sales in the past year.

- **Purchase Orders Effectively Cancelled**:  This development has also resulted in all purchase orders previously placed by the Debtor (approximately $1.56 million), which were accounted for in the Liquidation Analysis as Transferred Assets have been effectively cancelled.  Therefore, the value of these goods was removed from the Liquidation Analysis.

- **WIP Rendered Essentially Worthless**.  In addition to the expected finished goods not being received, the cancelled purchase orders also contain parts necessary to convert raw materials and WIP into finished saleable products—without those parts the WIP category in the Liquidation Analysis is rendered virtually worthless.

- **Uncertainty Regarding Return of Molds**:  Further adding to NewCo's costs and risks in taking on the Transferred Assets, is the fact that despite offering to return the Debtor's molds (necessary to manufacture new products and parts), Ningbo Xinhui has been slow in responding to several requests by the Debtor to initiate the process of collecting the molds, which includes recovery from various third-party suppliers, and returning the molds back to the United States from China.

21.    As a result of the supply chain issues and its effect on current inventory and subsequent sales, the changes to projected payments under the Plan and as a result, revised administrative expense projections, we  prepared a Revised Liquidation Analysis.   A copy of the Revised Liquidation Analysis was attached as Exhibit 1 to the Committee Reply.  After the Committee Reply was filed, we discovered that we inadvertently did not adjust the Wind Down Expense line item to reflect lower fees due to a Chapter 7 trustee and a third-party liquidator due to the significantly decreased value of inventory that would be available for liquidation.  A further Revised Liquidation Analysis, along with a breakdown of the Wind Down Expense line item is attached hereto as  Exhibit 1.

22.    After consideration of the changes described above, Broadway concludes that the value of the Transferred Assets to be delivered to NewCo is now projected to be approximately $6,064,654 as of May 1, 2021, a decrease of over $3 million from the previous

projection.

23.    Therefore, the value of the assets projected to be received by Orion, after payment of the Priority, Administrative, and the first installment (as revised) of the GUC Fund, would be approximately $4,926,412. When measured against the amount of Orion's Class 1 Claim, receipt of these assets provides a percentage recovery under the Plan of approximately 9.2%.

24.    Additionally, the Revised Liquidation Analysis concludes that Unsecured Creditors would receive a recovery of 10.8% in a liquidation under Chapter 7.[5] This estimate assumes that Ningbo Sunny's claim and the disputed SMRH Claim are allowed.   The general unsecured claims (not including Orion, Ningbo, or SMRH) are estimated at $743,214, plus an estimated allowed rejection claim in favor of the Irvine Company based on a projected rejection date of June 1, 2021.

25.    The Revised Liquidation Analysis also contains revised projected Administrative Claims based upon updated figures provided to Broadway by the Estate's professionals.

26.    Further assumptions used for the preparation of the Revised Liquidation Analysis, and the conclusions reached therein are set forth in the third page of the analysis.

27.    I project that the Debtor will have $3,876,769 of Cash on Hand on the Effective Date.   We arrived at this figure by reviewing the Debtor's current cash balance, and with the assistance of Mr. Aniceto, projecting the receipts and expenses until the projected Effective Date.

28.    The projected Administrative Expenses, Priority Claims, employee payments for PTO and benefits on termination, the amount of the Initial GUC Fund Amount, cost advance to malpractice counsel, and US Trustee fees total $1,238,512.   Accordingly, there will be more than sufficient Cash on Hand to fund all Effective Date payments.

---

[5] The version of the Revised Liquidation Analysis attached to the Committee Reply concluded that creditors would receive 10.3% in a liquidation.   After adjustments were made to the Wind Down Expense line item, there was a .5% increase in the projected liquidation recovery.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

29.     Either I or Broadway have successfully handled post-confirmation duties in cases where Broadway was a financial advisor for the Debtor and/or estate prior to confirmation. For example, in In re Power Balance, LLC, (Case No. 8:11-bk-25982-TA) a case before the honorable Theodore Albert, Broadway was the Debtor's financial advisor, submitted the only declaration in support of the confirmation of the Debtor's plan, and was appointed as the plan agent.  Like the Plan in this Case, the Plan Agent was tasked with, among other things, the prosecution of Estate Litigation Claims, including directors and officer's claims, and avoidance actions against insiders.  Under Broadway's guidance, the post-confirmation estate in that case recovered more than $800,000 in litigation recoveries for the benefit of the Estate.   Likewise, in In re ISC8, Inc. (Case No. 8:14-bk-15750-SC), a case before the honorable Scott Clarkson, I was the Debtor's chief restructuring officer, submitted a declaration in support of confirmation of the Debtor's Plan, and was later appointed as the liquidating trustee of the trust established under the Plan.  In that case, under my guidance, the post-confirmation estate pursued litigation against former officers and directors, and insiders of the Debtor for breach of fiduciary duty, and recovery of avoidable transfers, which resulted in a settlement of $4,000,000 being paid by the Debtor's insurers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of April, 2021, at Sonoma, CA.



_____
Alfred M. Masse

**EXHIBIT 1**

**Meade Instruments Corp., a Delaware Corporation**
Plan vs Liquidation Analysis
*As of February 28, 2021*

| Asset Value | | Plan 1 - Amended (1)<br>*As of February 28, 2021*<br>Amount | Liquidation Analysis<br>*As of February 28, 2021*<br>Amount |
|---|---|---|---|
| Cash | 2 | 3,561,996 | 3,561,996 |
| | | | |
| **Accounts Receivable** | | | |
| Ending Accounts Receivable | | 1,539,300 | 1,539,300 |
| Less Ineligible | 3 | (472,979) | (549,930) |
| **Accounts Receivable Total Value** | | 1,066,321 | 989,370 |
| | | | |
| **Inventory** | | | |
| Current Inventory | 4 | 1,028,337 | 1,028,337 |
| Approved Purchase Orders Pending Shipment | 5 | - | - |
| **Inventory Total Value** | | 1,028,337 | 1,028,337 |
| | | | |
| **Fixed Assets** | 6 | 233,000 | - |
| | | | |
| **Intangibles and Intellectual Property Total Value** | 7 | 175,000 | 175,000 |
| | | | |
| **Total Asset Value** | | 6,064,654 | 5,754,703 |
| | | | |
| **Wind Down Expenses** | 8 | - | (1,104,713) |
| | | | |
| **Net Asset Value** | | 6,064,654 | 4,649,990 |
| | | | |
| **Proceeds from Plan** | | | |
| Proceeds from Plan as of Effective Date | 9 | 337,373 | - |
| | | | |
| **Total Proceeds from Plan** | | 337,373 | - |
| | | | |
| **Total Assets & Proceeds** | | 6,402,026 | 4,649,990 |
| | | | |
| **Less Assets retained by Plan Proponent** | | | |
| Cash | | (3,561,996) | - |
| A/R | | (1,066,321) | - |
| Inventory | | (1,028,337) | - |
| Fixed Assets | | (233,000) | - |
| Intangibles and Intellectual Property | | (175,000) | - |
| | | | |
| **Funds Available after Plan** | | 337,373 | 4,649,990 |
| | | | |
| **Funds Available for Distribution** | | | |
| First & Final Administrative Claims | 10 | 740,811 | 941,222 |
| First & Final Secured Claims | | - | - |
| First & Final Priority Claims | 11 | 60,328 | 312,522 |
| Funds Available for Initial GUC Fund Amount | 9 | 337,373 | 3,396,246 |
| | | | |
| **Total Funds Available for Distribution** | | 1,138,512 | 4,649,990 |

EXHIBIT 1    032

**Meade Instruments Corp., a Delaware Corporation**
Plan vs Liquidation Analysis
*As of February 28, 2021*

**Distribution Calculation**

| Distribution | | Plan 1 - Amended (1) | | | Liquidation Analysis | | |
|---|---|---|---|---|---|---|---|
| | | *As of February 28, 2021* | | | *As of February 28, 2021* | | |
| | | Amount | Distribution | % | Amount | Distribution | % |
| **Administrative Claims** | | | | | | | |
| **Professional Fees** | | | | | | | |
| Goe, Forsythe, & Hodges, LLP | 12 | 189,807 | 189,807 | 100% | 189,807 | 189,807 | 100% |
| Sulmeyer Kupetz | 12 | 163,899 | 163,899 | 100% | 163,899 | 163,899 | 100% |
| Grobstein Teeple LLP | 12 | 12,500 | 12,500 | 100% | 17,300 | 17,300 | 100% |
| Broadway Advisors, LLC | 12 | 200,000 | 200,000 | 100% | 190,000 | 190,000 | 100% |
| Stetina Brunda Garred & Brucker, APC, | | 2,500 | 2,500 | 100% | 2,500 | 2,500 | 100% |
| Chawla Law Group, APC | | 1,000 | 1,000 | 100% | 1,000 | 1,000 | 100% |
| Windes Inc | | - | - | 100% | - | - | 100% |
| Enrique A. Maldonado Montfort Of Ishino, Esquer Y Armada | | 6,000 | 6,000 | 100% | 6,000 | 6,000 | 100% |
| **Total Professional Fees** | | 575,706 | 575,706 | | 570,506 | 570,506 | |
| | | | | | | | |
| **Chapter 11 Quarterly Fees - UST** | 13 | 27,114 | 27,114 | 100% | 57,725 | 57,725 | 100% |
| | | | | | | | |
| **Accounts Payable** | | | | | | | |
| Accounts Payable - Post Petition US | 14 | 16,935 | 16,935 | 100% | 16,935 | 16,935 | 100% |
| Approved Purchase Requests - In Transit | 5 | - | - | 100% | - | | 100% |
| Approved Purchase Requests - In Production | 5 | - | - | 100% | - | | 100% |
| Accounts Payable - MX | | 50,178 | 50,178 | 100% | 50,178 | 50,178 | 100% |
| Other Accrued Liabilities | 15 | 70,878 | 70,878 | 100% | 70,878 | 70,878 | 100% |
| **Total Accounts Payable** | | 137,991 | 137,991 | | 137,991 | 137,991 | |
| | | | | | | | |
| **Social Cost - closing MX Facility** | | - | - | 100% | 175,000 | 175,000 | 100% |
| | | | | | | | |
| **Administrative Claims Total** | | 740,811 | 740,811 | | 941,222 | 941,222 | |
| | | | | | | | |
| **Funds Available for Distribution to Secured** | | | 397,700 | | | 3,708,768 | |
| | | | | | | | |
| **Secured Claims** | | | | | | | |
| Sheppard, Mullin, Richter & Hampton (SEC) | 16 | - | - | 100% | - | - | 100% |
| | | | | | | | |
| **Secured Claims Total** | | - | - | | - | - | |
| | | | | | | | |
| **Funds Available for Distribution to Priority** | | | 397,700 | | | 3,708,768 | |
| | | | | | | | |
| **Priority Unsecured Claims** | | | | | | | |
| Priority Unsecured Claims | | 45,000 | 45,000 | 100.0% | 45,000 | 45,000 | 100.0% |
| 503(b)(9) | | 267,522 | 267,522 | 100.0% | 267,522 | 267,522 | 100.0% |
| *Less Ningbo Sunny 503(b)(9)* | | (252,194) | (252,194) | 100.0% | - | | 100.0% |
| **Priority Unsecured Claims Total** | | 60,328 | 60,328 | | 312,522 | 312,522 | |
| | | | | | | | |
| **Funds Available After Admin, Secured, & Priority** | | | 337,373 | | | 3,396,246 | |
| *Less Reserve for Post-Confirmation Fees and Expenses* | | | (50,000) | | | - | |
| **Funds Available for Distribution to General Unsecured** | | | 287,373 | | | 3,396,246 | |
| | | | | | | | |
| **General Unsecured Claims/ Liquidating Trust** | | | | | | | |
| Optronic Technologies, Inc. dba Orion | 17 | - | - | 0.0% | 16,800,000 | 1,809,212 | 10.8% |
| Ningbo Sunny Electronic Co | 18 | - | - | 0.0% | 11,092,577 | 1,194,573 | 10.8% |
| Sheppard, Mullin, Richter & Hampton | 16 | - | - | 0.0% | 2,686,410 | 289,303 | 10.8% |
| General Unsecured Claims | 19 | 957,909 | 287,373 | 30.0% | 957,909 | 103,158 | 10.8% |
| | | | | | | | |
| **General Unsecured Claims Total** | | 957,909 | 287,373 | | 31,536,896 | 3,396,246 | |
| | | | | | | | |
| **Total Claims** | | 1,759,048 | 1,088,512 | | 32,790,640 | 4,649,990 | |

EXHIBIT 1    033

**Meade Instruments Corp., a Delaware Corporation**

Plan vs Liquidation Analysis - Assumptions

*As of February 28, 2021*

**Notes**

| | |
|---|---|
| 1 | Orion is proposing a Plan in which it, as the Plan sponsor, would contribute up to 30% of GUC claims, excluding Orion, Ningbo Sunny, and Sheppard Mullin claims, plus $50,000 to assist with administrative cost to manage estate while it remains open.  Distributions made using these funds would exclude claims owned or assumed by Orion and Ningbo Sunny.  However, if Sheppard Mullin's claim is allowed it would participate in the distribution and Orion would increase the amount of the funds being distributed to ensure all allowed GUC claims would receive 15%.  Orion is not waiving their claim and will be included in future distribution calculations as a result of funds collected by the Estate from preference actions, litigation, or other recovery efforts. |
| 2 | Cash amount represents total cash for Meade Irvine less $100,000 to account for payment of remaining costs to malpractice counsel originally scheduled to be paid by Meade MX were excluded from this analysis. |
| 3 | Includes reduction of A/R by $440K, which reflects all receivables outstanding greater than 60 days past due, plus 3% under Plan Scenario of all balances less than 60 days past due (which reflects the Comany's historical dilution rate).  The Liquidation scenario includes reduction of A/R by $440K plus ineligible rate of 10% to reflect increased collection risk. |
| 4 | Inventory book value as of 02/28/21 is $4,458,681.  Inventory was broken down into three categories, Finished Goods, WIP and Raw Materials with varying valuation rates for each category ranging from a low of 10% of cost for WIP, 25% for Raw Materials and a blended rate of 31.5% for Finished Goods.  The blended rate for Finished Goods was calculated by analyzing each sku's sell-through rate and placed into the following groups - Top Sellers, Mid-Movers, Slow-Movers using a combination of total dollar sales for the 12-months ending February 28, 2021 and Months-On-Hand of Inventory; with each group calculated using a different value. See inventory detail calculation. |
| 5 | As of February 28, 2021 the Company had been notified by it's primary supplier - Ningbo Xinhui (formerly Ningbo Sunny) that it would be unable to fulfill any outstanding purchase orders, therefore resulting in no adminstrative claims due to Goods in Transit or Goods in Production. |
| 6 | Fair Market Value of FF&E was projected based upon online research of all equipment and machines discounted at 50% for age and condition.  Liquidation scenario is projected to result in no recovery for FF&E due to the expedited sale time line and cost of transportation. |
| 7 | Estimated intangible asset and intellectual property values were calculated using 2.5% of 3-year net sales average ($12.4 M) and applying a discount to reflect lack of interest in certain IP as revealed during Broadway Advisors Section 363 marketing process. |
| 8 | Wind Down expenses assume liquidation would occur over a period of 12 weeks and includes professional fees for Chapter 7 Liquidating Trustee ($297K), attorneys fees for Chapter 7 Liquidating Trustee ($150K), and Liquidator and related fees ($93K). |
| 9 | As of the effective date, the sponsor will contribute cash in the amount of 30% of allowed GUC claims, excluding Orion, Ningbo Sunny, and Sheppard Mullin claims, plus $50,000 toward administrative fees related to the management of the Reorganized Debtor. |
| 10 | Under the Proposed Plan the Administrative, Secured, and Priority Claims would be paid from the Effective Date cash. |
| 11 | Assumes Ningbo Sunny claim would be assumed by Orion and would forgo any distribution owed on account of assumed claim under the proposed 30% initial distribution. |
| 12 | Professional fees include projected fees and expenses from respective professionals from December 31, 2020/January 1, 2021 through May 1, 2021, plus any holdbacks to be approved during final fee applications |
| 13 | US Quarterly Fees include estimate of Q2 fees. |
| 14 | Accounts payable represents amounts outstanding to trade vendors for Meade Irvine as of February 28, 2021.  Consolidated balance sheet includes U.S. accounts payable liability of $67,113 including legal and professional fees which are included in administrative expenses in this analysis. |
| 15 | Other accured liabilities include payroll liabilities (wages, vacation, pto, etc.), commissions, and sales and use tax. |
| 16 | Sheppard Mullin has filed a claim in the amount of $2,686,410 which is disputed by the Debor. |
| 17 | Orion's claim totals $53,660,743 and includes approximately $36.8M in punitive damages.  Under the Plan, the value of the assets projected to be received by Orion, after payment of the Priority, Administrative, and the first installment (as revised) of the GUC Fund, would be approximately $4,926,412. When measured against the amount of Orion's Class 1 Claim, receipt of these assets provides a percentage recovery under the Plan of approximately 9.2%.  Under the Liquidation Scenario, Orion's claim totals $16,800,000 to reflect the subordination of the punitive damages portion of the claim. |
| 18 | Ningbo Sunny Electronic Co claim of $11,092,577 assumes general unsecured claim is entitled to no distribution under the Plan scenario as described in Footnote 1. |
| 19 | Reflects pro rata distribution as outlined in the Plan and Disclosure Statement but does not include potential recoveries resulting from preference actions, litigation recoveries and other asset recoveries. |

EXHIBIT 1   034

**Meade Instruments Corp., a Delaware Corporation**
Inventory - Net Asset Value
*As of February 28, 2021*

| | Finished Goods | | WIP | | Raw Materials | | Total | |
|---|---|---|---|---|---|---|---|---|
| Per Inventory Value Report | 4,458,681 | | | | | | | |
| | | | | | | | | |
| % Breakdown of Inventory by Category | 46.2% | | 20.2% | | 33.6% | | | |
| | $ | % of Cost | $ | % of Cost | $ | % of Cost | $ | % of Cost |
| Eligible Inventory at Cost | 2,059,157 | | 899,859 | | 1,499,664 | | 4,458,681 | |
| | | | | | | | | |
| Projected Gross Recovery | 648,386 | 31.5% | 89,986 | 10.0% | 374,916 | 25.0% | 1,113,288 | 25.0% |
| | | | | | | | | |
| Sale Expenses | | | | | | | | |
| Commissions | 8,753 | 3.0% | - | 0.0% | - | 0.0% | 8,753 | 0.2% |
| Freight-Out Expense | 16,210 | 2.5% | 22,496 | 2.5% | 37,492 | 2.5% | 76,198 | 1.7% |
| Total Sale Expenses | 24,963 | 1.2% | 22,496 | 2.5% | 37,492 | 2.5% | 84,951 | 1.9% |
| | | | | | | | | |
| Net Recovery | 623,423 | 30.3% | 67,489 | 7.5% | 337,424 | 22.5% | 1,028,337 | 23.1% |

### Finished Goods

| | Top | | Mid | | Slow | | Total | |
|---|---|---|---|---|---|---|---|---|
| Inventory - Finished Goods | 2,059,157 | | | | | | | |
| | | | | | | | | |
| % Breakdown of Finished Goods Inventory by Scope | 11.8% | | 10.4% | | 77.9% | | | |
| Scope | TTM Sales>$25K & MOH<6 | | TTM Sales>$5K & MOH<12 | | TTM Sales<$5K & MOH>12 | | | |
| | $ | % of Cost | $ | % of Cost | $ | % of Cost | $ | % of Cost |
| Eligible Inventory at Cost | 242,265 | | 213,713 | | 1,603,179 | | 2,059,157 | |
| | | | | | | | | |
| Projected Gross Recovery | 242,265 | 100.0% | 85,485 | 40.0% | 320,636 | 20.0% | 648,386 | 31.5% |

EXHIBIT 1    035

**Meade Instruments Corp., a Delaware Corporation**
Liquidation Analysis - Wind Down Expenses
*Estimated liquidation period of 12 weeks*

| | | Month 1 | Month 2 | Month 3 | Total |
|---|---|---|---|---|---|
| **Payroll and Related** | | | | | |
| Payroll - Irvine | A | 95,000 | 76,000 | 47,500 | 218,500 |
| Payroll - Mexico | | 60,000 | 60,000 | 30,000 | 150,000 |
| Taxes and Benefits | B | 17,100 | 13,680 | 8,550 | 39,330 |
| **Subtotal Payroll and Related** | | 172,100 | 149,680 | 86,050 | 407,830 |
| | | | | | |
| **Operating Expenses** | | | | | |
| Occupancy and Related Costs - Irvine | C | 50,000 | 50,000 | 50,000 | 150,000 |
| Occupancy and Related Costs - Mexico | | 40,000 | 40,000 | 40,000 | 120,000 |
| **Subtotal Operating** | | 90,000 | 90,000 | 90,000 | 270,000 |
| | | | | | |
| **Liquidation Expenses** | | | | | |
| Chapter 7 Trustee Fees | D | - | - | 195,891 | 195,891 |
| Chapter 7 Trustee - Legal | | 50,000 | 50,000 | 50,000 | 150,000 |
| Liquidator and Related Fees | E | - | - | 35,992 | 35,992 |
| **Subtotal Liquidation** | | 50,000 | 50,000 | 281,883 | 381,883 |
| | | | | | |
| **Miscellaneous** | | 15,000 | 15,000 | 15,000 | 45,000 |
| | | | | | |
| **Total Wind Down Expenses** | | 327,100 | 304,680 | 472,933 | 1,104,713 |

**Notes**
A - Currently estimated by average payroll trends.
B - Projected at 18% of payroll.
C - Projected amount includes rent, utilities, and insurance.
D - Calculated based upon 2020 Trustee Fee schedule.
E - Represents fees and expenses for retention of inventory liquidation firm retained by the Chapter 7 Trustee.  Projected at 3.5% of gross inventory recovery.

EXHIBIT 1   036

**Meade Instruments Corp., a Delaware Corporation**
Liquidation Analysis - Wind Down Expenses
*Chapter 7 Trustee Commission Calculation*

| % | Range | | Commission |
|---|---|---|---|
| 25% | - | 5,000 | 1,250.00 |
| 10% | 5,001 | 50,000 | 4,499.90 |
| 5% | 50,001 | 1,000,000 | 47,499.95 |
| 3% | 1,000,001 | 5,754,703 | 142,641.05 |
| | **Total** | | $  195,891 |

EXHIBIT 1   037

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **COMMITTEE'S BRIEF IN SUPPORT OF CONFIRMATION OF FIRST AMENDED PLAN OF REORGANIZATION; DECLARATION OF ALFRED M. MASSE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 7, 2021  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached**

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) April 7, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Office of the United States Trustee
Frank Cadigan
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701-4500

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  April 7, 2021 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA Overnight Mail**
The Honorable Mark S. Wallace
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 7, 2021 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2709790v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

1.  <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Matthew Borden**    borden@braunhagey.com,
  kushnir@braunhagey.com;hagey@braunhagey.com;fisher@braunhagey.com;theodore@braunhagey.com;hasegawa@braunhagey.com;szoke@braunhagey.com;baker@braunhagey.com;vallejo@braunhagey.com;ridge@braunhagey.com;nguyen
- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Mark S Horoupian**    mhoroupian@sulmeyerlaw.com,
  mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- **Tobias S Keller**    tkeller@kellerbenvenutti.com
- **Aaron J Malo**    amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Claire K Wu**    ckwu@sulmeyerlaw.com,
  mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

CC 2709790v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**