Mark S. Horoupian (CA Bar No. 175373)
  mhoroupian@sulmeyerlaw.com
Claire K. Wu (CA Bar No. 295966)
  ckwu@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Official Committee of
Unsecured Creditors of Meade Instruments Corp.



FILED & ENTERED

MAY 04 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle         DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Case No. 8:19-bk-14714-MW |
|---|---|
| ☒ MEADE INSTRUMENTS CORP., a Delaware corporation, | (Jointly Administered with Case No. 8:19-bk-14711-MW) |
| ☐ SUNNY OPTICS, INC., a Delaware corporation, | Chapter 11 |
| ☐ All Debtors. | **ORDER CONFIRMING FIRST AMENDED PLAN OF REORGANIZATION FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MEADE INSTRUMENTS CORP.** |
| Debtors and Debtors-in-Possession. | <u>Plan Confirmation Hearing</u>: *Telephonic*<br><br>Date:  April 28, 2021<br>Time:  2:00 p.m.<br>Place: Courtroom 6C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701 |

On April 14, 2021, the Court held an initial hearing (the "Initial Confirmation Hearing") regarding the First Amended Plan of Reorganization Filed by the Official Committee of Unsecured Creditors [Dkt No. 363] (the "Plan"), which was proposed by the Official Committee of Unsecured Creditors (the "Committee" or "Plan Proponent") appointed in the Chapter 11 case of Meade Instruments Corp., a Delaware corporation (the "Debtor").  A continued hearing regarding confirmation of the Plan (together with the Initial Confirmation Hearing, the "Confirmation Hearing") was conducted on April 28, 2021 at 2:00 p.m.  At the Confirmation Hearing, Mark S. Horoupian of SulmeyerKupetz, a Professional Corporation appeared on behalf of the Committee;

MSH 2711621v1

Robert P. Goe of Goe Forsythe & Hodges, LLP appeared on behalf of the Debtor; Hamid R. Rafatjoo of Raines Feldman, LLP appeared on behalf of creditor Optronic Technologies, Inc. dba Orion Telescopes ("Orion"); Aaron J. Malo, of Sheppard Mullin Richter & Hampton, LLP ("SMRH") and Jonathan W. Hughes of Arnold & Porter Kaye Scholer LLP appeared on behalf of creditor, SMRH; Brandon N. Krueger, of Sall Spencer Callas & Krueger, LLP, special malpractice counsel to the Debtor appeared on behalf of the Debtor. Other appearances, if any, are as reflected in the Court's record.

In preparation of the Confirmation Hearing, the Court reviewed and considered the following document ("Plan Pleadings"):

- The Plan;
- The First Amended Disclosure Statement Describing First Amended Plan of Reorganization filed by the Official Committee of Unsecured Creditors [Dkt No. 364] (the "Disclosure Statement");
- The Notice Of: (1) Approval Of Disclosure Statement Describing Committees Plan Of Reorganization; (2) Hearing On Confirmation Of Plan Of Reorganization And Related Dates And Deadlines; And (3) Procedures And Requirements Relating To Voting On Plan Of Reorganization; Plan Ballot (With Proof of Service) Filed by Creditor Committee Official Committee of Unsecured Creditors [Dkt No. 365] (the "Confirmation Notice");
- Notice of Additional Assumed and Rejected Executory Contracts and Leases Pursuant to Proposed Plan, with Proof of Service Filed by Creditor Committee Official Committee of Unsecured Creditors [Dkt No. 373] (the "Executory Contracts Notice");
- Objection to Confirmation of Chapter 11 Plan Filed by the Official Committee of Unsecured Creditors of Meade Instruments Corp. filed by Creditor Sheppard Mullin Richter & Hampton, LLP [Dkt No. 376] (the "SMRH Objection");
- Reply By Official Committee of Unsecured Creditors to Objection by Sheppard Mullin Richter & Hampton, LLP to Confirmation of Committee's First Amended Plan of Reorganization; Declarations of Alfred Masse, Robert Sall, And Victor Aniceto In Support Thereof [Dkt No. 377] (the "Committee Confirmation Reply");
- Reply in Support of Confirmation of Chapter 11 Plan Filed By Official Committee Of Unsecured Creditors Of Meade Instruments Corp. filed by Orion [Dkt No. 378] (the "Orion Reply");
- Committee's Brief in Support of Confirmation of First Amended Plan of Reorganization; Declaration of Alfred M. Masse in Support Thereof [Dkt No. 379] (the "Confirmation Brief"); and
- Summary of Ballots filed by the Committee [Dkt No. 380] (the "Ballot Summary").

After considering the Plan Pleadings, the oral arguments presented at the Confirmation Hearing, and good cause appearing therefor, the Court entered its Findings of Fact and Conclusions of Law Supporting Order Confirming Committee First Amended Plan of Reorganization (the

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

"Findings of Fact and Conclusions of Law") [Dkt No. 392]. Based upon the Findings of Fact and Conclusions of Law, which are incorporated herein by this reference, IT IS HEREBY ORDERED AS FOLLOWS:

    1.    The Plan, together with and subject to the amendments and modifications described herein and in the Findings of Fact and Conclusions of Law, is hereby confirmed.

    2.    The following modifications and amendments to the Plan are approved and shall be incorporated into the Plan:

    a.    <u>Revised Definition of Effective Date</u>. The term "Effective Date" is amended, and shall now mean *the date that is fifteen (15) days after entry of the Confirmation Order, provided that there is no stay of effectiveness of the Confirmation Order, or such later date as mutually agreed to by the Committee and Orion. If such a stay is issued other than by operation of Federal Rule of Bankruptcy Procedure 3020(e), then the Effective Date shall be the date that is two (2) weeks after the Confirmation Order becomes a Final Order.*

    b.    <u>Revised Definition of GUC Fund Amount</u>. The term "GUC Fund Amount" shall now mean *the amount that is equal $50,000, plus 30% of the current filed and/or scheduled general Unsecured Claims[1], plus any Allowed Rejection Claim of the Irvine Company, but not including the Class 1 Claim, the Disputed SMRH Claim or any other insider Claims (the "Initial GUC Fund Amount"). The Initial GUC Fund Amount will be paid on the Effective Date from available Cash on Hand. In the event that after litigation of the SMRH Malpractice Action and/or an objection to the SMRH Claim, SMRH is ruled to have an Allowed Claim, the GUC Fund Amount will be recalculated to $50,000, plus 15% of the current filed and/or scheduled general unsecured claims plus any Allowed Rejection Claim of the Irvine Company, plus the Allowed SMRH Claim, but not including the Class 1 Claim, or any other insider Claims (the "Increased GUC Fund Amount").The difference between the Initial GUC Fund Amount and the Increased GUC Fund Amount shall be paid by NewCo within thirty (30) days of the entry of a final order Allowing the SMRH Claim.*

---

[1] Capitalized terms that are not otherwise defined in this Confirmation Order, shall have the same meaning ascribed to them in the Plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1          c.     <u>Revision to Class 1's Claim Amount for Purposes of Pro-Rata Sharing in Litigation Proceeds</u>. The amount of Orion's Claim for purposes of determining its pro-rata share of the recovery on the Estate Litigation Claims shall now be governed by the following:

*For purposes of determining Orion's pro-rated share of the proceeds of the Estate Litigation Claims, Orion's claim shall be fixed at $16.8 million less the value of the Transferred Assets. Likewise, for purposes of determining Class 2 Creditors' share, the Class 2 Claims shall be reduced by the distributions made to them from the GUC Fund Amount.*

        d.     <u>Elimination of Requirement that Plan Agent Consult with Orion Re Handling of SMRH Malpractice Action/Funding of Costs</u>. The requirement that the Plan Agent consult with Orion before making any material decisions regarding the prosecution or settlement of the SMRH Malpractice Action are deleted. Further, NewCo's obligation to fund the cost retainer to the Debtor's malpractice lawyers is eliminated. Instead, the balance of the cost retainer called for in the engagement agreement with malpractice counsel will be paid by the Debtor prior to the Effective Date.

        e.     <u>SMRH Reservation of Rights</u>. Pursuant to an agreement reached between SMRH and the Committee, the following reservation of rights shall govern:

*Notwithstanding anything in the Plan, the Plan Documents, the Findings of Fact and Conclusions of Law, or this Confirmation Order to the contrary, (i) any Causes of Action related to SMRH, including the SMRH Malpractice Claims, shall only be revested with the Debtor and/or revested or transferred to the Reorganized Debtor subject to any and all claims, causes of action, rights, remedies, interests and defenses of SMRH and (ii) other than as limited by paragraphs (A) and (B) below, in no event shall anything in Plan, the Plan Documents, the Findings of Fact and Conclusions of Law, or this Confirmation Order enjoin, limit, impair, alter, change or otherwise modify or affect any claims, causes of action, rights, remedies, interests and defenses of SMRH, including, without limitation, claims or defenses of and for recoupment, offset or setoff, in defense of or in response to any cause of action or claim asserted by the Debtor/Reorganized Debtor (including, without limitation, by the Plan Agent or anyone acting by on or behalf of the Debtor/ Reorganized Debtor) against SMRH , provided, however: (A) the Debtor/Reorganized Debtor*

*reserves all arguments that any claims/counterclaims by SMRH for offset, set off, recoupment, or the like, are limited by the value of the treatment of such claims under the Plan, and under applicable non-bankruptcy law; and (B) the arguments, claims and defenses reserved by SMRH that the Plan constitutes an improper de facto assignment of the SMRH Malpractice Action are addressed and are subject to the reservations and limitations of Paragraph I(1)(c)(3) of the Findings of Fact and Conclusions of Law.*

3. <u>Effectiveness of Documents; Further Transactions</u>. On the Effective Date, the Plan, the Plan Documents (if any), and any other documents issued, executed, delivered, filed, or recorded pursuant to the Plan, including, without limitation, (a) amended corporate governance documents, if any, and (b) any other document issued, executed, delivered, filed, or recorded in connection with any of the foregoing or any other Plan Document, are deemed approved and authorized by the Bankruptcy Court, and, to the extent not already effective by their respective terms, shall become effective and binding in accordance with their respective terms and conditions upon the entities that are parties thereto and shall be deemed to become effective simultaneously. On the Effective Date, the Plan Agent, acting for the Reorganized Debtor are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan, and are authorized to certify or attest to any of the foregoing actions, if necessary. On the Effective Date, all actions contemplated by the Plan are deemed authorized and approved in all respects, and the Plan Agent, acting for the Reorganized Debtor is authorized and directed to implement the provisions of the Plan, and any other agreements, documents, and instruments contemplated by the Plan (including, without limitation, any appropriate amendments to corporate governance documents), in the name, and on behalf, of the Reorganized Debtor.

4. <u>Appointment of Plan Agent</u>. On the Effective Date, Broadway Advisors shall be appointed as the Plan Agent, and shall have all of the duties and powers provided to it under the Plan, and for all purposes shall have the sole authority to act on behalf of the Reorganized Debtor.

5. <u>Stamp Tax</u>. Notwithstanding anything to the contrary in the Plan, pursuant to

MSH 2711621v1    5

11 U.S.C. § 1146(a), the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, if any, shall not be taxed under any law imposing a stamp tax or similar tax.

   6. <u>Provisions Regarding Transfer of Assets to NewCo Pursuant to the Plan.</u>

   a. Pursuant to sections 105(a) and 1123 of the Bankruptcy Code, the sale of the Transferred Assets and the transactions related thereto, by the Debtor to NewCo upon the Effective Date, are authorized and approved in all respects.

   b. Subject to the payment by NewCo to the Debtor of the consideration provided for in the Plan, pursuant to sections 1123(a)(5)(D) and 1123(b)(4) of the Bankruptcy Code, the transfer of the Transferred Assets by the Debtor to NewCo. shall constitute a legal, valid and effective transfer of the Transferred Assets and shall vest NewCo with all right, title and interest of the Debtor in and to the Transferred Assets free and clear of all liens, claims and interests pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, effective as of the Effective Date.

   c. Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the transfer of the Transferred Assets to NewCo shall be free and clear of all liens, claims and interests and all liabilities of the Debtor whether known or unknown, including, but not limited to, liens, claims and interests asserted by any of the Debtor's creditors, vendors, suppliers, employees, executory contract counterparties, governmental units or lessors (collectively, the "Meade Creditors"). NewCo shall not be liable in any way (as successor entity or otherwise) for any claims that any of the Meade Creditors or any other third party may have against the Debtor, other than the Assumed Liabilities. The transfer of the Transferred Assets to NewCo shall vest NewCo with all the right, title and interest of the Debtor to the Transferred Assets free and clear of liens, claims and interests.

   d. NewCo has not assumed or otherwise become obligated for any of the Debtor's liabilities other than those specifically assumed under the Plan. Upon the Effective Date, the Debtor and the Debtor's estates shall be relieved from any liability for the Assumed Liabilities.

   e. Except for those obligations specifically assumed by NewCo under the Plan, NewCo shall not acquire or assume, and shall have no liability or obligation for any

liabilities of the Debtor, as a successor in interest, successor-in-title or otherwise, including, without limitation any liability for any remedies sought under the National Labor Relations Act ("NLRA"), by the National Labor Relations Board, or by any Person (as defined in the Purchase Agreement) under the WARN Act or similar state statute or ERISA or any liability with respect to COBRA Coverage for employees or consultants of the Debtor terminated prior to the Effective Date, with regard to any conduct by the Debtor occurring prior to the Closing Date or any other liability to, in each case whether arising prior to or after the Closing Date.

    f. If any Person that has filed any financing statement, mortgage, mechanic's lien, lis pendens or other document or instrument evidencing liens with respect to any of the Transferred Assets shall have failed to deliver to the Debtor and NewCo prior the Effective Date, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all liens, claims and interests which such Person has with respect to the Transferred Assets, then (i) the Reorganized Debtor is authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person, and (ii) NewCo is authorized to file, register or otherwise record a certified copy of this Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims and interests in the Transferred Assets as of the Effective Date.

    7. The Reorganized Debtor and NewCo, and each of their respective officers, employees and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Reorganized Debtor or NewCo deem necessary or appropriate to implement and effectuate the terms of the Plan and the Confirmation Order.

    8. The transactions contemplated under the Plan and the Plan Documents do not amount to a consolidation, merger or de facto merger of NewCo and the Debtor and/or the Debtor's estate; there is not substantial continuity between NewCo and the Debtor; there is no continuity of enterprise between the Debtor and NewCo; NewCo is not a mere continuation of the Debtor or the Debtor's estate; and NewCo does not constitute a successor to the Debtor or its estate.  Other than the Assumed Liabilities, NewCo shall not assume, nor be deemed to assume or in any way be liable or otherwise responsible for any liability or obligation of the Debtor and/or its estate including, but

MSH 2711621v1   7

not limited to, any bulk sales law, successor or transferee liability, liability or responsibility for any claim against the Debtor or against any insider of the Debtor or similar liability. Other than with respect to the liabilities specifically assumed by NewCo under the Plan, neither the purchase of the Transferred Assets by NewCo, nor the fact that NewCo or its affiliates are using any Transferred Assets previously used by the Debtor, will cause NewCo or any of its affiliates to be deemed a successor in any respect to the Debtor's business with respect to (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations); (ii) under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtor is a party; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan maintained, sponsored or contributed to by the Debtor (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans); and (v) the cessation of the Debtor's operations, dismissal of employees or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs.

9. Except as provided in the Plan, this Confirmation Order, or the Findings of Fact and Conclusions of Law, this Confirmation Order shall enjoin the prosecution, whether directly indirectly, derivatively, or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, liability, or Interest released, discharged, or terminated pursuant to the Plan. Except as provided in the Plan, this Confirmation Order, or the Findings of Fact and Conclusions of Law, as of the Effective Date, all Entities that have held, currently hold, or may hold, a Claim or other debt or liability that is extinguished, or an Interest or other right of an equity security holder that is extinguished, pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, the Reorganized

Debtor, the Plan Agent, the Committee, the Professionals, or their property on account of any such extinguished Claims, debt, or liabilities, or extinguished interests or rights: (a) commencing or continuing, in any manner, or in any place, any action or other proceeding, (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order, (c) creating, perfecting, or enforcing any Lien or encumbrance, (d) asserting as setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Estate, and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  Unless otherwise provided in the Plan, this Confirmation Order, or the Findings of Fact and Conclusions of Law, all injunctions or stays provided for in the Bankruptcy Case under Section 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date and with respect to all property constituting, or designated to be, assets of the Estate.  To the extent any injunction or stay is provided under the Plan, this Confirmation Order or the Findings of Fact and Conclusions of Law, it shall remain in effect following the Effective Date. Nothing herein shall be deemed an injunction prohibiting Orion from taking such actions as it may deem necessary in collecting on its judgment against any and all parties, except Meade.

10. Section 5.18 of the Plan is hereby approved to the maximum extent permitted by law and shall be effective and binding upon all persons and entities as provided in the Plan. Without limiting the generality of the forgoing, neither the Debtor, the Plan Proponent, the Committee, the Committee members including Orion, the Plan Agent, nor any of their respective past or present members, equity holders, shareholders, nor any of their respective past or present officers, directors, employees, attorneys, professionals, or agents during the Bankruptcy Case, shall have or incur any liability to any holder of a Claim or Interest or to any other entity for any act or omission in connection with, or arising out of, the Bankruptcy Case, negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property or distributions to be distributed under the Plan except for gross negligence or willful misconduct or ultra vires acts, and, in all respects, the Debtor, the Plan Agent, Plan Proponent, and the Committee, and each of their respective members, officers, directors, employees, and agents

shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the foregoing shall not supersede the "safe harbor" from liability provided by section 1125(e) of the Bankruptcy Code. The terms of this release shall operate as a release and waiver, as of the Effective Date of the Plan, of all Claims and Causes of Action against any Professional retained in the Bankruptcy Case at the expense of the Estate. Nothing herein is deemed to limit or otherwise release any liability of any professional to its respective client that may exist under applicable state law or applicable rules of professional conduct.

11. A post-confirmation status conference is set for September 15, 2021 at 9:00 a.m. before the Honorable Mark S. Wallace, United States Bankruptcy Judge. The Plan Agent shall file a status report on or before September 1, 2021, in accordance with Local Bankruptcy Rule 3020-1. This initial report shall be served on the United States trustee, the 20 largest unsecured creditors, and those parties who have requested special notice. Further reports shall be filed every 120 days thereafter and served on the same entities, or as ordered by the Court.

### #

Date: May 4, 2021

Mark S. Wallace
United States Bankruptcy Judge

MSH 2711621v1

10