Mark S. Horoupian (CA Bar No. 175373)
*mhoroupian@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Broadway Advisors, LLC, in its Capacity as Plan Agent

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

In re

☒ MEADE INSTRUMENTS CORP., a Delaware corporation,

Reorganized Debtor

☐ SUNNY OPTICS, INC., a Delaware corporation,

Debtor in Possession

☐ All Debtors.

Case No. 8:19-bk-14714-MW

(Jointly Administered with Case No. 8:19-bk-14711-MW)

Chapter 11

**MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN REORGANIZED DEBTOR, SHEPPARD MULLIN RICHTER & HAMPTON, LLP, ET AL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALFRED M. MASSE AND BRANDON KRUEGER IN SUPPORT THEREOF**

[NO HEARING UNLESS REQUESTED PURSUANT TO LOCAL BANKR. RULE 9013-1(o)(1) ]

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................3

I. STATEMENT OF FACTS....................3

A. Background ....................3

B. Description of Settlement Agreement ....................6

II. THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, EQUITABLE AND IN THE BEST INTERESTS OF THE ESTATE ....................9

A. Probability of Success in the Litigation ....................10

B. Difficulties in Collection....................11

C. Complexity, Delay and Expense of Litigation: ....................11

D. Paramount Interest of Creditors ....................12

III. THE COURT SHOULD AUTHORIZE THE PAYMENT OF THE CONTINGENT FEE FROM THE SETTLEMENT PAYMENT....................13

IV. CONCLUSION ....................14

DECLARATION OF ALFRED M. MASSE....................16

DECLARATION OF BRANDON N. KRUEGER....................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Burton v. Ulrich (In re Schmidtt)*
215 B.R. 417 (9th Cir. B.A.P. 1997) ........ 9

*Cosoff v. Rodman (In re W.T. Grant Co.)*
699 F.2d 599 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983) ........ 9

*In re A & C Properties*
784 F.2d 1377 (9th Cir. 1986) ........ 9

*In re Morrison*
69 B.R. 586 (Bankr. E.D. Pa. 1987) ........ 10

*In re Woodson*
839 F.2d 610 (9th Cir. 1988) ........ 9

*Port O'Call Investment Co. v. Blair (In re Blair)*
538 F.2d 849 (9th Cir. 1976) ........ 9

## RULES

Fed. R. Bankr. P. 9019 ........ 9

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER INTERESTED PARTIES:**

Broadway Advisors, LLC, the Plan Agent (the "Plan Agent") under the confirmed First Amended Plan of Reorganization (the "Plan") in the above-captioned bankruptcy case, respectfully requests an order approving a settlement between Meade Instruments Corp, as Debtor and Reorganized Debtor, on the one hand, and the following parties: Sheppard Mullin Richter & Hampton, LLP ("SMRH"), Michael Scarborough ("Scarborough"), Leo D. Caseria ("Caseria"), Dylan Ballard ("Ballard"), and Will Chuchawat ("Chuchawat" and collectively with Scarborough, Caseria, Ballard and SMRH, the "Respondents"). The terms of the settlement are set forth in the *Settlement Agreement* attached hereto as **Exhibit 1** (the "Settlement Agreement")[1].

This motion (the "Motion") is brought in accordance with the Plan, Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019(a), and is made on the ground that the Plan Agent believes that the settlement is fair and equitable, and in the best interests of the estate.

This motion is based on the attached Memorandum of Points and Authorities, the supporting declaration, and exhibit(s) attached hereto.

**WHEREFORE**, the Plan Agent respectfully requests that the Court enter an order, in the form attached hereto as **Exhibit 2**:

1. Approving the Settlement Agreement;
2. Authorizing Plan Agent to take any and all other actions necessary or appropriate to effectuate the Settlement Agreement;
3. Authorizing and directing the payment of the contingent fees to co-special litigation counsel in the amounts set forth herein;
4. Retaining jurisdiction to interpret and enforce the Settlement Agreement; and

[1] Exhibits to the Settlement Agreement, which include a copy of the Motion and proposed order granting the Motion are intentionally omitted.

5. Granting such other relief as the Court deems just and proper.

DATED: September 30, 2021

Respectfully submitted,
**Sulmeyer**Kupetz
A Professional Corporation

By: */s/ Mark S. Horoupian*
Mark S. Horoupian
Attorneys for Broadway Advisors, LLC, in its Capacity as Plan Agent

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**STATEMENT OF FACTS**

**A. Background**

1. The Respondents previously represented Meade Instruments Corp. (the "Debtor," "Reorganized Debtor" or "Meade") beginning in or about November 2016, including providing advice to Meade and on Meade's behalf in a litigation entitled Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., et al., Case No. 5:16-cv-06370-EJD ("Antitrust Litigation"), in the United States District Court for the Northern District of California (San Jose Division) (the "District Court") and in matters related thereto (the "Representation"). During the Representation, the Respondents also represented Debtor's co-defendants in the Antitrust Litigation, Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny") and Sunny Optics, Inc. ("Sunny Optics"). Sunny Optics is the 100% shareholder of Meade. Peter (Wenjun) Ni is the CEO of Sunny Optics, and is the CEO of Ningbo Sunny. Ningbo Sunny is the parent of Sunny Optics. *See* Omnibus Declaration of Victor Aniceto in Support of Emergency Motions ("Aniceto Declaration"), Dkt No. 25, at Page 3, lines 6-9. Sunny Optics is a holding company with its sole asset being the 100% ownership of the Reorganized Debtor. Sunny Optics was incorporated to effectuate the acquisition of the Reorganized Debtor by Ningbo Sunny. *Id.*, at Page 4, lines 27-28.

2. In November 2019, a jury in the Antitrust Litigation issued a verdict against the Debtor and its co-defendants. *Aniceto Declaration*, at Page 4, lines 11-15.

3. On or about December 4, 2019, Meade filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Meade's bankruptcy proceeding is captioned In re Meade Instruments Corp., Case No. 8:19-bk-14714-MW (the "Meade Bankruptcy Proceeding") and is pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Sunny Optics also filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 4, 2019. *Aniceto Declaration,* at Page 1, lines 27-28. Pursuant to an order by the Bankruptcy Court, the Sunny Optics and Meade bankruptcy cases were jointly administered. *See* Dkt No. 43.

4. The Debtor paid some, but not all, of the fees and costs of SMRH in connection with the Representation. On April 16, 2020, SMRH filed a proof of claim in the Meade Bankruptcy Proceeding in which it asserted a claim of $2,686,409.64 (the "SMRH Proof of Claim") for unpaid fees and costs. The SMRH Proof of Claim was docketed on the claims register as claim number 30.

5. In its amended bankruptcy schedules filed on April 16, 2020 and in a further amended schedule A/B filed on December 4 2020, the Debtor identified potential claims against SMRH as an asset of Meade's bankruptcy estate. *See* Dkt. Nos. 195 and 298. In or around November 2020, Meade informed Respondents that it believed that it had claims against Respondents for, including but not limited to, legal malpractice, breach of fiduciary duty, fraudulent transfers and preference payments ("Claims").

6. On December 4, 2020, the Bankruptcy Court entered an order approving the Debtor's employment of Sall Spencer Callas & Krueger, a Law Corporation ("Sall Spencer") and Parker Mills, LLP ("Parker Mills") as Co-Special Litigation Counsel. *See* Dkt. No. 297. Sall Spencer and Parker Mills were retained to investigate, negotiate, and litigate the Claims pursuant to a contingency fee agreement (the "Fee Agreement"). Pursuant to the Fee Agreement, the Debtor advanced $200,000 against costs. The Fee Agreement provided for varying contingent fees. Pursuant to the Fee Agreement, if the Claims were settled or resolved before a lawsuit was filed, the contingent fee equaled 25% of the gross recovery obtained. If pre-litigation settlement efforts were unsuccessful and a lawsuit was filed, the contingent fee increased to 37.5% of the gross recovery if the recovery was obtained more than 90 days before the first scheduled trial or arbitration date (the "Trial Date"), and 42.5% of the gross recovery if recovery was obtained less than 90 days before the Trial Date. In each instance, the contingent fee was to be reduced by 2.5% if the Debtor timely advanced and paid all cost retainers.

7. In or around February 2021, a First Amended Plan of Reorganization for Meade was proposed by the Official Committee of Unsecured Creditors in the Meade Bankruptcy Proceeding (as amended, supplemented or modified, the "Plan"), which Plan was confirmed by the Bankruptcy Court by order entered on or about May 4, 2021 (the "Confirmation Order") and

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

which became effective on June 1, 2021 ("Effective Date"). *See* Dkt No. 363 (the Plan), Dkt No. 395 (the Confirmation Order), and Dkt No. 405 (providing notice the Plan became effective on June 1, 2021).

8. Pursuant to the terms of the Plan and the Confirmation Order, on the Effective Date, any and all causes of action of Meade as debtor and debtor-in-possession in the Meade Bankruptcy Proceeding related to, among others, Respondents, were vested in Meade, as Reorganized Debtor. A separate entity, Meade Acquisition Corporation ("MAC"), acquired certain assets of Meade under the Plan, but MAC did not acquire the Claims or any other any claims, causes of action or rights of Meade related to Respondents.

9. Pursuant to the terms of the Plan and the Confirmation Order, on the Effective Date, Broadway Advisors was appointed the Plan Agent (as defined and provided for in the Plan and Confirmation Order) and has the authority to act on behalf of the Reorganized Debtor. Specifically, Broadway Advisors has authority to enter into the Settlement Agreement on behalf of Meade as the Reorganized Debtor and Meade's bankruptcy estate, and has the sole and exclusive authority to resolve the Claims and the SMRH Proof of Claim.

10. Pursuant to Section 5.3 of the Plan, the Plan Agent may compromise or settle any all claims of the Reorganized Debtor's estate without further notice, hearing or Court order, provided, however, that the resolution of any claim, either by or against the Reorganized Debtor or its estate, where the amount in controversy exceeds $500,000, the Plan Agent must seek and obtain approval from the Bankruptcy Court.

11. The Parties agreed to attempt to resolve their disputes with respect to, among other things, the Claims and the SMRH Proof of Claim through a mediation, discussed below. Prior to the mediation and continuing after the initial mediation session, Respondents, through their counsel, provided the Plan Agent's counsel with a production of the Meade's "client file" comprised of more than 660,000 pages of electronic files.

12. On June 15, 2021, the Reorganized Debtor and Respondents engaged in a full day non-binding mediation (the "Mediation") to discuss potential settlement of the Claims, the SMRH Proof of Claim, and other issues between the Parties. The Mediation was conducted under

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

the guidance of Robert A. Meyer of JAMS (https://www.jamsadr.com/meyer/). The Mediation continued thereafter through a series of follow-up meetings and phone calls.

13. As a result of the Mediation, the Parties agreed to settle and resolve all disputes among them as set forth below (whether asserted or unasserted, suspected or unsuspected, known or unknown).

### B. Description of Settlement Agreement[2]

The terms of the settlement, generally stated, are as follows[3]:

1. The agreement is conditioned upon the full execution of the Settlement Agreement by each of the Parties and entry of a final, non-appealable order by the Bankruptcy Court, in the form attached hereto as Exhibit 2, approving the terms and provisions of the Settlement Agreement.

2. In consideration of the mutual general releases and covenants not to sue described in the Settlement Agreement and the finality of the Settlement Agreement, within ten (10) business days after the order approving this Motion becomes the Final Order, SMRH shall (1) file a notice of withdrawal of the SMRH Proof of Claim; and (2) pay Claimant[4] Four Million Four Hundred Fifty Thousand Dollars ($4,450,000) (the "Settlement Amount") by wire transfer, which wiring instructions shall be provided separately to SMRH's counsel. Payment of the Settlement Amount in this manner shall discharge the obligation of Respondents with respect to any attorney's lien held by Claimant's counsel.

3. General Release by Respondents. In exchange for the obligations Claimant is undertaking in the Settlement Agreement and the release the Claimant is granting to

[2] Capitalized terms used in this section I.B of the Motion but not otherwise defined shall have the meanings ascribed to such terms in the Settlement Agreement.

[3] The description below is for summary purposes only, and is not intended to supplement, modify or alter the Settlement Agreement in any respect. To the extent there is any inconsistency between this description and the contents of the Settlement Agreement, the terms of the Settlement Agreement shall govern.

[4] Paragraph 1.0 of the Settlement Agreement defines "Claimant" as "Meade Instruments Corp., as Debtor and Reorganized Debtor.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Respondents as set forth in the Settlement Agreement, and except for the rights, duties and obligations created by the Settlement Agreement, Respondents each release and forever discharge Claimant and all of its predecessors, heirs, successors, partners, attorneys, agents (including but not limited to Broadway Advisors), employees, assigns, associates, and insurers, and the Meade bankruptcy estate of and from any and all rights, claims, losses, debts, charges, damages, demands, obligations, complaints, actions, disputes, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description or character, whether asserted or unasserted, suspected or unsuspected, known or unknown, which Respondents have, had or might have, own, or hold, or might later acquire, arising out of or relating (in whole or in part) to any matter, cause, fact, thing, act or omission whatsoever occurring at any time on or before the effective date of the Settlement Agreement, including, but not limited to, any arising out of or relating to the Representation.

4. General Release by Claimant. In exchange for the obligations Respondents are undertaking in the Settlement Agreement and the general release Respondents are granting to Claimant as set forth in the Settlement Agreement, and except for the rights, duties and obligations created by the Settlement Agreement, the Reorganized Debtor, on behalf of itself, the Debtor and the Meade bankruptcy estate, any representatives thereof (and anyone who could claim by, through or on behalf of the Debtor and its bankruptcy estate and the Reorganized Debtor), and, to the greatest extent allowable under law, its affiliated persons and business entities, including its officers, directors, shareholders, parents, subsidiaries, trustees, attorneys, agents, partners, employees, heirs, successors and assigns of each, and, for the avoidance of doubt, including Ningbo Sunny, Peter Ni, Sunny Optics, and their estates, representatives, trustees, attorneys, agents, partners, employees, heirs, successors and assigns of each[5], does release and forever discharge each of the Respondents and all of their respective predecessors, heirs, successors,

[5] The Settlement Agreement specifically provides that neither MAC nor Orion is a successor or assign of Meade for the purpose of the Settlement Agreement.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

partners, attorneys, agents, employees, assigns, associates, and insurers from any and all rights, claims, losses, debts, charges, damages, demands, obligations, complaints, actions, disputes, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description or character, whether asserted or unasserted, suspected or unsuspected, known or unknown, which Claimant (inclusive of, but not limited to, the Meade bankruptcy estate) has, had or might have, own, or hold, or might later acquire, arising out of or relating (in whole or in part) to any matter, cause, fact, thing, act or omission whatsoever occurring at any time on or before the effective date of the Settlement Agreement, including, but not limited to any arising out of or relating to the Representation.

5. Dispute Resolution and Retention of Jurisdiction: As set forth in the Settlement Agreement, the Parties have agreed that if there is a dispute regarding the Settlement Agreement, they will first attempt to resolve the dispute through mediation. Having been successful already in this regard, the Plan Agent is confident that any issues could be resolved consensually through mediation. However, in the event a consensual resolution could not be timely reached, the Bankruptcy Court would retain jurisdiction to resolve any disputes, notwithstanding the entry of a final decree closing the Bankruptcy Case. In the event the Bankruptcy Court refuses to adjudicate the dispute (including refusing to reopen the Bankruptcy Case in the event that a final decree has been entered), the Los Angeles County Superior Court shall have jurisdiction to adjudicate the dispute.

6. Confidentiality: With certain exceptions, including the need to disclose the terms of the Settlement Agreement in order to obtain Bankruptcy Court approval thereof, the Parties agree to keep the terms of the Settlement Agreement confidential.

/ / /

/ / /

/ / /

/ / /

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**II.**
**THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, EQUITABLE AND IN THE BEST INTERESTS OF THE ESTATE**

Federal Rule of Bankruptcy Procedure 9019 provides that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Compromise is favored over continued litigation. See In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (citing Port O'Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976)). A compromise should be approved if it is "fair and equitable." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986); Burton v. Ulrich (In re Schmidtt), 215 B.R. 417, 424 (9th Cir. B.A.P. 1997) (considering whether a compromise is fair and equitable for the creditors and whether it is in the best interests of the estate). "Whether a compromise will benefit or harm the debtor is immaterial." Burton v. Ulrich (In re Schmidtt), 215 B.R. at 424.

In determining whether to approve a compromise or settlement, the court must consider the following factors:

(1) the probability of success in the litigation;
(2) the difficulties, if any, to be encountered in the matter of collection;
(3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and
(4) the paramount interest of the creditors and a proper deference to their reasonable views.

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988). When considering these factors, the court need "only canvass the issues." In re Schmitt, 215 B.R. at 423 (citing In re Blair, 538 F.2d at 851-52); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983). "A mini trial on the merits is not required." In re Schmitt, 215 B.R. at 423. A compromise or settlement should be approved unless it "fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983); see also In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (holding that a settlement should be approved if it is reasonable given the particular circumstances of the case), cert. denied, 479 U.S. 854 (1986).

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a trustee. To the contrary, a settlement that has been negotiated by a trustee, as representative of the estate, is entitled to deference. See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ("The objecting creditors may not substitute their judgment for that of the Trustee."). While the Plan did not specify which standard is to be applied to the approval of a compromise where the amount at issue is greater than $500,000, the Plan Agent carefully considered each of the *A&C Properties'* factors, including the general best interest of the bankruptcy estate, before agreeing to the Settlement Agreement. For the reasons set forth below, the Plan Agent respectfully submits that each of the factors are satisfied, and the Settlement Agreement should be approved.

**A. Probability of Success in the Litigation**

The Claims against Respondents are multi-faceted and involve complex issues. The evidence in support of Meade's claims was woven together from the review of thousands of emails, transcripts, letters, and from interviewing third-party witnesses. Notwithstanding his confidence in his position, the Plan Agent was mindful of the "other side of the story" that was presented to him, and which would be, undoubtedly, advocated by Respondents at trial. Through the Mediation, the Plan Agent learned of the many defenses that Respondents intended to raise at trial. The Mediator, a well-respected neutral with considerable experience in handling professional negligence matters both as a mediator and as an attorney, adeptly described those defenses and in particular focused on the difficulties the Plan Agent would have with calculating damages. Although the Plan Agent is of the opinion that the Reorganized Debtor's Claims would survive Respondents' anticipated defenses, the Plan Agent fully considered the risks and uncertainty involved in proving the Claims, including risks resulting from retrial of issues related to expert testimony in the trial-within-a-trial, uncertain and potentially unfavorable unsettled law as to certain aspects of the Claims and damages theories, and the potential unavailability of certain witnesses who reside outside of the United States. Furthermore, the Plan Agent considered the possibility that the arbitration of the matter would be compelled (despite the Claimant's strong defenses to the same), and considered that proving up the Claims to a panel of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

arbitrators would likely be more difficult than if the matter was tried before a judge or jury.

On balance, while the Plan Agent, with the advice of his professionals, was and remains confident that he would be able to prove up the Claims in an amount that exceeds that which is to be paid through the Settlement Agreement, in his business judgment, he concludes that accepting the consideration provided in the Settlement Agreement adequately takes into account the risks associated with the litigation.

**B. <u>Difficulties in Collection</u>**

The difficulty in collection was not a significant factor in this case. SMRH is a law firm of nearly 1,000 lawyers and is believed to be well capitalized, although the Plan Agent does not have independent knowledge of that fact. Furthermore, and perhaps more importantly, the Plan Agent was made aware that the Claims were likely covered by SMRH's insurance policy, which had policy limits that likely exceeded the Plan Agent's total claims.

**C. <u>Complexity, Delay and Expense of Litigation</u>**:

This third factor weighed heavily in favor of compromise. The litigation would have been very complex, and certain of the Reorganized Debtors claims against Respondents would have required re-litigation of the underlying defense of certain aspects of the Antitrust Litigation in the context of a trial-within-a-trial, involving complicated and fact-intensive issues of law including the Clayton Act. There were also complex issues regarding the enforceability of SMRH's retention agreement including its arbitration clause, which in and of itself could have consumed months of motion practice. Further, litigation of the underlying claims, whether before a Court or arbitration panel, would require the in depth analysis of a litigation file of a matter that spanned several years before the District Court. As stated above, SMRH produced Meade's client file which contained several hundred thousand documents. The Reorganized Debtor would likely have had to retain and pay the cost of several experts, including but not limited to professional liability and damages experts. The cost of such experts could have been hundreds of thousands of dollars in and of themselves, perhaps much more. The Antitrust Litigation required the retention, preparation and presentation of telescope industry experts and antitrust damages expert economists, while any retrial of the Antitrust Litigation would require similar antitrust expert

testimony as well as legal malpractice standard of care and conflict of interest expert testimony, at great expense. Furthermore, in the event that arbitration of the matter was compelled under SMRH's retention agreement, because of the amount of the controversy at issue, a three-arbitrator panel would have been required. In the experience of the Reorganized Debtor's counsel, the fees associated with such a panel would likely have been several hundred thousand dollars. In addition, by agreeing to the Settlement Agreement before litigation was commenced, the increased contingent fee percentages were not triggered. Were the matter taken through trial, without considering the increased out of pocket costs, the Plan Agent estimates that he would have needed to recover approximately $1.4 million more than the settlement provides in order to provide the same net recovery to the Estate. Adding in the estimated costs, the recovery would likely have to exceed the settlement amount by close to $2.5 million in order to produce the same net result to the estate. Finally, the Plan Agent considered the delay that would result in the event a settlement were not reached. Depending on whether the matter was ordered to arbitration or trial, it is conceivable that a ruling on the merits of the Claims would not have been obtained for at least a year, and more likely much longer than that.

**D. Paramount Interest of Creditors**

The Plan Agent remained steadfastly committed to maximizing the recovery from the remaining assets of this case, which consists primarily of the Claims against Respondents. In the exercise of his informed business judgment, the Plan Agent submits that the best interest of creditors is served by approving the compromise. The Plan Agent has carefully performed a cost-benefit analysis in weighing the benefit of the settlement against the prospects of proceeding with the litigation, and has concluded that the settlement presents a fair and reasonable resolution to the litigation. The settlement results in funds flowing into the estate that will be available for distribution under the Plan, and will likewise put the Plan Agent in a position to seek the entry of a final decree closing the case. The Settlement Agreement provides net proceeds of approximately $3.45 million, plus whatever is refunded from the $200,000 cost advance to Sall Spencer[6], and

[6] The Debtor paid a $200,000 cost advance to Sall Spencer. Sall Spencer has used approximately $68,042.91 of those funds, and anticipates further costs of approximately $10,000 which will be

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

results in the withdrawal of SMRH's proof of claim in the amount of $2,686,409.64.[7]

**III.**

**THE COURT SHOULD AUTHORIZE THE PAYMENT OF THE CONTINGENT FEE FROM THE SETTLEMENT PAYMENT**

As discussed above, prior to the Effective Date of the Plan, the Debtor retained Sall Spencer and Parker Mills as co-special litigation counsel to represent it with respect to the Claims against SMRH. As of August 31, 2021, co-special litigation counsel have spent in excess of 1,065 attorney and paralegal hours investigating, presenting and negotiating resolution of the Claims. These efforts include searching, reviewing and analyzing relevant documents including: 3,522 documents provided by the Debtor (exceeding 52,000 pages), and 57,355 documents produced by SMRH (exceeding 1,871,000 pages), including emails, agreements, pleadings, discovery, deposition and trial transcripts, appellate briefs, and expert reports, as well as time spent conducting legal research, preparing a comprehensive and supported mediation brief, reviewing and analyzing SMRH's positions and defenses, participating in the hearing on the confirmation of the Plan, attending mediation and negotiating the Settlement.

The Debtor agreed that Sall Spencer and Parker Mills would be paid a contingent fee from any recovery obtained on the Claims. The contingent fee was graduated depending on the procedural posture of the case at the time a recovery was obtained. Pursuant to the fee agreement (the "Fee Agreement") attached as an exhibit to the application to employ the firms (See Dkt No. 287), if the Claims were settled or resolved before a lawsuit was filed, the contingent fee equaled 25% of the gross recovery obtained. If pre-litigation settlement efforts were unsuccessful and a lawsuit was filed, the contingent fee increased to 37.5% of the gross recovery if the recovery was obtained more than 90 days before the first scheduled trial or arbitration date (the "Trial Date"), and 42.5% of the gross recovery if recovery was obtained less than 90 days before the Trial Date.

---

held as a reserve. As such, it is expected that there will be a refund of approximately $121,957.09 to the Estate, plus whatever additional amount remains from the reserve for additional costs after they are paid.

[7] Under the Plan, the allowance of SMRH's proof of claim would have resulted in a decrease in the estimated base line distribution (before receiving their pro rata share of any litigation proceeds) to Class 2 general unsecured creditors from 30% to 15%.

In each instance, the contingent fee was to be reduced by 2.5% if the Debtor timely advanced and paid all cost retainers. The Fee Agreement required the advance of $200,000 by the Debtor against costs, which the Debtor timely paid. As such, and because the matter was resolved (pending approval of this Motion) before litigation was commenced, Sall Spencer and Parker Mills are entitled to receive a total fee of 22.5% of the Settlement Payment, or $1,001,250.

The Fee Agreement provided for an allocation of fees between the two firms based upon the time spent on the matter by each firm at agreed upon hourly rates.

While the Fee Agreement indicated that the firms recognized that the ultimate fee was subject to Bankruptcy Court approval, the Plan provided that:

> "Any Professional employed by the Debtor or Reorganized Debtor, as applicable, after confirmation of the Plan will be entitled to obtain payment of all fees and costs incurred after confirmation of the Plan in the ordinary course of business as a post-confirmation operating expense from funds of the Estate, the Debtor, or the Reorganized Debtor, without the need for any notice to Creditors or other parties in interest and without the need for obtaining any approval of the Bankruptcy Court" (Plan, at Page 27, Section 5.12)

Notwithstanding the fact that the Plan Agent believes that the contingent fee can be paid without Court approval pursuant to the Plan, out of an abundance of caution, the Plan Agent requests that the Court approve the payment of fees in the aggregate amount of $1,001,250, to be divided among the two firms in accordance with the Fee Agreement.

## IV. CONCLUSION

For the reasons set forth above, Trustee respectfully requests that the Court enter an order, in the form attached hereto as Exhibit 2:

1. Approving the Settlement Agreement;
2. Authorizing Plan Agent to take any and all other actions necessary or appropriate to effectuate the Settlement Agreement;
3. Authorizing and directing the payment of the contingent fees to co-special litigation counsel in the aggregate amount of $1,001,250, to be divided among Sall Spencer and Parker Mills in accordance with the Fee Agreement;
4. Retaining jurisdiction to interpret and enforce the Settlement Agreement; and

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

5. Granting such other relief as the Court deems just and proper.

DATED: September 30, 2021

**Sulmeyer**Kupetz
A Professional Corporation

By: */s/ Mark S. Horoupian*
Mark S. Horoupian
Attorneys for Broadway Advisors, in its Capacity as Plan Agent

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**DECLARATION OF ALFRED M. MASSE**

I, Alfred M. Masse, hereby declare as follows:

1. I am an individual over the age of eighteen. I am the managing partner of Broadway Advisors, LLC ("Broadway"). Broadway is the Plan Agent under the confirmed First Amended Plan of Reorganization (the "Plan") in this case. Except as otherwise indicated, all statements made herein are on my personal knowledge or my review of relevant documents. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2. I make this declaration in support of the Motion for Order Approving Settlement Between Reorganized Debtor, Sheppard Mullin Richter & Hampton, LLP, et al (the "Motion").

3. During my career, I have had, on many occasions, served in a fiduciary capacity for a bankruptcy estate where part of my duties included pursuing litigation on behalf of the estate. For example, *In re Power Balance, LLC*, (Case No. 8:11-bk-25982-TA) a case before the honorable Theodore Albert, Broadway was the debtor's financial advisor, submitted the only declaration in support of the confirmation of the debtor's plan, and was appointed as the plan agent. Like the Plan in this Case, I was tasked with, among other things, the prosecution of estate litigation claims, including directors and officer's claims, and avoidance actions against insiders. Under Broadways' guidance, the post-confirmation estate in that case recovered more than $800,000 in litigation recoveries for the benefit of the Estate. Likewise, in *In re ISC8, Inc*. (Case No. 8:14-bk-15750-SC), a case before the honorable Scott Clarkson, I was the Debtor's chief restructuring officer, and was appointed as the liquidating trustee of the trust established under the confirmed plan. In that case, under my guidance, the post-confirmation estate pursued litigation claims against former directors and officers, and insiders of the Debtor for breach of fiduciary duty, and recovery of avoidable transfers. This resulted in a settlement of $4,000,000 being paid by an insurance carrier.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

4. As a result of my decades of experience as either a financial advisor or fiduciary in bankruptcy cases, I recognize the potential benefits, inherent risks, costs, and delays associated with litigating claims involving bankruptcy estates. I have used that experience to perform cost-benefit analysis of dozens of litigation matters.

5. In or around November 2020, Meade[8] informed Respondents that it believed that it had claims against Respondents for, including but not limited to, legal malpractice, breach of fiduciary duty, fraudulent transfers and preference payments ("Claims").

6. The Reorganized Debtor and Respondents agreed to attempt to resolve their disputes with respect to, among other things, the Claims and the SMRH Proof of Claim through a mediation. Prior to the mediation and continuing after the initial mediation session, Respondents, through their counsel, provided my counsel with a production of the Meade's "client file" comprised of more than 660,000 pages of electronic files.

7. On June 15, 2021, the Reorganized Debtor and Respondents engaged in a full day non-binding mediation (the "Mediation") to discuss potential settlement of the Claims, the SMRH Proof of Claim, and other issues between the Parties. The Mediation was conducted under the guidance of Robert A. Meyer of JAMS (https://www.jamsadr.com/meyer/). The Mediation continued thereafter through a series of follow up meetings and phone calls.

8. As a result of the Mediation, the Parties agreed to settle and resolve all disputes among them as set forth in the Motion (whether asserted or unasserted, suspected or unsuspected, known or unknown). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.

9. As discussed below, I carefully considered each of the *A&C Properties'* factors, including the general best interest of the bankruptcy estate, before agreeing to the Settlement Agreement.

---

[8] Unless separately defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

10. The Claims against Respondents are multi-faceted and involve complex issues. The evidence in support of Meade's claims was woven together from the review of thousands of emails, transcripts, letters, and from interviewing third-party witnesses. Notwithstanding my confidence in my position, I was mindful of the "other side of the story" that was presented to me, and which would be, undoubtedly, advocated by Respondents at trial. Through the Mediation, I learned of the many defenses that Respondents intended to raise at trial. The Mediator, a well-respected neutral with considerable experience in handling professional negligence matters both as a mediator and as an attorney, adeptly described those defenses and in particular focused on the difficulties I would have with calculating damages.

11. Although I am of the opinion that the Reorganized Debtor's Claims would survive Respondents' anticipated defenses, I fully considered the risks and uncertainty involved in proving the Claims, including risks resulting from retrial of issues related to expert testimony in the trial-within-a-trial, uncertain and potentially unfavorable unsettled law as to certain aspects of the Claims and damages theories, and the potential unavailability of certain witnesses who reside outside of the United States. Furthermore, I considered the possibility that the arbitration of the matter would be compelled (despite the Claimant's strong defenses to the same), and considered that proving up the Claims to a panel of arbitrators would likely be more difficult than if the matter was tried before a judge or jury.

12. On balance, while I, with the advice of my professionals, was and remain confident that I would be able to prove up the Claims in an amount that exceeds that which is to be paid through the Settlement Agreement, in my business judgment, I concluded that accepting the consideration provided in the Settlement Agreement adequately takes into account the risks associated with the litigation.

13. The difficulty in collection was not a significant factor for my analysis in this case. SMRH is a law firm of nearly 1,000 lawyers and is believed to be well capitalized, although I do not have independent knowledge of that fact. Furthermore, and perhaps more importantly, I was made aware that the Claims were likely covered by SMRH's insurance policy, which had policy limits that likely exceeded the total Claims.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

14.    The third *A&C Properties* factor, complexity, expense and delay associated with the litigation, weighed heavily in favor of compromise.   The litigation would have been very complex, costly, and would have delayed the administration of the Estate.  *See* Declaration of Brandon Kreuger.

15.    In addition, by agreeing to the Settlement Agreement before litigation was commenced, the increased contingent fee percentages were not triggered.  Were the matter taken through trial, without considering the increased out of pocket costs, I estimate that I would have needed to recover approximately $1.4 million more than the settlement provides in order to provide the same net recovery to the Estate.  Adding in the estimated costs, the recovery would likely have to exceed the settlement amount by close to $2.5 million in order to produce the same net result to the estate.

16.    Finally, I considered the delay that would result in the event a settlement were not reached.   Depending on whether the matter was ordered to arbitration or trial, it is conceivable that a ruling on the merits of the Claims would not have been obtained for at least a year, and more likely much longer than that.

17.    I remained steadfastly committed to maximizing the recovery from the remaining assets of this case, which consists primarily of the Claims against Respondents.  In the exercise of my informed business judgment, I submit that the best interest of creditors is served by approving the compromise.  I have carefully performed a cost-benefit analysis in weighing the benefit of the settlement against the prospects of proceeding with the litigation, and have concluded that the settlement presents a fair and reasonable resolution to the litigation.  The settlement results in funds flowing into the estate that will be available for distribution under the Plan, and will likewise put me in a position to seek the entry of a final decree closing the case.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

18. The Settlement Agreement provides net proceeds of approximately $3.45 million, plus whatever is refunded from the $200,000 cost advance to Sall Spencer, and results in the withdrawal of SMRH's proof of claim in the amount of $2,686,409.64.[8]

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed September 30, 2021 at Napa, California.

Alfred M. Masse

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

[8] Under the Plan, the allowance of SMRH's proof of claim would have resulted in a decrease in the estimated base line distribution (before receiving their pro rata share of any litigation proceeds) to Class 2 general unsecured creditors from 30% to 15%.

**DECLARATION OF BRANDON N. KRUEGER**

I, Brandon N. Krueger, declare as follows:

1. I am an attorney admitted to practice in all courts of the State of California, and the United States District Courts for the Northern, Eastern and Central Districts of California. I have personal knowledge of the facts stated in this declaration and if called upon could and would testify to them under oath.

2. I am an attorney with Sall Spencer Callas & Krueger, A Law Corporation. My firm, along with our co-counsel, Parker Mills LLP represents the Debtor-in-Possession, Meade Instruments, in connection with advancing claims for legal malpractice and breach of fiduciary duty against Sheppard Mullin Richter & Hampton LLP and several attorneys associated with that firm (collectively "SMRH"). Our employment was approved by the bankruptcy court on December 4, 2020, and our engagement was effective as of October 1, 2020.

3. Since approximately 2005, I have focused my practice on legal ethics and malpractice cases. I have served as lead or co-counsel in numerous complex professional negligence and legal ethics-related litigations, throughout the State of California.

4. Prior to the mediation and continuing after the initial mediation session, Respondents, through their counsel, provided the Plan Agent's counsel with a production of the Meade's "client file" comprised of more than 660,000 pages of electronic files. Along with other members of Sall Spencer, I carefully reviewed and analyzed these files for purposes of supporting the Claims.

5. The litigation would have been very complex, and certain of the Reorganized Debtors claims against Respondents would have required re-litigation of the underlying defense of certain aspects of the Antitrust Litigation in the context of a trial-within-a-trial, involving complicated and fact-intensive issues of law including the Clayton Act. There were also complex issues regarding the enforceability of SMRH's retention agreement including its arbitration clause, which in and of itself could have consumed months of motion practice.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

6. Further, litigation of the underlying claims, whether before a Court or arbitration panel, would require the in depth analysis of a litigation file of a matter that spanned several years before the District Court. The Reorganized Debtor would likely have had to retain and pay the cost of several experts, including but not limited to professional liability and damages experts. The cost of such experts could have been hundreds of thousands of dollars in and of themselves, perhaps much more. The Antitrust Litigation required the retention, preparation and presentation of telescope industry experts and antitrust damages expert economists, while any retrial of the Antitrust Litigation would require similar antitrust expert testimony as well as legal malpractice standard of care and conflict of interest expert testimony, at great expense.

7. In the event that arbitration of the matter was compelled under SMRH's retention agreement, because of the amount of the controversy at issue, a three-arbitrator panel would have been required. In my experience, the fees associated with such a panel would likely have been several hundred thousand dollars.

8. As discussed above, prior to the Effective Date of the Plan, the Debtor retained Sall Spencer and Parker Mills as co-special litigation counsel to represent it with respect to the Claims against SMRH. As of August 31, 2021, co-special litigation counsel have spent in excess of 1,065 attorney and paralegal hours investigating, presenting and negotiating resolution of the Claims. These efforts include searching, reviewing and analyzing relevant documents including: 3,522 documents provided by the Debtor (exceeding 52,000 pages), and 57,355 documents produced by SMRH (exceeding 1,871,000 pages), including emails, agreements, pleadings, discovery, deposition and trial transcripts, appellate briefs, and expert reports, as well as time spent conducting legal research, preparing a comprehensive and supported mediation brief, reviewing and analyzing SMRH's positions and defenses, participating in the hearing on the confirmation of the Plan, attending mediation and negotiating the Settlement.

9. The Debtor paid a $200,000 cost advance to Sall Spencer. Sall Spencer has used approximately $68,042.91 of those funds, and anticipates further costs of approximately $10,000 which will be held as a reserve. As such, it is expected that there will be a refund of approximately $121,957.09 to the Estate, plus whatever additional amount remains from the reserve for additional costs after they are paid.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed September 29, 2021 at Laguna Beach, California.

Brandon N. Krueger

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

**FULL AND FINAL SETTLEMENT AGREEMENT
AND MUTUAL GENERAL RELEASES**

The Parties identified below hereby enter into this Full and Final Settlement Agreement and Mutual General Releases on the terms stated below.

1.0 Parties. This Full and Final Settlement Agreement and Mutual General Releases ("Agreement") is made and entered into as of September 10, 2021, by and between, on the one hand, Meade Instruments Corp., as Debtor and Reorganized Debtor ("Meade" or "Claimant") and, on the other hand, the law firm Sheppard Mullin Richter & Hampton LLP ("SMRH") and the individuals Michael Scarborough, Leo D. Caseria, Dylan Ballard, and Will Chuchawat (collectively with SMRH, "Respondents") (collectively with Claimant, the "Parties").

2.0 Recitals

2.1 Respondents previously represented Meade beginning in or about November 2016, including providing advice to Meade and on Meade's behalf in a litigation entitled *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., et al.*, Case No. 5:16-cv06370-EJD ("Antitrust Litigation"), in the District Court for the Northern District of California (San Jose Division) and in matters related thereto (the "Representation"). During the Representation, the Respondents also represented Meade's co-defendants in the Antitrust Litigation, Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny") and Sunny Optics, Inc. ("Sunny Optics").

2.2 In November 2019, a jury in the Antitrust Litigation issued a verdict against Meade and its co-defendants.

2.3 On or about December 4, 2019, Meade filed for bankruptcy under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Meade's bankruptcy proceeding is captioned *In re Meade Instruments Corp.*, Case No. 8:19-bk-14714-MW (the "Meade Bankruptcy Proceeding") and is pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Sunny Optics also filed for bankruptcy under Chapter 11 of the Bankruptcy Code on December 4, 2019. Pursuant to an order by the Bankruptcy Court, the Sunny Optics and Meade bankruptcy cases were jointly administered. *See* Meade Bankruptcy Proceeding [ECF No. 43].

2.4 Meade has paid some but not all the fees and costs of the Respondents in connection with the Representation.

2.5 On April 16, 2020, SMRH filed a proof of claim in the Meade Bankruptcy Proceeding in which it asserted a claim of $2,686,409.64 (the "SMRH Proof of Claim"). The SMRH Proof of Claim was docketed as claim number 30.

2.6 In its amended bankruptcy schedules filed on or around April 6, 2020 and in further amended schedules on December 4, 2020, Meade identified potential claims against SMRH as an asset of Meade's estate. In or around November 2020, Claimant informed Respondents that it believed that it had claims against Respondents for, including but not limited

to, legal malpractice, breach of fiduciary duty, fraudulent transfers and preference payments ("Claims").

2.7 In or around February 2021, a First Amended Plan of Reorganization for Meade was proposed by the Official Committee of Unsecured Creditors in the Meade Bankruptcy Proceeding (as amended, supplemented or modified, the "Plan"), which Plan was confirmed by the Bankruptcy Court by order entered on or about May 4, 2021 (the "Confirmation Order") and which became effective on June 1, 2021 ("Effective Date"). *See* Meade Bankruptcy Proceeding [ECF No. 363) (the Plan), [ECF No. 395] (the Confirmation Order), and [ECF No. 405] (providing notice the Plan became effective on June 1, 2021).

2.8 Pursuant to the terms of the Plan and the Confirmation Order, on the Effective Date, any and all causes of action of Meade as debtor and debtor-in-possession in the Meade Bankruptcy Proceeding related to Respondents, were vested in Meade, as Reorganized Debtor. A separate entity, Meade Acquisition Corporation ("MAC"), acquired certain assets of Meade under the Plan, but MAC did not acquire the Claims or any other any claims, causes of action or rights of Meade related to Respondents.

2.9 Pursuant to the terms of the Plan and the Confirmation Order, on the Effective Date, Broadway Advisors was appointed the Plan Agent (as defined and provided for in the Plan and Confirmation Order) and has the authority to act on behalf of the Reorganized Debtor. Specifically, Broadway Advisors has authority to enter into this Agreement on behalf of Meade as the Reorganized Debtor and Meade's bankruptcy estate, and has the sole and exclusive authority, subject to Bankruptcy Court approval, to resolve the Claims and the SMRH Proof of Claim.

2.10 On June 15, 2021, Claimant and Respondents engaged in non-binding mediation to discuss potential settlement of the Claims, the SMRH Proof of Claim, and other issues between the Parties.

2.11 The Parties disagree over the merits of the Claims, the SMRH Proof of Claim, and other issues, but nonetheless desire to settle and resolve all disputes among them as set forth below (whether asserted or unasserted, suspected or unsuspected, known or unknown).

2.12 The above Recitals and the definitions contained therein are incorporated by reference and shall be deemed substantive parts of this Agreement.

3.0 <u>Conditions Precedent to Settlement</u>.

3.1 The Agreement will become effective when all of the following conditions are met (the "Effectiveness Conditions"): (i) the full execution of the Agreement by each of the Parties and (ii) entry of a final, non-appealable order by the Bankruptcy Court approving Claimant's entry into the Agreement, in form and substance reasonably acceptable to the Parties (the "Final Order"). The Final Order approving this Agreement by the Bankruptcy Court shall, among other things, specifically provide that the Release provisions set forth below in this Agreement are approved and that the Bankruptcy Court will retain jurisdiction for purposes of interpreting or enforcing the terms of this Agreement notwithstanding the closure of the Meade

Bankruptcy Proceeding. If an appeal is taken from an order approving this Agreement, the order shall not be deemed to be a Final Order until the appeal is final and the appeal affirms the order approving the Agreement.

4.0 Agreements and Undertakings

4.1 Filings with the Bankruptcy Court. Claimant shall file a motion in the Meade Bankruptcy Proceeding (the "Settlement Motion"), in which it will seek Bankruptcy Court approval to enter into this Agreement. The Settlement Motion and proposed order approving the same will be substantially in the form attached hereto respectively as Exhibit 1 and 2, the form and content of which are expressly approved by Respondents.

4.2 Payment by SMRH to Claimant. In consideration of the mutual general releases described below and the finality of this Agreement, within ten (10) business days after the order approving the Settlement Motion becomes the Final Order, SMRH shall (1) file a notice of withdrawal of the SMRH Proof of Claim; and (2) pay Claimant Four Million Four Hundred Fifty Thousand Dollars ($4,450,000) ("the Settlement Amount") by wire transfer to Meade's account at Pacific Enterprise Bank, which wiring instructions shall be provided separately to SMRH's counsel. Payment of the Settlement Amount in this manner shall discharge the obligation of Respondents with respect to any attorney's lien held by Claimant's counsel.

Once the wire transfer has been made, counsel for SMRH shall promptly provide written confirmation of the transfer by email to counsel for Claimant, and Claimant shall promptly notify counsel for SMRH in writing when the funds have been received.

4.3 No Liability. The Parties acknowledge and agree that this Agreement is not and shall not be construed to be an admission that any Party has any liability or obligation to any other Party or third person. Rather, it is entered into as a compromise of the Parties' claims against each other. Furthermore, this Agreement shall not have any precedential value in this or any other suit, claim, action, litigation, arbitration, or form of dispute resolution.

5.0 Releases and Covenant Not to Sue

5.1 General Release by Respondents. In exchange for the obligations Claimant is undertaking in this Agreement and the release Claimant is granting to Respondents as set forth in this Agreement, and except for the rights, duties and obligations created by this Agreement, Respondents each hereby release and forever discharge Claimant and all of its predecessors, heirs, successors, partners, attorneys, agents (including but not limited to Broadway Advisors), employees, assigns, associates, and insurers, and the Meade bankruptcy estate of and from any and all rights, claims, losses, debts, charges, damages, demands, obligations, complaints, actions, disputes, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description or character, whether asserted or unasserted, suspected or unsuspected, known or unknown, which Respondents have, had or might have, own, or hold, or might later acquire, arising out of or relating (in whole or in part) to any matter, cause, fact,

thing, act or omission whatsoever occurring at any time on or before the effective date of this Agreement, including, but not limited to, any arising out of or relating to the Representation.

5.2 General Release by Claimant. In exchange for the obligations Respondents are undertaking in this Agreement and the general release Respondents are granting to Claimant as set forth in this Agreement, and except for the rights, duties and obligations created by this Agreement, Claimant, on behalf of itself, the Debtor and the Meade bankruptcy estate, any representatives thereof (and anyone who could claim by, through or on behalf of the Debtor and its bankruptcy estate and the Reorganized Debtor), and, to the greatest extent allowable under law, its affiliated persons and business entities, including its officers, directors, shareholders, parents, subsidiaries, trustees, attorneys, agents, partners, employees, heirs, successors and assigns of each, and, for the avoidance of doubt, including Ningbo Sunny, Peter Ni, Sunny Optics, and their estates, representatives, trustees, attorneys, agents, partners, employees, heirs, successors and assigns of each, does hereby release and forever discharge each of the Respondents and all of their respective predecessors, heirs, successors, partners, attorneys, agents, employees, assigns, associates, and insurers from any and all rights, claims, losses, debts, charges, damages, demands, obligations, complaints, actions, disputes, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description or character, whether asserted or unasserted, suspected or unsuspected, known or unknown, which Claimant (inclusive of, but not limited to, the Meade bankruptcy estate) has, had or might have, own, or hold, or might later acquire, arising out of or relating (in whole or in part) to any matter, cause, fact, thing, act or omission whatsoever occurring at any time on or before the effective date of this Agreement, including, but not limited to any arising out of or relating to the Representation.

5.3 Covenant Not to Sue. Respondents and Claimant agree that they will not file, initiate or participate in any claim or litigation that seeks to recover from any of the Parties to this Agreement for any of the claims released in this Agreement or any claims relating to or arising from the released claims, and for any other claims that arise out of the same facts and circumstances as the released claims, nor will they solicit or encourage any other person or entity to engage in any litigation with any of the Parties to this Agreement regarding, relating to, or arising out of the claims released in this Agreement or the same facts and circumstances as the released claims. For the avoidance of doubt, however, the term "participate" does not preclude either Party from producing documents, or responding to subpoenas received by the Parties in connection with litigation. In addition, all Parties retain the right to sue to enforce (or to enjoin a breach of) this Agreement in accordance with section 14 below.

6.0 Release of Unknown Claims and Waiver of Rights Under Civil Code Section 1542

6.1 The Parties intend this Agreement, once executed, to be a full and final accord and satisfaction and release of each and every released matter, even though they understand that engaging in litigation and discovery might reveal additional facts that could be pertinent to their decision to settle. The Parties acknowledge that each has read this Agreement and knows and understands the full contents and effect of it. The Parties further declare that they understand the full nature, extent, and import of Section 1542 of the California Civil Code and of this entire

Agreement, and have sought and obtained the advice of their own counsel with respect to that statute and this Agreement. Accordingly, with respect to the released matters, the Parties hereby waive and relinquish any and all rights or benefits that they may have under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, f known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.2 In connection with this waiver and relinquishment, each of the Parties acknowledges that he or it may later discover additional or different facts than he or it now knows or believes to be true with respect to the subject matter of this Agreement. The Parties also recognize the possibility that, in the future, they might incur damages related to the subject matter of this Agreement that are not currently known. Fully recognizing these possibilities, it is still the Parties' intention to fully, finally, and forever settle and release all disputes and differences, known or unknown, suspected or unsuspected, that now exist, may exist, or heretofore have existed with respect to the released matters. In furtherance of this intention, once the Parties sign this Agreement, and upon satisfaction of the Effectiveness Conditions of Section 3.1 and the withdrawal of the SMRH Proof of Claim and the payment of the Settlement Amount, as required by Section 4.2, the releases given in this Agreement shall remain effective as a full and complete general release of the released matters notwithstanding the discovery or existence of additional or different facts or damages than those presently believed to be the case. The Parties agree that this Agreement shall not be subject to termination, rescission, alteration or reformation by virtue of any such additional or different facts or damages.

7.0 Warranties and Representations. SMRH represents and warrants to Claimants and Broadway Advisors that it has produced to Meade's entire Client File, as negotiated by counsel for the Parties, with only the following agreed upon exceptions: internal communications that SMRH designated as privileged; videos of depositions from the underlying litigation, and data from a deactivated Relativity database (consisting of data productions from the parties to the Antitrust Litigation, data productions from third parties, and data that was collected from the defendants but neither reviewed nor produced in the Antitrust Litigation). Each of the Parties to this Agreement warrants that subject to obtaining Bankruptcy Court approval in the manner required by Section 4.1 it has full authority to enter into this Agreement, and to enter into the undertakings and obligations set forth in this Agreement. The Parties also warrant that they have not assigned or transferred their respective claims to any other person or entity, and that no other consents, approvals, authorizations, releases or settlements—other than the approval of the Bankruptcy Court required in accordance with the Plan—are necessary from any other person or entity in order for this Agreement, and all of its terms, including the releases, to become effective.

8.0 Taxability of the Settlement: Each Party acknowledges that neither Party nor the agents or representatives of either Party has made any statements or representations to the other regarding the tax treatment of the payment or receipt of the Settlement Amount.

9.0 Attorney's Fees and Related Expenses: The Parties agree to bear their own costs, mediation fees, attorney's fees and related expenses incurred in connection with this Agreement.

10.0 Successors In Interest: This Agreement, including the releases contained in this Agreement, shall be binding upon and shall inure to the benefit of the Parties and each of the their respective heirs, agents, trustees, executors, administrators, attorneys, successors and assigns and each of the persons and entities released hereunder. For the avoidance of doubt neither Optronic Technologies, Inc. nor MAC shall be deemed to be a successor or assign of Meade, nor are they third-party beneficiaries of this Agreement.

11.0 Entire Agreement

11.1 This Agreement contains the entire agreement of the Parties and may not be modified or amended except by a further document in writing that is signed by all of the Parties. In executing this Agreement and making the settlement contained herein, the Parties represent and acknowledge that they do not rely and have not relied upon any promise, representation or statement by any party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement. This Agreement supersedes all prior written and oral agreements between or among the Parties.

11.2 Each of the Parties has been fully and competently represented by counsel of its own choosing in the negotiations and drafting of this Agreement. Accordingly, the Parties agree that the rule of construction of contracts resolving any ambiguities against the drafting Party shall be inapplicable to this Agreement. Further, each Party acknowledges that it has read this entire Agreement.

12.0 Headings: The section headings are for convenience and reference only and shall not define, expand, limit, restrict, or otherwise affect the meaning of any portion of this Agreement.

13.0 Confidentiality:

13.1 The Parties shall maintain confidentiality of the terms of this Agreement other than as necessary to seek Court approval. Each Party expressly represents and warrants that, except as permitted expressly herein, it has not publicized in any manner and will not publicize in any manner to any third person or entity, the terms of this Agreement, other than to say that the case was settled and compromised and that the terms of the settlement are subject to a confidentiality agreement.

13.2 A Party may disclose the terms of this Agreement to a third party, to the Bankruptcy Court, and to creditors of the Meade Bankruptcy estate, to the extent reasonably necessary, in the following situations: (1) to provide appropriate notice and information to creditors and interested persons in the Meade Bankruptcy Proceeding; (2) to obtain Bankruptcy Court approval of this Agreement and of the fees and costs of counsel for Meade; (3) in other circumstances, with the express written consent of the other Party obtained in advance of the disclosure; (4) in response to a discovery request in a lawsuit or administrative proceeding, provided that the non-disclosing Party be given sufficient written notice of the discovery request

or administrative proceeding to enable the non-disclosing Party to object to, redact and/or prevent such disclosure; (5) insofar as disclosure is required pursuant to a subpoena issued by a court of competent jurisdiction or legislative body, but only after giving all other Parties notice and a copy of the subpoena; (6) insofar as disclosure is reasonably necessary to carry out and effectuate the terms of this Agreement, or to seek its interpretation or enforcement in a court of law; (7) as required by law, regulation, appropriate legal, financial or regulatory disclosure, legal process or as ordered by a court; or (8) as necessary to meet financial or insurance reporting requirements. Other than disclosure pursuant to (1) and (2), disclosures of any of the terms of this Agreement made under this paragraph shall, to the extent reasonably practicable, be made only pursuant to a confidential designation and/or under a confidentiality order or other comparable limitation on the use of such disclosures. Apart from the foregoing permitted disclosures, the Parties and/or their counsel may only disclose to third persons and entities that the case was settled and compromised and that the terms of the settlement are subject to a confidentiality agreement. In the event disclosure is made pursuant to subparagraph 13.2 above, the Party making the disclosure shall apprise the third person or entity to whom such disclosure is made of the confidential nature of the information and shall use its good faith efforts to secure and assure the confidentiality and non-disclosure of the information by the third person or entity.

14.0 Performance and Enforcement of Agreement

14.1 The Parties agree to perform all acts and execute, deliver and file all documents necessary to carry out the provisions, purposes and intent of this Agreement.

14.2 The Parties agree that this Agreement, once signed by all Parties, is binding and may be enforced against them, in accordance with Section 1123(b) of the Evidence Code. For the avoidance of doubt, until this Agreement is executed by all the Parties hereto, this Agreement shall not be binding on the Parties and nothing contained in this Agreement shall be construed to be an admission of any Party and neither this Agreement nor reference to it may be introduced in any action or proceeding related to the subject matter of this Agreement. This Agreement is subject to Bankruptcy Court approval as set forth above. If the Bankruptcy Court does not approve this Agreement or if the Bankruptcy Court's approval is subsequently reversed or vacated on appeal, this Agreement shall become null and void and shall be inadmissible for any and all purposes in relation to any litigation commenced in the Bankruptcy Court or otherwise.

14.3 Pursuant to Sections 1122(a)(1) and 1123(b) of the Evidence Code, other than as expressly exempted and set forth in Section 14.2 above in this Agreement, the Parties intend that the Agreement, once signed by all Parties, shall be admissible, and all of the terms of this Agreement may be disclosed to a court of law, for purposes of proving and/or enforcing this Agreement (or enjoining a breach thereof). Solely for such purposes, the Parties waive the "mediation privilege" contained in Section 1119(b) of the Evidence Code.

14.4 Any Party's failure, in any one or more instances, to enforce any of their rights in this Agreement, or to insist upon the strict performance of this Agreement's terms, conditions or covenants, shall not be construed as a waiver or a relinquishment of any such rights to seek performance or enforcement of this Agreement in the event of other breaches of the Agreement.

14.5 This Agreement in all respects shall be interpreted, enforced and governed by and under the laws of California, without regard to the conflicts of laws or principles thereof, and as to procedural matters in the Bankruptcy Court, by applicable federal law.

14.6 Dispute Resolution: If a dispute arises out of or relates to this contract, or the alleged breach thereof, and if the dispute is not settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation within 30 days after written notice of the dispute is given. Mediation shall be conducted by JAMS, with Robert Meyer, if available, to serve as mediator. If Mr. Meyer is not available in a reasonable time, the parties will use their best efforts to select a mutually agreeable mediator. In mediation fails to resolve any such dispute, the parties agree to seek adjudication of such dispute in the Bankruptcy Court. In the event that the Bankruptcy Court refuses to adjudicate the dispute (including refusing to reopen the Bankruptcy Case in the event that a final decree has been entered), the Los Angeles County Superior Court shall have the jurisdiction to adjudicate the dispute.

14.7 In any action arising out of or in any way related to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs.

14.8 To the extent that either Party has been or shall in the future be requested to provide documents in response to a subpoena, the Parties shall cooperate with one another in such production, and SMRH shall make available and produce such nonprivileged documents relating to the Antitrust Litigation and the Representation as are responsive and available to be produced.

14.9 Each Party shall take further action that reasonably may be required to effectuate this Agreement.

14.10 This Agreement shall not be amended or modified, except by a writing signed by each Party.

14.11 If any language is determined by a court of competent jurisdiction to be void and/or unenforceable, that language will be deleted and this Agreement will remain in effect to the extent it may without the deleted language.

14.12 Notices required pursuant to this Agreement shall be delivered by: personal service; certified or registered mail, return receipt requested, postage prepaid; email; or an overnight courier such as Federal Express. Notices to Claimant shall be addressed and delivered to: Robert K. Sall and Brandon N. Krueger, Sall Spencer Callas & Krueger, 32351 Coast Highway, Laguna Beach, CA 92651, with a copy to David B. Parker, Parker Mills LLP, 800 W. 6th Street, Suite 500, Los Angeles, CA 90017-2702, and with a copy to Mark Horoupian, Sulmeyer Kupetz, APC, 333 S. Grand Avenue, Suite 3400, Los Angeles, CA 90071. Notices to Respondents shall be addressed and delivered to: Jonathan W. Hughes, Arnold & Porter Kaye Scholer LLP, Three Embarcadero Center, 10th Floor, San Francisco, CA 94111. The person, entity, or place notices are to be sent may be changed upon five days' notice to each Party.

15.0 Interpretation. The Parties agree that each has reviewed this Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Agreement.

The Parties further agree that this Agreement is the product of negotiations among the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

16.0 Counterparts. This Agreement may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

As witnessed, each Party agrees to and executes this Agreement.

DATED: September 10, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By: ____________________
Alfred M. Masse
Its: Managing Member

DATED: September__, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

____________________
By: Michael Stewart, its General Counsel

DATED: September __, 2021

By: ____________________
Michael Scarborough

DATED: September __, 2021

By: ____________________
Leo D. Caseria

DATED: September __, 2021

By: ____________________
Dylan Ballard

DATED: September ___, 2021

By: ____________________
Will Chuchawat

DATED: September __, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By:____________________
Alfred M. Masse
Its: Managing Member

DATED: September 10 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: Michael Stewart, its General Counsel

DATED: September __, 2021

By: ______________________
Michael Scarborough

DATED: September __, 2021

By: ______________________
Leo D. Caseria

DATED: September __, 2021

By: ______________________
Dylan Ballard

DATED: September ___, 2021

By: ______________________
Will Chuchawat

DATED: September __, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By:______________________
Alfred M. Masse
Its: Managing Member

DATED: September__, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

______________________________
By: Michael Stewart, its General Counsel

DATED: September 10, 2021

By: ______________________________
Michael Scarborough

DATED: September __, 2021

By: ______________________________
Leo D. Caseria

DATED: September __, 2021

By: ______________________________
Dylan Ballard

DATED: September ___, 2021

By: ______________________________
Will Chuchawat

DATED: September __, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By:____________________
Alfred M. Masse
Its: Managing Member

DATED: September__, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

____________________________
By: Michael Stewart, its General Counsel

DATED: September __, 2021

By: ________________________
Michael Scarborough

DATED: September 10, 2021

By: ________________________
Leo D. Caseria

DATED: September __, 2021

By: ________________________
Dylan Ballard

DATED: September ___, 2021

By: ________________________
Will Chuchawat

DATED: September __, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By:______________________
Alfred M. Masse
Its: Managing Member

DATED: September__, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

______________________________
By: Michael Stewart, its General Counsel

DATED: September __, 2021

By: ___________________________
Michael Scarborough

DATED: September __, 2021

By: ___________________________
Leo D. Caseria

DATED: September 9, 2021

By: ___________________________
Dylan Ballard

DATED: September ___, 2021

By: ___________________________
Will Chuchawat

MSH 2727353v1

DATED: September __, 2021

MEADE INSTRUMENTS CORP., REORGANIZED DEBTOR, ON BEHALF OF ITSELF, THE DEBTOR AND THE BANKRUPTCY ESTATE

By: Broadway Advisors, LLC, its Court Appointed Plan Agent

By:______________________
Alfred M. Masse
Its: Managing Member

DATED: September__, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

______________________________
By: Michael Stewart, its General Counsel

DATED: September __, 2021

By: ___________________________
Michael Scarborough

DATED: September __, 2021

By: ___________________________
Leo D. Caseria

DATED: September __, 2021

By: ___________________________
Dylan Ballard

DATED: September 10, 2021

By: ___________________________
Will Chuchawat

# EXHIBIT 2

Mark S. Horoupian (CA Bar No. 175373)
mhoroupian@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Broadway Advisors, LLC,
In Its Capacity as Plan Agent

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>☒ MEADE INSTRUMENTS CORP., a Delaware corporation,<br><br>Reorganized Debtor<br><br>☐ SUNNY OPTICS, INC., a Delaware corporation,<br><br>Debtor in Possession<br><br>☐ All Debtors. | Case No. 8:19-bk-14714-MW<br><br>(Jointly Administered with Case No. 8:19-bk-14711-MW)<br><br>Chapter 11<br><br>**ORDER APPROVING SETTLEMENT BETWEEN REORGANIZED DEBTOR, SHEPPARD MULLIN RICHTER & HAMPTON, LLP, ET AL .**<br><br>Date:<br>Time:<br>Place: Courtroom 6C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

**IN SAID DISTRICT, AT THE TIME AND PLACE ASCRIBED ABOVE**:

Upon the motion (the “Motion”)[1] by Broadway Advisors, LLC (“Broadway” or “Plan Agent”), the Plan Agent appointed under the confirmed First Amended Plan of Reorganization (the “Plan”), for an order approving the settlement (the “Settlement”) pursuant to that certain Full and Final Settlement Agreement and Mutual General Releases (the “Settlement Agreement”), a copy of which is attached to the Motion as Exhibit 1, by and between, on the one hand, Meade Instruments

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion or the Settlement Agreement, as applicable.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Corp., as Debtor and Reorganized Debtor (the "Reorganized Debtor" or "Claimant") and, on the other hand, the law firm Sheppard Mullin Richter & Hampton LLP ("SMRH") and the individuals Michael Scarborough, Leo D. Caseria, Dylan Ballard, and Will Chuchawat (together with SMRH, the "Respondents" and collectively with the Claimant, the "Parties"), including the declarations in support thereof; and [there being no opposition to the Motion] or [the opposition by _______ (the "Opposition"), and the Plan Agent's reply thereto]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion [and held a hearing to consider the relief requested in the Motion on [September __], 2021 (the "Hearing"); and upon the record of the Hearing, which is incorporated herein by reference]; and after due deliberation, the Court having determined that the legal and factual basis set forth in the Motion establish good and sufficient cause for the relief granted herein and having found that the Settlement is fair and reasonable and is in the best interests of the Reorganized Debtor, its estate, creditors and all parties in interest and otherwise satisfies the factors set forth in In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), and good cause appearing therefore, IT IS HEREBY ORDERED as follows:

1. The Motion is granted as set forth herein.

2. The Plan Agent is authorized and directed to take all steps necessary to consummate the Settlement.

3. The Settlement embodied in the Settlement Agreement, attached as Exhibit 1 to the Motion, is approved in its entirety in all respects pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure and the terms and provisions of the Settlement Agreement are incorporated fully herein as an order of the Court.

4. Within ten (10) business days after this Order becomes a Final Order (as defined and provided for in the Settlement Agreement), SMRH shall withdraw the SMRH Proof of Claim and pay the Claimant the Settlement Amount.

5. Each of the provisions, terms and sections of the Settlement Agreement are hereby approved, ordered adjudged and decreed.

6. The Plan Agent is authorized and directed to pay Sall Spencer Callas & Krueger, a Law Corporation, and Parker Mills, LLP (together the "Special Litigation Counsel") a total fee of $1,001,250 from the proceeds of the Settlement in full and final satisfaction of Special Litigation Counsel's fees under the fee agreement (the "Fee Agreement") previously approved by this Court. The Special Litigation Counsel have agreed to allocate the fees amongst themselves pursuant to the Fee Agreement.

7. The Court retains jurisdiction to hear and determine all matters arising from the implementation of this Order and the Settlement Agreement approved herein, including but not limited to interpreting and enforcing the Settlement Agreement, notwithstanding the entry of a final decree or closure of the above-captioned Reorganized Debtor's bankruptcy case.

8. Nothing in the Motion, the Settlement Agreement, or this Order is intended to be, nor shall it be deemed or construed as, an admission or finding that any Party has any liability or obligation to any other Party or third person, except as such obligations are created by the Settlement Agreement and this Order.

###

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Main Document Page 47 of 49

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN REORGANIZED DEBTOR, SHEPPARD MULLIN RICHTER & HAMPTON, LLP, ET AL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALFRED M. MASSE AND BRANDON KRUEGER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 1, 2021 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached**

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 1, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Mark S. Wallace
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 1, 2021 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2709790v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Matthew Borden on behalf of Creditor Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars
borden@braunhagey.com,
kushnir@braunhagey.com;hagey@braunhagey.com;fisher@braunhagey.com;theodore@braunhagey.com;hasegawa@braunhagey.com;szoke@braunhagey.com;baker@braunhagey.com;vallejo@braunhagey.com;ridge@braunhagey.com;le@br

Matthew Borden on behalf of Creditor Optronic Technologies, Inc., d/b/a Orion Telescopes & Binoculars
borden@braunhagey.com,
kushnir@braunhagey.com;hagey@braunhagey.com;fisher@braunhagey.com;theodore@braunhagey.com;hasegawa@braunhagey.com;szoke@braunhagey.com;baker@braunhagey.com;vallejo@braunhagey.com;ridge@braunhagey.com;le@br

Frank Cadigan on behalf of U.S. Trustee United States Trustee (SA)
frank.cadigan@usdoj.gov

Robert P Goe on behalf of Attorney Goe Forsythe & Hodges LLP
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Attorney Stetina Brunda Garred & Brucker, APC
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Debtor Meade Instruments Corp.
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Debtor Sunny Optics, Inc., a Delaware corporation
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Other Professional Broadway Advisors, LLC
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Mark S Horoupian on behalf of Attorney SulmeyerKupetz, A Professional Corporation
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Mark S Horoupian on behalf of Creditor Committee Official Committee of Unsecured Creditors
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Mark S Horoupian on behalf of Debtor Meade Instruments Corp.
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Mark S Horoupian on behalf of Interested Party Courtesy NEF
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Mark S Horoupian on behalf of Other Professional Broadway Advisors, LLC
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Tobias S Keller on behalf of Creditor Security Finance (Fund 1) LLC
tkeller@kellerbenvenutti.com

Aaron J Malo on behalf of Creditor Sheppard, Mullin, Richter & Hampton LLP
amalo@sheppardmullin.com, clopez@sheppardmullin.com;abilly@sheppardmullin.com

Hamid R Rafatjoo on behalf of Creditor Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars
hrafatjoo@raineslaw.com, bclark@raineslaw.com

CC 2709790v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Main Document Page 49 of 49

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Claire K Wu on behalf of Creditor Committee Official Committee of Unsecured Creditors
claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com

Claire K Wu on behalf of Interested Party Courtesy NEF
claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com

CC 2709790v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**